UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
01/25/2010

IN RE: §
§
BISON BUILDING § CASE NO. 09-34452-H2-11
HOLDINGS, INC., *et al.*, § (Chapter 11 – Jointly Administered)
§
Debtors. §

## ORDER
(Docket No. 396)

The Court has considered the Debtors' Application to Employ WoodRock & Co. ("WoodRock") as Debtors' Investment Banker pursuant to §§ 327, 328 and 330 of the Bankruptcy Code (the "Application"). The Court finds that notice of the Application is sufficient and that the requested relief should be granted. Accordingly, it is therefore

**ORDERED THAT:**

1. The Application is **GRANTED**.

2. The agreement attached as **Exhibit 1** is approved. The Debtors are authorized to execute and deliver the agreement.

3. The Debtors are authorized, under 11 U.S.C. §§ 327, 328 and 330, to employ WoodRock as their investment banker to provide financial advisory and investment banking services to the Debtors in these cases as set forth in **Exhibit 1**.

4. All applications for compensation shall be filed with the Court in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure and the rules of this Court.

SIGNED this 25th day of Jan, 2010.

THE HONORABLE WESLEY W. STEEN,
UNITED STATES BANKRUPTCY JUDGE

1796967v1

WoodRock&Co.

John P. Dennis III, Principal
jdennis@woodrock.com

January 5, 2010

Bison Building Holdings, Inc.
1445 West Sam Houston Parkway North
Houston, Texas 77043
Attn: Pat Bierschwale

Re:   *Engagement Agreement between Bison Building Holdings, Inc. and WoodRock & Co. (the "Agreement")*

Dear Pat:

We are pleased to confirm our understanding and agreement pursuant to which Bison Building Holdings, Inc. (the "Company") has engaged WoodRock & Co. ("WoodRock"), on an exclusive basis, to render certain financial advisory and investment banking services to the Company as more particularly described herein. While we understand that the focus of our engagement will primarily be related to advising and assisting the Company with raising and obtaining equity and/or debt capital (a "Financing Transaction"), this Agreement also includes provisions for our services in the event that, during our efforts to raise capital, the Company enters into a financial or strategic transaction (which may include a sale, transfer, merger, acquisition, consolidation, or other type of transaction) involving the assets, securities, or business of the Company (an "M&A Transaction").

For purposes of this Agreement, a Financing Transaction, an M&A Transaction and/or a Combined Transaction (as defined herein), shall be collectively referred to herein as a "Transaction".

IT IS AGREED AND UNDERSTOOD THAT THIS AGREEMENT IS SUBJECT TO REVIEW AND APPROVAL BY THE UNITED STATES BANKRUPTCY COURT AFTER NOTICE AND OPPORTUNITY FOR HEARING. ALL FEES PAYABLE HEREUNDER ARE SUBJECT TO APPROVAL OF THE BANKRUPTCY COURT. WOODROCK AGREES THAT IT WILL COOPERATE IN PROVIDING ALL MATERIALS NECESSARY TO SEEK COURT APPROVAL OF THIS AGREEMENT.

1.   Services.   In connection with our engagement hereunder, WoodRock will assist the Company by performing the following services with respect to each Transaction:

   (a)   Financing Transaction.   In performing its services relating to a Financing Transaction, WoodRock shall:

      (i)   Assist management in preparing a confidential descriptive memorandum of the Company and its operations and finances, including estimates of the Company's development potential as described in its business plan, for use in discussions with potential investors/lenders (the "Financing Memorandum").

4265 San Felipe Street, Suite 600 | Houston, Texas 77027 | ☎ 713.654.0912 | ✎ 713.750.0529 | www.woodrock.com

EXHIBIT 1

BISON BUILDING HOLDINGS, INC.                                                                 Confidential
JANUARY 5, 2010

   (ii) Assist the Company in raising equity or debt capital from institutional or corporate lenders/investors.

   (iii) Discuss with the Company various alternative strategies that may be implemented in order to raise capital from new investors/lenders in a manner that will create the greatest value for the Company's shareholders and creditors. Working with the Company's management, WoodRock will assist in evaluating these strategies and provide advice as to the manner in which to structure and implement a Financing Transaction designed to achieve the Company's stated objectives.

   (iv) Assist the Company in establishing achievable terms and conditions for a Financing Transaction as well as the valuation and sale price for the Company's securities or assets in any Financing Transaction.

   (v) Prepare a list of potential investors/lenders which will be submitted to the Company for the purpose of identifying, contacting and conducting discussions with target investors/lenders in order to determine the level of interest in a proposed Financing Transaction. WoodRock will then qualify and screen potential investors/lenders as well as arrange and attend exploratory meetings.

   (vi) Render advice to the Company as to the values and financial implications of various negotiating strategies and other considerations, which could impact the likelihood and/or value of a Financing Transaction. WoodRock will advise the Company regarding specific offers by potential investors/lenders and, to the extent deemed appropriate, assist and/or direct negotiations intended to lead to a closing of any proposed Transaction.

*__WoodRock does not guarantee that it will be successful in identifying, arranging for, or consummating a Financing Transaction, and shall have no liability to the Company in the event a Financing Transaction is not consummated for any reason.__*

  (b) __M&A Transaction__. At the direction of the Company, and in performing its services relating to an M&A Transaction, WoodRock shall:

   (i) Assist the Company in a strategic review of objectives, targets and expectations in order to formulate a working strategy and plan, including the preparation of a confidential descriptive memorandum of the Company and its operations and finances for use in discussions with potential purchasers.

   (ii) Hold discussions with Company management concerning business operations, competitive position, industry environment, and projected future operational and financial performance in order to assist in preparing an information package describing the Company's specific capital initiatives or any potential acquisition or merger partner as well as the Company's historical, current and future operations and financial condition.

   (iii) Devise proposed acquisition or purchase terms, conditions and any related financing.

BISON BUILDING HOLDINGS, INC.  Confidential
JANUARY 5, 2010

    (iv)    Coordinate legal, accounting and other advisors in connection with the delivery or receipt of any offer or proposal.

    (v)    Participate and assist in the planning and implementation of the due diligence process after a letter of intent is proposed and/or entered.

    (vi)    Assist in reviewing and completing documentation leading to the closing of any M&A Transaction or related transaction.

    (c)    If requested, and for such additional fee as shall be agreed to at such time by WoodRock and the Company (as approved by the Bankruptcy Court), deliver an opinion to the creditor's committee of the Company as to the fairness from a financial point of view of the consideration to be received by the stockholders and creditors of the Company who are not affiliates of the Company in any such Transaction.

2.    <u>Fees for Services</u>.

    (a)    <u>Financial Advisory Services Fee</u>. To develop the Financing Memorandum, and to assist the Company in pursuing its available options, WoodRock will charge a cash fee totaling $75,000.00 (the "Financial Advisory Services Fee"). This fee shall be payable in monthly installments until fully paid, and is non-refundable. The first payment of $25,000.00 shall be due upon approval of this Engagement Agreement by the Bankruptcy Court, with subsequent payments of $15,000.00 being due every 30 days thereafter (payment shall be due prior to the expiration of the 30-day period). However, if a Transaction is closed prior to the entire fee being paid, the unpaid balance shall be due at closing. If WoodRock earns associated Contingency Fees (as described in 2(b), 2(c) and 2(d) below), the Financial Advisory Services Fee will be credited against these Contingency Fees but such application will not reduce the Contingency Fees below the $250,000 "floor" described below.

    (b)    <u>Financing Transaction Fee</u>. Subject to Subparagraph 2(d) below:

    (i)    For all equity capital committed and received by the Company in connection with any Financing Transaction (for purposes hereof, "equity capital" shall include all capital raised in any form whatsoever, including without limitation any common stock, preferred stock, convertible preferred stock, debt convertible into equity, subordinate debt with options, warrants or similar instruments attached, or any other instrument with equity or equity-like components attached, but excluding any equity capital contributed by Pat Bierschwale or any affiliate or family member of Pat Bierschwale), WoodRock shall be paid a cash fee equal to *the greater of*:

        (1)    five percent (5.00%) of the gross amount of such equity capital raised and actually received by the Company; or

        (2)    $250,000.

    (ii)    For all debt capital committed and received by the Company in connection with any Financing Transaction (for purposes hereof, "debt capital" shall be defined to include all non-convertible senior or junior indebtedness without any options, warrants or similar instruments attached but excluding any debt capital

*BISON BUILDING HOLDINGS, INC.* *Confidential*
*JANUARY 5, 2010*

provided by Pat Bierschwale or any affiliate or family member of Pat Bierschwale), WoodRock shall be paid a cash fee equal to *the greater of:*

(1) two percent (2.00%) of the gross amount of such term debt capital actually received by the Company; or

(2) $250,000.

For purposes hereof calculating any Financing Transaction Fee that may be due to WoodRock, gross proceeds received from capital sources listed in **ATTACHMENT A** shall not be included. However, the floor Financing Transaction Fee of $250,000 shall still apply.

(c) M&A Transaction Fee. Subject to Subparagraph 2(d) below, with respect to any M&A Transaction (including without limitation any M&A Transaction involving any party with whom the Company, as of the date hereof, is in discussions regarding a potential M&A Transaction but excluding any portion of an M&A Transaction involving Pat Bierschwale or any affiliate or family member of Pat Bierschwale), WoodRock shall be paid a cash fee equal to *the greater of:*

(1) three and one-half percent (3.50%) of the Total Transaction Value (as defined below); or

(2) $250,000.

For purposes hereof, the term "Total Transaction Value" shall mean the total amount of cash and the fair market value (on the date of payment) of all other property paid or payable directly or indirectly (but excluding any cash or property provided by Pat Bierschwale or any affiliate or family member of Pat Bierschwale) (i) to the Company, its shareholders, employees, or security holders, (ii) by the Company, its partners, employees, or security holders, or (iii) into any new entity or joint venture. Total Transaction Value shall also include (i) amounts paid or payable pursuant to covenants not to compete and making due allowance, without limitation, for amounts paid or payable pursuant to employment contracts, consulting agreements, employee benefit plans, or other similar arrangements, and (ii) the value of any liabilities (including the principal amount of any indebtedness for borrowed money) repaid or retired in connection with or in anticipation of an M&A Transaction, or existing on the balance sheet of the Company or any other party involved in an M&A Transaction (in the case of a merger, a purchase, or other transfer of stock or similar transaction) or assumed directly or indirectly by the Company or such other party (in the case of a purchase or other transfer of assets or similar transaction).

(d) Combined Transactions. Notwithstanding the foregoing, with respect to any transaction or series of related transactions which contemplate any combination of a Financing Transaction, and/or M&A Transaction (excluding any transactions involving Pat Bierschwale or any affiliate or family member of Pat Bierschwale) (a "Combined Transaction"), WoodRock shall be paid a cash fee equal to *the greater of* (i) the aggregate amount of fees for each type of transaction involved calculated in accordance with Subparagraphs 2(b) and 2(c) above (as applicable), or (ii) $250,000. In the event of multiple transactions, the $250,000 "floor" fee will apply only once.

BISON BUILDING HOLDINGS, INC.                                    Confidential
JANUARY 5, 2010

All cash fees payable under these Subparagraphs 2(b), 2(c), and 2(d) above shall be due and payable coincident with the closing of the applicable Transaction out of the proceeds thereof. It is understood that such fees shall be paid in cash and are due in full in respect of the gross amount of all capital, without deduction for fees, expenses, costs or charges of any kind, and regardless of whether the funding of such capital commitments or payment or receipt of consideration is to be made over time or in installments or whether such funding or payment may be subject to escrow requirements or other contingencies. The foregoing fees shall be payable with respect to each and every Transaction, whether occurring in a single transaction or in a series of related transactions, consummated during the term of WoodRock's engagement hereunder, or during the Tail Period (as defined herein) to the extent the Company uses any of the materials produced by WoodRock hereunder in connection with the closing of any Transaction. In the event that WoodRock is unsuccessful in completing a Transaction, the Company shall have no obligation to pay the contingency-based fees related to such transaction.

3.      Term. Unless previously terminated by either party pursuant to Paragraph 8, the term of this Engagement Agreement shall be one (1.0) year, commencing immediately upon the date of the Company's execution of this Agreement. This Agreement may be extended by written agreement executed by both parties hereto on terms acceptable to the parties.

4.      Expenses. Regardless of whether any Transaction shall be proposed or consummated, the Company hereby agrees to reimburse WoodRock for all reasonable out-of-pocket expenses incurred on or after the execution of this Agreement (including, but not limited to, travel, meals and lodging expenses, expenses for presentation and financial materials, and legal fees and expenses); provided, however, that all expenses exceeding $500 must be approved in advance (either orally or in writing) by the Company. Such expenses will be billed on a monthly basis and shall be payable within ten (10) days after submission and approval by the Bankruptcy Court.

5.      Confidentiality. WoodRock hereby agrees to use all non-public information provided by the Company solely for the purpose of rendering services to the Company pursuant to its engagement hereunder and to treat confidentially such information for so long as such information remains non-public. Except as contemplated by such engagement or as required by applicable law, WoodRock will not disclose such confidential information to a third party (other than directors, officers, employees, or outside advisors of WoodRock and its affiliates who have been informed of the confidential nature of such information) without the prior written consent of the Company. WoodRock agrees that it shall be responsible for any breach of this Section 5 by its directors, officers, employees, affiliates and outside advisors).

6.      **INDEMNIFICATION**. IN THE EVENT THAT WOODROCK BECOMES INVOLVED IN ANY CAPACITY IN ANY ACTION, PROCEEDING OR INVESTIGATION BROUGHT BY OR AGAINST ANY PERSON, INCLUDING MEMBERS OF THE COMPANY, IN CONNECTION WITH OR AS A RESULT OF EITHER OUR ENGAGEMENT OR ANY MATTER REFERRED TO IN THIS AGREEMENT, THE COMPANY SHALL REIMBURSE WOODROCK FOR ITS LEGAL AND OTHER EXPENSES TOGETHER WITH THE AMOUNT OF JUDGMENTS, PENALTIES, INTEREST AND COURT COSTS (INCLUDING THE COST OF ANY INVESTIGATION AND PREPARATION) INCURRED IN CONNECTION THEREWITH. THE COMPANY SHALL ALSO PROTECT, INDEMNIFY AND HOLD WOODROCK HARMLESS AGAINST ANY AND ALL

*BISON BUILDING HOLDINGS, INC.*                                                     *Confidential*
*JANUARY 5, 2010*

required by WoodRock or a potential investor/lender, underwriter, sale, merger, acquisition or business combination entity, including but not limited to, information concerning historical and projected financial results and possible, known or threatened litigation, environmental and other contingent liabilities or claims. The Company will advise WoodRock immediately, or as soon as reasonably possible, if any material change, adverse or otherwise, occurs in its business or finances during the term of this Agreement.

    (b)    The Company agrees to furnish WoodRock with all information concerning the Company within the Company's control or possession which WoodRock deems reasonably necessary or appropriate, and to provide WoodRock with access to the Company's shareholders, officers, directors, employees, accountants, counsel, and other representatives requested by WoodRock (collectively, the "Representatives"), it being understood that WoodRock will rely solely upon such information supplied by the Company and its Representatives without assuming any responsibility for the accuracy or completeness of such information or the independent investigation or verification thereof. The Company represents that all information that it furnishes to WoodRock shall be accurate and complete in all material respects.

    (c)    WoodRock will work with the Company to confirm and provide support for the information contained in the Financing Memorandum, but the Company will be responsible for the contents of any Financing Memorandum and any other disclosure documents used in connection with a Financing Transaction. Furthermore, the Company represents that such documents will not, at the time they are delivered to any potential investors or partners, contain any untrue statements of a material fact, and that they will not, at the time they are delivered to any potential investors or lenders, omit any material fact in order to make the statements contained therein misleading.

    (d)    The Company hereby agrees to commit such necessary time of its management that may be reasonably required by WoodRock in the preparation of the Financing Memorandum or other disclosure documents.

    (e)    Until this Agreement is terminated, any Memorandum and any collateral marketing materials developed by WoodRock will remain the property of WoodRock and may not be used by the Company or its shareholders, employees, agents, advisors, and/or assigns to raise capital or to enter into a transaction or series of transactions in connection with raising capital, other than with respect to persons or companies who have been identified and disclosed to WoodRock. Upon termination of this Agreement, any Memorandum and marketing material that WoodRock may have developed in conjunction with this Agreement will become the property of the Company. The Company agrees to remove any references to WoodRock before it uses any of these materials for any purposes whatsoever. Upon such termination, the Company will be provided with an electronic copy of any Memorandum and related marketing materials.

    (f)    The Company understands and acknowledges that WoodRock is a registered "broker/dealer" with the Financial Industry Regulatory Authority ("FINRA") and, consequently, is prohibited from paying "finders' fees", commissions or other payments to persons or entities not registered with the FINRA. In connection with the foregoing, the Company represents and warrants to WoodRock that no persons or entities are entitled to "finders' fees", commissions or other payments in connection with the Company's consummation of a Transaction as the result of any act, promise, or agreement of the Company.

*BISON BUILDING HOLDINGS, INC.*  *Confidential*
*JANUARY 5, 2010*

10. **Exclusive Engagement.** The Company hereby represents and warrants to WoodRock that it has not engaged any other financial advisors with respect to the matters described in this Agreement. During the term of this Agreement, the Company hereby agrees and covenants that it shall not engage, hire, employ, or otherwise consult with any other financial advisors, investments bankers, or placement agents in connection with the matters described in this Agreement, including, without limitation, any Financing Memorandum, Financing Transaction, or M&A Transaction.

11. **Notices.** Any notices required or permitted hereunder shall be sufficiently given if personally delivered or sent by registered mail or certified mail, postage prepaid, by prepaid telegram, or by overnight courier (with receipt for delivery), addressed as follows:

> If to the Company, to:   Pat Bierschwale
> Bison Building Holdings, Inc.
> 1445 West Sam Houston Parkway North
> Houston, Texas 77043
>
> If to WoodRock, to:   John P. Dennis III
> WoodRock & Co.
> 4265 San Felipe, Suite 600
> Houston, Texas 77027

Any of the above addresses may be changed at any time by notices given as set forth above provided, however, that any such notices of change of address shall be effective only upon receipt. All notices, requests, or instructions given in accordance herewith shall be deemed received on the date of delivery, if hand delivered or if delivered by facsimile transmission, and two business days after the date of mailing, if mailed in accordance with the preceding provisions.

12. **Attorneys' Fees.** In the event of a suit, action, arbitration, or other proceeding of any nature whatsoever, including, without limitation, any proceeding under the U.S. Bankruptcy Code, is instituted by either party hereto to interpret or enforce any provision of this Agreement, then the prevailing party shall be entitled to recover from the other party hereto its reasonable attorneys', paralegals', accountants' and other experts' fees, and all other fees, costs, and expenses actually incurred and reasonably necessary in connection therewith.

13. **Transaction Announcement.** Following the completion of any Transaction, the Company agrees that WoodRock has the right to place transaction details on the WoodRock website, descriptive documents, advertisements, tombstones, or notices in financial and other newspapers and journals as WoodRock deems appropriate, describing its services to the Company. WoodRock shall submit copies of such advertisements, tombstones, or notices to the Company so that the Company may approve the form, content, and timing of such communication. Such approval by the Company shall not be unreasonably withheld or delayed.

14. **WoodRock's Representations, Warranties and Covenants.**

> (a)   WoodRock represents and warrants that it has all necessary licenses and permits to perform its obligations under this Agreement.

*BISON BUILDING HOLDINGS, INC.*　　　　　　　　　　　　　　　　　　　　　*Confidential*
*JANUARY 5, 2010*

(b)　WoodRock shall perform its obligations under this Agreement in accordance with all applicable laws and regulations, and shall not solicit potential investors that would cause the Company to be in violation of any applicable securities laws or regulations.

15.　<u>Dispute Resolution</u>.　While the Company remains under the jurisdiction of the United States Bankruptcy Court for the Southern District of Texas, any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by the United States Bankruptcy Court for the Southern District of Texas. Should the Bankruptcy Court no longer have jurisdiction, any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration in Houston, Texas, in accordance with the procedures and rules as prescribed and adopted by FINRA, and judgment upon the award rendered may be entered in any court having jurisdiction thereof. In any such arbitration, the parties shall be entitled to conduct discovery to the fullest extent permitted under Rule 26 of the Federal Rules of Civil Procedure; provided, however, that the arbitrator or arbitration panel, as applicable, shall resolve all discovery dispute upon a motion of either party.

16.　<u>Non-Solicitation of Employees</u>.　Each of the Company and WoodRock agrees that during the term of this Agreement and for a one year period thereafter, it shall not solicit for employment or hire any employee of the other who became known to it in connection with the matters contemplated by this Agreement; provided, however, that neither the Company nor WoodRock shall be precluded from hiring any employee of the other who (a) responds to any general public advertisement, (b) has been terminated by the other party prior the commencement of employment discussions or (c) is solicited or hired by employees of a party who have no knowledge of the Agreement.

17.　<u>Other Matters</u>.

(a)　Any advice or opinions provided by WoodRock may not be disclosed or referred to publicly or to any third party except in accordance with WoodRock's prior written consent.

(b)　The Company represents that it has all requisite power and authority to enter into this Agreement, and that this Agreement has been duly and validly authorized by all necessary corporate action on the part of the Company and has been duly executed and delivered by the Company.

(c)　This Agreement cannot be modified or changed, nor can any of its provisions be waived, except by written agreement executed by both parties hereto.

(d)　WoodRock shall have the right to assign its right to receive fees hereunder to any affiliate of WoodRock, at any time without the necessity of obtaining the Company's consent or authorization.

(e)　This Agreement shall be binding upon the Company and WoodRock and their respective successors and assigns.

(f)　This Agreement shall be governed by and construed in accordance with the laws of the State of Texas, without regard to conflicts of law principles thereof.

BISON BUILDING HOLDINGS, INC.                                    Confidential
JANUARY 5, 2010

(g)     This Agreement sets forth the entire understanding of the parties relating to the subject matter hereof and supersedes and cancels any prior communications, understandings or agreements.

If this Agreement correctly sets forth your understanding of our agreement, please execute where indicated below and return to my attention an original executed version at your earliest convenience.

Thank you for engaging WoodRock as the exclusive financial advisor to the Company. We are pleased to have the opportunity to work with you and look forward to a mutually beneficial relationship.

Sincerely,

WOODROCK & CO.

By: _____
Name: John P. Dennis III
Title: Managing Director and Principal
Date: January 5, 2010

AGREED AND ACCEPTED:

BISON BUILDING HOLDINGS, INC.

By: _____
Name: Pat Bierschwale
Title: President
Date: 5 January 2010

*BISON BUILDING HOLDINGS, INC.* *Confidential*
*JANUARY 5, 2010*

## ATTACHMENT A

Pat Bierschwale
Tom Tolleson
Harley Robinson