UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| BISON BUILDING | § | CASE NO. 09-34452-H2-11 |
| HOLDINGS, INC., *et al.*, | § | (Chapter 11 – Jointly Administered) |
| | § | |
| Debtors. | § | |

### DEBTORS' MOTION TO APPROVE
### BIDDING PROCEDURES AND BUYER PROTECTIONS

**A HEARING WILL BE CONDUCTED ON THIS MATTER ON MAY 28, 2010 AT 9:30 A.M. IN COURTROOM 400, 515 RUSK AVENUE, HOUSTON, TEXAS. IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING SPECIFICALLY ANSWERING EACH PARAGRAPH OF THIS PLEADING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE WITH THE CLERK OF THE BANKRUPTCY COURT WITHIN TWENTY-ONE DAYS FROM THE DATE YOU WERE SERVED WITH THIS PLEADING. YOU MUST SERVE A COPY OF YOUR RESPONSE ON THE PERSON WHO SENT YOU THE NOTICE; OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

**To the Honorable Wesley W. Steen,
United States Bankruptcy Judge:**

Bison Building Holdings, Inc., Bison Building Materials, LLC, Bison Building GP, Inc., HLBM Company, Milltech, Inc., Bison Building Materials Nevada, LLC, Bison Multi-Family Sales, LLC and Bison Construction Services, LLC (the "Debtors") file this Motion to Approve Bidding Procedures and Buyer Protections.

### Nature of the Motion

1.  On May 4, 2010, the Debtors entered into an agreement for the sale of substantially all of their operating assets. This agreement will form the foundation for the Debtors' upcoming plan of reorganization and will provide cash for the payment of claims. The agreement contains provisions regarding the Debtors' evaluation of subsequent superior

proposals and the payment of a termination fee in the event that a superior proposal is accepted by the Debtors. The Debtors seek approval of those provisions.

## Deadline to Obtain Approval

2. Under the agreement with Stock, the Debtors have 30 days from May 4, 2010 or June 3, 2010 to obtain court approval.

## Jurisdiction and Venue

3. This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A) and (O). Venue of these cases is proper in this district pursuant to 28 U.S.C. §§ 1408(1) and (2). Relief is sought pursuant to 11 U.S.C. §§ 105, 363 and 503.

## Background

4. On June 28, 2009, the Debtors filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

5. On January 12, 2010, the Debtors filed their application to employ WoodRock & Co. ("WoodRock") as their investment banker in this case [Docket No. 396]. The Court approved WoodRock's engagement by order entered January 25, 2010 [Docket No. 415].

6. After assembling the necessary marketing and due diligence materials, WoodRock initiated a process on February 18, 2010 designed to evaluate all options to (i) raise new equity capital; (ii) sell all or part of the Debtors' assets; (iii) obtain new debt financing; or (iv) achieve a combination of the foregoing. During the process, WoodRock contacted

approximately 40 different potential financial and strategic partners regarding their interest in the Debtors.

7. WoodRock initially established a deadline of March 31, 2010 for proposals by potential financial partners. After evaluating the potential options, the Debtors determined that none of the proposals would return a meaningful distribution to creditors. Consequently, the Debtors refocused their efforts on potential strategic partners and a sale of part or all of the Debtors's assets. WoodRock's efforts resulted in a series of competitive indications of interest from two strategic partners. WoodRock fully tested each of these indications of interest. From early April until early May, the consideration being offered rose substantially.

8. The process, however, had a negative affect on the Debtors' business. As industry rumors spread, competitors began attempting to hire the Debtors' employees and vendors shortened the Debtors' credit terms. The process also required the Debtors' allocation of substantial resources required in the ongoing operation of the business to responding to due diligence requests.

9. On May 4, 2010, the Debtors entered into an agreement with Stock Building Supply Holdings, LLC ("Stock") for the purchase of the substantially all of the Debtors' operating assets. The gross consideration to be received by the Debtors is in excess of $45,000,000 in cash and assumed liabilities. The sale will be accomplished through a proposed plan that will be filed shortly.

10. As part of the negotiation process, Stock requested certain bidding procedures and buyer protections. The Debtors refused to consider a majority of the requests in order to be able to continue to freely consider any alternative proposals that might arise between the date of the Stock agreement and the confirmation hearing. Likewise, Stock indicated that it was unwilling

to proceed without some protections. The Debtors ultimately agreed to a procedure on how to handle the evaluation of subsequent proposals and the payment of a termination fee should an alternative proposal be received and accepted by the Debtors.

**The Termination Fee**

11. The Debtors have agreed to the payment of a Termination Fee in the amount of $1,050,000. The Termination Fee is less than 2.5% of the gross consideration and covers all compensation, attorney's fees and reimbursement of expenses of Stock should the Debtors accept another proposal. The relevant language in the Stock Agreement reads as follows:

> **9.02** **Effect of Termination; Termination Fee**[1]
>
> (b) If prior to December 31, 2010, for any reason other than termination by Debtors under Section 9.01(e)(i) hereof, Debtors consummate an Alternative Proposal[2] or enter into definitive agreement(s) providing for the implementation of an Alternative Proposal or file a plan(s) of reorganization to implement an Alternative Proposal and thereafter consummate an Alternative Proposal (whether or not the consummation of the Alternative Proposal occurs prior to December 31, 2010), then Debtors shall pay Buyer the Termination Fee within three (3) Business Days (but in no event later than the effective date of any plan of reorganization other than the Reorganization Plan) after such consummation. The Purchaser Protection Order shall provide that the Termination Fee shall be an administrative expense of the Bankruptcy Cases.
>
> (c) The obligation of Debtors to pay the amount payable under Section 9.02(b) (and the payment thereof) shall be absolute and unconditional; such payment shall be an administrative expense under Section 507(a)(2) of the Bankruptcy Code and shall be payable as specified herein and not subject to

---

[1] The Stock Agreement provides that "*Termination Fee*" means a termination fee in the amount of $1,050,000. The Termination Fee shall be deemed to be an administrative expense of the Bankruptcy Cases.

[2] The Stock Agreement provides that "*Alternative Proposal*" means any inquiry, offer, proposal or plan (whether or not in writing) (other than an offer or proposal by or on behalf of Buyer or any of its Affiliates) for, or any indication of interest in, or any transaction involving: (i) any merger, consolidation, share exchange, recapitalization, business combination or similar transaction involving any of the Debtors that own, individually or in the aggregate, a material portion of the Assets of the Debtors that would constitute Transferred Assets if such Assets were held by Debtors at the Effective Time, (ii) any sale, lease, exchange, mortgage, transfer or other disposition, in a single transaction or series of related transactions, of Assets representing a material portion of the Transferred Assets outside the Ordinary Course of Business, (iii) any sale of equity interests representing, individually or in the aggregate, a majority of the voting power of any of the Debtors that, individually or in the aggregate, own a material portion of the Assets of the Debtors that would constitute Transferred Assets if such Assets were held by Debtors at the Effective Time, (iv) a Restructuring Transaction, or (v) a stand alone plan of reorganization(s) filed by any of Debtors that, individually or in the aggregate, own a material portion of the Assets of the Debtors that would constitute Transferred Assets if such Assets were held by Debtors at the Effective Time and that is inconsistent with this Agreement, or (vi) any combination of the foregoing. The Parties agree and acknowledge that, notwithstanding anything in the previous sentence, none of the transactions or actions relating solely to the Retained Assets or a transaction consummated by a Chapter 7 trustee if the Bankruptcy Court has converted the Bankruptcy Cases to Chapter 7 shall be deemed to be an Alternative Proposal.

any defense claim, counterclaim, offset, recoupment, or reduction of any kind whatsoever. For the avoidance of doubt, in no event shall Debtors be obligated to pay the Termination Fee on more than one occasion.

**Bidding Procedures**

12. The Debtors and Stock have agreed on a procedure regarding the receipt, review and notice of any other proposals that are received by the Debtors. Under the proposed agreement, the Debtors have agreed that they will not actively solicit, initiate, encourage or facilitate an Alternative Proposal between the execution date of the Stock Agreement and confirmation. All existing discussions between the Debtors and third parties have been terminated. If an Alternative Proposal is received, it will be shared with Stock within 24 hours of receipt. If the Alternative Proposal is determined to be a Superior Proposal[3], the Debtors will provide Stock with four days prior notice of their intent to accept the Superior Proposal. The relevant language in the Stock Agreement reads as follows:

> **5.06** **Purchaser Protections**.
>
> (b) Debtors shall immediately terminate, and shall instruct their Representatives to immediately terminate all existing discussions or negotiations, if any, with any Person conducted heretofore with respect to an Alternative Proposal.
>
> (c) From the date of this Agreement until the Closing Date, no Debtor shall, and Debtors shall cause their Representatives to not, (i) solicit, initiate, encourage or facilitate (including by way of furnishing non-public information) any proposal, inquiry, offer or request that constitutes, or that could reasonably be expected to lead to, an Alternative Proposal, (ii) enter into, participate in, continue or engage in discussions or negotiations with any Person regarding an Alternative Proposal, or any proposal, inquiry, offer or request that could reasonably be expected to lead to an Alternative Proposal, or (iii) except as provided in Sections 5.06(d) and (e) and subject to compliance with this Agreement, approve or recommend, or publicly propose to approve or recommend, or enter into any letter of intent, agreement or understanding or agreement in principle regarding, or to implement, an Alternative Proposal, or any

---

[3] The Stock Agreement provides that "*Superior Proposal*" means any bona fide written Alternative Proposal not solicited, initiated, encouraged or otherwise facilitated in violation of Section 5.06, that is on terms that each Board determines in good faith, after consultation with its outside legal counsel and upon receipt of a written opinion from WoodRock & Co., to be more favorable to the applicable Debtors and their creditors, from a financial point of view, than the transactions contemplated by this Agreement, taking into account all relevant aspects of such Alternative Proposal (in comparison with the terms of the Agreement and any revised offer by Buyer), including financial considerations (including additional transaction costs and the effect of the payment of the Termination Fee and other amounts payable hereunder), the Person or group of Persons making such Alternative Proposal, and the likelihood that the proposed transaction would be consummated substantially in accordance with its terms (taking into account all financing, regulatory, legal, bankruptcy and other aspects of the Alternative Proposal).

proposal, inquiry, offer or request that could reasonably be expected to lead to an Alternative Proposal (an "*Acquisition Agreement*").

(d) Debtors shall promptly advise Buyer, telephonically and in writing, of receipt of any Alternative Proposal and the identity of the Person or group of Persons making the Alternative Proposal, or any proposal, inquiry, offer or request that is reasonably likely to lead to an Alternative Proposal and the identity of the Person or group of Persons making such proposal, inquiry, offer or request (in each case within twenty-four (24) hours after receipt thereof). Debtors shall promptly provide Buyer, in writing and in reasonable detail (within such twenty-four (24)-hour time frame), with a copy of all materials relating to any such Alternative Proposal, or proposal, inquiry, offer or request that is reasonably likely to lead to an Alternative Proposal. Debtors shall promptly, and in any event within twenty-four (24) hours, inform Buyer of any material change in any of the price, form of consideration or other material terms or conditions of any such Alternative Proposal or proposal, inquiry, offer or request that could reasonably be expected to lead to an Alternative Proposal, and the current status of any discussions or negotiations related thereto. Debtors agree that they will not enter into any confidentiality agreement with any Person subsequent to the date hereof which prohibits such Debtors from providing such information to Buyer.

(e) Notwithstanding Section 5.06(c)(iii), prior to obtaining the Confirmation Order, in response to a bona fide written Alternative Proposal that was not initiated, solicited, encouraged or facilitated by any Debtor or any of its Affiliates or their respective Representatives after the date hereof that each of the Debtors' Board of Directors or Board of Managers, as applicable (the "*Boards*") determines in good faith, after receipt of an opinion from WoodRock & Co. and consultation with outside legal counsel, constitutes, or is reasonably likely to lead to, a Superior Proposal, Debtors may, subject to compliance with this Section 5.06 and notwithstanding any other term or provision of this Agreement to the contrary, furnish information and/or draft agreements with respect to Debtors to the Person making such Alternative Proposal (and its officers, directors, employees, attorneys, accountants, consultants, legal counsel, advisors, agents and other representatives) pursuant to a customary confidentiality agreement no less restrictive in any material respect to such Person than the Confidentiality Agreement and which agreement does not prohibit compliance by Debtors with their obligations under this Section 5.06 to provide notices and other information to Buyer; *provided*, *further*, that promptly upon determination by the Boards that an Alternative Proposal constitutes, or is reasonably likely to lead to, a Superior Proposal, Debtors shall deliver to Buyer a written notice advising it that the Boards have so determined, specifying in reasonable detail the terms and conditions of such Superior Proposal. Debtors shall promptly provide to Buyer any information concerning Debtors which was not previously provided to Buyer (but in no event later than twenty-four (24) hours after any Debtors provided such information to such other party).

(f) Notwithstanding Section 5.06(c)(iii), prior to obtaining the Confirmation Order, the Boards or any committee thereof may terminate this Agreement in accordance with Section 9.01(e)(ii) and enter into any Acquisition Agreement with respect to a Superior Proposal if, but only if, the Boards and Debtors have prior thereto complied with the following clauses (i) through (iii):

(i) the Boards have received a bona fide written Alternative Proposal that was not initiated, solicited, encouraged or facilitated by any Debtors or their Representatives after the date of this Agreement, and the Boards have determined in good faith, after consultation with its outside legal counsel, (i) that such action is necessary for the Boards to comply with their fiduciary duties imposed by Applicable Law or the Bankruptcy Code, and (ii) after receipt of an opinion from WoodRock & Co., that such Alternative Proposal constitutes a Superior Proposal;

(ii) Debtors have given Buyer four (4) Business Days' prior written notice (the "*Notice Period*") of their intention to take such action, which notice shall attach the most recent draft of any agreement with respect to, and specify the terms and conditions of any such, Superior Proposal (including the identity of the Person or group of Persons making the Superior Proposal) and any material modifications to any of the foregoing, and during the Notice Period, Debtors shall, and shall direct their financial advisors and outside counsel to, negotiate with Buyer in good faith (to the extent Buyer desires to

negotiate) to make such adjustments in the terms and conditions of this Agreement so that such Alternative Proposal ceases to constitute (in the good faith judgment of the Board, after receipt of an opinion from WoodRock & Co. and consultation with outside legal counsel), a Superior Proposal, and if during the Notice Period any revisions are made to the Superior Proposal and the Boards in their good faith judgment determines, after consultation with WoodRock & Co. and with outside legal counsel, that such revisions are material (it being understood that any change in the purchase price or form of consideration in such Superior Proposal shall be deemed a material revision), Debtors shall deliver a new written notice to Buyer and shall comply with the requirements of this Section 5.06(f) with respect to such new written notice; and

   (iii) Debtors have complied with their other obligations under this Section 5.06.

 (g) Notwithstanding the foregoing, until the Purchaser Protection Order has been entered or denied by the Bankruptcy Court, the Debtors agree that they will not communicate with any other party with respect to an Alternative Proposal.

13. The Debtors believe that the foregoing procedures are minimally invasive and appropriate under the circumstances.

## Requested Relief

14. The Debtors request that the Court approve the Termination Fee and the procedures for the receipt and review of proposals between now and the confirmation hearing. The Termination Fee and the review procedures are reasonable and will allow the Debtors to proceed toward confirmation with the assurance of a significant return to creditors. The proposed Termination Fee is less than 2.5% of the gross consideration being received under the Stock proposal.

15. The Debtors' goals throughout this case have been to maximize the value of their assets, preserve jobs and pay their creditors. The Termination Fee and the bid review procedures have been negotiated with those goals in mind and in an effort to encourage competitive bidding. Those negotiations were spirited and hard-fought. With the bidding complete, the Debtors have been able to structure an agreement that provides certainty to the Debtors' creditors while leaving open the possibility of realizing greater value.

16.     Bid protections such as break-up or termination fees are appropriate if the relationship of the parties who negotiated the fees is not tainted by self-dealing or manipulation, the proposed fee does not hamper bidding and the amount of the fee is not unreasonable relative to the proposed purchase price. *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 657 (S.D.N.Y. 1992), *appeal dismissed*, 3 F.3d 49 (2$^d$ Cir. 1993) (approving termination fee plus reimbursement of expenses); *In re Wintz Companies*, 230 B.R. 840 (8th Cir. BAP 1999), *aff'd*, 219 F.3d 807, 846 (8th Cir. 2000) (stating that the proposed fee and the transaction as a whole must make economic sense and be in the best interest of the estate and its creditors). In holding that break-up fees can provide actual benefit to the estate, the Third Circuit has identified nine factors to evaluate the propriety of a such fees:

>   (1)     whether the relationship of the parties who negotiated the break-up fee is tainted by self-dealing or manipulation;
>
>   (2)     whether the fee hampered, rather than encouraged bidding;
>
>   (3)     whether the amount of the fee is unreasonable relative to the proposed purchase price;
>
>   (4)     whether the unsuccessful bidder placed the estate property in a sales configuration mode to attract other bidders to the auction;
>
>   (5)     whether the request for a break-up fee served to attract or retain a potentially successful bid, establish a bid standard or minimum for other bidders, or attract additional bidders;
>
>   (6)     whether the fee request correlates with the maximization of value to the debtor's estate;
>
>   (7)     whether the principal secured creditors and the official unsecured creditors committee supported the concession;
>
>   (8)     whether there were safeguards beneficial to the debtor's estate; and

(9) whether there would be a substantial adverse impact on unsecured creditors from approval of the administrative expense.

*Calpine Corp. v. O'Brien Environmental Energy, Inc. (In re O'Brien Environmental Energy, Inc.)*, 181 F.3d 527, 536 (3$^d$ Cir. 1999). The Debtors believe that the foregoing factors support the requested relief.

Accordingly, the Debtors request that the Court approve the Termination Fee and bidding procedures as set forth above and grant other just relief as appropriate.

**Dated: May 7, 2010.**

                                                    Respectfully submitted,

                                                  **Porter & Hedges, L.L.P.**

By: _____
David R. Jones
State Bar No. 00786001/S.D.Tex. No. 16082
Joshua W. Wolfshohl
State Bar No. 24038592
1000 Main, 36th Floor
Houston, Texas 77002
(713) 226-6000
(713) 226-6253 (Facsimile)
**Counsel for the Debtors**

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was duly served by United States first class mail to all parties listed on the attached Service List and by electronic transmission to all registered ECF users appearing in the case on May 7, 2010.

_____
David R. Jones

## SERVICE LIST

**Debtors**
Bison Building Holdings, Inc., et al
1445 West Sam Houston Parkway
Houston, TX 77043

**Counsel for Debtors**
David R. Jones/Joshua W. Wolfshohl
Porter & Hedges, L.L.P.
1000 Main Street, 36th Floor
Houston, TX 77002

**U.S. Trustee**
Hector Duran
Office of the U.S. Trustee
515 Rusk, Suite 3516
Houston, TX 77002

**Counsel for UCC**
Michael H. Traison
Miller, Canfield, Paddock & Stone, PLC
225 W. Washington, Suite 2600
Chicago, IL 60606

**Creditors Committee**
Lumbermens Merchandising Corp.
137 W. Wayne Ave.
Wayne, PA 19087

Bluelinx Corporation
4300 Wildwood Parkway
Atlanta, GA 30339

ECMD, Inc.
P.O. Box 130
North Wilkesboro, NC 28659

Eagle Forest Products, Inc.
4201 N. Wingren Drive, Suite 212
Irving, TX 75062

Dixie Plywood Company of Houston
P.O. Box 2328
Savannah, GA 31402

Boise Building Solutions Distribution, LLC
1111 West Jefferson Street
P.O. Box 50
Boise, ID 83728

General Electric Capital Business Credit
109000 NE 4th Street, Suite 500
Bellevue, WA 98004

The Buying Source, LLC
2312 Dry Pocket Road
Greer, SC 29650

**30 Largest Unsecured Creditors**
Sun Life Assurance Company of Canada
One Sun Life Executive Park
Wellesley Hills, MA 02481

Frost National Bank
c/o Frost Leasing
100 West Houston Street
San Antonio, TX 78205

Wachovia Financial Services, Inc.
201 South Jefferson Street
Roanoke, VA 22011

Tracy Sambrano
c/o Klitsas & Vercher, P.C.
550 Westcott, Suite 570
Houston, TX 77007

Hyster Capital
c/o NMHG Financial Services, Inc.
10 Riverview Drive
Danbury, CT 06810

The Buying Source, Inc.
P.O. Box 933314
Atlanta, GA 33193-3314

Lumbermen's Merchandising Corp.
Dept. CH 10505
Palatine, IL 60055-0505

1639253v1

Steves & Sons
P.O. Box 910753
Dallas, TX 75391

JW Millwork
Attn: Jeff Fischer
5225 Hampton Place
Saginaw, MI 48604

Southwest Moulding Co.
P.O. Box 650013
Dallas, TX 75265-0013

Eric Cranfill
10252 Cude Cemetary Road
Willis, TX 77318

Jimmy Nassour and John Lewis
c/o The John Lewis Company
1717 W. 6th Street, Suite 390
Austin, TX 78703

RSL, Inc.
P.O. Box 714877
Columbus, OH 43271-4877

Bluelinx Corporation
P.O. Box 730514
Dallas, TX 75373-0514

East Coast Moulding, Inc.
P.O. Box 130
N. Wilkesboro, NC 28659

Hardwoods Specialty Products US, LP
P.O. Box 6306
Arlington, TX 76005

Bloch Lumber Company
123 N. Wacker Drive, Suite 1350
Chicago, IL 60606

Mitel Leasing, Inc.
P.O. Box 972629
Dallas, TX 75397

Premdor Entry Systems
P.O. Box 102930
Atlanta, GA 30368-2930

Cedar Creek Lumber of Texas, Inc.
Dept. No. 291
P.O. Box 21228
Tulsa, OK 74121-0228

Endura Products, Inc.
P.O. Box 651613
Charlotte, NC 28265-1613

De Lage Landen Financial Services
111 Old Eagle School Road
Wayne, PA 19087

Anthony Forest Products, Co.
P.O. Box 1877
El Dorado, AR 71731

Crest Metal Doors, Inc.
P.O. Box 2774
San Antonio, TX 78299-2774

DW Distribution
P.O. Box 671449
Dallas, TX 75267-1449

Huttig Building Products
36913 Treasury Center
Chicago, IL 60694-6900

Investor Trucks II, LLC
P.O. Box 19849
Houston, TX 77224

Maxitile, Inc.
849 E. Sandhill Ave.
Carson, GA 90746

Pennsylvania Lumbermens
P.O. Box 827925
Philadelphia, PA 19182-7925

Dixie Plywood Company – N0105
P.O. Box 930440
Atlanta, GA 31193

TNRG Property Services, LLC
15120 Northwest Freeway, Suite 190
Houston, TX 77040

Alamo Forest Products
P.O. Box 17258
San Antonio, TX 78217-0258

ITW Building Components
P.O. Box 3129
Carol Stream, IL 60132-3129

Eagle Forest Products
P.O. Box 141823
Irving, TX 75014-1823

Cedar Creek Lumber-Tulsa
Dept. No. 289
P.O. Box 21228
Tulsa, OK 74121-1228

Arlene Stained Glass & Door Company
10440 Holly Springs Dr.
Houston, TX 77042

Berry Plastics Corporation
2240 Momentum Place
Chicago, IL 60689-5322

**Parties Requesting Notice**
The Frost National Bank
c/o L. David Smith
Chernosky, Smith, Ressling & Smith, PLLC
4646 Wild Indigo, Suite 110
Houston, TX 77027

Wachovia Bank, NA
c/o Bruce White/William L. Medford
Greenberg Traurig, LLP
2200 Ross Avenue, Suite 5200
Dallas, TX 75201

Sun Life Assurance Company of Canada
c/o Randy Williams/Allison Byman
Thompson & Knight, LLP
333 Clay Street, Suite 3300
Houston, TX 77002-4499

Crest Metal Doors, Inc.
c/o Ronald J. Johnson
Law Offices of Ronald J. Johnson
111 Soledad, Suite 1350
San Antonio, TX 78205

Steves and Sons, Inc.
c/o Law Offices of Ronald J. Johnson
111 Soledad, Suite 1350
San Antonio, TX 78205

TW Telecom, Inc.
c/o Linda Boyle
10475 Park Meadows Drive, Suite 400
Littleton, CO 80124

John P. Dillman
Linebarger Goggan Blair & Sampson, LLP
P.O. Box 3064
Houston, TX 77253-3064

James A. Hoffman
Clemens & Spencer
112 East Pecan Street, Suite 1300
San Antonio, TX 78205

Winnifred P. Boylan/Susan M. Cook
Lambert, Leser, Isackson, Cook & Giunta
916 Washington Ave., Suite 309
Bay City, MI 48708

MaryJo Bellew
Saul Ewing, LLP
1500 Market Street, 38th Floor
Philadelphia, PA 19102-2186

Jim Hundley
Wyatt Early Harris Wheeler, LLP
P.O. Box 2086
High Point, NC 27261

1639253v1                         3

L. G. Clinton, III
10528 Tanner Road
Houston, TX 77041

KVAL, Inc.
Attn: Stacy Klemm
825 Petaluma Blvd. South
Petaluma, CA 94952

James G. Rea
McGuire, Craddock & Strother, P.C.
500 N. Akard, Suite 3550
Dallas, TX 75201

Clayton D. Ketter/David F. Staber
Akin Gump Strauss Hauer & Feld, LLP
1700 Pacific Avenue, Suite 4100
Dallas, TX 75201

AN/WRI Partnership, Ltd.
c/o Weingarten Realty Investors
Attn: Jenny J. Hyun, Esq.
2600 Citadel Plaza Drive, Suite 125
Houston, TX 77008

Monica S. Blacker
Andrews Kurth LLP
1717 Main Street, Suite 3700
Dallas, TX 75201

W. Jason Walker
Andrews Myers Coulter & Hayes, P.C.
3900 Essex Lane, Suite 800
Houston, Texas 77027-5198

Elizabeth Weller
Linebarger Goggan Blair & Sampson, LLP
2323 Bryan Street, Suite 1600
Dallas, TX 75201

David G. Aelvoet
Linebarger Goggan Blair & Sampson, LLP
711 Navarro, Suite 300
San Antonio, TX 78205

Michael J. Darlow

Perdue, Brandon, Fielder, Collins & Mott
1235 North Loop West, Suite 600
Houston, TX 77008

F. Beth Morgan
Morgan & Luttrell, LLP
711 Navarro, Suite 210
San Antonio, TX 78205

Spring Branch I.S.D.
c/o Owen M. Sonik
Perdue, Brandon, Fielder, Collins & Mott
1235 North Loop West, Suite 600
Houston, TX 77008

William B. Finkelstein/Daniel I. Morenoff
K&L Gates, LLP
1717 Main Street, Suite 2800
Dallas, TX 75201

GE Money Bank
c/o Recovery Management Systems Corp.
Attn: Ramesh Singh
25 SE 2nd Avenue, Suite 1120
Miami, FL 33131-1605

T. Ernest Freeman
1770 St. James Place, Suite 120
Houston, TX 77056

Kim G. Yelton
Attorney at Law
1714 California
Houston, TX 77006

John Y. Bonds, III
Brandon Jones
Shannon, Gracey, Ratliff & Miller
777 Main Street, Suite 3800
Fort Worth, TX 76102

ETS Corporation of Detroit
320 High Tide Drive, Suite 201
St. Augustine, FL 32080

Kathy Barkley

Prime Source Office Solutions
403 Carl St.
Houston, TX 77009-7707

Westland Enterprises
c/o Elizabeth M. Guffy
711 Louisiana, Suite 3100
Houston, TX 77002

Matthew T. Wright
Wright Law Group, PLLC
12620 FM 1960 West
Suite A-4, Box 304
Houston, TX 77065

Matthew Hoffman
Law Offices of Matthew Hoffman
2777 Allen Parkway, Suite 1000
Houston, TX 77019

Golf Cars of Houston
11219 North Freeway
Houston, TX 77037

Marwin West Distribution Company
P.O. Box 9126
Columbia, SC 29290

Lashley & Associates Inc.
c/o Robert J. Mackay
P.O. Box 1601
Missouri City, TX 77459-1601

Susan C. Mathews
Adams and Reese, LLP
1221 McKinney, Suite 4400
Houston, TX 77010

Gaiennie Lumber Co.
P.O. Box 1240
Opelousas, LA 70571-1240

Maxtile, Inc.
c/o Randolph L. Rhett
101 California Street, Suite 2450
San Francisco, CA 94111

Mary E. Barr
1532 13th Avenue N.
Texas City, TX 77590

Dianne Barbosa
Activant Solutions, Inc.
804 Las Cimas Parkway
Austin, TX 78746

Eileen Miggins Hohlt
McDaniel Hohlt, P.C.
3555 Timmons, Suite 1225
Houston, TX 77027

L. David Smith
Chernosky, Smith, Ressling & Smith
4646 Wild Indigo, Suite 110
Houston, Texas 77027

Patrick L. Hughes
Peter C. Ruggero
Haynes and Boone, LLP
1221 McKinney, Suite 2100
Houston, TX 77010

Kevin P. Walters/Prisidha A. Govender
Chaffe McCall, L.L.P.
815 Walker Street, Suite 953
Houston, TX 77002

Douglas D. D'Arche/Michelle Benavides
Baker & Hostetler, LLP
1000 Louisiana, Suite 2000
Houston, TX 77002

Clayton E. Mayfield
Linebarger Goggan Blair & Sampson
1148 Park Street
Beaumont, TX 77701-3614

Mark Browning
Attorney General's Office
Bankruptcy & Collections Division
P.O. Box 12548
Austin, TX 78711-2548

Premier Trailer Leasing, Inc.
c/o Robert Saldutti, Esq.
800 North Kings Highway, Suite 300
Cherry Hill, NJ 08034

Eastex Forest Products
5429 Hartwick Rd.
Houston, TX 77093

Pearland ISD
c/o Dexter Joyner
4701 Preston Ave.
Pasadena, TX 77505

Hartman Building Specialties
1919 DuPont Drive
Orange, Texas 77630

Focus North America, Inc.
1005 West 8th Street
Vancouver, WA 98660

Glenn Walter
Skadden, Arps, Slate, Meagher & Flom LLP
300 South Grand Ave.
Los Angeles, CA  90071