## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **BISON BUILDING** | § | **CASE NO. 09-34452-H2-11** |
| **HOLDINGS, INC.,** *et al.*, | § | **(Chapter 11 – Jointly Administered)** |
| | § | |
| Debtors. | § | |

### FIRST AMENDED DISCLOSURE STATEMENT UNDER 11 U.S.C. § 1125 IN SUPPORT OF FIRST AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION

THIS DISCLOSURE STATEMENT IS SUBMITTED TO ALL CREDITORS AND INTEREST HOLDERS OF THE DEBTORS ENTITLED TO VOTE ON THE JOINT CHAPTER 11 PLAN OF REORGANIZATION SUBMITTED BY BISON BUILDING HOLDINGS, INC., BISON BUILDING MATERIALS, LLC, BISON BUILDING GP, INC., HLBM COMPANY, MILLTECH, INC., BISON BUILDING MATERIALS NEVADA, LLC, BISON MULTI-FAMILY SALES, LLC AND BISON CONSTRUCTION SERVICES, LLC HEREIN DESCRIBED AND CONTAINS INFORMATION THAT MAY AFFECT YOUR DECISION TO VOTE TO ACCEPT OR REJECT THE PLAN. THIS DISCLOSURE STATEMENT IS INTENDED TO PROVIDE ADEQUATE INFORMATION AS REQUIRED BY THE BANKRUPTCY CODE CONCERNING THE PLAN. ALL CREDITORS AND INTEREST HOLDERS ARE URGED TO READ THE ENTIRE DISCLOSURE STATEMENT AND PLAN WITH CARE.

ON MAY __, 2010, THE BANKRUPTCY COURT APPROVED THIS DISCLOSURE STATEMENT AS CONTAINING ADEQUATE INFORMATION UNDER SECTION 1125(b) OF THE BANKRUPTCY CODE. SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN HEREIN DESCRIBED IS BEING SOUGHT FROM CREDITORS AND INTEREST HOLDERS WHOSE CLAIMS AGAINST, AND INTERESTS IN, THE DEBTORS ARE IMPAIRED UNDER THE PLAN. CREDITORS AND INTEREST HOLDERS ENTITLED TO VOTE ON THE PLAN ARE URGED TO VOTE IN FAVOR OF THE PLAN AND TO RETURN THE COMPLETED BALLOT INCLUDED WITH THIS DISCLOSURE STATEMENT IN THE ACCOMPANYING ENVELOPE ADDRESSED TO PORTER & HEDGES, L.L.P., ATTENTION: DAVID R. JONES, 1000 MAIN STREET, 36TH FLOOR, HOUSTON, TEXAS 77002, NOT LATER THAN JUNE 22, 2010.

**Porter & Hedges, L.L.P.**
David R. Jones
Joshua W. Wolfshohl
1000 Main Street, 36th Floor
Houston, Texas 77002
(713) 226-6000
(713) 228-1331 (facsimile)
**Counsel for the Debtors**

# TABLE OF CONTENTS

**Page**

**ARTICLE 1 INTRODUCTION** ........................................................................................1
    1.1   GENERAL INFORMATION CONCERNING DISCLOSURE STATEMENT AND PLAN. ...........................1
    1.2   DISCLAIMERS.................................................................................................................2
    1.3   ANSWERS TO COMMONLY ASKED QUESTIONS. ................................................................3

**ARTICLE 2 OVERVIEW OF PLAN** .............................................................................6

**ARTICLE 3 THE DEBTORS** .........................................................................................8
    3.1   THE DEBTORS' BUSINESS AND CAPITAL STRUCTURE. ....................................................8
    3.2   SIGNIFICANT EVENTS DURING THE CHAPTER 11 CASES ...............................................15

**ARTICLE 4 CLASSIFICATION OF CLAIMS AND INTERESTS UNDER THE PLAN** ................................19
    4.1   ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS..............................................20
    4.2   CLASSIFIED CLAIMS AGAINST AND INTERESTS IN THE DEBTORS. ..................................20

**ARTICLE 5 IMPAIRMENT OF CLASSES AND RESOLUTION OF CLAIM CONTROVERSIES** ............24
    5.1   IMPAIRED CLASSES. ....................................................................................................24
    5.2   UNIMPAIRED CLASSES. ...............................................................................................26
    5.3   CONTROVERSY CONCERNING CLASSIFICATION, IMPAIRMENT OR VOTING RIGHTS. ..........27

**ARTICLE 6 TREATMENT OF CLAIMS AND EXECUTORY CONTRACTS** ...............................27
    6.1   TREATMENT OF IMPAIRED CLASSES. ...........................................................................27
    6.2   TREATMENT OF UNIMPAIRED CLASSES.........................................................................29

**ARTICLE 7 MEANS OF IMPLEMENTATION** .............................................................30
    7.1   CLOSING OF STOCK SALE OR ALTERNATIVE SALE.........................................................30
    7.2   CREATION OF LIQUIDATING TRUST. ............................................................................30
    7.3   OPERATIONAL REAL PROPERTY. ..................................................................................30
    7.4   CONTINUATION OF OPERATIONS...................................................................................31
    7.5   CONTINUED CORPORATE EXISTENCE.............................................................................31
    7.6   GENERAL POWERS OF THE LIQUIDATING TRUSTEE.........................................................31
    7.7   OBLIGATIONS OF THE LIQUIDATING TRUSTEE. ..............................................................33
    7.8   LIMITATIONS ON THE POWERS OF THE LIQUIDATING TRUSTEE .......................................34
    7.9   THE COMMITTEE. ........................................................................................................34
    7.10  THE POST-CONFIRMATION COMMITTEE. ......................................................................35
    7.11  RESIGNATION/REMOVAL OF THE LIQUIDATING TRUSTEE. ..............................................35
    7.12  APPOINTMENT OF SUCCESSOR LIQUIDATING TRUSTEE. ..................................................35
    7.13  RIGHTS AND DUTIES OF THE POST-CONFIRMATION COMMITTEE.......................................35
    7.14  COMPENSATION PROCEDURES. .....................................................................................36

**ARTICLE 8 CLAIM/INTEREST OBJECTION PROCEDURES, TREATMENT OF DISPUTED CLAIMS/INTERESTS AND PROCEDURES FOR ASSERTING CLAIMS**.................................36
    8.1   OBJECTION PROCESS. ..................................................................................................36
    8.2   FILING OF CLAIMS AND CAUSES OF ACTION. ...............................................................37
    8.3   DISPUTED CLAIMS RESERVE. ......................................................................................37
    8.4   DISTRIBUTIONS TO HOLDERS OF DISPUTED CLAIMS AND DISPUTED INTERESTS.................37
    8.5   DISALLOWANCE OF LATE FILED PROOFS OF CLAIM. ......................................................38
    8.6   PROVISIONS GOVERNING DISTRIBUTIONS.......................................................................38

**ARTICLE 9 EXECUTORY CONTRACTS AND UNEXPIRED LEASES** ..................................39
    9.1   REJECTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES. ..................................39
    9.2   ASSUMED EXECUTORY CONTRACTS AND UNEXPIRED LEASES.........................................39
    9.3   ASSIGNMENT OF LEASES; CURE AMOUNTS...................................................................39
    9.4   CLAIMS BASED ON REJECTION OF EXECUTORY CONTRACTS OR UNEXPIRED LEASES. ..........40

9.5      RESERVATION OF RIGHTS. ............................................................................................40

**ARTICLE 10 EFFECT OF CONFIRMATION** ...................................................................**40**

10.1     LEGALLY BINDING EFFECT. ......................................................................................40
10.2     LIMITED DISCHARGE OF DEBTORS AND INJUNCTION. ..................................................40
10.3     COMPLETE DISCHARGE OF BISON HOLDINGS, BISON GP AND BISON BUILDING. ...........41
10.4     LIMITED PROTECTION OF CERTAIN PARTIES IN INTEREST ............................................42
10.5     INDEMNIFICATION. ..................................................................................................42
10.6     CONTINUATION OF ANTI-DISCRIMINATION PROVISIONS OF THE BANKRUPTCY CODE. ...........43
10.7     PRESERVATION OF CLAIMS AND RIGHTS. ..................................................................43

**ARTICLE 11 CONFIRMATION OF THE PLAN** ................................................................**44**

11.1     CONFIRMATION HEARING. .......................................................................................44
11.2     STATUTORY REQUIREMENTS FOR CONFIRMATION OF THE PLAN. ..................................44
11.3     CRAMDOWN. ..........................................................................................................46
11.4     CONDITIONS PRECEDENT TO EFFECTIVE DATE. ..........................................................48
11.5     ANNULMENT OF PLAN IF CONDITIONS NOT WAIVED OR SATISFIED. ..............................48
11.6     RETENTION OF JURISDICTION BY BANKRUPTCY COURT. .............................................48

**ARTICLE 12 COMPROMISES AND SETTLEMENTS** .......................................................**49**

12.1     EFFECT OF CONFIRMATION ORDER. ..........................................................................49

**ARTICLE 13 MISCELLANEOUS PROVISIONS** ................................................................**49**

13.1     BAR DATE FOR ADMINISTRATIVE CLAIMS. ...............................................................49
13.2     OBJECTIONS TO ADMINISTRATIVE CLAIMS. ..............................................................49
13.3     PAYMENT OF PROFESSIONAL CLAIMS. ......................................................................50
13.4     PAYMENT OF UNITED STATES TRUSTEE FEES. ...........................................................50
13.5     NO SUBSTANTIVE CONSOLIDATION. .........................................................................50
13.6     EMPLOYEE BENEFITS PLANS. ..................................................................................50
13.7     SATISFACTION OF LIABILITIES. ................................................................................51
13.8     WARRANTY OF TRANSFERS FROM LIQUIDATING TRUST. .............................................51
13.9     COMPLIANCE WITH TAX REQUIREMENTS. .................................................................51
13.10    AMENDMENT OF THE PLAN. ....................................................................................51
13.11    TIMING OF DISTRIBUTIONS. ....................................................................................51
13.12    ENFORCEMENT OF SUBORDINATION AGREEMENTS/SETTLEMENT AGREEMENTS. ...........52
13.13    RIGHT TO SEEK FURTHER ORDERS. ..........................................................................52
13.14    INTERCOMPANY CLAIMS. ........................................................................................52
13.15    REGULATORY APPROVALS. ......................................................................................52
13.16    WITHDRAWAL OF PLAN. ..........................................................................................52
13.17    DUE AUTHORIZATION BY CREDITORS. ......................................................................52
13.18    FILING OF ADDITIONAL DOCUMENTATION. ...............................................................53
13.19    SUBSTANTIAL CONSUMMATION. ..............................................................................53
13.20    FURTHER EFFECT OF CONFIRMATION. ......................................................................53
13.21    RESERVATION OF CLAIMS. ......................................................................................53
13.22    DATES. ..................................................................................................................53
13.23    GOVERNING LAW. ..................................................................................................53
13.24    CONFLICT. .............................................................................................................54
13.25    SETOFFS. ...............................................................................................................54
13.26    OTHER CONSIDERATIONS. .......................................................................................54
13.27    FEASIBILITY OF THE PLAN. .....................................................................................54
13.28    CONTINUATION OF THE CASES. ................................................................................54
13.29    ALTERNATIVE PLANS OF REORGANIZATION. .............................................................55
13.30    LIQUIDATION UNDER CHAPTER 7. ............................................................................55
13.31    RISK FACTORS. ......................................................................................................55
13.32    TAXATION. ............................................................................................................56

**ARTICLE 14 CAUSES OF ACTION** .................................................................................**59**

14.1     PREFERENCES. .......................................................................................................59
14.2     FRAUDULENT TRANSFERS. ......................................................................................59

**ARTICLE 15 <u>VOTING PROCEDURES AND REQUIREMENTS</u>** ...................................................................**60**

15.1    BALLOTS AND VOTING DEADLINE. ..................................................................60

15.2    CREDITORS ENTITLED TO VOTE. .....................................................................60

15.3    VOTING PROCEDURES. ....................................................................................61

15.4    VOTE REQUIRED FOR CLASS ACCEPTANCE. ....................................................61

15.5    CRAMDOWN AND WITHDRAWAL OF THE PLAN. ..............................................61

# ARTICLE 1
## INTRODUCTION

**1.1     General Information Concerning Disclosure Statement and Plan.**

Bison Building Holdings, Inc. (sometimes referred to herein as "Bison Holdings"), Bison Building Materials, LLC (sometimes referred to herein as "Bison Building"), Bison Building GP, Inc. (sometimes referred to herein as "Bison GP"), HLBM Company (sometimes referred to herein as "HLBM"), Milltech, Inc. (sometimes referred to herein as "Milltech"), Bison Building Materials Nevada, LLC (sometimes referred to herein as "Bison Nevada"), Bison Multi-Family Sales, LLC (sometimes referred to herein as "Bison Multi-Family") and Bison Construction Services, LLC (sometimes referred to herein as "Bison Construction" and, collectively with Bison Holdings, Bison Building, Bison GP, HLBM, Milltech, Bison Nevada and Bison Multi-Family, the "Debtors") submit this Disclosure Statement, as may be amended from time to time, under § 1125 of the Bankruptcy Code and Rule 3016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") to all of the Debtors' known Creditors and Interest Holders entitled to vote on the Plan. The purpose of this Disclosure Statement is to provide adequate information to enable Creditors and Interest Holders who are entitled to vote on the Joint Chapter 11 Plan of Reorganization submitted by the Debtors (the "Plan") to arrive at a reasonably informed decision in exercising their respective right to vote on the Plan.  A copy of the Plan is included with this Disclosure Statement.   Capitalized terms used but not defined in this Disclosure Statement shall have the meanings assigned to them in the Plan or in the Bankruptcy Code and Bankruptcy Rules.  All section references in this Disclosure Statement are to the Bankruptcy Code unless otherwise indicated.

The Debtors have proposed the Plan consistent with the provisions of the Bankruptcy Code.  The purpose of the Plan is (i) to facilitate the sale of substantially all of the Debtors' operating assets to Stock Building Supply Holdings, LLC ("Stock") or another purchaser that submits a Superior Proposal and the distribution of the sales proceeds and other assets of the estates; and (ii) to maximize recovery to each Class of Claims and Equity Interests. The Debtors believe that the Plan provides for the maximum recovery available for all Classes of Claims and Equity Interests.

This Disclosure Statement is not intended to replace a careful review and analysis of the Plan, including the specific treatment of Claims and Equity Interests under the Plan.  It is submitted as an aid and supplement to your review of the Plan and to explain the terms of the Plan.  Every effort has been made to fairly summarize the Plan and to inform Creditors and Interest Holders how various aspects of the Plan affect their respective positions.  If any questions arise, the Debtors urge you to contact either the Debtors' counsel or the Committee's counsel.  These attorneys will attempt to resolve your questions.  You are also encouraged to consult with your own counsel.  The respective counsel for the Committee and the Debtors are likewise available to answer any questions that your counsel may have regarding the Plan and this Disclosure Statement.

## 1.2    Disclaimers.

NO SOLICITATION OF VOTES HAS BEEN OR MAY BE MADE EXCEPT PURSUANT TO THIS DISCLOSURE STATEMENT AND § 1125 OF THE BANKRUPTCY CODE.   NO PERSON HAS BEEN AUTHORIZED TO USE ANY INFORMATION CONCERNING THE DEBTORS TO SOLICIT ACCEPTANCES OR REJECTIONS OF THE PLAN OTHER THAN THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT.   CREDITORS AND INTEREST HOLDERS SHOULD NOT RELY ON ANY INFORMATION RELATING TO THE DEBTORS OTHER THAN THAT CONTAINED IN THIS DISCLOSURE STATEMENT, ANY ATTACHMENTS THERETO AND THE PLAN.

EXCEPT AS SET FORTH IN THIS DISCLOSURE STATEMENT, NO REPRESENTATION CONCERNING THE DEBTORS, THEIR ASSETS, THEIR LIABILITIES, PAST OR FUTURE OPERATIONS, OR CONCERNING THE PLAN ARE AUTHORIZED, NOR ARE ANY SUCH REPRESENTATIONS TO BE RELIED UPON IN ARRIVING AT A DECISION WITH RESPECT TO THE PLAN.   ANY REPRESENTATIONS MADE TO SECURE YOUR ACCEPTANCE OR REJECTION OF THE PLAN OTHER THAN AS CONTAINED IN THIS DISCLOSURE STATEMENT SHOULD BE IMMEDIATELY REPORTED TO COUNSEL FOR THE DEBTORS OR COUNSEL FOR THE COMMITTEE.

UNLESS ANOTHER TIME IS SPECIFIED, THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE AS OF THE DATE OF THIS DISCLOSURE STATEMENT.   NEITHER DELIVERY OF THIS DISCLOSURE STATEMENT NOR ANY EXCHANGE OF RIGHTS MADE CONCERNING THE DISCLOSURE STATEMENT AND THE PLAN SHALL UNDER ANY CIRCUMSTANCES IMPLY THAT THERE HAS BEEN NO CHANGE IN THE FACTS SET FORTH HEREIN SINCE THE DATE OF THE DISCLOSURE STATEMENT AND THE MATERIALS RELIED UPON IN PREPARATION OF THE DISCLOSURE STATEMENT WERE COMPILED.

THE INFORMATION PROVIDED HEREIN WAS OBTAINED FROM A VARIETY OF SOURCES AND IS BELIEVED TO BE RELIABLE.   HOWEVER, THE DEBTORS HAVE NOT BEEN ABLE TO INDEPENDENTLY VERIFY EACH AND EVERY STATEMENT CONTAINED HEREIN.   ACCORDINGLY, THE DEBTORS AND THEIR PROFESSIONALS CANNOT MAKE ANY REPRESENTATIONS AS TO THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED HEREIN.

THE DEBTORS' BUSINESS AFFAIRS ARE COMPLEX. IT IS POSSIBLE THAT THE TRANSACTIONS CONTEMPLATED UNDER THE PLAN COULD HAVE NEGATIVE TAX AND OTHER ECONOMIC CONSEQUENCES.   THE DEBTORS MAKE NO REPRESENTATIONS REGARDING THE TAX IMPLICATIONS OF ANY TRANSACTION CONTEMPLATED UNDER THE PLAN.   IT IS NOT UNCOMMON FOR PARTIES TO RETAIN THEIR OWN TAX ADVISORS TO ANALYZE THE PLAN. THE DEBTORS ENCOURAGE ALL PERSONS THAT MIGHT BE AFFECTED TO SEEK INDEPENDENT ADVICE REGARDING THE TAX EFFECTS OF THE PLAN.

DISTRIBUTION OF THIS DISCLOSURE STATEMENT SHOULD NOT BE CONSTRUED AS ANY REPRESENTATION OR WARRANTY AT ALL, EITHER EXPRESS OR IMPLIED, BY THE DEBTORS OR THEIR PROFESSIONALS THAT THE PLAN IS FREE FROM RISK, THAT THE ACCEPTANCE OF THE PLAN WILL RESULT IN A RISK-FREE REORGANIZATION AND/OR LIQUIDATION OF THE DEBTORS' ASSETS OR THAT ALL POTENTIAL ADVERSE EVENTS HAVE BEEN ANTICIPATED.

THE APPROVAL BY THE BANKRUPTCY COURT OF THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE AN ENDORSEMENT BY THE BANKRUPTCY COURT OF THE PLAN OR A GUARANTY OF THE ACCURACY OR THE COMPLETENESS OF THE INFORMATION CONTAINED HEREIN.

THIS DISCLOSURE STATEMENT AND THE PLAN SHOULD BE READ IN THEIR ENTIRETY BEFORE VOTING ON THE PLAN. FOR THE CONVENIENCE OF HOLDERS OF CLAIMS AND EQUITY INTERESTS, THE TERMS OF THE PLAN ARE SUMMARIZED IN THIS DISCLOSURE STATEMENT, BUT ALL SUMMARIES ARE QUALIFIED IN THEIR ENTIRETY BY THE PLAN, WHICH CONTROLS IN CASE OF ANY INCONSISTENCY.

### 1.3     Answers to Commonly Asked Questions.

As part of the Debtors' efforts to inform Creditors and Interest Holders regarding the Plan and the Plan confirmation process, the following summary provides answers to questions which parties who receive a disclosure statement often ask.

THE FOLLOWING SUMMARY IS QUALIFIED IN ITS ENTIRETY BY THE PLAN, WHICH CONTROLS IN CASE OF ANY INCONSISTENCY.

#### 1.3.1    Who are the Debtors?

The Debtors are Bison Building Holdings, Inc., Bison Building Materials, LLC, Bison Building GP, Inc., HLBM Company, Milltech, Inc., Bison Building Materials Nevada, LLC, Bison Multi-Family Sales, LLC and Bison Construction Services, LLC. The Debtors' business consists of, among other things, providing construction packages ranging from form lumber to roof decking, as well as a wide range of commodity and custom doors, columns, cabinet doors, molding, plywood and stair parts. As of the Petition Date, Bison was one of Texas' largest independent suppliers of lumber, full service millwork and other similar value added products.

The Debtors' business started in 1962 with the sale of lumber and building materials from a single location in Houston, Texas. The original company was incorporated in the state of Texas on July 17, 1962 as Bison Building Materials, Inc. ("Bison"). In 1999, Bison completed a corporate restructuring that resulted in the creation of Bison Building Materials, Ltd., a Texas limited partnership, Bison Building Materials, Inc., a Delaware corporation, and Bison Building Materials GP, a Texas corporation. Bison converted to a subchapter S corporation for tax purposes on April 30, 2005.

In June, 2007, Bison Building Materials, Ltd. and All Pan, Ltd. were merged into Bison Building Materials, LLC, a Texas limited liability company and HLBM Company, Inc. and Gino Guido, Inc. were merged into HLBM Company, a Texas corporation.  In August, 2007, Bison was converted to Bison Building Holdings, Inc.  The current corporate structure is as follows:



### 1.3.2   What is a Chapter 11 bankruptcy?

Chapter 11 is the principal reorganization chapter of the Bankruptcy Code that allows financially distressed businesses to reorganize their debts or to liquidate their assets in a controlled fashion.  The commencement of a chapter 11 case creates an "estate" containing all of the legal and equitable interests of the debtor in property as of the date the bankruptcy case is filed.  During a chapter 11 bankruptcy case, the debtor remains in possession of its assets unless the Court orders the appointment of a trustee.  No trustee has been appointed in the Debtors' cases.  The Plan is being jointly proposed by the Debtors.  The Debtors have worked together to propose a joint plan of reorganization in an effort to minimize the overall administrative costs associated with these bankruptcy cases and maximize value to Creditors and Interest Holders.

### 1.3.3   If the Plan governs how my Claim or Interest is treated, what is the purpose of this Disclosure Statement?

The Bankruptcy Code requires that in order to solicit votes on a bankruptcy plan, the proponent of the plan must first prepare a disclosure statement that provides sufficient information to allow creditors and interest holders to make an informed decision about the plan. The disclosure statement and plan are distributed to creditors and interest holders only after the Bankruptcy Court has approved the disclosure statement and determined that the disclosure statement contains information adequate to allow creditors and interest holders to make an informed judgment about the plan.  At that time, creditors and interest holders whose claims and interests are impaired under the Plan also receive a voting ballot.

### 1.3.4    Has this Disclosure Statement been approved by the Bankruptcy Court?

Yes.  On May __, 2010, the Bankruptcy Court approved this Disclosure Statement as containing adequate information.  "Adequate information" means information of a kind, and in sufficient detail, as far as is practicable considering the nature and history of the Debtors and the condition of the Debtors' books and records, to enable a hypothetical investor typical of holders of claims or interests of the relevant classes to make an informed judgment whether to vote to accept or reject the Plan.  The Bankruptcy Court's approval of this Disclosure Statement does not constitute an endorsement of any of the representations contained in either the Disclosure Statement or the Plan.

### 1.3.5    How do I determine how my Claim or Interest is classified?

To determine the classification of your Claim or Interest, you must determine the nature of your Claim or Interest. Under the Plan, Claims and Interests are classified into a series of classes.  The pertinent articles and sections of the Disclosure Statement and Plan disclose, among other things, the treatment that each class of Claims or Interests will receive if the Plan is confirmed.

### 1.3.6    Why is confirmation of the Plan important?

The Bankruptcy Court's confirmation of the Plan is a condition to the Debtors carrying out the treatment of Creditors and Interest Holders under the Plan.  Unless the Plan is confirmed, and any other conditions to confirmation or to the effectiveness of the Plan are satisfied, all parties are legally prohibited from satisfying Claims or Interests as provided in the Plan.  Put more simply, confirmation of a plan in chapter 11 is required before the Debtors can begin making payments to pre-petition Creditors.

### 1.3.7    What is necessary to confirm the Plan?

Under applicable provisions of the Bankruptcy Code, confirmation of the Plan requires that, among other things, at least one class of impaired Claims or Interests vote to accept the Plan.  Acceptance by a class of claims or interests means that at least two-thirds in the total dollar amount and more than one-half in number of the allowed Claims or Interests actually voting in the class vote in favor of the Plan.  Because only those claims or interests who vote on a plan will be counted for purposes of determining acceptance or rejection of a plan by an impaired class, a plan can be approved with the affirmative vote of members of an impaired class who own less than two-thirds in amount and one-half in number of the claims/interests.  Besides acceptance of the Plan by each class of impaired creditors or interests, a bankruptcy court also must find that the Plan meets a number of statutory tests before it may confirm the Plan.  These requirements and statutory tests generally are designed to protect the interests of holders of impaired claims or interests who do not vote to accept the Plan but who will nonetheless be bound by the Plan's provisions if the bankruptcy court confirms the Plan.

If one or more classes vote to reject the Plan, the Debtors may still request that the bankruptcy court confirm the Plan under § 1129(b) of the Bankruptcy Code.  To confirm a plan not accepted by all classes, the plan proponent must demonstrate that the plan does not discriminate unfairly, and is fair and equitable with respect to each class of claims or interests

that is impaired under, and that has not accepted, the plan. This method of confirming a plan is commonly called a "cramdown."   In addition to the statutory requirements imposed by the Bankruptcy Code, the plan itself also provides for certain conditions that must be satisfied as conditions to confirmation.

### 1.3.8    Is there a Committee in this case?

Yes.  The Office of the United States Trustee has appointed an official committee of unsecured creditors in this case.  The Official Committee of Unsecured Creditors represents the interests of all unsecured creditors in these Chapter 11 Cases.

### 1.3.9    When is the deadline for returning my ballot?

The Bankruptcy Court has directed that, to be counted for voting purposes, your ballot must be received by the Debtors' counsel by June 22, 2010.

**IT IS IMPORTANT THAT ALL IMPAIRED CREDITORS AND INTEREST HOLDERS VOTE ON THE PLAN.  THE DEBTORS BELIEVE THAT THE PLAN PROVIDES THE BEST POSSIBLE RECOVERY TO CREDITORS AND INTEREST HOLDERS.  THE DEBTORS THEREFORE BELIEVE THAT ACCEPTANCE OF THE PLAN IS IN THE BEST INTEREST OF CREDITORS AND INTEREST HOLDERS AND RECOMMENDS THAT ALL IMPAIRED CREDITORS AND INTEREST HOLDERS VOTE TO ACCEPT THE PLAN.**

### ARTICLE 2
### OVERVIEW OF PLAN

An overview of the Plan is set forth below.  This overview is qualified in its entirety by reference to the Plan.  If the Court confirms the Plan and, in the absence of any applicable stay, all other conditions set forth in the Plan are satisfied, the Plan will take effect on the Effective Date.

Although styled as a joint plan, the Plan constitutes eight separate plans, i.e., one for each Debtor.  Consequently, votes will be tabulated separately for each Debtor with respect to each Debtor's plan and Claims will be classified and Distributions will be made based on each Debtor's respective liability in accordance with the Plan.  To the extent that a particular Debtor does not receive sufficient votes for confirmation of its Plan, the Plan may be withdrawn as to a particular Debtor without affect on the Plan as to the remaining Debtors.

Under the Plan, the Debtors are selling substantially all of their operating assets (defined in the Plan and the Stock Asset Purchase Agreement as the "Transferred Assets") to Stock Building Supply Holdings, LLC (the "Stock Sale" or, if the Debtors sell their operating assets pursuant to a Superior Proposal as that term is defined in the Stock Asset Purchase Agreement, the "Alternative Sale").  As consideration for the Transferred Assets, Stock will (i) assume the Debtors' obligations under their existing debtor-in-possession financing facility up to $17.5 million, assume the Debtors' Post-Petition Accounts Payable up to $7.6 million and assume certain other obligations under various secured notes and equipment leases; and (ii) pay to the Debtors at the closing cash in the amount of $18,600,000.  Except for specifically identified

assumed liabilities and permitted liens, all Transferred Assets will be conveyed free and clear of all liens, claims, and interests to the maximum extent allowed by §§ 363(f) and 1123 of the Bankruptcy Code.

Upon closing of the Stock Sale or Alternative Sale, the sales proceeds and all of the Debtors' remaining real and personal property assets, with the exception of certain encumbered real property described as (i) 16.0523 acres of real property commonly known as 1445 W. Sam Houston Pkwy. N., Houston, Texas 77043; (ii) 19.45 acres of real property commonly known as 15585 I-45 S., Conroe, Texas 77385; and (iii) 34.8852 acres of real property commonly known as 235 Benton Road, Rosenberg, Texas 77469 (the "Operational Real Property"), will be transferred to the Liquidating Trust and administered by the Liquidating Trustee pursuant to the terms of the Plan and Liquidating Trust Agreement. An oversight committee appointed by the Unsecured Creditors Committee will be created to oversee the Liquidating Trustee.

Under the Plan, the Liquidating Trustee[1] will pay (or otherwise satisfy in accordance with the Plan) all Allowed Administrative Claims, Allowed Priority Tax Claims and Allowed Priority Non-Tax Claims in cash and in full on the later of (i) the Effective Date, (ii) the date on which such Claim becomes an Allowed Claim; or (iii) such date as the Liquidating Trustee and the holder of the Claim agree. Holders of Allowed Secured Claims will receive, at the Liquidating Trustee's discretion, either the proceeds from the sale of their collateral, after satisfaction in full of all superior liens, or an assignment of such collateral in full and final satisfaction of their claim.

On the Initial Distribution Date, the Liquidating Trustee will make a distribution to Allowed General Unsecured Claims based on Available Cash (as defined in the Plan). Additional distributions will be made as assets are liquidated and additional Cash becomes available up to the amount of the Allowed General Unsecured Claims plus interest as set forth in the Plan. Although the existing holders of Equity Interests in Bison Holdings, Bison Building and Bison GP will retain their interests in the Reorganized Bison Holdings, Bison Building and Bison GP, non-Debtor holders of Equity Interests will receive no Distributions under the Plan.

On the Effective Date of the Plan, the Liquidating Trustee will be vested with authority to (i) take such actions necessary to liquidate the Liquidating Trust's assets, including the Retained Assets; (ii) file claim objections; (iii) make distributions and take such other action as provided for under the Plan; and (iv) prosecute causes of action owned by the Debtors' estates, including all claims and causes of action arising under the Bankruptcy Code.

The Reorganized Bison Building will retain the Operational Real Property and the associated mortgage debt and 2010 tax *ad valorem* tax liability and lease the property under long-term real estate leases to Stock pursuant to the Stock Asset Purchase Agreement (or to an alterative buyer pursuant to an Alternative Sale). The Reorganized Bison Building Materials, LLC will be solely responsible for the payment of the Sun Life Secured Note and the GE Secured Notes.

---

[1] The Debtors have proposed that H. Malcolm Lovett, Jr. serve as the initial Liquidating Trustee under the Plan.

## ARTICLE 3
## THE DEBTORS

**3.1**     **The Debtors' Business and Capital Structure.**

### 3.1.1     The Debtors' Pre-petition Business

Bison was started in 1962 by Roy W. Bierschwale as a small retail store and lumber shed. Over the next four decades, Bison grew into Texas' single largest independent supplier of lumber, full service millwork and other value added products. Through the early 1990's, Bison's business remained primarily regional. However, in an effort to take advantage of perceived business opportunities in the late 1990's, Bison expanded the geographical area of its operations.

As part of the expansion, Bison initially acquired Gino Guido Inc., a lumber operation in San Antonio, Texas and Milltech, Inc., a millwork distribution/installation business in Denver, Colorado. Then, starting in 2005, the Debtors began expanding their operations into (i) central Texas along the I-35 corridor between Austin and San Antonio; and (ii) Nevada, Arizona, Ohio and New Mexico to take advantage of perceived opportunities in those areas. By 2007, the Debtors were operating in five states and multiple locations. In hindsight, this expansion was ill-advised. When the housing bubble burst in the western United States, the Debtors immediately instituted a downsizing program and retrenched to their core Texas business.

While the Houston metropolitan area has been adversely affected by the recent upheaval in the financial and housing markets, the impact has been less severe in Houston than in certain other markets such as Las Vegas, Phoenix and South Florida. The Debtors' expansion into the western United States caused the Debtors to incur significant losses. Ongoing lease obligations for abandoned facilities and unneeded equipment have placed tremendous burdens on the Debtors' operations, eroded their capital base and threaten the future viability of the Debtors' businesses.

For the two years leading up to the Petition Date, the Debtors attempted to restructure their obligations. The Debtors also attempted to obtain sub-tenants for the discontinued locations, to negotiate settlements with landlords and to otherwise mitigate damages. During this time, the Debtors remained current on their real estate and equipment lease obligations. Because most of the Debtors' discontinued operations are in markets such as Las Vegas and Phoenix, some of the most toxic real estate markets in the United States, the Debtors' efforts to sublease premises or otherwise mitigate the outstanding rent claims of landlords prior to the bankruptcy filing were largely unsuccessful.

On the Petition Date, the Debtors only remaining operations were conducted from four primary locations in Houston, Conroe, Beaumont and Rosenberg, Texas, with their headquarters located at 1445 W. Sam Houston Pkwy. N., Houston, Texas 77043. At the time of the bankruptcy filing, the Debtors had approximately 550 employees, 459 of whom were field/technical personnel, 21 of whom were supervisory personnel, 27 of whom were sales and support personnel, 31 of whom were clerical/administrative personnel and 18 of whom were management personnel. None of the Debtors' employees are unionized.

### 3.1.2   The Debtors' Capital Structure

Prior to the Petition Date, the Debtors' secured long-term debt consisted primarily of a revolving credit facility, real estate mortgages and equipment and real estate leases.

The Revolving Credit Facility

Prior to the Petition Date, Bison Building Materials, LLC was a party to an Amended and Restated Credit Agreement dated November 17, 2005 (the "Wachovia Credit Agreement") with Wachovia Bank, National Association ("Wachovia"), as agent for itself and other lenders under the Wachovia Credit Agreement (the "Agent"), and Wachovia, in its individual capacity as a lender.

Initially, the Wachovia Credit Agreement provided for a $70 million revolving credit facility (the "Revolver"), and a $4.44 million Term Loan ("Wachovia Term Loan"). There is a sub-facility under the Revolver for letters of credit, and $500,000 in letters of credit were outstanding as of the Petition Date. In July 2007, the maximum amount of the Revolver was decreased to $60 million. In December 2008, the Wachovia Credit Agreement was further amended to decrease the maximum amount of the Revolver to $50 million. In March 2009, the maximum amount of the Revolver was reduced to $30 million. The Wachovia Term Loan was subsequently repaid in October, 2007 from the proceeds of a loan from Sun Life Real Estate Financing.

Bison Building Materials, LLC is the borrower under the Wachovia Credit Agreement with each of the other Debtors acting as guarantors. The Wachovia Credit Agreement is secured by substantially all of the Debtors' assets. Prior to the Petition Date, funds were advanced under the Revolver based upon availability under a borrowing base that, as of the Petition Date, is comprised of (i) 85% of eligible accounts less certain adjustments to the extent required by the Agent, *plus* (ii) the lesser of (a) $35 million and (b) the lesser of (1) the lesser of (x) 60% of eligible lumber inventory plus (y) 50% of Borrower's eligible other inventories or (2) 85% of the NOLV (as defined in the Wachovia Credit Agreement) of eligible inventory. All obligations under the Revolver bear interest at either LIBOR or the base rate, plus (in either case) a margin. As of May 4, 2010, the principal amount outstanding under the Revolver exclusive of letters of credit was approximately $14,466,890.

Sun Life Real Estate Financing

On October 11, 2007, Bison Building Materials, LLC borrowed $16 million from Sun Life Assurance of Canada ("Sun Life"). The Sun Life loan is a term loan payable in equal monthly installments of approximately $130,000 each commencing December 1, 2007, with the remaining principal balance payable on the final maturity date, November 1, 2024. The proceeds of the Sun Life loan were used to retire the Wachovia Term Loan and to provide working capital.

The loan bears interest at 6.53% per annum, and is secured by a lien upon the 16.0523-acre tract located at 1455 W. Sam Houston Parkway, Houston, Texas, the 19.4511-acre tract located at 15585 Interstate 45, Conroe, Texas and the 4.0298-acre tract located at 4701 FM 1765, LaMarque, Texas. The LaMarque tract was sold in 2008 for approximately $1,268,000. The

loan is guaranteed by Bison Building Holdings, Inc.  With limited exceptions, the debt to Sun Life is without recourse to the assets of Bison Building Materials, LLC other than the collateral for the loan.  As of the Petition Date, the principal amount of the Sun Life debt was approximately $14,000,000.

### General Electric Financing

In April 2001, Bison Building Materials, Ltd, a Texas limited partnership and a predecessor by merger of Bison Building Materials, LLC, borrowed an aggregate of $2.9 million from General Electric Capital Business Asset Funding Corporation ("GE").  The loan was a term loan payable in 179 equal monthly payments of approximately $26,506 each commencing June 1, 2001, and a final payment of all remaining principal due May 1, 2016.  The proceeds of the loan were used to construct a distribution facility in Rosenberg, Texas.

The loan bore interest at 7.27% per annum and was secured by a lien upon a 21.9611-acre tract of real property located in Fort Bend County, Texas.  The debt was guaranteed by Bison Building Holdings, Inc., as the successor to Bison Building Materials, Inc.

In August 2004, Bison Building Materials, Ltd., a Texas limited partnership and a predecessor by merger of Bison Building Materials, LLC, borrowed an aggregate of approximately $3.495 million from GE pursuant to two promissory notes in the respective principal amounts of approximately $2.495 million and $1.0 million.  Both these loans were term loans payable in 135 equal monthly payments of approximately $26,983 and $10,389 each, respectively, commencing February 1, 2005, and a final payment of all remaining principal due May 1, 2016.  The proceeds of the GE loans were used to satisfy the original GE loan described above, expand the Rosenberg distribution facility and provide working capital.

These two loans from GE bear interest at 7.27% and 6.46%, respectively, per annum and are secured by a lien upon real property located in Fort Bend County, Texas.  The debt to GE is guaranteed by Bison Building Holdings, Inc., as the successor to Bison Building Materials, Inc.  As of the Petition Date, the unpaid principal amount of these two loans from GE was approximately $1,756,000 and $694,000, respectively.

### Capital Lease Obligations

Included in the Debtors' long-term debt are capital lease obligations for the acquisition of machinery, equipment and vehicles.  The majority of capital lease obligations to which the Debtors are a party are for three to five year terms and provide the Debtors with the option to purchase the assets at the end of the lease term.  As of Petition Date, the total principal unpaid balance under all capital leases was approximately $2.4 million.

### Secured Vendor Debt

Prior to the bankruptcy filing, Bison Building Materials, LLC executed promissory notes with two of its largest suppliers, one in favor of The Buying Source, LLC in the amount of $1,200,000 and one in favor of Boise Building Solutions Distribution LLC in the amount of $1,500,000, to term out existing debt and obtain new credit.  The promissory note in favor of The Buying Source, LLC is secured by 20.603 acres of real property located in Brazoria County,

Texas (the "Pearland Property").  The promissory note in favor of Boise Building Solutions Distribution LLC ("Boise") is secured by 26 acres of real property located in Pinal County, Arizona (the "Arizona Property").  Boise also asserts that the promissory note is secured by a second lien on inventory and accounts receivable.  The Allowed Claims of both Boise and The Buying Source, LLC are classified as Class H2-4 Miscellaneous Secured Claims against Bison Building under the Plan.

### 3.1.3   Debtors' Financial Information.

The chart set forth below reflects the revenues, net income and EBITDA for the fiscal years ended April 30, 2006-2009 for Bison Building Materials, LLC (the Debtors' core Houston operations) and for the Debtors as a whole.

### 2006

|  | Bison Materials LTD | All Debtors |
|---|---|---|
| Revenues | $293,449,413 | $401,389,407 |
| EBITDA | $16,107,861 | $14,664,519 |
| Net Income | $10,392,950 | $7,703,920 |

### 2007

|  | Bison Materials LTD | All Debtors |
|---|---|---|
| Revenues | $271,563,181 | $361,177,102 |
| EBITDA | $9,312,788 | $856,197 |
| Net Income | $2,074,553 | -$7,421,528 |

### 2008

|  | Bison Materials LLC | All Debtors |
|---|---|---|
| Revenues | $243,137,363 | $249,676,026 |
| EBITDA | $9,030,086 | $1,952,730 |
| Net Income | $3,281,095 | -$3,923,081 |

### 2009

|  | Bison Materials LLC | All Debtors |
|---|---|---|
| Revenues | $179,123,205 | $213,979,776 |
| EBITDA | $237,948 | -$1,681,216 |
| Net Income | -$4,734,551 | -$6,990,957 |

Since the filing of these cases, the Debtors have dedicated significant time and resources to cutting unnecessary expenses and winding-down and/or selling certain unprofitable divisions. At the same time, the Debtors have stabilized and maintained their core operations.  The Debtors file monthly operating reports with the Bankruptcy Court which reflect current financial information and are publicly available for inspection at the office of the Clerk of the Court.

Attached hereto as **Schedule 1** is a copy of the latest monthly operating report filed by each Debtor.

### 3.1.4   Events Leading to Bankruptcy.

With the housing collapse in the United States, the Debtors began closing their operations outside of Texas in late 2007 and attempted to return to their core business.  While the closings reduced the operating losses associated with their prior expansion, the Debtors were not able to terminate the real estate leases, equipment leases and other fixed costs associated with the discontinued operations.  In May, 2009, management decided it was not possible to continue to pay the lease rentals attributable to the discontinued operations and ceased making those payments.  Efforts to settle with landlords and others were unsuccessful.  Simultaneously, landlords began filing lawsuits against the Debtors to collect past due and future rentals.

In addition, in March, 2009, Wachovia advised the Debtors that based upon a recently-conducted appraisal of the company's inventory, Wachovia was going to further reduce its advance rate on the Revolver with respect to eligible inventory.  The cumulative impact of this reduced liquidity available to the Debtors, in conjunction with (i) reductions in revenues in the Debtors' core area attributable to the slowdown in housing starts, (ii) the negative impact of the Debtors' ill-timed expansion, and (iii) the associated litigation from landlords and others, resulted in the Debtors' decision to file for protection pursuant to Chapter 11 of the Bankruptcy Code.

### 3.1.5   The Debtors' Assets.

On the Petition Date, the Debtors' most valuable tangible assets consisted of (i) inventory; (ii) accounts receivable; (iii) equipment and vehicles; (iv) the Arizona Property; (v) the Pearland Property; (vi) the Operational Real Property; and (ix) certain contract rights, causes of action and other intangibles.

On August 27, 2009, the Debtors each filed with the Bankruptcy Court their respective Schedules of Assets and Liabilities and Statements of Financial Affairs (collectively, as amended, the "Schedules").  The Schedules contain a detailed listing of the Debtors' assets and the amounts owed to their Creditors based on the Debtors' books and records.  In connection with this Disclosure Statement, Creditors and Interest Holders are referred to the Schedules.  A copy of the Schedules is available from the Clerk's office or from the Debtors upon request.

Pursuant to the Plan, substantially all of the Debtors' operating assets, with the exception of the Operational Real Property, the Arizona Property and the Pearland Property, will be sold to Stock pursuant to the Stock Sale.  Upon closing of the Stock Sale or Alternative Sale, the sales proceeds and all of the Debtors' remaining non-operating assets except for the Operational Real Property will be transferred into the Liquidating Trust and administered by the Liquidating Trustee pursuant to the terms of the Plan and Liquidating Trust Agreement.

### 3.1.6   Debtors' Real and Personal Property Leases and Executory Contracts

On the Petition Date, the Debtors were parties to approximately 18 real property leases, all of which have been rejected, assumed and assigned or terminated by either Court order or operation § 365 of the Bankruptcy Code.

The Debtors are also parties to a number of equipment leases and executory contracts. Several of the equipment leases and executory contracts have been rejected during the course of the cases. The Debtors' remaining unexpired leases and executory contracts will either be assumed and assigned pursuant to the Stock Sale/Alternative Sale or rejected on the Effective Date of the Plan.

### 3.1.7   Liabilities and Claims against the Debtors.

The Schedules contain a detailed listing of Creditors, together with the estimated amount of Claims. Creditors and Interest Holders are referred to the Debtors' Schedules. The Debtors' respective Schedules generally organize Creditors into three general groupings: (i) Schedule D-Secured Claims, (ii) Schedule E-Unsecured Priority Claims, and (iii) Schedule F-Unsecured Nonpriority Claims. In addition, a significant number of proofs of claims have been filed in the Bankruptcy Cases. The last day to file a proof of claim was November 2, 2009.

### 3.1.8   Secured Claims.

The following table sets forth the potential secured claims in the Debtors' cases:

| Debtor | Scheduled Claims | Filed Claims |
|---|---|---|
| Bison Building Holdings, Inc. | $15,266,794.00 | $3,570,860.56 |
| Bison Building Materials, LLC | $36,753,018.00 | $22,270,886.69 |
| Bison Building GP, Inc. | $15,266,794.00 | Unknown |
| HLBM Company | $15,266,794.00 | Unknown |
| Milltech, Inc. | $15,266,794.00 | Unknown |
| Bison Bld Materials Nev., LLC | $15,266,794.00 | $55,668.96 |
| Bison Multi-Family Sales, LLC | $15,266,794.00 | Unknown |
| Bison Construction Servs, LLC | $15,266,794.00 | Unknown |

### 3.1.9   Priority Claims.

The following table sets forth the potential priority unsecured claims in the Debtors' cases:

| Debtor | Scheduled Claims | Filed Claims |
|---|---:|---:|
| Bison Building Holdings, Inc. | $0.00 | $1,267,546.38 |
| Bison Building Materials, LLC | $455,619.75 | $2,152,042.03 |
| Bison Building GP, Inc. | $0.00 | $595,605.51 |
| HLBM Company | $0.00 | $337,860.38 |
| Milltech, Inc. | $6,017.56 | $328,133.00 |
| Bison Bldg. Mat. Nev., LLC | $0.00 | $321,054.88 |
| Bison Multi-Family Sales, LLC | $9,033.56 | $326,694.98 |
| Bison Construction Servs, LLC | $0.00 | $321,054.88 |

### 3.1.10   General Unsecured Claims.

The following table sets forth the potential general unsecured claims in the Debtors' cases:

| Debtor | Scheduled Claims | Filed Claims |
|---|---:|---:|
| Bison Bldg. Holdings, Inc. [2] | $2,286,474.00 | $29,238,250.02 |
| Bison Building Materials, LLC | $11,623,829.20 | $7,977,247.11 |
| Bison Building GP, Inc. | $0.00 | $2,240,548.22 |
| HLBM Company | $143,616.88 | $289,977.54 |
| Milltech, Inc. | $120,368.88 | $626,338.56 |
| Bison Bld Materials Nev., LLC | $224,361.76 | $3,306,637.50 |
| Bison Multi-Family Sales, LLC | $689,376.66 | $280,855.51 |
| Bison Construction Servs, LLC | $12,536.97 | $280,855.51 |

These numbers do not include all tort claims or claims for rejection damages.   In addition, these numbers do not include (i) any pre-petition Intercompany Claims between Debtors, as such Claims are being eliminated under the Plan; or (ii) Claim Nos. 259 and 261 filed by a former employee.   Significant duplicative claims and identical claims filed against multiple Debtors also exist, as well as claims that have been filed against the wrong Debtor and claims that may have been paid during these cases pursuant to Court order.   Finally, a number of

---

[2] The Debtors note that a substantial number of proofs of claim were improperly filed in the Bison Building Holdings, Inc. case.

proofs of claim have been asserted in "unknown" or "unliquidated" amounts. The Debtors expect to file objections to a significant number of proofs of claims. Should additional or amended proofs of claim be filed, the Debtors will review such claims and may file additional objections. The Plan also provides a mechanism for other parties to object to claims under certain circumstances. The Debtors are unable to predict the outcome of any anticipated claim objections that may be filed.

**THE RIGHT OF ALL PARTIES, INCLUDING THE DEBTORS, THE COMMITTEE, THE POST-CONFIRMATION COMMITTEE AND/OR THE LIQUIDATING TRUSTEE (WHETHER EXISTING OR FORMED UNDER THE PLAN) TO OBJECT TO ANY CLAIM FILED IN THESE CASES IS EXPRESSLY RESERVED. THE INCLUSION OF A CLAIM OR CLAIMS WITHIN THIS DISCLOSURE STATEMENT IS NOT AN ADMISSION REGARDING THE VALIDITY OR ALLOWANCE OF ANY CLAIM. YOU SHOULD NOT ASSUME THAT A VOTE FOR OR AGAINST THE PLAN WILL HAVE ANY AFFECT OF THE STATUS OF YOUR CLAIM. IF ANYONE SUGGESTS THAT THE STATUS OF YOUR CLAIM MAY BE AFFECTED BY YOUR VOTE, YOU SHOULD REPORT SUCH INCIDENT TO COUNSEL FOR THE DEBTORS OR COUNSEL FOR THE COMMITTEE IMMEDIATELY AS ANY SUCH SUGGESTION MAY VIOLATE TITLE 18.**

**3.2     Significant Events during the Chapter 11 Cases.**

**3.2.1     First-Day Pleadings.**

On the Petition Date, the Debtors obtained authority to take certain actions to promote an "ongoing business" atmosphere with employees. Notably, the Debtors obtained authority to pay prepetition employee wages and benefits and other employee obligations in the ordinary course of the Debtors' businesses. As a result, all the claims related to employee compensation and benefits entitled to priority under §§ 507(a)(4), (5) and (8) of the Bankruptcy Code were satisfied. This relief was essential to maintain employee morale and to avoid attrition of the Debtors' workforce due to the commencement of the Bankruptcy Cases.

The Debtors also obtained orders authorizing them to, among other things: (i) use cash collateral and enter into debtor in possession financing (as discussed in Section 3.2.2 below); (ii) pay prepetition sales and use tax obligations; (iii) continue the use of their existing bank accounts and cash management system; and (iv) establish procedures for determining adequate assurance requests from utility companies.

**3.2.2     Use of Cash Collateral and DIP Financing.**

On July 24, 2009, the Court entered its Final Order (I) Authorizing Secured Post-Petition Financing; and (II) Granting Liens And Super-Priority Administration Claims and Related Relief [Docket No. 81] (the "DIP Order"), authorizing the Debtors to execute the Ratification and Amendment Agreement with Wachovia, the predecessor-in-interest to Wells Fargo Bank, National Association ("Wells Fargo"), and related documents (collectively, the "DIP Loan Documents") for the purpose of obtaining post-petition financing (the "DIP Credit Facility").

The DIP Facility initially consisted of a senior revolving credit facility with a maximum commitment of $25 million. Bison Building Materials, LLC is the primary borrower under the DIP Facility, with each of the other Debtors being obligated as guarantors. The DIP Credit Facility bears interest at a rate of LIBOR plus 5.0% per annum and borrowings under the facility are secured by all of the Debtors' assets. Under the terms of the DIP Order and the DIP Loan Documents, the DIP Credit Facility expired by its terms on December 25, 2009. On December 14, 2009, the Court entered an order extending the DIP Credit Facility through January 29, 2010. On January 25, 2010, the Court approved a further extension of the DIP Credit Facility through April 30, 2010. On April 29, 2010, the Court approved a third extension of the DIP Credit Facility, whereby the DIP Credit Facility was extended up to three months[3] through and including July 30, 2010. The Debtors anticipates closing under the Stock Sale or Alternative Sale and satisfying the outstanding indebtedness under the DIP Credit Facility pursuant to the Plan prior to July 30, 2010.

### 3.2.3   Retention of Professionals.

On August 10, 2009, the Court entered an order granting the Debtors' Application for Authority to Employ Porter & Hedges, L.L.P. as bankruptcy counsel. The Debtors also obtained Court approval to employ: (i) Andrews Myers Coulter & Hayes, P.C. as special litigation counsel; (ii) Hays, McConn, Rice & Pickering as special litigation counsel; and (iii) Gainer Donnelly & Desroches to perform general accounting services for the Debtors. Finally, on January 25, 2010, the Court approved the Debtors' engagement of WoodRock & Co. ("WoodRock") to provide financial advisory and investment banking services to assist the Debtors in their attempts to raise capital and explore strategic alternatives in connection with their formulation of a plan of reorganization.

### 3.2.4   Appointment of the Committee.

On July 13, 2009, the Office of the United States Trustee (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (previously defined as the "Committee"), consisting of (i) Lumbermens Merchandising Corp., (ii) Bluelinx Corporation, (iii) ECMD, Inc., (iv) Eagle Forest Products, Inc., and (v) Dixie Plywood Company of Houston. The Committee has employed Miller, Canfield, Paddock and Stone, P.L.C. as its bankruptcy counsel.

---

[3] Section 2(b) of the Third Amendment to Ratification and Amendment Agreement defines the "Termination Date" as:

> [T]he earlier to occur of: (i) July 30, 2010; (ii) the date of entry of an order of the Bankruptcy Court confirming a plan of reorganization in any Bankruptcy Case that has not been consented to by Agent and that fails to provide for the payment in full in cash of all Obligations (and termination of all related lending commitments) on the effective date of such plan; (iii) if a plan of reorganization that has been consented to by Agent or that provides for payment in full in cash of all Obligations (and termination of all related lending commitments) has been confirmed by order of the Bankruptcy Court, the earlier of (1) the effective date of such plan of reorganization or (2) the thirtieth (30th) day after the date of entry of such confirmation order; (iv) conversion or dismissal of the Bankruptcy Case; (v) appointment of a trustee (or examiner with expanded powers equivalent to those of a trustee) in the Bankruptcy Case; or (vi) the date that all of the Obligations are paid in full.

### 3.2.5   Lease/Contract Rejection

Since the filing of these cases, the Debtors have dedicated significant time and resources to stabilizing their core operations, cutting unnecessary expenses and winding-down and/or selling certain unprofitable divisions.  To that end, the Debtors have filed motions to reject numerous equipment leases and executory contracts that are not necessary in the Debtors' continued operations.  In addition, the Debtors filed motions to reject, assume and assign or terminate real property leases relative to discontinued operations and, additionally, by operation of § 365(d)(4) of the Bankruptcy Code, all real property leases that were not rejected, assumed and assigned or terminated by motion have been deemed rejected.

### 3.2.6   § 503(b)(9) Claims

Shortly after the Petition Date, the Debtors received reclamation notices and/or administrative expense applications from more than 20 vendors (the "503(b)(9) Claimants") reflecting in excess of $3 million in § 503(b)(9) administrative expense claims.  Many of the 503(b)(9) Claimants were also parties to rebate agreements with the Debtors.  On October 26, 2009, the Court granted the Debtors' Motion for Order Establishing Procedure for the Payment of Claims Under 11 U.S.C. § 503(b)(9) (the "503(b)(9) Procedures Order").  Under the 503(b)(9) Procedures Order, the Court allowed the administrative expense claims of the 503(b)(9) Claimants in the amounts set forth in Exhibit 1 to the 503(b)(9) Procedures Order and authorized the Debtors to (i) immediately offset outstanding rebates against these claims; (ii) offset future rebates against these claims; and (iii) begin making pro-rata payments against any remaining balances within the approved budget under the DIP Credit Facility.

The Debtors began making payments under the 503(b)(9) Procedures Order in November, 2009.  However, on December 3, 2009, Wachovia sent notice to the Debtors prohibiting any further payments under the 503(b)(9) Procedures Order, absent Wachovia's consent, based on an event of default under the DIP Credit Facility.  The Debtors have not made any further payments under the 503(b)(9) Order since December 3, 2009.  As of the date of this Disclosure Statement, the Debtors estimate the total § 503(b)(9) administrative expense claims against the estates to be approximately $2.585 million.

### 3.2.7   Vendor Compromises

After the Petition Date, the Debtors attempted to maintain and improve their relationships with vendors and suppliers to ensure an uninterrupted supply of goods and services through the bankruptcy filing.  With respect to certain critical vendors and suppliers, the Debtors negotiated and obtained approval of compromises resolving, among other things, unsecured and administrative expense claims through the application existing and future rebates.  *See* Docket Nos. 365 and 482.

### 3.2.8   Sale of Beaumont Facility

Prior to the Petition Date, the Debtors operated a rebar fabrication facility in Beaumont, Texas.  After the Petition Date, the Debtors began evaluating the profitability and utility of keeping the rebar facility in operation and, ultimately, determined that closing the facility was in

the best interest of the estates.  The Debtors moved all inventory that could be used in their ongoing operations to Houston and, with respect to the remaining items, the Debtors reached an agreement with Hartman Building Specialties, Ltd. ("Hartman") to purchase the Debtors' rebar fabrication equipment and related inventory.  Under the agreement, Hartman agreed to pay the following:

- Inventory            $245,393.00
- Equipment        $ 60,393.49
- Software keys/readers    $   3,826.12

On April 12, 2010, the Court entered an order approving the sale transaction with Hartman.  As of the filing of this Disclosure Statement, the sale transaction with Hartman was complete.

### 3.2.9   The Marketing and Sale Process.

On January 12, 2010, the Debtors filed their application to employ WoodRock as their investment banker in these cases.  The Court approved WoodRock's engagement on a contingency or percentage fee basis by order entered January 25, 2010.  After assembling the necessary marketing and due diligence materials, WoodRock initiated a process on February 18, 2010 designed to evaluate all options to (i) raise new equity capital; (ii) sell all or part of the Debtors' assets; (iii) obtain new debt financing; or (iv) achieve a combination of the foregoing. During the process, WoodRock contacted approximately 40 different potential financial and strategic partners regarding their interest in the Debtors.

WoodRock initially established a deadline of March 31, 2010 for proposals by potential financial partners.  After evaluating the potential options, the Debtors determined that none of the proposals would return a meaningful distribution to creditors.  Consequently, the Debtors refocused their efforts on potential strategic partners and a sale of part or all of the Debtors' assets.  WoodRock's efforts resulted in a series of competitive indications of interest from two strategic partners.  WoodRock fully tested each of these indications of interest.  From early April until early May, the consideration being offered rose substantially.

On May 4, 2010, the Debtors entered into an agreement with Stock[4] for the purchase of substantially all of the Debtors' operating assets (the "Stock Asset Purchase Agreement").  The

---

[4] Based in Raleigh, North Carolina, Stock is a leading supplier of building materials to professional home builders and contractors in the United States. Stock operates out of 21 markets, including nine locations in Texas—three locations in the Houston market and six locations in the Lubbock and San Antonio areas.  Other markets include Washington D.C., Paradise, Pennsylvania, Richmond, Virginia, Raleigh-Durham, North Carolina, Charlotte, North Carolina, Winston-Salem/Greensboro, North Carolina, Greenville, South Carolina, Columbia, South Carolina, Atlanta, Georgia, Albuquerque, New Mexico, Salt Lake City, Utah, Central and Northwest Arkansas and Los Angeles California. In May, 2009, The Gores Group, LLC (the "Gores Group"), purchased a majority ownership in Stock.  The Gores Group is a private equity firm focused on acquiring controlling interests in mature and growing businesses that can benefit from the firm's operating experience and flexible capital.  During the calendar year 2009, Stock generated approximately $1.4 billion in sales. As of the signing of the Stock Asset Purchase Agreement, Stock held unrestricted cash in excess of the purchase price under the Stock Asset Purchase Agreement.  Stock also has $150 million in availability under its secured credit facility with Wells Fargo.  For more information about Stock visit: www.stockbuildingsupply.com.

gross consideration to be received by the Debtors is in excess of $45,000,000 in cash and assumed liabilities.  The sale will be accomplished through the Plan.  A copy of the Stock Asset Purchase Agreement is attached to the Plan.

As part of the negotiation process, Stock requested certain bidding procedures and buyer protections.  The Debtors refused to consider a majority of the requests in order to be able to continue to freely consider any alternative proposals that might arise between the date of the Stock Asset Purchase Agreement and the confirmation hearing.  Likewise, Stock indicated that it was unwilling to proceed without some protections.  The Debtors ultimately agreed to a procedure on how to handle the evaluation of subsequent proposals and the payment of a termination fee should an alternative proposal be received and accepted by the Debtors.

On May 7, 2010, the Debtors filed a Motion to Approve Bidding Procedures and Buyer Protections (the "Bid Procedures Motion").  The Bid Procedures Motion seeks approval of the payment of a "Termination Fee," under the terms of the Stock Asset Purchase Agreement, in the amount of $1,050,000.  The Termination Fee is less than 2.5% of the gross consideration and covers all compensation, attorney's fees and reimbursement of expenses of Stock should the Debtors accept another proposal.

The Bid Procedures Motion also seeks approval of a procedure regarding the receipt, review and notice of any other proposals that are received by the Debtors.  Under the Stock Asset Purchase Agreement, the Debtors agreed that they will not actively solicit, initiate, encourage or facilitate an Alternative Proposal (as defined in the Stock Asset Purchase Agreement) between the execution date of the Stock Asset Purchase Agreement and confirmation of the Plan.  All existing discussions have been terminated.  If an Alternative Proposal is received, it will be shared with Stock within 24 hours of receipt.  If the Alternative Proposal is determined to be a Superior Proposal[5], the Debtors will provide Stock with four days prior notice of their intent to accept the Superior Proposal.

A hearing on the Bid Procedures Motion is set for May 28, 2010 at 9:30 a.m.

## ARTICLE 4
## CLASSIFICATION OF CLAIMS AND INTERESTS UNDER THE PLAN

The Claims against and Interests in the Debtors are classified as set forth in this Article.

---

[5]  The Stock Asset Purchase Agreement provides that "Superior Proposal" means any bona fide written Alternative Proposal not solicited, initiated, encouraged or otherwise facilitated in violation of Section 5.06, that is on terms that each Board determines in good faith, after consultation with its outside legal counsel and upon receipt of a written opinion from WoodRock & Co., to be more favorable to the applicable Debtors and their creditors, from a financial point of view, than the transactions contemplated by this Agreement, taking into account all relevant aspects of such Alternative Proposal (in comparison with the terms of the Agreement and any revised offer by Buyer), including financial considerations (including additional transaction costs and the effect of the payment of the Termination Fee and other amounts payable hereunder), the Person or group of Persons making such Alternative Proposal, and the likelihood that the proposed transaction would be consummated substantially in accordance with its terms (taking into account all financing, regulatory, legal, bankruptcy and other aspects of the Alternative Proposal).

**4.1     Administrative Claims and Priority Tax Claims**

In accordance with § 1123(a)(l) of the Bankruptcy Code, certain Administrative Claims and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims and Interests set forth in this Article III.  These unclassified Claims are treated as follows.

**4.1.1     Administrative Wells Fargo Secured Claim**   The Administrative Wells Fargo Secured Claim shall be paid in full and in Cash on the Effective Date from the Sales Proceeds.

**4.1.2     Other Administrative Claims.**   Other Allowed Administrative Claims arising under 11 U.S.C. § 503(b), including Cure Costs against the Debtors but excluding Allowed Administrative Claims arising under 11 U.S.C. § 503(b)(9) will be paid in Cash and in full by the Liquidating Trustee from the Sales Proceeds on the later of (i) the Distribution Date, (ii) the date on which such Administrative Claim becomes an Allowed Claim; or (iii) such other date as the Liquidating Trustee and the holder of the Allowed Administrative shall agree.  Allowed Administrative Claims that are not secured by a valid, perfected, post-petition Lien are not entitled to post-petition interest or legal fees and expenses.

**4.1.3     Priority Tax Claims.**   Priority Tax Claims against the Debtors will be paid in Cash and in full by the Liquidating Trustee from the Sales Proceeds on the later of (i) the Distribution Date, (ii) the date on which such Priority Tax Claim becomes an Allowed Claim; or (iii) such other date as the Liquidating Trustee and the holder of the Allowed Priority Tax Claim shall agree.  Allowed Priority Tax Claims that are secured claims shall be entitled to interest at the Plan Rate.

**4.2     Classified Claims Against and Interests in the Debtors**.

The Claims against and Interests in the Debtors are classified as follows:

**Bison Holdings**.

**4.2.1     Class A1 – Administrative Claims Under 11 U.S.C. § 503(b)(9) Against Bison Holdings.**  Class A1 is comprised of all Allowed Administrative Claims Under 11 U.S.C. § 503(b)(9) against Bison Holdings.

**4.2.2     Class A2 – Miscellaneous Secured Claims Against Bison Holdings.**  Class A2 is comprised of all Allowed Miscellaneous Secured Claims against Bison Holdings.

**4.2.3     Class A3 – Priority Non-Tax Claims Against Bison Holdings**.  Class A3 is comprised of all Allowed Priority Non-Tax Claims against Bison Holdings.

**4.2.4     Class A4 – General Unsecured Claims Against Bison Holdings**.  Class A4 is comprised of all Allowed General Unsecured Claims against Bison Holdings.

**4.2.5     Class A5 – Subordinated Claims Against Bison Holdings**.  Class A5 is comprised of all Allowed Subordinated Claims against Bison Holdings.

**4.2.6   Class A6 – Interests in Bison Holdings.**  Class A6 is comprised of all Allowed Interests in Bison Holdings.

**Bison Multi-Family.**

**4.2.7   Class B1 – Administrative Claims Under 11 U.S.C. § 503(b)(9) Against Bison Multi-Family**.  Class B1 is comprised of all Allowed Administrative Claims Under 11 U.S.C. § 503(b)(9) against Bison Multi-Family.

**4.2.8   Class B2 – Miscellaneous Secured Claims Against Bison Multi-Family**.  Class B2 is comprised of all Allowed Miscellaneous Secured Claims against Bison Multi-Family.

**4.2.9   Class B3 – Priority Non-Tax Claims Against Bison Multi-Family**.  Class B3 is comprised of all Allowed Priority Non-Tax Claims against Bison Multi-Family.

**4.2.10  Class B4 – General Unsecured Claims Against Bison Multi-Family**.  Class B4 is comprised of all Allowed General Unsecured Claims against Bison Multi-Family.

**4.2.11  Class B5 – Subordinated Claims Against Bison Multi-Family**.  Class B5 is comprised of all Allowed Subordinated Claims against Bison Multi-Family.

**4.2.12  Class B6 – Interests in Bison Multi-Family.**  Class B6 is comprised of all Allowed Interests in Bison Multi-Family.

**Bison Construction.**

**4.2.13  Class C1 – Administrative Claims Under 11 U.S.C. § 503(b)(9) Against Bison Construction.**  Class C1 is comprised of all Allowed Administrative Claims Under 11 U.S.C. § 503(b)(9) against Bison Construction.

**4.2.14  Class C2 – Miscellaneous Secured Claims Against Bison Construction.**  Class C2 is comprised of all Allowed Miscellaneous Secured Claims against Bison Construction.

**4.2.15  Class C3 – Priority Non-Tax Claims Against Bison Construction.**  Class C3 is comprised of all Allowed Priority Non-Tax Claims against Bison Construction.

**4.2.16  Class C4 – General Unsecured Claims Against Bison Construction.**  Class C4 is comprised of all Allowed General Unsecured Claims against Bison Construction.

**4.2.17  Class C5 – Subordinated Claims Against Bison Construction**.  Class C5 is comprised of all Allowed Subordinated Claims against Bison Construction.

**4.2.18  Class C6 – Interests in Bison Construction.**  Class C6 is comprised of all Allowed Interests in Bison Construction.

**Bison Nevada.**

**4.2.19  Class D1 – Administrative Claims Under 11 U.S.C. § 503(b)(9) Against Bison Nevada.** Class D1 is comprised of all Allowed Administrative Claims Under 11 U.S.C. § 503(b)(9) against Bison Nevada.

**4.2.20  Class D2 – Miscellaneous Secured Claims Against Bison Nevada.** Class D2 is comprised of all Allowed Miscellaneous Secured Claims against Bison Nevada.

**4.2.21  Class D3 – Priority Non-Tax Claims Against Bison Nevada.** Class D3 is comprised of all Allowed Priority Non-Tax Claims against Bison Nevada.

**4.2.22  Class D4 – General Unsecured Claims Against Bison Nevada.** Class D4 is comprised of all Allowed General Unsecured Claims against Bison Nevada.

**4.2.23  Class D5 – Subordinated Claims Against Bison Nevada.** Class D5 is comprised of all Allowed Subordinated Claims against Bison Nevada.

**4.2.24  Class D6 – Interests in Bison Nevada.** Class D6 is comprised of all Allowed Interests in Bison Nevada.

**Bison GP.**

**4.2.25  Class E1 – Administrative Claims Under 11 U.S.C. § 503(b)(9) Against Bison GP.** Class E1 is comprised of all Allowed Administrative Claims Under 11 U.S.C. § 503(b)(9) against Bison GP.

**4.2.26  Class E2 – Miscellaneous Secured Claims Against Bison GP.** Class E2 is comprised of all Allowed Miscellaneous Secured Claims against Bison GP.

**4.2.27  Class E3 – Priority Non-Tax Claims Against Bison GP.** Class E3 is comprised of all Allowed Priority Non-Tax Claims against Bison GP.

**4.2.28  Class E4 – General Unsecured Claims Against Bison GP.** Class E4 is comprised of all Allowed General Unsecured Claims against Bison GP.

**4.2.29  Class E5 – Subordinated Claims Against Bison GP.** Class E5 is comprised of all Allowed Subordinated Claims against Bison GP.

**4.2.30  Class E6 – Interests in Bison GP.** Class E6 is comprised of all Allowed Interests in Bison GP.

**HLBM.**

**4.2.31  Class F1 – Administrative Claims Under 11 U.S.C. § 503(b)(9) Against HLBM.** Class F1 is comprised of all Allowed Administrative Claims Under 11 U.S.C. § 503(b)(9) against HLBM.

**4.2.32  Class F2 – Miscellaneous Secured Claims Against HLBM.**  Class F2 is comprised of all Allowed Miscellaneous Secured Claims against HLBM.

**4.2.33  Class F3 – Priority Non-Tax Claims Against HLBM.**  Class F3 is comprised of all Allowed Priority Non-Tax Claims against HLBM.

**4.2.34  Class F4 – General Unsecured Claims Against HLBM.**  Class F4 is comprised of all Allowed General Unsecured Claims against HLBM.

**4.2.35  Class F5 – Subordinated Claims Against HLBM.**  Class F5 is comprised of all Allowed Subordinated Claims against HLBM.

**4.2.36  Class F6 – Interests in HLBM.**  Class F6 is comprised of all Allowed Interests in HLBM.

**Milltech.**

**4.2.37  Class G1 – Administrative Claims Under 11 U.S.C. § 503(b)(9) Against Milltech.**  Class G1 is comprised of all Allowed Administrative Claims Under 11 U.S.C. § 503(b)(9) against Milltech.

**4.2.38  Class G2 – Miscellaneous Secured Claims Against Milltech.**  Class G2 is comprised of all Allowed Miscellaneous Secured Claims against Milltech.

**4.2.39  Class G3 – Priority Non-Tax Claims Against Milltech.**  Class G3 is comprised of all Allowed Priority Non-Tax Claims against Milltech.

**4.2.40  Class G4 – General Unsecured Claims Against Milltech.**  Class G4 is comprised of all Allowed General Unsecured Claims against Milltech.

**4.2.41  Class G5 – Subordinated Claims Against Milltech.**  Class G5 is comprised of all Allowed Subordinated Claims against Milltech.

**4.2.42  Class G6 – Interests in Milltech.**  Class G6 is comprised of all Allowed Interests in Milltech.

**Bison Building.**

**4.2.43  Class H1 – Administrative Claims Under 11 U.S.C. § 503(b)(9) Against Bison Building.**  Class H1 is comprised of all Allowed Administrative Claims Under 11 U.S.C. § 503(b)(9) against Bison Building.

**4.2.44  Class H2-1 – Secured Claim of Sun Life Against Bison Building.**  Class H2-1 is comprised of the Allowed Secured Claim of Sun Life arising out of the Sun Life Secured Note.

**4.2.45 Class H2-2 – Secured Claim of GE Commercial Finance against Bison Building.** Class H2-2 is comprised of the Allowed Secured Claim of GE Commercial Finance arising out of the GE Secured Notes.

**4.2.46 Class H2-3 – Secured Claim of Wachovia Financial Services, Inc. against Bison Building.** Class H2-3 is comprised of the Allowed Secured Claim of Wachovia Financial Services, Inc. arising out of that certain original loan and security agreement dated January 6, 2006 between Wachovia Financial Services, Inc. and Bison Building for the purchase of equipment as amended, supplemented and modified from time to time.

**4.2.47 Class H2-4 – Miscellaneous Secured Claims Against Bison Building.** Class H2-4 is comprised of all Allowed Miscellaneous Secured Claims against Bison Building.

**4.2.48 Class H3 – Priority Non-Tax Claims Against Bison Building.** Class H3 is comprised of all Allowed Priority Non-Tax Claims against Bison Building.

**4.2.49 Class H4 – General Unsecured Claims Against Bison Building.** Class H4 is comprised of all Allowed General Unsecured Claims against Bison Building.

**4.2.50 Class H5 – Subordinated Claims Against Bison Building.** Class H5 is comprised of all Allowed Subordinated Claims against Bison Building.

**4.2.51 Class H6 – Interests in Bison Building.** Class H6 is comprised of all Allowed Interests in Bison Building.

## ARTICLE 5
## IMPAIRMENT OF CLASSES AND RESOLUTION OF CLAIM CONTROVERSIES

**5.1    Impaired Classes.**

Only holders of Claims that are in impaired Classes may vote on the Plan.  The following Classes of Claims and Interests are impaired under the Plan:

**Bison Holdings**.

**5.1.1**    Class A1 – Administrative Claims Under 11 U.S.C. § 503(b)(9) Against Bison Holdings.
**5.1.2**    Class A4 – General Unsecured Claims Against Bison Holdings.
**5.1.3**    Class A5 – Subordinated Claims Against Bison Holdings.
**5.1.4**    Class A6 – Interests in Bison Holdings.

**Bison Multi-Family**.

**5.1.5**    Class B1 – Administrative Claims Under 11 U.S.C. § 503(b)(9) Against Bison Multi-Family.
**5.1.6**    Class B4 – General Unsecured Claims Against Bison Multi-Family.
**5.1.7**    Class B5 – Subordinated Claims Against Bison Multi-Family.
**5.1.8**    Class B6 – Interests in Bison Multi-Family.

**Bison Construction**.

**5.1.9**  Class C1 – Administrative Claims Under 11 U.S.C. § 503(b)(9) Against Bison Construction.
**5.1.10**  Class C4 – General Unsecured Claims Against Bison Construction.
**5.1.11**  Class C5 – Subordinated Claims Against Bison Construction.
**5.1.12**  Class C6 – Interests in Bison Construction.

**Bison Nevada**.

**5.1.13**  Class D1 – Administrative Claims Under 11 U.S.C. § 503(b)(9) Against Bison Nevada.
**5.1.14**  Class D4 – General Unsecured Claims Against Bison Nevada.
**5.1.15**  Class D5 – Subordinated Claims Against Bison Nevada.
**5.1.16**  Class D6 – Interests in Bison Nevada.

**Bison GP**.

**5.1.17**  Class E1 – Administrative Claims Under 11 U.S.C. § 503(b)(9) Against Bison GP.
**5.1.18**  Class E4 – General Unsecured Claims Against Bison GP.
**5.1.19**  Class E5 – Subordinated Claims Against Bison GP.
**5.1.20**  Class E6 – Interests in Bison GP.

**HLBM**.

**5.1.21**  Class F1 – Administrative Claims Under 11 U.S.C. § 503(b)(9) Against HLBM.
**5.1.22**  Class F4 – General Unsecured Claims Against HLBM.
**5.1.23**  Class F5 – Subordinated Claims Against HLBM.
**5.1.24**  Class F6 – Interests in HLBM.

**Milltech**.

**5.1.25**  Class G1 – Administrative Claims Under 11 U.S.C. § 503(b)(9) Against Milltech.
**5.1.26**  Class G4 – General Unsecured Claims Against Milltech.
**5.1.27**  Class G5 – Subordinated Claims Against Milltech.
**5.1.28**  Class G6 – Interests in Milltech.

**Bison Building**.

**5.1.29**  Class H1 – Administrative Claims Under 11 U.S.C. § 503(b)(9) Against Bison Building.
**5.1.30**  Class H2-1 – Secured Claim of Sun Life Against Bison Building.
**5.1.31**  Class H2-2 – Secured Claim of GE Commercial Finance against Bison Building.
**5.1.32**  Class H2-3 – Secured Claim of Wachovia Financial Services, Inc. against Bison Building.

**5.1.33**  Class H4 – General Unsecured Claims Against Bison Building.
**5.1.34**  Class H5 – Subordinated Claims Against Bison Building.
**5.1.35**  Class H6 – Interests in Bison Building.

## 5.2    Unimpaired Classes.

Holders of Claims that are in unimpaired Classes are deemed to have accepted the proposed Plan and are not entitled to vote on the Plan.  The following Classes of Claims are not impaired under the Plan:

**Bison Holdings**.

**5.2.1**   Class A2 – Miscellaneous Secured Claims Against Bison Holdings.
**5.2.2**   Class A3 – Priority Non-Tax Claims Against Bison Holdings.

**Bison Multi-Family**.

**5.2.3**   Class B2 – Miscellaneous Secured Claims Against Bison Multi-Family.
**5.2.4**   Class B3 – Priority Non-Tax Claims Against Bison Multi-Family.

**Bison Construction**.

**5.2.5**   Class C2 – Miscellaneous Secured Claims Against Bison Construction.
**5.2.6**   Class C3 – Priority Non-Tax Claims Against Bison Construction.

**Bison Nevada**.

**5.2.7**   Class D2 – Miscellaneous Secured Claims Against Bison Nevada.
**5.2.8**   Class D3 – Priority Non-Tax Claims Against Bison Nevada.

**Bison GP**.

**5.2.9**   Class E2 – Miscellaneous Secured Claims Against Bison GP.
**5.2.10**  Class E3 – Priority Non-Tax Claims Against Bison GP.

**HLBM**.

**5.2.11**  Class F2 – Miscellaneous Secured Claims Against HLBM.
**5.2.12**  Class F3 – Priority Non-Tax Claims Against HLBM.

**Milltech**.

**5.2.13**  Class G2 – Miscellaneous Secured Claims Against Milltech.
**5.2.14**  Class G3 – Priority Non-Tax Claims Against Milltech.

**Bison Building**.

    **5.2.15**  Class H2-4 – Miscellaneous Secured Claims Against Bison Building.
    **5.2.16**  Class H3 – Priority Non-Tax Claims Against Bison Building.

**5.3**    **Controversy Concerning Classification, Impairment or Voting Rights.**

       In the event a controversy or dispute should arise involving issues related to the classification, impairment or voting rights of any Creditor or Interest Holder under the Plan, prior to the Confirmation Date, the Bankruptcy Court may, after notice and a hearing, determine such controversy.  Without limiting the foregoing, the Bankruptcy Court may estimate for voting purposes the amount of any contingent or unliquidated Claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the Chapter 11 Cases.  In addition, the Bankruptcy Court may in accordance with § 506(b) of the Bankruptcy Code conduct valuation hearings to determine the Allowed Amount of any Secured Claim.

## ARTICLE 6
## TREATMENT OF CLAIMS AND EXECUTORY CONTRACTS

**6.1**    **Treatment of Impaired Classes.**

    **6.1.1**    **Classes A1, B1, C1, D1, E1, F1, G1 and H1.**  Administrative Claims against the Debtors arising under 11 U.S.C. § 503(b)(9) shall be subject to the following Final Orders of the Bankruptcy Court: (i) that certain Order Approving Compromise and Settlement between the Debtors and Crest Metal Doors, Inc. and Steves and Sons, Inc. entered December 7, 2009 at Docket No. 365; (ii) that certain Order Approving Compromise and Settlement between the Debtors and Boise Building Solutions Manufacturing and Boise Building Solutions Distribution entered April 19, 2010 at Docket No. 482; and (iii) that certain Order entered October 26, 2009 at Docket No. 253. After application of the foregoing Orders, all remaining unpaid Claims arising under 11 U.S.C. § 503(b)(9) will be paid in Cash and in full by the Liquidating Trustee from the Sales Proceeds on the later of (i) the Distribution Date, (ii) the date on which such Claim becomes an Allowed Claim; or (iii) such other date as the Liquidating Trustee and the holder of the Allowed Administrative Claim shall agree.

    **6.1.2**    **Classes A4, B4, C4, D4, E4, F4, G4 and H4.**  The Liquidating Trustee shall distribute Available Cash Pro Rata to holders of Allowed Claims in Classes A4, B4, C4, D4, E4, F4, G4 and H4 and/or the Disputed Claims Reserve pursuant to Articles 8.4 and 8.5 of the Plan, if applicable, on the Initial Distribution Date.  The Liquidating Trustee shall make additional future distributions to holders of Allowed Claims in Classes A4, B4, C4, D4, E4, F4, G4 and H4 from Available Cash on subsequent Payment Dates as the Liquidating Trustee determines appropriate after consultation with the Post-Confirmation Committee.  In the event that any of Class A4, B4, C4, D4, E4, F4, G4 or H4 are paid in full and there exists remaining Available Cash as to the respective Debtor, holders of Allowed Claims in such class shall receive interest at the Plan Rate.  Any Available Cash remaining after the satisfaction of the applicable classes in this paragraph shall be distributed in accordance with the following paragraph.

**6.1.3   Classes A5, B5, C5, D5, E5, F5, G5 and H5.**   Each holder of an Allowed Subordinated Claim in Classes A5, B5, C5, D5, E5, F5, G5 and H5 shall receive a Pro Rata share of Available Cash up to the Allowed Amount of such Claim after payment in full of all Allowed Claims in the corresponding superior class set forth in Article 5.2 of the Plan.  For purposes of clarity, a holder of an Allowed Class C5 Claim is entitled to a Distribution if and only if all Allowed Class C4 Claims are paid in full with interest irrespective of the distributions to holders of Allowed Claims in Classed A4, B4, D4, E4, F4, G4 and H4.  In the event that any of Class A5, B5, C5, D5, E5, F5, G5 or H5 are paid in full and there exists remaining Available Cash as to the respective Debtor, holders of Allowed Claims in such class shall receive interest at the Plan Rate.  Any Available Cash remaining after the satisfaction of the applicable classes in this paragraph shall be distributed in accordance with the following paragraph.

**6.1.4   Classes A6, B6, C6, D6, E6, F6, G6 and H6.**   All Equity Interests in Classes F6, G6, D6, B6 and C6 shall be canceled as of the Effective Date.  All Equity Interests in Classes H6, E6 and A6 shall remain in existence through and after the Effective Date.  Any Available Cash after payment in full of Classes E5, F5, G5, B5 and C5 shall be considered Available Cash for Bison Holdings and distributed in accordance with the Plan.   Any Available Cash after payment in full of Class D5 shall be considered Available Cash for Bison GP and distributed in accordance with the Plan.  Any Available Cash after payment in full of Class H5 shall be considered Available Cash for Bison GP (.50%) and Bison Holdings (99.50%) and distributed in accordance with the Plan.  Any Available Cash after payment in full of Class A5 shall be considered Available Cash equally available for all other Debtors and distributed in accordance with the Plan.

**6.1.5   Class H2-1.**   The Secured Claim of Sun Life shall be treated as follows.  The Secured Claim of Sun Life shall be paid by the Reorganized Bison Building in accordance with the original terms of the Sun Life Note except as follows and as otherwise agreed by Sun Life and the Reorganized Bison Building. On the Effective Date, the Reorganized Bison Building will pay to Sun Life its fees and costs in the amount of $27,000. In addition, the Reorganized Bison Building shall pay the sum of $100,000 to Sun Life to be applied against the unpaid amortization on the Sun Life Note from the Petition Date to the Effective Date (the "Unpaid Amortization").  In addition, on the Effective Date, Sun Life shall apply all existing escrows against the Unpaid Amortization.  The remaining unpaid indebtedness due under the Sun Life Note after the application of the foregoing amounts to the Unpaid Amortization shall be re-amortized over the remaining term of the Sun Life Note. All defaults will be deemed cured on the Effective Date.   The Reorganized Bison shall resume making monthly payments in accordance with the re-amortized Sun Life Note on the first day of the calendar month following the Effective Date plus 30 days. The first monthly payment shall also include any accrued but unpaid interest for the period from the Effective Date to the first payment date.  Sun Life's liens in and remedies against the real property located in Harris and Montgomery counties, Texas and all rents and leases thereof shall remain in full force and effect. Sun Life shall have no claim against the Liquidating Trust on account of any claim arising by, through or under the Sun Life Secured Note. The guaranty of the Sun

Life Secured Note by Bison Holdings shall continue in full force and effect against the Reorganized Bison Holdings.

**6.1.6   Class H2-2.**  The Secured Claim of GE Commercial Finance shall be treated as follows.   The Secured Claim of GE Commercial Finance shall be paid by the Reorganized Bison Building in accordance with the original terms of the GE Secured Notes except as otherwise agreed by GE Commercial Finance and Bison Building.  All accrued post-petition interest and post-petition legal and other expenses subject to reimbursement under the GE Secured Notes (including appraisal, environmental inspection and other third-party fees) of GE Commercial Finance shall be paid by the Reorganized Bison Building on the Effective Date. The remaining unpaid indebtedness due under the GE Secured Notes after the application of the foregoing amounts shall be re-amortized over the remaining term of the GE Secured Notes.  The Reorganized Bison Building shall resume making monthly payments on the first day of the calendar month following the Effective Date.  GE Commercial Finance's liens in and remedies against the real property located in Fort Bend County, Texas and all rents and leases thereof shall remain in full force and effect.  GE Commercial Finance shall have no claim against the Liquidating Trust on account of any claim arising by through or under the GE Secured Notes.  The guaranty of the GE Secured Notes by Bison Holdings shall continue in full force and effect against the Reorganized Bison Holdings.

**6.1.7   Class H2-3.**  The Secured Claim of Wachovia Financial Services, Inc. against Bison Building will be satisfied in full by the payment of an amount by Stock to Wachovia Financial Services, Inc. equal to 90% of the principal amount of its claim on the Effective Date or such other date and on such terms as Wachovia Financial Services, Inc. and Stock shall agree.

**6.2   Treatment of Unimpaired Classes.**

The Unimpaired Classes will be treated as follows:

**6.2.1   Classes A2, B2, C2, D2, E2, F2, G2 and H2-4.**  In the sole discretion of the Liquidating Trustee, after consultation with the Post-Confirmation Committee, the holder of an Allowed Claim in Classes A2, B2, C2, D2, E2, F2, G2 and H2-4 shall receive either (i) the proceeds of the Collateral securing such Claimant's Allowed Claim after satisfaction in full of all superior liens up to the Allowed Amount of the Claimant's Allowed Secured Claim; or (ii) the Collateral securing such Claimant's Allowed Secured Claim in full and final satisfaction of such Claim.

**6.2.2   Classes A3, B3, C3, D3, E3, F3, G3 and H3.**  Allowed Claims in Classes A3, B3, C3, D3, E3, F3, G3 and H3 will be paid in Cash and in full by the Liquidating Trustee from the Sales Proceeds on the later of (i) the Distribution Date, (ii) the date on which such Claim becomes an Allowed Claim; or (iii) such other date as the Liquidating Trustee and the holder of the Allowed Claim in Classes A3, B3, C3, D3, E3, F3, G3 or H3 shall agree.  Allowed Claims in Classes A3, B3, C3, D3, E3, F3, G3 and H3 are not entitled to post-petition interest or post-petition legal fees and expenses.

## ARTICLE 7
## MEANS OF IMPLEMENTATION

**7.1** **Closing of Stock Sale or Alternative Sale.** On the Effective Date, the Debtors shall consummate the Stock Sale in accordance with the Stock Asset Purchase Agreement. Except for Specifically Assumed Liabilities and Permitted Post-Closing Claims (each as defined in the Stock Asset Purchase Agreement), all assets transferred pursuant to the sale shall be transferred free and clear of all liens, claims, interests and encumbrances pursuant to 11 U.S.C. § 363(f) and 11 U.S.C. § 1123(a)(5) to the maximum extent allowed by law. Except as set forth in the Stock Asset Purchase Agreement, all assets shall be transferred "as is, where is" with no representation or warranty of any kind. Unless an Alternative Sale is approved, confirmation of the Plan shall constitute approval of each provision of the Stock Asset Purchase Agreement, which shall be deemed incorporated into this Plan as if set forth herein. Notwithstanding the foregoing, in the event that a Superior Proposal is approved by the Bankruptcy Court, the Debtors shall consummate an Alternative Sale as set forth in the Confirmation Order.

**7.2** **Creation of Liquidating Trust.** On the Effective Date, the Liquidating Trust shall be created. The Liquidating Trust shall be governed by the Liquidating Trust Agreement, the Plan and the Confirmation Order. The terms of the employment of the Liquidating Trustee shall be set forth in the Liquidating Trust Agreement or the Confirmation Order. On the Effective Date and contemporaneously with the closing of the Stock Sale (or an Alternative Sale), the Debtors shall transfer the net Sales Proceeds to the Liquidating Trust. In addition, the Debtors will transfer to the Liquidating Trust the following property: (i) the Arizona Property; (ii) the Pearland Property; (iii) Causes of Action, including Avoidance Actions, except with respect to Transferred Assets and Specifically Assumed Liabilities (which shall be the property of Stock); and (iv) all unsold inventory, equipment and other personal property belonging to the Debtors after giving effect to the Stock Asset Purchase Agreement. All transfers to the Liquidating Trust shall be free and clear of all liens, claims, interests and encumbrances, except that the Arizona Property and Pearland Property shall be transferred to the Liquidating Trust subject to all properly recorded encumbrances and to any Avoidance Actions. Except as specifically set forth in the Plan, holders of Allowed Claims shall look solely to the Liquidating Trust for the satisfaction of their Claims. For federal income tax purposes, the transfer of the identified assets to the Liquidating Trust will be deemed to be a transfer to the holders of Allowed Claims (who are the Liquidating Trust beneficiaries), followed by a deemed transfer by such beneficiaries to the Liquidating Trust.

**7.3** **Operational Real Property.** The Operational Real Property and all associated escrows shall be revested in the Reorganized Bison Building free and clear of all liens, claims, interests and encumbrances pursuant to 11 U.S.C. § 363(f) and 11 U.S.C. § 1123(a)(5) to the maximum extent allowed by law; save and except the Liens securing (i) the Sun Life Secured Note; (ii) the GE Secured Notes; and (iii) 2010 ad valorem taxes on the Operational Real Property. The Reorganized Bison Building shall be solely responsible for the payment of the Sun Life Secured Note and the GE Secured Notes, all 2010 *ad valorem* taxes associated with the Operational Real Property and all obligations under the long term real property leases to be executed pursuant to the Stock Asset Purchase Agreement.

**7.4** **Continuation of Operations.** From and after the Effective Date of the Plan, the Reorganized Bison Holdings, the Reorganized Bison GP and the Reorganized Bison Building are authorized to take such actions as are necessary to continue all operations they deem necessary. The remaining Reorganized Debtors are authorized to take only such actions as are necessary to wind up their affairs and complete a dissolution under applicable law. None of the Reorganized Debtors shall (i) conduct any business under the name "Bison" or any derivation thereof; (ii) not file any objections to Claims as such actions are the exclusive responsibility of the Liquidating Trust; and (iii) not exert any control over any asset transferred to the Liquidating Trust under the Plan.

**7.5** **Continued Corporate Existence.** From and after the Effective Date, the Reorganized Bison Holdings, the Reorganized Bison GP and the Reorganized Bison Building shall continue to exist in accordance with the applicable laws of their state of incorporation/organization. The Reorganized Bison Holdings, the Reorganized Bison GP and the Reorganized Bison Building shall promptly after the Effective Date file all documents necessary to remove the term "Bison" or any derivation thereof from their legal name. The remaining Reorganized Debtors shall promptly after the Effective Date file all documents necessary to effect a dissolution under applicable law.

**7.6** **General Powers of the Liquidating Trustee.** Subject to any express limitations, the Liquidating Trustee, on behalf of the Liquidating Trust, shall have all of the rights, powers and privileges set forth in the Plan, the Confirmation Order and the Liquidating Trust Agreement. The Liquidating Trustee is authorized and shall have the obligation to take all such actions as in his/her judgment are necessary and appropriate to effectuate the purposes of the Plan, including but not limited to the following:

**7.6.1** Make all Distributions contemplated under the Plan;

**7.6.2** Consistent with maintaining the value and liquidating the residual assets of the Liquidating Trust, invest in time or demand deposits, including certificates of deposit issued by any bank approved as a depository institution by the United States Trustee's office, United States Treasury bonds and other securities guaranteed by the full faith and credit of the United States of America or any agency thereof;

**7.6.3** Supervise and administer the resolution, settlement and payment of Claims and Interests and the distributions to the holders of Allowed Claims and Allowed Interests in accordance with the Plan;

**7.6.4** Enter into any agreement on behalf of the Liquidating Trust required by or consistent with the Plan and perform all of the obligations required of the Liquidating Trustee under the Liquidating Trust or the Plan;

**7.6.5** Abandon any of the assets of the Liquidating Trust if the Liquidating Trustee, after consultation with the Post-Confirmation Committee, concludes that such assets are of no benefit to the Creditors or Interest Holders;

**7.6.6**   Participate in or initiate any proceeding before the Bankruptcy Court or any other court of appropriate jurisdiction and participate as a party or otherwise in any administrative, arbitrative or other non-judicial proceeding and litigate claims on behalf of the Liquidating Trust, including without limitation all state and federal causes of action or any other litigation which constitute an asset of the Liquidating Trust and pursue to settlement or judgment such actions except to the extent that the litigation of such Claims is to be brought by the Post-Confirmation Committee;

**7.6.7**   Participate as a party-in-interest in any proceeding before the United States Bankruptcy Court involving the Chapter 11 Cases;

**7.6.8**   Act in the name of or in the place of the Liquidating Trust in any action before the United States Bankruptcy Court or any other judicial or administrative body;

**7.6.9**   Take actions and exercise remedies against any entity that owes money to the Liquidating Trust, including without limitation, the remedies available under any deed of trust, security agreement, promissory note, bond, guarantee or other instrument or document; make compromises regarding any deed of trust, security agreement, promissory note, bond, guarantee or other instrument or document; and, declare or waive defaults regarding any deed of trust, security agreement, promissory note, bond, guarantee or other instrument or document;

**7.6.10**   Subject to the limitations provided under Section 7.7.2, select and employ such professionals, agents or employees as the Liquidating Trustee deems necessary to assist in the administration of the affairs of the Liquidating Trust and compensate such persons;

**7.6.11**   Hold any unclaimed distribution or payment to the holder of an Allowed Claim in accordance with the Plan;

**7.6.12**   Propose any amendment, modification or supplement to the Plan or the Liquidating Trust's governance documents;

**7.6.13**   File dissolution/termination documents with the appropriate governmental agencies to dissolve the Liquidating Trust;

**7.6.14**   Receive, conserve and manage the assets of the Liquidating Trust and sell, pursuant to 11 U.S.C. § 363(f), 11 U.S.C. § 1123(a)(5) and the Plan, or otherwise dispose of such assets for a price and upon such terms and conditions as the Liquidating Trustee deems most beneficial to the Creditors and Interest Holders and execute such deeds, bills of sale, assignments and other instruments in connection therewith;

**7.6.15**   Open and maintain bank accounts on behalf of or in the name of the Liquidating Trust;

**7.6.16**   Pay all taxes, make all tax withholdings and file tax returns and tax information returns and make tax elections by and on behalf of the Liquidating Trust;

**7.6.17**  Pay all lawful expenses, debts, charges and liabilities of the Liquidating Trust;

**7.6.18**  Enforce all provisions of the Plan, including all rights under the Stock Asset Purchase Agreement or similar agreement and any allocation of Sales Proceeds;

**7.6.19**  Protect, perfect and defend the title to any of the assets of the Liquidating Trust and enforce any bonds, mortgages or other obligations or liens owned by the Liquidating Trust;

**7.6.20**  Carry insurance coverage, including insurance to protect the Liquidating Trust, the Liquidating Trustee and the Post-Confirmation Committee against claims brought against the Liquidating Trustee, the Liquidating Trustee or the Post-Confirmation Committee acting within their capacities with the Liquidating Trust, in such amounts as they deem advisable;

**7.6.21**  Establish such reserves for taxes, assessments and other expenses of administration of the Liquidating Trust (including without limitation the Disputed Claims Reserve) as may be necessary and appropriate for the proper operation of matters incident to the affairs of the Liquidating Trust; and

**7.6.22**  Exercise such other powers and duties as are necessary or appropriate in the Liquidating Trustee's discretion to accomplish the purposes of the Plan.

**7.7**  **Obligations of the Liquidating Trustee.**  Notwithstanding anything in the Plan or the Liquidating Trust Agreement to the contrary, the Liquidating Trustee shall have the following duties:

**7.7.1**  Subject to the provisions of Section 8.1 and 8.2 of the Plan, the Liquidating Trustee shall consult with the Post-Confirmation Committee regarding all material issues affecting the Liquidating Trust, including the (i) timing and amount of Distributions; (ii) resolution of Claims objections, (iii) the pursuit of Causes of Action, and (iv) the sale and other disposition of assets.  If the Post-Confirmation Committee submits a written objection to the Liquidating Trustee within 10 days of such consultation regarding any anticipated action, the Liquidating Trustee shall seek Bankruptcy Court approval prior to taking such action.

**7.7.2**  The Liquidating Trustee shall consult with and obtain approval of the Post-Confirmation Committee regarding the retention of, and fee arrangements with professionals representing the Liquidating Trust.  If the Liquidating Trustee wishes to employ a professional to which the Post-Confirmation Committee fails to provide its approval within 10 days of receiving a written request from the Liquidating Trustee, the Liquidating Trustee may seek approval to employ such professional from the Bankruptcy Court.

**7.7.3**  The Liquidating Trustee shall cause to be prepared a quarterly report illustrating (i) receipts and disbursements during the prior quarter, (ii) a schedule of all asset dispositions, (iii) a schedule of Distributions made, and (iv) a summary listing of the

status of the resolution of objections to Claims and Causes of Action.  Such quarterly report shall be distributed to the Post-Confirmation Committee within fifteen (15) business days after the end of the relevant report preparation period.

**7.7.4**   The Liquidating Trustee shall maintain records and books of account relating to the Liquidating Trust's assets, the management thereof and all transactions undertaken by the Liquidating Trustee on behalf of the Liquidating Trust.  The Liquidating Trustee shall also maintain records and books of account relating to all Distributions contemplated under the Plan.

## 7.8   Limitations on the Powers of the Liquidating Trustee

**7.8.1**   Notwithstanding anything in the Plan or the Liquidating Trust Agreement to the contrary, and only with a Bankruptcy Court Order entered after notice and opportunity for hearing and subject to the rights of Stock under the Stock Asset Purchase Agreement, may the Liquidating Trustee or the Reorganized Debtors modify or amend the Plan in accordance with § 1127 of the Bankruptcy Code.

**7.8.2**   In the event that the Post-Confirmation Committee makes a written request to the Liquidating Trustee that the Liquidating Trustee take some action and the Liquidating Trustee either fails or refuses to take such action with 15 days of such request, the Post-Confirmation Committee may seek authority from the Bankruptcy Court to take such action on behalf of the Liquidating Trust.  Any party may object to any such request.

**7.8.3**   Notwithstanding anything in the Plan or the Liquidating Trust Agreement to the contrary, the Liquidating Trust shall not include any Transferred Assets or Specifically Assumed Liabilities and the Liquidating Trustee shall not have power over any such assets, liabilities, Causes of Action or claims related thereto, except (i) for liquidating and satisfying Cure Costs, (ii) for Post-Petition Accounts Payable (as defined in the Stock Asset Purchase Agreement) that are designated as Retained Post-Petition Accounts Payable  (as defined in the Stock Asset Purchase Agreement),  and (iii) to the extent Specifically Assumed Liabilities exceed the liabilities assumed under the Stock Asset Purchase Agreement and become claims against the Liquidating Trust.

**7.9**   **The Committee.**  The Committee shall continue in existence until the Effective Date at which time the Committee shall be terminated.  On the Effective Date, a Post-Confirmation Committee shall be formed.  The Post-Confirmation Committee shall be comprised of 3 members designated by the Committee at least 3 days prior to the commencement of the Confirmation Hearing.  In the event of death or resignation of any member of the Post-Confirmation Committee, (i) the remaining members of the Post-Confirmation Committee appointed by the Committee shall have the right to designate a successor.  If a Post-Confirmation Committee member assigns or releases its Claims against the Liquidating Trust or releases the Liquidating Trust of the obligation to pay its Claim, such act shall constitute a resignation from the Post-Confirmation Committee.  Until a vacancy on the Post-Confirmation Committee is filled, the Post-Confirmation Committee shall function in its reduced number.  Upon Final Distribution, the Post-Confirmation Committee shall be dissolved and the members thereof shall

be released and discharged of and from all further authority, duties, responsibilities and obligations related to and arising from their service as Post-Confirmation Committee members.

**7.10   The Post-Confirmation Committee.**   The members of the Post-Confirmation Committee shall undertake their duties as specified in the Plan.  In serving as a member of the Post-Confirmation Committee, such members shall not assume or be deemed to have assumed any liability to Creditors, Interest Holders, the Debtors, the Reorganized Debtors, the Liquidating Trust, the Liquidating Trustee, or any other parties in interest in the Chapter 11 Cases and shall not be liable for any acts or omissions while acting in that capacity, except for acts or omissions in bad faith and acts or omissions constituting malfeasance or gross negligence.  The Post-Confirmation Committee shall have the right to retain counsel or other professionals without further order of the Bankruptcy Court, who shall be paid their reasonable fees and expenses by the Liquidating Trust.  In addition, the members of the Post-Confirmation Committee shall be entitled to reimbursement from the Liquidating Trust of their reasonable expenses incurred in connection with their duties as members of the Post-Confirmation Committee.  The Bankruptcy Court shall retain jurisdiction to hear any disputes relating to the fees and expenses of the Post-Confirmation Committee's professionals, which disputes, if any, shall be resolved by the Bankruptcy Court after notice and hearing.

**7.11   Resignation/Removal of the Liquidating Trustee.**  The Liquidating Trustee may resign at any time by filing a written notice of resignation with the Bankruptcy Court.  Any such resignation shall become effective on the earlier to occur of (i) sixty (60) days after the filing date of such notice; or (ii) the appointment of a successor Liquidating Trustee.  The Post-Confirmation Committee may remove the Liquidating Trustee at its discretion upon unanimous vote of all members without approval of the Bankruptcy Court, provided, however, that the Post-Confirmation Committee shall provide the Liquidating Trustee with thirty (30) days written notice of its intent to remove the Liquidating Trustee.  If the Liquidating Trustee believes that his/her removal is not in the best interests of Creditors, then the Liquidating Trustee may seek Bankruptcy Court approval to continue as Liquidating Trustee.  If such authority is sought, the Liquidating Trustee shall continue in his/her capacity as Liquidating Trustee pending a Final Order resolving the issue.  All fees and expenses incurred by the Liquidating Trustee and the Post-Confirmation Committee in pursuit of the removal or continuation of the Liquidating Trustee shall be paid by the Liquidating Trust.

**7.12   Appointment of Successor Liquidating Trustee.**  In the event of the death, resignation or removal of the Liquidating Trustee, the Post-Confirmation Committee shall designate a successor Liquidating Trustee.  Any successor Liquidating Trustee appointed hereunder shall execute and file a statement accepting such appointment and agreeing to be bound by the terms of the Plan and upon such filing, the successor Liquidating Trustee shall immediately become vested with all the rights, powers, trusts and duties of the Liquidating Trustee.

**7.13   Rights and Duties of the Post-Confirmation Committee.**  The Post-Confirmation Committee shall:

> **7.13.1** notwithstanding anything herein to the contrary, the Post-Confirmation Committee shall have the exclusive right to pursue all Avoidance Actions.

**7.13.2** have the right to review, approve and object to settlements and the proposed prosecution, release or abandonment of objections to Claims, Claims or Causes of Action by the Liquidating Trustee in accordance with the Plan;

**7.13.3** have the right to review, approve and object to proposed sales and other dispositions of assets belonging to the Liquidating Trust;

**7.13.4** be vested with authority to remove the Liquidating Trustee, or any successor Liquidating Trustee, appointed pursuant to the Plan;

**7.13.5** perform such additional functions as may be agreed to by the Liquidating Trustee, or are otherwise provided for in the Plan, the Confirmation Order, or are provided for by further Order of the Court entered after the Effective Date;

**7.13.6** be authorized to assert, prosecute and settle any Claim or Cause of Action that the Liquidating Trustee elects not to bring, subject to the limitations set forth in the Plan; and

**7.13.7** consult with the Liquidating Trustee in connection with any other matters related to the Plan or the Liquidating Trust Agreement.

**7.14    Compensation Procedures.**  The Liquidating Trust, the Post-Confirmation Committee, and all professionals employed by them shall be entitled to payment of their fees and reimbursement of all reasonable expenses on a monthly basis pursuant to the terms of the Fee Procedure Order, provided, however, that no professional shall be required to provide notice of the monthly fee statements to the Office of the United States Trustee, the payment due upon the Liquidating Trustee's receipt of invoices shall be of 100% of fees and expenses, and paragraphs 2(d), 2(e), 2(f) and 3 of the Fee Procedure Order shall not apply.

## ARTICLE 8
## CLAIM/INTEREST OBJECTION PROCEDURES, TREATMENT OF DISPUTED CLAIMS/INTERESTS AND PROCEDURES FOR ASSERTING CLAIMS

**8.1    Objection Process.**

Subject to the limitations provided under Article 7 of the Plan, the Liquidating Trustee on behalf of the Liquidating Trust shall have the sole right to object to the allowance of any Claims or Interests provided for under the Plan.  Subject to the preceding sentence, all objections shall be litigated to Final Order; provided, however, that the Liquidating Trustee shall have the authority to compromise, settle or otherwise resolve all objections, for any Claim filed in the amount of $25,000 or less without approval of the Bankruptcy Court or notice to the Post-Confirmation Committee.  For all Claims in excess of $25,000, the Liquidating Trustee shall provide counsel for the Post-Confirmation Committee with 10 days written notice of any proposed settlement.  If no objection is served on the Liquidating Trustee within 10 days of the date of such notice, the Post-Confirmation Committee shall be deemed to have consented to such settlement and the Liquidating Trustee may settle such Claim without approval of any other person or entity.  If the Post-Confirmation Committee objects to any proposed settlement, the Liquidating Trustee shall either (i) withdraw the settlement; or (ii) bring the matter before the

Bankruptcy Court for final resolution after notice and hearing.  Unless otherwise ordered by the Bankruptcy Court, the Liquidating Trustee shall file and serve all objections to Claims and Equity Interests no later than (i) 90 days after the later of (a) the Effective Date; or (b) the date on which a proof of claim, proof of interest or request for payment is filed with the Bankruptcy Court or (ii) such other date as may be approved by the Bankruptcy Court after notice and hearing.

**8.2     Filing of Claims and Causes of Action.**

Subject to the limitations provided under Article 7, the Liquidating Trustee shall have the exclusive right to file and prosecute any Claims and Causes of Action on behalf of the Liquidating Trust, including all derivative Causes of Action.  The Liquidating Trustee shall have the authority to compromise, settle and otherwise resolve all Claims and Causes of Action filed or asserted in the amount of $25,000 or less without approval of the Bankruptcy Court or notice to the Post-Confirmation Committee.  For all Claims and Causes of Action in excess of $25,000, the Liquidating Trustee shall provide counsel for the Post-Confirmation Committee with 10 days written notice of any proposed settlement.  If no objection is served on the Liquidating Trustee within 10 days of the date of such notice, the Post-Confirmation Committee shall be deemed to have consented to such settlement and the Liquidating Trustee may settle such Claim or Cause of Action without approval of any other person or entity.  If the Post-Confirmation Committee objects to any proposed settlement, the Liquidating Trustee shall either (i) withdraw the settlement; or (ii) bring the matter before the Bankruptcy Court for final resolution after notice and hearing.

**8.3     Disputed Claims Reserve.**

A Disputed Claims Reserve shall be established by the Liquidating Trustee for the treatment of Disputed Claims.  The Disputed Claims Reserve shall be held in a separate bank account from all other funds held by the Liquidating Trust/Liquidating Trustee.  The Liquidating Trustee shall deposit into a Disputed Claims Reserve an amount equal to the Pro Rata share of the Distribution allocable to such Disputed Claims, in accordance with the distribution scheme contemplated in the Plan, as if such Claims and/or Equity Interests were Allowed Claims or Equity Interests.  Amounts deposited into the Disputed Claims Reserve shall be held in trust for the benefit of the holders of Disputed Claims pending a determination of their entitlement thereto under the terms of the Plan.  Once such Disputed Claim is determined by Final Order or settlement to be an Allowed Claim, the Liquidating Trustee is authorized to pay the Allowed Amount of such Claim without further approval from or notice to any person or entity.

**8.4     Distributions to Holders of Disputed Claims and Disputed Interests.**

Within 10 Business Days after such time as a Disputed Claim becomes an Allowed Claim or Equity Interest, but in no event earlier than the Initial Distribution Date, any Distributions reserved for such Allowed Claim or Equity Interest shall be released from the Disputed Claims Reserve and delivered to the holder of such Allowed Claim or Equity Interest in an amount proportionate to the Allowed Amount of any such Claim or Equity Interest.  In the event that the Disputed Claim is disallowed in whole or in part, or otherwise settled in amount less than the Disputed Claim amount, the disallowed or reduced portion of such Claim or Equity Interest shall be distributed from the Disputed Claim Reserve to holders of Allowed Claims or Equity Interests

as Available Cash on the next Payment Date in accordance with the Plan without further approval from or notice to any person or entity.

**8.5     Disallowance of Late Filed Proofs of Claim.**

Except as otherwise provided in the Plan, any proof of claim filed by the holder of such Claim after the Bar Date is hereby disallowed.

**8.6     Provisions Governing Distributions.**

**8.6.1     Record Date for Claims and Equity Interests.**

The record date for Distributions to Allowed Claims and Allowed Interests under the Plan shall be the date the Bankruptcy Court enters its order approving the Disclosure Statement.  For purposes of Distributions to holders of Allowed Claims, the Liquidating Trustee will rely on the claims docket maintained by the Clerk for proofs of claim filed in these Chapter 11 Cases except to the extent a notice of transfer of Claim or Interest has been filed with the Court prior to the record date pursuant to Bankruptcy Rule 3001.  For purposes of Distributions on account of Equity Interests, the Liquidating Trustee will rely on the relevant stock transfer ledger(s).

**8.6.2     Delivery of Distributions to Holders of Allowed Claims.**

Subject to Bankruptcy Rule 9010, Distributions to holders of Allowed Claims will be made at the address of each such holder as set forth on the proofs of claim filed by such holders, or at the last known address of such holder if no proof of claim is filed, unless the holder of the Allowed Claim has otherwise notified the Liquidating Trustee in writing of a change of address.  If any holder's Distribution is returned as undeliverable, it will be treated in accordance with Article 8.6.4 of the Plan.  The Liquidating Trustee may, but shall not be required to make any Distribution of less than $25.00.

**8.6.3     Unclaimed Distributions.**

The Liquidating Trustee will file a Notice of Distribution within ten Business Days of the date on which Distributions are made under the Plan.  All claims for undeliverable Distributions must be made no later than the 60th day following the date that the Notice of Distribution is filed.  After such date, all unclaimed Distributions will revert to the Liquidating Trust for distribution in accordance with the Plan and the remaining Claim or Equity Interest of any holder with respect to such Distribution will be discharged and forever barred.

**8.6.4     Uncashed Checks.**

Checks issued in respect of Allowed Claims and/or Equity Interests will be null and void if not negotiated within ninety (90) days after the date of issuance thereof. Distributions with respect to such un-negotiated checks will revert to the Liquidating Trust for distribution in accordance with the Plan and the remaining Claim or Equity

Interest of any holder with respect to such Distribution will be discharged and forever barred.

## ARTICLE 9
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**9.1     Rejection of Executory Contracts and Unexpired Leases.**

All executory contracts and unexpired leases that are not assumed under the Plan are rejected, unless otherwise dealt with by the Plan or the Confirmation Order, or any other Order of the Court entered prior to the Effective Date, or which is the subject of a motion to assume pending on the Effective Date

**9.2     Assumed Executory Contracts and Unexpired Leases.**

Each executory contract and unexpired lease that is assumed will include (a) all amendments, modifications, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affect such executory contract or unexpired lease; and (b) with respect to any executory contract or unexpired lease that relates to the use, ability to acquire, or occupancy of real property, all executory contracts or unexpired leases and other rights appurtenant to the property, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, powers, uses, usufructs, reciprocal easement agreements, vaults, tunnel or bridge agreements or franchises, and any other equity interests in real estate or rights *in rem* related to such premises, unless any of the foregoing agreements have been rejected pursuant to an order of the Bankruptcy Court or are the subject of a motion to reject filed on or before the Confirmation Date.   Amendments, modifications, supplements, and restatements to prepetition executory contracts and unexpired leases that have been executed by the Debtors during their Chapter 11 Cases shall not be deemed to alter the prepetition nature of the executory contract or unexpired lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

**9.3     Assignment of Leases; Cure Amounts.**

The Stock Sale (and any Alternative Sale that might occur) contemplates that numerous executory contracts and unexpired leases will be assumed and assigned to Stock.  As part of the Plan, the Debtors will file and serve a list of such executory contracts and unexpired leases along with the proposed Cure Costs.  Any party taking exception to the proposed Cure Costs shall file a detailed statement setting forth its reason and the Bankruptcy Court shall determine the proper amount of the Cure Costs at the Confirmation Hearing.  The fixing of the Cure Costs shall constitute the Debtors' right to assign the executory contract and/or unexpired lease to Stock (or an alternative purchaser) under Bankruptcy Code §§ 365(c) and (f) and the Debtors shall assign the Desired 365 Contracts (as defined in the Stock Asset Purchase Agreement) to Stock (or an alternative purchaser) on the Effective Date.  All Cure Costs shall be paid by the Liquidating Trust.  The Confirmation Order shall specifically provide for the approval of such assignments. The Debtors reserve the right to amend the list of assumed executory contracts and unexpired leases at any time before the Confirmation Date with the consent of and at the direction of Stock under the terms of the Stock Asset Purchase Agreement.

**9.4     Claims Based on Rejection of Executory Contracts or Unexpired Leases.**

Damages arising from the rejection of an executory contract or unexpired lease shall be a General Unsecured Claim against the Debtor that is a party to the rejected executor contract or unexpired leases unless subordinated under applicable law.  Any Claim for damages arising from the rejection of an executory contract or unexpired lease must be asserted in a proof of claim filed with the Bankruptcy Court no later than 20 days following the earlier of: (a) the date of entry of an order of the Bankruptcy Court approving such rejection, or (b) the Effective Date of the Plan.  Any Claims not filed within such times shall be forever barred from assertion against the Debtors, the Liquidating Trust, the Liquidating Trustee or the Reorganized Debtors.  The Liquidating Trustee shall mail a notice to all known affected parties and shall publish a notice in the Houston Chronicle of (i) the Debtors' rejection of executory contracts and unexpired leases and (i) the deadline for asserting claims for damages arising from the rejection of such executory contracts and unexpired leases.

**9.5     Reservation of Rights.**

Nothing contained in the Plan shall constitute an admission by the Debtors that any such contract or lease is in fact an executory contract or unexpired lease or that any Debtor has any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Liquidating Trustee or Reorganized Debtors, as applicable, shall have thirty (30) days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

**ARTICLE 10**
**EFFECT OF CONFIRMATION**

**10.1     Legally Binding Effect.**

The provisions of the Plan shall bind all Creditors and Interest Holders, whether or not they accept the Plan.  On and after the Effective Date, all holders of Claims shall be precluded and enjoined from asserting any Claim (i) against the Debtors, the Reorganized Debtors, the Liquidating Trust or their assets or properties based on any transaction or other activity of any kind that occurred prior to the Confirmation Date except as permitted under the Plan; and (ii) any derivative claims, including claims against third parties asserting alter ego claims, fraudulent transfer claims or any other type of successor liability.

**10.2     Limited Discharge of Debtors and Injunction.**

The entry of the Confirmation Order will operate as a general resolution with prejudice, as of the Effective Date, of all pending legal proceedings, if any, against the Debtors and their assets and properties and any proceedings not yet instituted against the Debtors or their assets and properties, except as otherwise provided in the Plan.  Except as otherwise expressly provided in the Plan or the Confirmation Order, all Persons who have held, hold, or may hold Claims against the Debtors are permanently enjoined on and after the Effective Date from (a) commencing or continuing in any manner any action or other proceeding of any kind against the Debtors or the Reorganized Debtors, or their property, the Liquidating Trust or the Liquidating

Trustee, with respect to any such Claim, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order with respect to any such Claim against the Debtors or the Reorganized Debtors, or their property, or the Liquidating Trust or the Liquidating Trustee, (c) creating, perfecting, or enforcing any encumbrance of any kind against the Debtors or the Reorganized Debtors, or their property, or the Liquidating Trust or the Liquidating Trustee, with respect to such Claim, (d) asserting any right of subrogation of any kind against any obligation due to the Debtors or the Reorganized Debtors, or the property of the Debtors, the Estates or the Reorganized Debtors with respect to any such Claim and (e) asserting any right of setoff or recoupment against the Debtors, the Estates or the Reorganized Debtors except as specifically permitted by § 553 of the Bankruptcy Code.  Unless otherwise provided in the Plan or by order of the Bankruptcy Court, all injunctions or automatic stays provided for in these cases pursuant to § 105, if any, or § 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date will remain in full force and effect until the Effective Date. Notwithstanding the foregoing, the Court's Agreed Order entered October 26, 2009 between the Debtors and Greystar Development and Construction at Docket No. 254 modifying the automatic stay to allow AAA Arbitration Case No. 69 110 J 006 75 08 shall continue in full force and effect.

## 10.3   Complete Discharge of Bison Holdings, Bison GP and Bison Building.

In addition to the foregoing section and pursuant to § 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or the Confirmation Order, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of all Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, Bison Holdings, Bison GP and Bison Building or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtors prior to the Effective Date and that arise from a termination of employment or a termination of any employee or retiree benefit program, regardless of whether such termination occurred prior to or after the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in §§ 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each Chapter 11 Case whether or not:  (a) a Proof of Claim or Interest based upon such debt, right, Claim, or Interest is Filed or deemed Filed pursuant to § 501 of the Bankruptcy Code; (b) a Claim or Interest based upon such Claim, debt, right, or Interest is Allowed pursuant to § 502 of the Bankruptcy Code; or (c) the Holder of such a Claim or Interest has accepted the Plan.  Subject to the terms of the Plan and the Confirmation Order, any default by the Debtors with respect to any Claim or Interest that existed immediately prior to or on account of the Filing of the Chapter 11 Cases shall be deemed satisfied on the Effective Date.  Subject to the terms of the Plan, the Confirmation Order shall be a judicial determination of discharge of all liabilities of Bison Holdings, Bison GP and Bison Building, their Estates, the Reorganized Bison Holdings, the Reorganized Bison GP and the Reorganized Bison Building and all successors thereto.  As provided in § 524 of the Bankruptcy Code, subject to the terms of the Plan, such discharge shall

void any judgment against Bison Holdings, Bison GP, Bison Building, their Estates, the Reorganized Bison Holdings, the Reorganized Bison GP and the Reorganized Bison Building or any successors thereto at any time obtained to the extent it relates to a Claim or Interest discharged, and operates as an injunction against the prosecution of any action against the Reorganized Bison Holdings, the Reorganized Bison GP and the Reorganized Bison Building or their respective property and assets to the extent it relates to a discharged Claim or Interest.

**10.4    Limited Protection of Certain Parties in Interest.**

Neither (a) the Debtors, the Reorganized Debtors, the Liquidating Trustee, Stock or any of their employees, officers, directors, agents, representatives, affiliates, attorneys, financial advisors, or any other professional persons employed by any the Debtors, the Reorganized Debtors or the Liquidating Trustee or Stock, nor (b) each Professional for the Debtors or any of their employees, officers, directors, agents, representatives, affiliates, attorneys, financial advisors, or any other professional persons employed by any of them, nor (c) the Committee and each of its members or any of their employees, officers, directors, agents, representatives, affiliates, attorneys, financial advisors, or any other professional persons employed by any of them, nor (d) the Post-Confirmation Committee and each of its members or any of their employees, officers, directors, agents, representatives, affiliates, attorneys, financial advisors, or any other professional persons employed by any of them (the persons identified in (a), (b), (c) and (d) are collectively referred to as "Protected Persons"), shall have or incur any liability to any Person or Entity under any theory of liability for any act or omission occurring on or after the Petition Date in connection or related to the Debtors, the Chapter 11 Cases, or the Estates, including, but not limited to, (i) formulating, preparing disseminating, implementing, confirming, consummating or administering the Plan (including soliciting acceptances or rejections thereof); or (ii) the Disclosure Statement or any contract, instrument, release or other agreement or document entered into or any action taken or omitted to be taken in connection with the Plan, except for acts constituting willful misconduct, gross negligence, or *ultra vires* activity and in all respects such Protected Persons shall be entitled to rely in good faith upon the advice of counsel. In any action, suit or proceeding by any Person contesting any action by, or non-action of any Protected Person as constituting willful misconduct, gross negligence or *ultra vires* activity, or not being in good faith, the reasonable attorneys' fees and costs of the prevailing party will be paid by the losing party and as a condition to going forward with such action, suit, or proceeding at the outset thereof, all parties thereto will be required to provide appropriate proof and assurances of their capacity to make such payments of reasonable attorneys' fees and costs in the event they fail to prevail.

**10.5    Indemnification.**

The Liquidating Trust shall indemnify each Person identified as a Protected Person against any and all costs and expenses (including attorneys' fees) incurred by any of them in defending against post-Confirmation Date claims that are based on actions allegedly taken (or not taken) by them in their respective capacities relating to the Debtors, the Liquidating Trust or the Plan; provided, however, that no Protected Person shall be entitled to indemnification under the Plan for the costs and expenses of defending a cause of action in which it is ultimately judicially determined that such Protected Person was grossly negligent or acted fraudulently or with willful misconduct in performing such Protected Person's duties hereunder or under any

Final Order of the Bankruptcy Court or applicable law, or *ultra vires* activity.  Any Protected Person entitled to indemnification under this section shall have a priority distribution right that is senior to the holders of Allowed General Unsecured Claims against the Liquidating Trust.  The Liquidating Trustee may use the Liquidating Trust's Assets (as an expense of consummating the Plan) to purchase indemnification insurance to satisfy any potential indemnification claims that may arise under Section 10.5 of the Plan.

**10.6    Continuation of Anti-Discrimination Provisions of the Bankruptcy Code.**

A Governmental Unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, or discriminate with respect to such a grant against, the Debtors, the Reorganized Debtors, the Liquidating Trust, the Liquidating Trustee or another Person with whom the Debtors have been or are associated or affiliated, solely because of the commencement, continuation, or termination of the case or because of any provision of the Plan or the legal effect of the Plan, and the Confirmation Order will constitute an express injunction against any such discriminatory treatment by a Governmental Unit.  Moreover, a Governmental Unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to the Debtors or the Reorganized Debtors based upon any requirement that the Debtors or the Reorganized Debtors place a bond or other surety obligation with such governmental unit as a condition of receipt of such a license, permit, charter, franchise, or other similar grant to the Debtors or the Reorganized Debtors.  All licenses, permits, charters, franchises, or other similar grants to the Debtors are hereby transferred and assigned on the Effective Date (which transfer and assignment is without the assumption of any liabilities arising prior to the Effective Date which liabilities arise out of such license, permit, charter, franchise or similar grant) to the Reorganized Debtors or Stock (or other purchaser) as applicable without the need for further application or approval by any Governmental Unit.

**10.7    Preservation of Claims and Rights.**

Confirmation of the Plan effects no settlement, compromise, waiver or release of any Claim, Cause of Action, Right of Action or claim for relief unless the Plan or the Confirmation Order specifically and unambiguously so provides.  The non-disclosure or non-discussion of any particular Claim, Cause of Action, Right of Action or claim for relief is not and shall not be construed as a settlement, compromise, waiver, or release of any such Claim, Cause of Action, Right of Action or claim for relief.

**The Reorganized Debtors, the Liquidating Trust and the Liquidating Trustee reserve any and all claims and rights against any and all third parties, whether such claims and rights arose before, on or after the Petition Date, the Confirmation Date, the Effective Date, the Record Date and/or any Distribution date, including, without limitation, any and all Causes of Action, Rights of Action and/or claims for relief that the Debtors, the Reorganized Debtors, the Liquidating Trustee or the Liquidating Trust may have against (i) any insurer and/or insurance policies in which either the Debtors and/or their current or former personnel have an insurable or other interest in or right to make a claim against, any other of the Debtors' insurers; or (ii) any recipient of a transfer identified in the Debtors' statements of financial affairs, including any amendments thereto, filed in these**

Chapter 11 Cases.  The entry of the Confirmation Order shall not constitute *res judicata* or otherwise bar, estop or inhibit any actions by the Debtors, the Liquidating Trust or the Liquidating Trustee relating to any claims, Causes of Action or Rights of Action referred to in this Article 11.7, or otherwise.  Except as specifically set forth in the Plan, the Liquidating Trustee/Post-Confirmation Committee (as applicable) shall constitute the representative of the Estates for purposes of retaining, asserting and/or enforcing Rights of Action under § 1123(b)(3)(B) of the Bankruptcy Code.  On the Effective Date, the Liquidating Trustee shall be substituted as a party of record in all pending litigation brought by or against the Debtors without need for further order of the Bankruptcy Court.

## ARTICLE 11
## CONFIRMATION OF THE PLAN

**11.1    Confirmation Hearing.**

Section 1128(a) requires the Bankruptcy Court, after notice, to hold a hearing on confirmation of the Plan ("Confirmation Hearing").  The Confirmation Hearing has been scheduled before the Honorable Wesley W. Steen, United States Bankruptcy Judge, on June 29, 2010 at 9:30 a.m. (Houston time), in Courtroom No. 400, 4th Floor, United States Courthouse, 515 Rusk Avenue, Houston, Texas 77002.  The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except an announcement made at the Confirmation Hearing or any adjournment thereof.

Section 1128(b) provides that any party in interest may object to confirmation of the Plan. However, an impaired Creditor, who votes to accept the Plan, may not have standing to object to the Plan.  Objections to confirmation of the Plan are governed by Bankruptcy Rule 9014 and any applicable Local Rules of the Bankruptcy Court.  The deadline for filing objections to confirmation of the Plan is June 22, 2010.  Objections to confirmation must be filed with the Clerk of Court.

**UNLESS AN OBJECTION TO CONFIRMATION IS TIMELY FILED AND SERVED, IT WILL NOT BE CONSIDERED BY THE BANKRUPTCY COURT.**

**11.2    Statutory Requirements for Confirmation of the Plan.**

At the Confirmation Hearing, the Bankruptcy Court will determine whether the Bankruptcy Code's requirements for confirmation of the Plan have been satisfied, in which event the Bankruptcy Court will enter an order confirming the Plan.  As set forth in § 1129 of the Bankruptcy Code, these requirements are as follows:

1.    The Plan complies with the applicable provisions of the Bankruptcy Code.

2.    The proponent of the Plan complies with the applicable provisions of the Bankruptcy Code.

3.    The Plan has been proposed in good faith and not by any means forbidden by law.

4.      Any payment made or to be made by the Plan proponent, or by a person issuing securities or acquiring property under the Plan, for services or for costs and expenses in, or in connection with the cases, or in connection with the Plan and incident to the cases, has been approved by, or is subject to the approval of, the Court as reasonable.

5.      The proponent of the Plan has disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the Plan, as a director, officer, or voting trustee of the Debtors, an affiliate of the Debtors participating in a joint Plan with the Debtors, or a successor to the Debtors under the Plan; and the appointment to, or continuance in, such office of such individual, is consistent with the interests of Creditors and with public policy; and the proponent of the Plan has disclosed the identity of any insider that will be employed or retained by the Debtors, and the nature of any compensation for such insider.

6.      Any governmental regulatory commission with jurisdiction, after confirmation of the Plan, over the rates of the Debtors, has approved any rate change provided for in the Plan, or such rate change is expressly conditioned on such approval.

7.      With respect to each class of impaired claims or equity interests:

(a)      each holder of a claim or interest of such class:

(i) has accepted the Plan; or

(ii) will receive or retain under the Plan on account of such claim or interest property of a value, as of the effective date of the Plan, that is not less than the amount that such holder would so receive or retain if the Plan Proponent were liquidated under Chapter 7 of the Bankruptcy Code on such date; or

(b)      if § 1111(b)(2) of the Bankruptcy Code applies to the claims of such class, the holder of a claim of such class will receive or retain under the Plan on account of such claim property of a value, as of the effective date of the Plan, that is not less than the value of such holder's interest in the estate's interest in the property that secured such claims.

8.      With respect to each class of claims or interests:

(a)      such class has accepted the Plan; or

(b)      such class is not impaired under the Plan;

9.      Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the Plan provides that:

(a)      with respect to a claim of a kind specified in § 507(a)(1) or § 507(a)(2) of the Bankruptcy Code, on the effective date of the Plan, the holder of such claim will receive on account of such claim cash equal to the allowed amount of such claim;

(b)     with respect to a class of claims of a kind specified in §§ 507(a)(3), 507(a)(4), 507(a)(5) or 507(a)(6) of the Bankruptcy Code, each holder of a claim of such class will receive:

(i)     if such class has accepted the Plan, deferred cash payments of a value, as of the effective date of the Plan, equal to the allowed amount of such claim; or

(ii)     if such class has not accepted the Plan, cash on the effective date of the Plan equal to the allowed amount of such claim; and

(c)     with respect to a claim of a kind specified in § 507(a)(8) of the Bankruptcy Code, the holder of a claim will receive on account of such claim deferred cash payments, over a period not exceeding six years after the date of assessment of such claim, of a value, as of the effective date of the Plan, equal to the allowed amount of such claim.

10.     If a class is impaired under the Plan, at least one class of claims that is impaired has accepted the Plan, determined without including any acceptance of the Plan by any insider.

11.     Confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the plan proponent or any successor to the plan proponent under the Plan, unless such liquidation or reorganization is proposed in the Plan.

The Debtors believe that the Plan satisfies all the statutory requirements of Chapter 11 of the Bankruptcy Code, that the Debtors have complied or will have complied with all of the requirements of Chapter 11, and that the proposal of the Plan is made in good faith.

The Debtors further believe that the holders of all Claims impaired under the Plan will receive payments or distributions under the Plan having a present value as of the Effective Date in amounts not less than the amounts likely to be received by such holders if the Debtors were liquidated in a case under Chapter 7 of the Bankruptcy Code.

Finally, as the Plan contemplates a sale of the Debtors' operating assets, the Debtors do not believe that the confirmation of the Plan will likely be followed by the need for further financial reorganization of the Debtors.

## 11.3    Cramdown.

In the event that any impaired class of Claims does not accept the Plan, the Bankruptcy Court may still confirm the Plan if, as to each impaired class which has not accepted the Plan, the Plan does not discriminate unfairly and is "fair and equitable."  A plan of reorganization does not discriminate unfairly within the meaning of the Bankruptcy Code if no class receives more than it is legally entitled to receive for its claims or equity interests.

"Fair and equitable" has different meanings with respect to the treatment of secured and unsecured claims.  As set forth in § 1129(b)(2) of the Bankruptcy Code, those meanings are as follows:

1.      With respect to a class of secured claims, the Plan provides:

(a)      (i) that the holders of such claims retain the liens securing such claims, whether the property subject to such liens is retained by the Plan Proponent or transferred to another entity, to the extent of the allowed amount of such claims; and

(ii) that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the Plan, of at least the value of such holder's interest in the estate's interest in such property;

(b)      for the sale, subject to § 363(k) of the Bankruptcy Code, of any property that is subject to the Liens securing such claims, free and clear of such liens, with such liens to attach to the proceeds of such sale, and the treatment of such liens on proceeds under clause (a) and (b) of this subparagraph; or

(c)      for the realization by such holders of the indubitable equivalent of such claims.

2.      With respect to a class of unsecured claims, the Plan provides:

(a)      that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the Plan, equal to the allowed amount of such claim; or

(b)      the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the Plan on account of such junior claim or interest any property.

3.      With respect to a class of interests, the Plan provides:

(a)      that each holder of an interest of such class receive or retain on account of such interest property of a value, as of the effective date of the Plan, equal to the greatest of the allowed amount of any fixed liquidation preference to which such holder is entitled, any fixed redemption price to which such holder is entitled, or the value of such interest; or

(b)      the holder of any interest that is junior to the interests of such class will not receive or retain under the Plan on account of such junior interest any property.

The Bankruptcy Court will determine at the Confirmation Hearing whether the Plan is fair and equitable with respect to, and does not discriminate unfairly against, any rejecting impaired class of Claims.  The Debtors believe that the Bankruptcy Court will find these requirements satisfactory and will confirm the Plan.

**11.4    Conditions Precedent to Effective Date.**

   **11.4.1**  The following are conditions precedent to the occurrence of the Effective Date: (i) the Confirmation Order, in a form and in substance reasonably satisfactory to the Debtors and Stock,   shall have been entered by the Bankruptcy Court; (ii) the form of all documents necessary or appropriate to give effect to the transactions contemplated under the Plan, if any, have been approved and executed; (iii) All documents and agreements necessary to implement the Stock Asset Purchase Agreement (or equivalent document should an Alternative Sale be approved) shall have (a) all conditions precedent to such documents and agreements satisfied or waived pursuant to the terms of such documents or agreements, (b) been tendered for delivery and (c) been effected or executed; (iv) all required consents, approvals, and authorizations, if any, have been obtained; (v) there shall be no stay of the Confirmation Order in effect; and (vi) all other actions, documents and agreements necessary to implement the Plan shall have been effected or executed.

   The Effective Date is defined in the Plan as the day selected by the Debtors and Stock that is no earlier that the first Business Day after (i) the date the Confirmation Order becomes a Final Order; and (ii) all conditions precedent specified above have been satisfied or waived.

**11.5    Annulment of Plan if Conditions Not Waived or Satisfied.**

   The Debtors, with the consent of Stock, reserve the right to waive any of the conditions precedent to the Effective Date.  If any of the conditions precedent are not waived, and are not satisfied within the specified time periods or can no longer occur, the Confirmation Order will be annulled and the Debtors and all parties in interest will return to the *status quo ante* immediately before the entry of the Confirmation Order.

**11.6    Retention of Jurisdiction by Bankruptcy Court.**

   The Court shall retain and have exclusive jurisdiction over these Chapter 11 Cases to the maximum extent provided by law for the follow purposes following the Confirmation Date: (a) to determine any and all objections to the allowance and classification of Claims or Interests; (b) to determine the validity and priority of any Lien; (c) to determine the Allowed Amount of any Claim, whether secured or unsecured; (d) to allow any and all applications for allowances of compensation and reimbursement of expenses payable from the estate; (e) to determine any and all applications or motions pending before the Court on the Effective Date of the Plan, including without limitation any motions for the rejection, assumption or assumption and assignment of any executory contract or unexpired lease; (f) to consider and approve any modification of the Plan, remedy any defect or omission or reconcile any inconsistency in the Plan, or any order of the Court, including the Confirmation Order; (g) to hear and determine all controversies, suits and disputes that may arise in connection with the interpretation, enforcement or consummation of the Plan, the Confirmation Order, the Stock Asset Purchase Agreement (or similar agreement in the event of an Alternative Sale), any transactions or payments contemplated hereby or any agreement, instrument or other document governing or related to any of the foregoing; (h) to consider and act on the compromise and settlement of any claim or cause of action by or against the Debtors; (i) to issue orders in aid of execution and implementation of the Plan and the Confirmation Order, to the extent authorized by 11 U.S.C. § 1142 or provided by the terms of the

Plan; and (j) to hear and determine matters concerning federal, state or local taxes in accordance with §§ 346, 505 or 1146 of the Bankruptcy Code.

In no event shall the provisions of the Plan be deemed to confer in the Bankruptcy Court jurisdiction greater than that established by the provisions of 28 U.S.C. §§ 157 and 1334.

## ARTICLE 12
## COMPROMISES AND SETTLEMENTS

**12.1    Effect of Confirmation Order.**

Pursuant to § 363 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distribution and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims, Interests and controversies resolved pursuant to the Plan, including, without limitation, all Claims arising prior to the Effective Date, whether known or unknown, foreseen or unforeseen, asserted or unasserted, arising out of, relating to or in connection with the business or affairs of, or transactions with, the Debtors.   The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the foregoing compromises or settlements, and all other compromises and settlements provided for in the Plan, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the Debtors, the Estates, Creditors and other parties in interest, and are fair, equitable and within the range of reasonableness.

## ARTICLE 13
## <u>MISCELLANEOUS PROVISIONS</u>

**13.1    Bar Date for Administrative Claims.**

No Administrative Claim, other than Professional Fees and United States Trustee fees, will be paid unless the holder of such Administrative Claim has filed an application for payment of such Administrative Claim on or before the Administrative Claim Bar Date.  Upon the filing of any application for payment, the entity seeking payment of an Administrative Claim shall provide notice by United States Mail in accordance with the Bankruptcy Rules.   Any Administrative Claim, other than Professional Fees and United States Trustee fees, not filed in accordance with this section shall be barred and the Debtors, the Reorganized Debtors, the Liquidating Trust and the Liquidating Trustee shall have no liability for payment of any such Administrative Claim.

**13.2    Objections to Administrative Claims.**

Objections to Applications for payment of Administrative Claims may be filed by any party in interest.  In order to be considered, such objections must be filed on or before the 21st day following the date on which the application was filed.  Any objections will be determined by the Bankruptcy Court.

**13.3     Payment of Professional Claims.**

Each holder of a Professional Fee Claim shall be paid in respect of such Professional Fee Claim in Cash, in full, on the Effective Date, or, if such Claim has not been approved by the Bankruptcy Court on or before the Effective Date, promptly after Bankruptcy Court approval of the Professional Fee Claim by a Final Order.  Final fee applications for any Professional Fee Claim that has not been approved as of the Effective Date shall be filed within forty-five (45) days of the Effective Date and such applications and objections thereto (if any) shall be filed in accordance with and comply in all respects with the Bankruptcy Code, the Bankruptcy Rules, applicable local rules, and the Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals entered by the Bankruptcy Court on September 2, 2009 [Docket No. 77].   The failure to file an application by the foregoing deadline shall constitute a waiver of all such Professional Fee Claim.

**13.4     Payment of United States Trustee Fees.**

Within thirty (30) days of the date that such payments are due, the Liquidating Trustee shall pay all amounts owing to the United States Trustee as fees and costs imposed in connection with these Chapter 11 Cases.

**13.5     No Substantive Consolidation.**

The Plan is a joint plan but does not provide for substantive consolidation of the Debtors or their Estates. On the Effective Date, the Estates shall not be deemed to be substantively consolidated for any purpose.  Except as specifically set forth in the Plan, nothing in the Plan, the Disclosure Statement or otherwise shall constitute or be deemed to constitute an admission that any one of the Debtors is subject to or liable for any Claim against any other Debtor.  Creditors holding Claims against multiple Debtors, to the extent Allowed in each Debtor's Chapter 11 Case, will be treated as holding a separate Claim against each Debtor, provided, however, that no holder of an Allowed Claim shall be entitled to receive more than payment in full of such Allowed Claim (plus post-petition interest, if and to the extent provided in the Plan), and such Claims will be administered and treated in the manner provided in the Plan.

**13.6     Employee Benefits Plans.**

Unless terminated earlier under the terms of the Stock Asset Purchase Agreement, prior to thirty (30) days after to the Effective Date, all Employee Benefit Plans shall be terminated in accordance with the applicable provisions of the state and federal law.  Neither Stock nor any purchaser under an Alternative Sale shall have any liability, including successor liability, for any obligations under any Employee Benefit Plan except as specifically provided in the Stock Asset Purchase Agreement (or the equivalent document should an alternative sale occur).   The Reorganized Debtors shall have no liability for any obligations under any Employee Benefit Plan.

**13.7     Satisfaction of Liabilities.**

The rights afforded in the Plan and the treatment of all Claims and Interests under the Plan shall be in exchange for and in complete satisfaction and release of all Claims and Interests of any nature whatsoever against the Debtors or any of their Estates, assets, properties, or interests in property.  None of the Debtors or the Reorganized Debtors shall be responsible for any pre-Effective Date obligations of the Debtors except those expressly assumed by the Reorganized Debtors.

**13.8     Warranty of Transfers from Liquidating Trust.**

All property, whether real or personal, to be transferred by the Liquidating Trustee on behalf of the Liquidating Trust to any person or entity under the Plan, is transferred "as is, where is," with no representation or warranty of any kind except that all transfers shall be transferred free and clear of all liens, claims and encumbrances pursuant to 11 U.S.C. § 363(f) and 11 U.S.C. § 1123(a)(5).

**13.9     Compliance with Tax Requirements.**

In connection with each distribution with respect to which the filing of an information return (such as an Internal Revenue Service Form 1099 or 1042) or withholding is required, the Liquidating Trustee shall file such information return with the Internal Revenue Service and provide any required statements in connection therewith to the recipients of such distribution or effect any such withholding and deposit all moneys so withheld as required by law.  With respect to any Person from whom a tax identification number, certified tax identification number or other tax information required by law to avoid withholding has not been received by the Liquidating Trustee within thirty (30) days from the date of such request, the Liquidating Trustee may, at its option, withhold the amount required and distribute the balance to such Person or decline to make such distribution until the information is received.

**13.10     Amendment of the Plan.**

Subject to the rights of Stock under the Stock Asset Purchase Agreement, the Plan may be amended or modified by the Debtors before, or by the Liquidating Trustee or the Reorganized Debtors after the Effective Date, as provided in § 1127 of the Bankruptcy Code.

**13.11     Timing of Distributions.**

Unless otherwise specified in the Plan, all payments and Distributions shall be made on a Payment Date determined by the Liquidating Trustee after consultation with the Post-Confirmation Committee.  When a provision of the Plan requires that a payment shall be made on a certain date, such payment may be made (i) at any time prior to the date on which such payment is due; (ii) in more frequent intervals than set forth in such provision of the Plan; or (iii) not more than 14 days after the date any such payment is due.  Notwithstanding the foregoing, no payment shall be considered late or otherwise result in a default unless the Liquidating Trustee has failed to make the payment after the passage of 30 days following the receipt by the

Liquidating Trustee of a written notice advising that a payment has not been received in accordance with the times set forth in this paragraph.

**13.12  Enforcement of Subordination Agreements/Settlement Agreements.**

Any written (i) subordination agreement between holders of Allowed Claims; and (ii) settlements approved by the Bankruptcy Court during these Chapter 11 Cases will be honored according to their terms for the purposes of distribution under the Plan.

**13.13  Right to Seek Further Orders.**

The Reorganized Debtors and the Liquidating Trustee, if and to the extent necessary, will seek such orders, judgments, injunctions, regulatory approvals, and rulings that may be required to carry out and further the intentions and purposes, and give full effect to the provisions, of the Plan.

**13.14  Intercompany Claims.**

All Intercompany Claims, if any, are waived, released and extinguished as of the Effective Date and shall receive no distributions under the Plan.

**13.15  Regulatory Approvals.**

As the Plan is not intended to modify or supplant any regulatory authority over the Debtors, the Reorganized Debtors or the Liquidating Trust, all regulatory approvals required in connection with the Plan will be sought and obtained.

**13.16  Withdrawal of Plan.**

Upon termination of the Stock Asset Purchase Agreement in accordance with its terms and satisfaction of the Debtors' obligations thereunder, if any, the Debtors reserve the right to withdraw the Plan at any time prior to the Confirmation Date. If the Debtors withdraw the Plan prior to the Confirmation Date, or if the Confirmation Date or the Effective Date does not occur, then the Plan shall be deemed null and void and the Debtors shall satisfy all obligations, if any, under the Purchaser Protection Order (as defined in the Stock Asset Purchase Agreement). In such event, nothing contained in the Plan or Disclosure Statement shall be deemed to constitute an admission, waiver or release of any Claims by or against the Debtors, the Estates or any other person, or to prejudice in any manner the rights of the Debtors, the Estates or any person in any further proceedings involving the Debtors.

**13.17  Due Authorization by Creditors.**

Each and every Creditor who elects to participate in the Distributions provided for under the Plan (i) warrants that it is authorized to accept in consideration of its Claim against the Debtors the Distributions provided for in the Plan; (ii) states that there are no outstanding commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights conveyed or obligations undertaken by it under the Plan; and (iii) indemnifies and holds harmless the Liquidating Trust, the Reorganized Debtors, the Post-

Confirmation Committee, the Liquidating Trustee and their professionals and representatives with respect to such Distributions.

**13.18   Filing of Additional Documentation.**

On or before the Effective Date, the Debtors may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

**13.19   Substantial Consummation.**

On the Effective Date, the Plan shall be deemed to be substantially consummated under Bankruptcy Code §§ 1101 and 1127(b).

**13.20   Further Effect of Confirmation.**

Confirmation of the Plan effects no settlement, compromise, waiver or release of any Claim or cause of action unless the Plan or the Confirmation Order specifically so provides.  The non-disclosure or non-discussion of any particular Claim or cause of action is not and shall not be construed as a settlement, compromise, waiver, or release of any such Claim or cause of action.

**13.21   Reservation of Claims.**

The Debtors, the Reorganized Debtors, the Liquidating Trust and the Liquidating Trustee reserve any and all claims and rights against any and all third parties, whether such claims and rights arose before, on or after the Petition Date, the Confirmation Date, the Effective Date, the Record Date and/or any Distribution Date, including, without limitation, any and all Claims and Causes of Action for relief that the Debtors, the Reorganized Debtors, the Liquidating Trust or the Liquidating Trustee may have against any director, officer, any insurer under any insurance policy, or any other person or entity.  The entry of the Confirmation Order shall not constitute res judicata or otherwise bar, estop or inhibit any actions by the Debtors, the Reorganized Debtors, the Liquidating Trust or the Liquidating Trustee relating to any Claims or Causes of Action.  The Liquidating Trustee shall constitute the representative of the Liquidating Trust for purposes of asserting and/or enforcing Claims and Causes of Action under § 1123(b)(3)(B) of the Bankruptcy Code.

**13.22   Dates.**

The provisions of Bankruptcy Rule 9006 shall govern the calculation of any dates or deadlines referenced in the Plan.

**13.23   Governing Law.**

Except to the extent that the Bankruptcy Code or Bankruptcy Rules are applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Texas, without giving effect to any conflicts of law principles.

### 13.24   Conflict.

Except as otherwise provided in the Plan, to the extent the Confirmation Order and/or the Plan are inconsistent with the Disclosure Statement, any other agreement entered into between the Debtors and any third party, the Plan controls the Disclosure Statement and any such agreements and the Confirmation Order (and any other orders of the Bankruptcy Court) controls the Plan.   To the extent that the Plan or the Confirmation Order conflicts with the Liquidating Trust Agreement, first, the Plan shall control the Liquidating Trustee Agreement and the Confirmation Order shall control the Plan.   To the extent the Stock Asset Purchase Agreement is inconsistent with the Disclosure Statement or any other agreement entered into between the Debtors and any third party, the Stock Asset Purchase Agreement shall control.

### 13.25   Setoffs.

The Liquidating Trustee may, but shall not be required to, set off against any Claims and the payments or Distributions to be made pursuant to the Plan in respect of such Claims, any and all debts, liabilities and claims of every type and nature whatsoever that the Estates or the Liquidating Trust may have against the Holder of any Claim, but neither the failure to do so nor the Allowance of any such Claims, whether pursuant to the Plan or otherwise, shall constitute a waiver or release by the Liquidating Trustee or the Liquidating Trust of any such claims they may have against such Holder of any Claim, and all such claims shall be reserved for and retained by the Liquidating Trustee.

### 13.26   Other Considerations.

The Plan affords holders of Claims the potential for the greatest realization on the Debtors' assets and, therefore, is in the best interests of such holders.   If the Plan is not confirmed, however, the theoretical alternatives include: (a) continuation of the Chapter 11 Cases; (b) alternative plans of reorganization/liquidation; (c) liquidation of the Debtors under Chapter 7 of the Bankruptcy Code; and (d) dismissal of the Chapter 11 Cases.

### 13.27   Feasibility of the Plan.

Pursuant to the Plan, the Debtors propose to sell all of the operating assets of the Debtors to Stock.   Upon consummation of the Stock Sale or Alternative Sale, the proceeds of the sale and all of the Debtors' remaining property, except for the Operational Real Property, will be transferred to the Liquidating Trust and administered by the Liquidating Trustee for the benefit of holders of Allowed Claims and Interests pursuant to the terms of the Plan.   Inasmuch as the Plan is based on the sale/liquidation of assets, the Plan is feasible.

### 13.28   Continuation of the Cases.

Upon consummation of the Stock Sale or Alternative Sale, the Debtors will cease operations, transfer all assets being administered under the Plan to the Liquidating Trust and retain the Operational Real Property.   There is no strategic or economic advantage to continuing these cases for any significant period of time.   To the contrary, the Debtors believe that in view of the current situation, Creditors will best be served by the rapid resolution of these bankruptcy cases.

**13.29   Alternative Plans of Reorganization.**

If the Plan is not confirmed, another party in interest in the case could attempt to formulate and propose a different plan or plans.  Such plans might, theoretically, involve some other form of reorganization or liquidation of the Debtors' operations and assets.  Any alternative plans, however, would likely result in additional administrative expenses to the estates and would provide little or no benefit.  The Plan proposed by the Debtors is straightforward, meets the requirements of § 1129 and provides the best outcome for Creditors.

**13.30   Liquidation under Chapter 7.**

The Debtors do not believe that the case should be converted to Chapter 7.  Conversion to Chapter 7 would result in the loss of the going concern value of the Debtors as well as the additional administrative expenses attributable to statutory trustee fees and professional fees for the trustee's professionals.  In a chapter 7 liquidation, the Debtors believe that all proceeds would go to Wells Fargo and that no payments would be made to other creditors.  To the contrary, under the Plan, there is a minimum of $18.6 million in cash that is unencumbered and available for the payment of administrative, priority and other unsecured claims.  If the true amount of Claims is close to that scheduled by the Debtors, General Unsecured Creditors could receive close to full payment on their claims.  If the true amount of claims is closer to the filed claims in the cases, General Unsecured Creditors could receive approximately 50% of their claims.  This is an estimate only and constitutes the Debtors' best guess based upon the data currently available.

**13.31   Risk Factors.**

Both failure to achieve confirmation of the Plan, and consummation of the Plan, are subject to certain risks.  First, the effectiveness of the Plan is contingent on closing the Stock Sale or Alternative Sale.   A number of factors can impact the closing of the Stock Sale/Alternative Sale, including factors that are outside of the Debtors' control.   While the Debtors believe that consummation of the Stock Sale is likely, there is always some risk involved in the type of transaction that is contemplated.

In addition, there are certain risks inherent in the liquidation and administration process under the Bankruptcy Code.  If certain standards set forth in the Bankruptcy Code are not met, the Bankruptcy Court will not confirm the Plan even if Creditors and Interest holders accept the Plan.  Although the Debtors believe that the Plan meets such standards, there can be no assurance that the Bankruptcy Court will reach the same conclusion.  If the Bankruptcy Court were to determine that such requirements were not met, it could require the Debtors to resolicit acceptances, which could delay and/or jeopardize confirmation of the Plan.  The Debtors believe that the solicitation of votes on the Plan will comply with § 1126(b) and that the Bankruptcy Court will confirm the Plan.  The Debtors cannot, however, provide assurance that modifications of the Plan will not be required to obtain confirmation of the Plan, or that such modifications will not require a resolicitation of acceptances.

**13.32  Taxation**.

### 13.32.1  Introduction.

The following discussion summarizes certain federal income tax consequences of the transactions described herein and in the Plan.  This discussion is for informational purposes only and does not constitute tax advice.  This summary is based upon the Internal Revenue Code and the Treasury Regulations promulgated thereunder, including judicial authority and current administrative rulings and practice as of the date of this Disclosure Statement and will not be updated for subsequent tax or factual developments.  Neither the impact on foreign holders of claims and equity interests nor the tax consequences of these transactions under state and local law is discussed.  Also, special tax considerations not discussed herein may be applicable to certain classes of taxpayers, such as financial institutions, broker-dealers, insurance companies, mutual funds, regulated investment companies, real estate investment trusts, trusts, S corporations, dealers and traders in securities and currencies, partnerships and other entities classified as partnerships for federal tax purposes and tax-exempt organizations.  Furthermore, due to the complexity of the transactions contemplated in the Plan, and the unsettled status of many of the tax issues involved, the tax consequences described below are subject to significant uncertainties including subsequent legislative and other tax changes.  No opinion of counsel has been obtained and no ruling has been requested from the Internal Revenue Service ("IRS") on these or any other tax issues.  There can be no assurance that the IRS will not challenge any or all of the tax consequences of the Plan, or that such a challenge, if asserted, would not be sustained.  **HOLDERS OF CLAIMS AGAINST AND EQUITY INTERESTS IN THE DEBTORS ARE THEREFORE URGED TO CONSULT WITH THEIR TAX ADVISORS REGARDING THE FEDERAL, STATE, LOCAL AND FOREIGN TAX CONSEQUENCES OF THE TRANSACTIONS DESCRIBED HEREIN AND IN THE PLAN.**

### 13.32.2  Tax Consequences to the Debtors.

The Debtors will realize cancellation of indebtedness ("COI") income in respect of each Claim generally in an amount equal to the excess, if any, of (i) the portion of the Claim (including accrued and previously deducted but unpaid interest) from which the Debtors are (or are deemed to be) discharged; and (ii) the sum of any cash or the "issue price," under the Internal Revenue Code of 1986 (the "Internal Revenue Code") §§ 1273(b) and 1274, of any debt obligations distributed under the Plan in discharge of such Claims.  The exact amount of COI income realized upon consummation of the Plan has not been finally determined. Under the Internal Revenue Code, a taxpayer is generally required to include COI income in gross income. COI income is not includable in gross income; however, if it occurs in a case under the Bankruptcy Code, provided the taxpayer is under the jurisdiction of a Court in such case and the cancellation of indebtedness is granted by the Court or is pursuant to a plan approved by the Court.  The Debtors' COI income, if any, resulting from the Plan should satisfy these requirements, and, therefore, should not result in recognition of gross income to the Debtors. COI income that is excluded from gross income will reduce certain tax attributes of the taxpayer, including net operating loss and S corporation losses suspended under Internal Revenue Code Section 1361(d) (hereinafter "NOLs") carryovers, capital loss carryovers and the tax basis of assets, in a specified order of priority beginning with the NOLs and NOL carryovers, unless the

taxpayer elects to have the reduction applied first to the tax basis of depreciable assets. The reduction of tax basis is limited to the excess of (i) the aggregate of the tax bases of the taxpayer's property (determined immediately after the discharge); and (ii) the aggregate liabilities of the taxpayer (determined immediately after the discharge). The exclusion for COI is deemed to occur immediately following the end of the Debtors' tax year, and not during the tax year, which can impact the consequences to the Debtors' shareholders particularly with respect to allocable net losses.

The Debtors will recognize gain or loss on the sale of assets to third parties equal to the sales price of such assets less the Debtors' adjusted tax basis in such properties. The sales price includes all indebtedness assumed by a buyer as well as all other consideration received by the Debtors. Additionally, since the Debtors are cash basis taxpayers any cash basis items such as accounts receivable and accounts payable which are sold will trigger recognition of the income, expense or capital expenditure attributable to each such item as if it had been satisfied for its fair market value. The amount and tax character of such all items will depend on the applicable facts and circumstances.

All such items of income, deduction, gain and loss will be allocable to the S corporation shareholders of Bison Holdings. The consequences of such allocations are dependant of the personal tax situation of each such person. However, the exclusion for COI discussed above is determined at the Bison Holdings S corporation level, and not at the shareholder level. COI income excluded by the Bison Holdings does not flow through to its shareholders and does not increase the shareholders' basis in their stock of Bison Holdings.

No cash is expected to be distributed to the shareholders of Bison Holdings to satisfy any federal income tax arising from such allocable net income or net gain. Accordingly, shareholders may be required to fund any income tax liability for net income and/or gain from Bison Holdings from other sources.

### 13.32.3    Tax Consequences to Creditors.

**In General**. The federal income tax consequences of the implementation of the Plan to a holder of a Claim will depend, among other things, on: (a) whether its Claim constitutes a debt or security for federal income tax purposes, (b) whether the Claimant receives consideration in more than one tax year, (c) whether the Claimant is a resident of the United States, (d) whether all the consideration by the Claimant is deemed to be received by that Claimant as part of an integrated transaction, (e) whether the Claimant utilizes the accrual or cash method of accounting for tax purposes, and (f) whether the holder has previously taken a bad debt deduction or worthless security deduction with respect to the Claim.

**Gain or Loss on Exchange**. Generally, a holder of an Allowed Claim will realize a gain or loss on the exchange under the Plan of his Allowed Claim for cash and other property in an amount equal to the difference between (i) the sum of the amount of any cash and the fair market value on the date of the exchange of any other property received by the holder (other than any consideration attributable to accrued but unpaid interest on the Allowed Claim), and (ii) the adjusted basis of the Allowed Claim exchanged therefore (other than basis attributable to accrued but unpaid interest previously included in the holder's taxable income). Any gain recognized generally will be a capital gain (except to the extent the gain is attributable to accrued but unpaid

interest or accrued market discount, as described below) if the Claim was a capital asset in the hand of an exchanging holder, and such gain would be a long-term capital gain if the holder's holding period for the Claim surrendered exceeded one (1) year at the time of the exchange.

The tax treatment of an Allowed Claim for accrued unpaid interest will depend on the Claimant's tax basis in such Claim, which primarily depends on whether the Claimant has previously recognized income for the accrual of such interest and/or recognized a loss with respect to same. Any such holders should consult with its tax advisor regarding the tax treatment of any such accrued unpaid interest.

Any loss recognized by a holder of an Allowed Claim will be a capital loss if the Claim constitutes a "security" for federal income tax purposes or is otherwise held as a capital asset. For this purpose, a "security" is a debt instrument with interest coupons or in registered form.

### 13.32.4    Preservation of Net Operating Loss and Tax Attributes.

Any net losses of Bison Holdings will be allocable to the shareholders and flow through proportionally to each shareholder to the extent of each such shareholder's adjusted tax basis in his stock and debt in the S corporation. Losses in excess of such amount are suspended and subject to reduction as a deemed NOL with respect to any COI as discussed above. Any such suspended losses not subject to attribute reduction under the COI rules carry forward indefinitely with respect to the shareholder initially allocated the loss, but generally not any subsequent or transferee shareholder.

### 13.32.5    Information Reporting and Backup Withholding.

Under the backup withholding rules of the Internal Revenue Code, holders of Claims may be subject to backup withholding with respect to payments made pursuant to the Plan unless such holder (i) is a corporation or comes within certain other exempt categories and, when required, demonstrates this fact, or (ii) provides a correct taxpayer identification number and certifies under penalties of perjury that the taxpayer identification number is correct and that the holder is not subject to backup withholding because of a failure to report all dividends and interest income. Any amount withheld under these rules will be credited against the holder's federal income tax liability. Holders of Claims may be required to establish exemption from backup withholding or to make arrangements with respect to the payment of backup withholding.

### 13.32.6    Importance of Obtaining Professional Assistance.

**THE FOREGOING IS INTENDED TO BE A SUMMARY ONLY AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING WITH A TAX PROFESSIONAL. THE FEDERAL, STATE, AND FOREIGN TAX CONSEQUENCES OF THE PLAN ARE COMPLEX AND, IN MANY AREAS, UNCERTAIN. TO COMPLY WITH TREASURY DEPARTMENT CIRCULAR 230, YOU ARE HEREBY NOTIFIED THAT (A) ANY DISCUSSION OF U.S. FEDERAL TAX ISSUES CONTAINED OR REFERRED TO IN THIS DISCLOSURE STATEMENT, THE PLAN OR ANY RELATED MATERIALS, IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED BY YOU, FOR THE PURPOSE OF AVOIDING PENALTIES THAT MAY BE IMPOSED ON YOU UNDER THE INTERNAL REVENUE CODE OF 1986, AS AMENDED; AND (B) ANY**

SUCH DISCUSSIONS ARE BEING USED ONLY IN CONNECTION WITH SATISFYING THE REQUIREMENTS IMPOSED UNDER THE BANKRUPTCY CODE FOR DISCLOSURE STATEMENTS, AND (C) YOU SHOULD SEEK ADVICE FROM AN INDEPENDENT TAX ADVISOR WITH RESPECT TO YOUR FEDERAL, STATE, LOCAL AND FOREIGN TAX CONSEQUENCES BASED ON YOUR PARTICULAR CIRCUMSTANCES.

## ARTICLE 14
## CAUSES OF ACTION

### 14.1   Preferences.

Under the Bankruptcy Code, the Debtors may recover certain preferential transfers of property, including cash, made while insolvent during the 90 days immediately prior to the filing of their bankruptcy petition with respect to pre-existing debts, to the extent the transferee received more than it would have in respect of the pre-existing debt had the Debtors been liquidated under Chapter 7 of the Bankruptcy Code.  In the case of "insiders," the Bankruptcy Code provides for a one-year preference period.  There are certain defenses to such recoveries. Transfers made in the ordinary course of the Debtors' and transferee's business according to the ordinary business terms in respect of debts less than 90 days before the filing of a bankruptcy are not recoverable.  Additionally, if the transferee extended credit subsequent to the transfer (and prior to the commencement of the bankruptcy case), such extension of credit may constitute a defense to recovery, to the extent of any new value, against an otherwise recoverable transfer of property.  If a transfer is recovered by the Debtors, the transferee has an Unsecured Claim to the extent of the recovery.   The Liquidating Trustee and the Post-Confirmation Committee reserve the right to bring preferential transfer claims.

### 14.2   Fraudulent Transfers.

Under the Bankruptcy Code and various state laws, the Debtors may recover certain transfers of property, including the grant of a security interest in property, made while insolvent or which rendered the Debtors insolvent.  The Liquidating Trustee and the Post-Confirmation Committee reserve the right to bring fraudulent conveyance claims.

The Debtors have conducted a limited analysis of potential recoveries under Chapter 5 of the Bankruptcy Code and concluded that potential claims may exist.  A list of the known payments are set forth in the Debtors' statements of financial affairs, which are incorporated herein.  Creditors and Interest Holders are advised that if they received a voidable transfer, they may be sued whether or not they vote to accept the Plan.  All avoidance actions and rights pursuant to §§ 506(c), 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, 552(b), 553 and 724 of the Bankruptcy Code and all causes of action under state, federal or other applicable law shall be retained and may be prosecuted or settled by the Liquidating Trustee/Post-Confirmation Committee in their sole discretion.  To the extent that material amounts are recovered, it will enhance the returns to the holders of Unsecured Claims.

## ARTICLE 15
## VOTING PROCEDURES AND REQUIREMENTS

**15.1    Ballots and Voting Deadline.**

A ballot to be used to vote to accept or reject the Plan is enclosed with this Disclosure Statement.  A Creditor who is voting must (1) carefully review the ballot and instructions thereon, (2) complete and execute the ballot indicating the Creditor's vote to either accept or reject the Plan, and (3) return the executed ballot to the address indicated thereon by the deadline specified by the Bankruptcy Court.

The Bankruptcy Court has directed that, to be counted for voting purposes, ballots for the acceptance or rejection of the Plan must be received by the Debtors no later than June 22, 2010.

If you hold an impaired Claim against the Debtors return your ballot to:

> DAVID R. JONES
> PORTER & HEDGES, L.L.P.
> 1000 MAIN STREET, 36TH FLOOR
> HOUSTON, TEXAS 77002
> PHONE: 713-226-6653
> FAX: 713-226-6253
> Email: djones@porterhedges.com

**TO BE COUNTED, YOUR BALLOT MUST BE RECEIVED
NO LATER THAN JUNE 22, 2010**

**15.2    Creditors Entitled to Vote.**

Any Creditor whose Claim is impaired under the Plan is entitled to vote, if either (i) the Debtors have scheduled its Claim on its Statement of Liabilities and such Claim is not scheduled as disputed, contingent or unliquidated, or (ii) such Creditor has filed a Proof of Claim on or before the last date set by the Bankruptcy Court for filing Proofs of Claim and no objection has been filed to such Claim.

Holders of Disputed Claims are not entitled to vote on the Plan.  Any Claim to which an objection has been filed and remains pending, is not entitled to vote unless the Bankruptcy Court, upon motion by the Creditor who holds a Disputed Claim, temporarily allows the Claim in an amount that it deems proper for accepting or rejecting the Plan.  Any such motion must be heard and determined by the Bankruptcy Court before the date established by the Bankruptcy Court as the final date to vote on the Plan.  In addition, a vote may be disregarded if the Bankruptcy Court determines that the acceptance or rejection of the Plan by the Creditor was not solicited or obtained in good faith or according to the provisions of the Bankruptcy Code.

Classes of Claims that are not impaired are deemed to have accepted a plan of reorganization pursuant to § 1126(f) and, therefore, are not entitled to vote on a plan.  Pursuant to § 1126, only classes of claims or interests that are "impaired" are entitled to vote on a plan of

reorganization. Generally, a claim is impaired if the plan of reorganization alters the legal, equitable, or contractual rights to which the holder of such claim is otherwise entitled.

## 15.3   Voting Procedures.

Unless otherwise directed by the Bankruptcy Court, all questions as to the validity, form, eligibility (including time of receipt), acceptance, revocation, or withdrawal of Ballots will be determined by the Debtors, in their sole discretion, and the Debtors' determination will be final and binding. The Debtors also reserve the right to reject any Ballot not in proper form, the acceptance of which would, in the opinion of the Debtors or their counsel, be unlawful. The Debtors further reserve the right to waive any defects or irregularities or conditions or delivery as to any particular Ballot. The interpretation by the Debtors of the provisions of this Disclosure Statement and the Ballots will be final and binding on all parties in interest unless otherwise directed by the Bankruptcy Court. Unless waived, any defects or irregularities concerning deliveries of Ballots must be cured within such time as the Debtors (or the Bankruptcy Court) determine. Neither the Debtors nor any other Person will be under any duty to provide notification of defects or irregularities with respect to deliveries of Ballots nor will any of them incur any liability for failure to provide such notification. Unless otherwise directed by the Bankruptcy Court, delivery of Ballots will not be deemed to have been made and will be invalidated unless or until all defects and irregularities have been timely cured or waived.

## 15.4   Vote Required for Class Acceptance.

The Bankruptcy Code defines acceptance of a chapter 11 plan by a class of Claims as the acceptance by holders of at least two-thirds (2/3) in dollar amount and more than one-half in number of the allowed Claims of the class actually voting to accept or reject the proposed plan.

The Bankruptcy Code defines acceptance of a chapter 11 plan by a class of Interests as the acceptance by holders of at least two-thirds (2/3) in amount of the allowed Interests in the class actually voting to accept or reject the proposed plan.

## 15.5   Cramdown and Withdrawal of the Plan.

If the Plan is not accepted by all classes of impaired Creditors, the Debtors reserve the right to withdraw the Plan. If the Plan is accepted by one or more Classes of impaired Creditors of the Debtors, the Debtors reserve the right to request the Bankruptcy Court to approve the Plan under 11 U.S.C. § 1129(b).

**THE DEBTORS STRONGLY URGE ALL IMPAIRED CREDITORS TO VOTE TO ACCEPT THE PLAN**.

*Remainder of Page is Intentionally Left Blank*

**Date: May 27, 2010.**

**BISON BUILDING MATERIALS, L.L.C.**

By:  ___/s Pat W. Bierschwale_____
Name:  Pat W. Bierschwale
Title:    President

**BISON BUILDING HOLDINGS, INC.**

By:  ___/s Pat W. Bierschwale_____
Name:  Pat W. Bierschwale
Title:    President

**BISON BUILDING GP, INC.**

By:  ___/s Pat W. Bierschwale_____
Name:  Pat W. Bierschwale
Title:    President

**HLBM COMPANY**

By:  ___/s Pat W. Bierschwale_____
Name:  Pat W. Bierschwale
Title:    _____

**MILLTECH, INC.**

By:  ___/s Pat W. Bierschwale_____
Name:  Pat W. Bierschwale
Title:    _____

**BISON BUILDING MATERIALS NEVADA, LLC**

By:  ___/s Pat W. Bierschwale_____
Name:  Pat W. Bierschwale
Title:    Sole Member

**BISON MULTI-FAMILY SALES, LLC**

By:  ___/s Pat W. Bierschwale_____
Name:  Pat W. Bierschwale
Title:    Member

**BISON CONSTRUCTION SERVICES, LLC**

By:  ___/s Pat W. Bierschwale_____
Name:  Pat W. Bierschwale
Title: Member

# **<u>SCHEDULE 1</u>**

**MOR-1**

UNITED STATES BANKRUPTCY COURT

CASE NAME: Bison Building Holdings, Inc., et al (Bison Building Materials, LLC
CASE NUMBER: 09-34452-H2-11 (Chapter 11 - Jointly Administered)
PROPOSED PLAN DATE: Undetermined

PETITION DATE: June 28, 2009
DISTRICT OF TEXAS: Southern
DIVISION: Houston

### MONTHLY OPERATING REPORT SUMMARY FOR MONTH

| MONTH | June 28-July 31, 2009 | August 31, 2009 | September 30, 2009 | October 31, 2009 | April November 30, 2009 | YEAR December 31, 2009 | 2010 January 31, 2010 | February 28, 2010 | March 31, 2010 | April 30, 2010 |
|---|---|---|---|---|---|---|---|---|---|---|
| REVENUES (MOR-6) | 12,452,160 | 10,907,991 | 10,238,386 | 9,260,015 | 7,823,454 | 7,818,861 | 8,786,274 | 9,639,051 | 12,452,320 | 12,961,207 |
| INCOME BEFORE INT. DEPREC./TAX (MOR-6) | (212,391) | (147,731) | (65,229) | (252,988) | (170,138) | (112,551) | (340,469) | (460,227) | (103,468) | (238,040) |
| NET INCOME (LOSS) (MOR-6) | (834,373) | (577,657) | (433,989) | (659,023) | (506,038) | (457,887) | (628,869) | (753,542) | (677,414) | (909,474) |
| PAYMENTS TO INSIDERS (MOR-9) | 31,763 | 31,763 | 31,763 | 31,073 | 31,073 | 31,073 | 31,073 | 53,079 | 31,656 | 31,656 |
| PAYMENTS TO PROFESSIONALS (MOR-9) | - | - | 61,992 | 50,837 | 52,953 | 139,282 | 25,000 | 65,269 | 102,432 | 52,760 |
| TOTAL DISBURSEMENTS (MOR-8) | 11,177,745 | 11,547,210 | 10,304,433 | 10,923,986 | 9,234,550 | 7,866,938 | 7,533,347 | 9,883,301 | 14,163,830 | 13,999,539 |

***The original of this document must be filed with the United States Bankruptcy Court and a copy must be sent to the United States Trustee***

REQUIRED INSURANCE MAINTAINED
AS OF SIGNATURE DATE

| | EXP. DATE | |
|---|---|---|
| CASUALTY | YES ( x ) NO ( ) | _9_-_1_-_1Q_ |
| LIABILITY | YES ( x ) NO ( ) | _9_-_1_-_1Q_ |
| VEHICLE | YES ( x ) NO ( ) | _9_-_1_-_1Q_ |
| WORKERS | YES ( x ) NO ( ) | See (2) |
| OTHER | YES ( ) NO ( x ) | |

Are all accounts receivable being collected within terms?  CIRCLE ONE  Yes / **No**
Are all post-petition liabilities, including taxes, being paid within terms?  **Yes** / No
Have any pre-petition liabilities been paid?   See (1)  **Yes** / No   See (4)
    If so, describe
Are all funds received being deposited into DIP bank accounts?  **Yes** / No
Were any assets disposed of outside the normal course of business?  **Yes** / No
    If so, describe   See (3)
Are all U.S. Trustee Quarterly Fee Payments current?  **Yes** / No
What is the status of your Plan of Reorganization?   to be determined

I certify under penalty of perjury that the following complete Monthly Operating Report (MOR), consisting of MOR-1 through MOR-9 plus attachments, is true and correct.

SIGNED X _____  TITLE: Interim CFO
(ORIGINAL SIGNATURE)
Harley C. Robinson
(PRINT NAME OF SIGNATORY)
DATE 5/19/2010

ATTORNEY NAME: David Jones
FIRM NAME: Porter & Hedges, LLP
ADDRESS: 1000 Main Street, 36th Floor
CITY, STATE, ZIP: Houston, Texas 77002
TELEPHONE/FAX: (713) 226-6853 / (713) 226-6253

**MOR-1**
Revised 07/01/98

(1) Prepetition liabilities including employee wages, sales commissions, employee benefits, sales tax, payroll taxes, 503 b(9) claims and customer refunds were paid pursuant to court order.

(2) Debtor is a non-subscriber to Workers' Compensation in Texas. Instead, the Debtor maintains a self-funded workplace injury plan with an excess liability policy covering any injury in which plan benefits exceed $500,000. The anniversary date of Debtor's excess policy is October 29, 2010.

(3) Pursuant to court order, Debtor rejected a capital lease on a vehicle and returned it to the lessor. The book value of this asset was removed from Debtor's books. Also, pursuant to court order, Debtor sold 2 excess vehicles for $8,800 in October. In December, Debtor sold 3 vehicles and Production Equipment in accordance with the Order Authorizing Procedure for Miscellaneous Asset Sales. In January, Debtor rejected certain capital leases and the assets were removed from the books. In April, Debtor sold assets from its Beaumont facility pursuant to court order.

(4) While the Debtors continue to pay substantially all of their post-petition liabilities according to terms, certain ad valorem and other miscellaneous taxes and expenses that are not provided for in the Debtors' DIP budget will be delt with under the Debtors' Chapter 11 Plan of Reorganization.

CASE NAME: Bison Building Holdings, Inc., et al Bison Building Materials, LLC
CASE NUMBER 09-34452-H2-11 (Chapter 11 - Jointly Administered)

COMPARATIVE BALANCE SHEETS
FILING DATE: Note 1-

| ASSETS | MONTH June 28, 2009 | MONTH July 31, 2009 | MONTH August 31, 2009 | MONTH September 30, 2009 | MONTH October 31, 2009 | MONTH November 30, 2009 | MONTH December 31, 2009 | MONTH January 31, 2010 | MONTH February 28, 2010 | MONTH March 31, 2010 | MONTH April 30, 2010 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| CURRENT ASSETS | | | | | | | | | | | |
| Cash- Note 2 | $ 439,390 | $ 402,272 | $ 1,821,547 | $ 504,080 | $ 1,128,382 | $ 465,060 | $ 253,657 | $ 364,250 | $ 844,572 | $ 540,514 | $ 655,883 |
| Accounts Receivable, Net | 14,261,024 | 13,600,770 | 13,135,101 | 13,260,902 | 12,348,341 | 10,772,221 | 9,889,695 | 12,139,036 | 13,794,877 | 14,316,135 | 15,666,447 |
| Inventory: Lower of Cost or Market | 16,113,211 | 16,469,816 | 15,768,816 | 15,265,256 | 15,756,825 | 15,280,647 | 14,926,699 | 14,940,895 | 15,260,922 | 15,759,154 | 15,994,220 |
| Prepaid Expenses | 331,045 | 316,617 | 289,427 | 171,583 | 184,673 | 186,658 | 83,623 | 84,651 | 17,542 | 284,624 | 133,913 |
| Investments | 3,113,572 | 3,113,572 | 3,113,572 | 3,113,572 | 3,113,572 | 3,113,572 | 3,113,572 | 3,113,572 | 3,113,572 | 3,113,572 | 3,113,572 |
| Other | 675,444 | 802,037 | 854,324 | 981,074 | 1,002,670 | 1,144,452 | 1,240,495 | 1,361,354 | 1,525,934 | 1,591,546 | 1,702,777 |
| TOTAL CURRENT ASSETS | 34,934,786 | 34,705,084 | 34,982,787 | 33,296,467 | 33,534,463 | 30,962,610 | 29,507,741 | 32,004,058 | 34,557,419 | 35,605,545 | 37,266,812 |
| PROPERTY, PLANT & EQUIP. @ COST | 34,705,084 | 34,740,983 | 34,740,983 | 34,725,057 | 34,495,727 | 34,507,826 | 34,374,999 | 34,110,392 | 34,034,605 | 34,040,710 | 33,912,002 |
| Less Accumulated Depreciation | 21,134,857 | 21,242,925 | 21,343,681 | 21,428,581 | 21,329,199 | 21,428,088 | 21,417,984 | 21,387,135 | 21,440,139 | 21,539,742 | 21,567,651 |
| NET BOOK VALUE OF PP & E | 13,606,126 | 13,498,058 | 13,397,302 | 13,296,476 | 13,166,528 | 13,079,738 | 12,957,015 | 12,723,257 | 12,594,466 | 12,500,968 | 12,344,351 |
| OTHER ASSETS | | | | | | | | | | | |
| 1. Tax Deposits | 146,385 | 146,385 | 146,385 | 146,385 | 146,385 | 146,365 | 146,365 | 146,365 | 146,365 | 146,365 | 146,365 |
| 2. Intercompany receivable from Bison companies | 43,816,999 | 43,635,699 | 43,632,038 | 43,569,264 | 43,573,040 | 43,567,632 | 43,473,088 | 43,480,466 | 43,242,167 | 43,240,171 | 43,224,923 |
| 3. Deposits | 388,566 | 388,566 | 417,769 | 416,471 | 409,018 | 402,253 | 399,298 | 399,298 | 406,055 | 414,113 | 413,530 |
| 4. Deferred Charges | 246,374 | 244,933 | 243,492 | 242,051 | 240,610 | 239,170 | 237,729 | 236,288 | 234,847 | 233,407 | 231,966 |
| TOTAL ASSETS | $ 93,139,236 | $ 92,618,725 | $ 92,819,773 | $ 90,967,094 | $ 91,070,024 | $ 88,397,768 | $ 86,721,236 | $ 88,989,732 | $ 91,181,319 | $ 92,140,569 | $ 93,627,947 |

* Per Schedules and Statement of Affairs

MOR-2

Revised 07/01/98

Note 1- These balances are based upon a reverse reconciliation of the Debtor's books as of June 30, 2009. This reconciliation continues and further adjustments may be made in subsequent MOR's.

Note 2- These balances include cash balances from other inactive Bison company Debtors as reflected on their individual MOR's.

CASE NAME: Bison Building Holdings, Inc., et al Bison Building Materials, LLC
CASE NUMBER: 09-34452-H2-11 (Chapter 11 - Jointly Administered)

COMPARATIVE BALANCE SHEETS

| LIABILITIES & OWNER'S EQUITY | FILING DATE-Note 1* June 28, 2009 | MONTH July 31, 2009 | MONTH August 31, 2009 | MONTH September 30, 2009 | MONTH October 31, 2009 | MONTH November 30, 2009 | MONTH December 31, 2009 | MONTH January 31, 2010 | MONTH February 28, 2010 | MONTH March 31, 2010 | MONTH April 30, 2010 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **LIABILITIES** | | | | | | | | | | | |
| POST-PETITION LIABILITIES(MOR-4) | $ 15,269,829 | $ 17,589,533 | $ 16,264,760 | 16,913,547 | 14,938,165 | 13,720,992 | $ 16,868,609 | $ 19,806,261 | $ 19,806,261 | 21,686,739 | $ 24,160,072 |
| PRE-PETITION LIABILITIES | | | | | | | | | | | |
| Notes Payable - Secured | 37,334,866 | 23,621,553 | 22,080,555 | 22,097,756 | 22,071,446 | 22,087,426 | 22,085,599 | 22,033,242 | 22,040,458 | 22,034,166 | 22,033,693 |
| Priority Debt-Note 4 | 2,407,087 | 1,257,106 | 1,257,106 | 1,257,106 | 1,257,106 | 1,257,106 | 1,257,106 | 1,257,106 | 1,257,106 | 1,056,203 | 1,042,744 |
| Federal Income Tax | | | | | | | | | | | |
| FICA/Withholding | 92,674 | | | | | | | | | | |
| Unsecured Debt- Notes 2, 3, and 5 | 11,965,512 | 11,965,512 | 11,965,512 | 11,854,394 | 11,894,469 | 11,687,653 | 11,688,009 | 11,690,144 | 11,690,405 | 11,653,786 | 11,651,237 |
| Other | | | | | | | | | | | |
| TOTAL PRE-PETITION LIABILITIES | 51,800,139 | 36,844,171 | 35,303,173 | 35,209,256 | 35,223,021 | 35,032,185 | 35,030,714 | 34,980,492 | 34,987,969 | 34,744,155 | 34,727,674 |
| TOTAL LIABILITIES | 51,800,139 | 52,114,000 | 52,892,706 | 51,474,016 | 52,136,568 | 49,970,350 | 48,751,706 | 51,849,101 | 54,794,230 | 56,430,894 | 58,887,746 |
| OWNER'S EQUITY (DEFICIT) | | | | | | | | | | | |
| PREFERRED STOCK | | | | | | | | | | | |
| COMMON STOCK | 3,918,149 | 3,918,149 | 3,918,149 | 3,918,149 | 3,918,149 | 3,918,149 | 3,918,149 | 3,918,149 | 3,918,149 | 3,918,149 | 3,918,149 |
| ADDITIONAL PAID-IN CAPITAL | | | | | | | | | | | |
| RETAINED EARNINGS: Filing Date | 37,420,948 | 37,420,948 | 37,420,948 | 37,420,948 | 37,420,948 | 37,420,948 | 37,420,948 | 37,420,948 | 37,420,948 | 37,420,948 | 37,420,948 |
| RETAINED EARNINGS: Post Filing Date | | (834,373) | (1,412,030) | (1,846,019) | (2,405,641) | (2,911,679) | (3,369,567) | (4,198,466) | (4,953,008) | (5,629,422) | (6,598,896) |
| TOTAL OWNER'S EQUITY (NET WORTH) | 41,339,097 | 40,504,724 | 39,927,067 | 39,493,078 | 38,933,456 | 38,427,418 | 37,969,530 | 37,140,631 | 36,387,089 | 35,709,675 | 34,740,201 |
| TOTAL LIABILITIES & OWNERS EQUITY | $ 93,139,236 | $ 92,618,725 | $ 92,819,773 | 90,967,094 | 91,070,024 | 88,397,768 | 86,721,236 | $ 88,989,732 | $ 91,181,319 | 92,140,569 | $ 93,627,947 |

MOR-3

* Per Schedules and Statement of Affairs

Revised 07/01/98

Note 1--These balances are based upon a reverse reconciliation of the Debtor's books as of June 30, 2009. This reconciliation continues and further adjustments may be made in subsequent MORs.

Note 2--These balances do not include any lease related claims. Previously reported balances for June and July have been increased by $435,942 to reflect prepetition invoices received in August.

Note 3-- Previously reported balances for June, July and August have been reduced by $689,377. This amount was determined to be the Unsecured Debt of Bison Multi-Family Sales, LLC and its books have been adjusted to reflect this liability.

Note 4-- In reconciling Accrued Medical Claims and Accrued Vacation accounts which, at date of filing, amount to $103,800 and $97,103, respectively, Debtor determined that these amounts had been misclassified as Pre-Petition liabilities. Pursuant to court order, Debtor was allowed to pay Pre-Petition employee wages and benefits. Therefore, these amounts have been reclassified as Post Petition liabilities.

Note 5-- In reconciling Accrued Legal and Accounting account, Debtor reduced Pre Petition liabilities in March to reflect an agreement with outside accountants to forgive their Pre Petition claims.

CASE NAME:  Bison Building Holdings, Inc., et al Bison Building Materials, LLC
CASE NUMBE (09-34452-H2-11 (Chapter 11 - Jointly Administered)

SCHEDULE OF POST-PETITION LIABILITIES

| | MONTH July 31, 2009 | MONTH August 31, 2009 | MONTH September 30, 2009 | MONTH October 31, 2009 | MONTH November 30, 2009 | MONTH December 31, 2009 | MONTH January 31, 2010 | MONTH February 28, 2010 | MONTH March 31, 2010 | MONTH April 30, 2010 |
|---|---|---|---|---|---|---|---|---|---|---|
| TRADE ACCOUNTS PAYABLE | $ 3,914,383 | $ 2,899,301 | $ 2,086,716 | $ 2,854,486 | $ 1,838,979 | $ 1,907,883 | $ 4,168,788 | $ 5,309,347 | $ 3,487,029 | $ 5,482,408 |
| TAX PAYABLE | | | | | | | | | | |
| Federal Payroll Taxes | 111,884 | 111,543 | 66,450 | 96,708 | 92,184 | 32,303 | 100,289 | 116,218 | 81,460 | 63,168 |
| State Payroll Taxes | 3,478 | 6,312 | 8,562 | 1,821 | 2,335 | 2,590 | 74,091 | 160,313 | 225,928 | 52,323 |
| Ad Valorem Taxes | 95,588 | 183,575 | 271,562 | 271,562 | 271,562 | 271,562 | 341,659 | 411,130 | 473,467 | 544,326 |
| Other Taxes-Sales | 516,526 | 526,364 | 521,113 | 479,330 | 416,256 | 426,323 | 466,741 | 558,154 | 639,564 | 635,800 |
| TOTAL TAXES PAYABLE | 727,476 | 827,794 | 867,687 | 849,421 | 782,337 | 732,778 | 982,780 | 1,245,815 | 1,420,419 | 1,295,617 |
| SECURED DEBT POST-PETITION-Note 1 | 9,818,453 | 12,719,050 | 11,968,181 | 12,397,760 | 11,581,778 | 10,395,228 | 10,804,753 | 12,553,880 | 14,086,120 | 15,678,274 |
| ACCRUED INTEREST PAYABLE | 93,658 | 66,906 | 65,136 | 67,819 | 64,215 | 63,055 | 60,698 | 55,500 | 61,446 | 65,837 |
| ACCRUED PROFESSIONAL FEES* | | | | | | | | | | |
| OTHER ACCRUED LIABILITIES | | | | | | | | | | |
| 1. Accounts Payable Accrual | 259,420 | 496,930 | 598,403 | 281,929 | 290,647 | 317,720 | 427,243 | 218,974 | 1,890,892 | 1,039,503 |
| 2. Accrued Payroll | 441,231 | 579,552 | 678,637 | 462,132 | 380,209 | 304,328 | 424,347 | 422,745 | 740,833 | 598,433 |
| 3. Accrued Payroll Deductions | 15,208 | | | | | | | | | |
| TOTAL POST-PETITION LIABILITIES (MOR-3) | $ 15,269,829 | $ 17,589,533 | $ 16,264,760 | $ 16,913,547 | $ 14,938,165 | $ 13,720,992 | $ 16,868,699 | $ 19,806,261 | $ 21,686,739 | $ 24,160,072 |

MOR-4

Revised 07/01/98

Note 1--Amounts are the balance of the Revolving Line of Credit under Post Petition DIP Financing Agreement

*Payment requires Court Approval

CASE NAME: Bison Building Holdings, Inc., et al Bison Building Materials, LLC
CASE NUMBER: 09-34452-H2-11 (Chapter 11 - Jointly Administered)

AGING OF POST-PETITION LIABILITIES
MONTH    April 30, 2010

| DAYS | TOTAL | TRADE ACCOUNTS--Note 1 | FEDERAL TAXES | STATE TAXES | AD VALOREM. OTHER TAXES | SALES TAX |
|---|---|---|---|---|---|---|
| 0-30 | $ 6,592,553 | $ 5,296,936 | $ 63,168 | $ 52,323 | $ 544,326 | $ 635,800 |
| 31-60 | 100,336 | 100,336 | | | | |
| 61-90 | 121,341 | 121,341 | | | | |
| 91+ | (36,205) | (36,205) | | | | |
| TOTAL | $ 6,778,025 | $ 5,482,408 | $ 63,168 | $ 52,323 | $ 544,326 | $ 635,800 |

AGING OF ACCOUNTS RECEIVABLE--Note 2

| MONTH | July 31, 2009 | August 31, 2009 | September 30, 2009 | October 31, 2009 | November 30, 2009 | December 31, 2009 | January 31, 2010 | February 28, 2010 | March 31, 2010 | April 30, 2010 |
|---|---|---|---|---|---|---|---|---|---|---|
| 0-30 DAYS | $ 12,038,587 | $ 11,778,901 | $ 11,680,164 | $ 10,877,108 | $ 9,174,179 | $ 8,245,542 | $ 10,783,099 | $ 12,455,233 | $ 13,038,302 | $ 14,630,638 |
| 31-60 DAYS | 439,672 | 416,079 | 321,935 | 526,062 | 598,051 | 485,443 | 415,502 | 511,435 | 321,512 | 210,112 |
| 61-90 DAYS | 256,455 | 109,468 | 167,064 | 107,387 | 203,440 | 229,937 | 149,243 | 95,670 | 306,762 | 174,861 |
| 91+ DAYS | 1,459,248 | 1,395,480 | 1,394,930 | 1,384,041 | 1,384,587 | 1,475,809 | 1,519,187 | 1,492,425 | 1,423,529 | 1,418,953 |
| TOTAL | $ 14,193,962 | $ 13,699,928 | $ 13,564,094 | $ 12,894,598 | $ 11,360,257 | $ 10,436,731 | $ 12,867,031 | $ 14,554,763 | $ 15,090,105 | $ 16,434,565 |

MOR-5

Revised 07/01/98

Note 1--Trade Accounts over 60 Days are primarily disputed invoices and charges for equipment leases which will be delt with in Debtors Chapter 11 Plan of Reorganization.

Note 2--Total Aged Accounts Receivable differ from the Accounts Receivable balance on the Balance Sheet because a Reserve for Bad Debts and customer deposits reduce the balance sheet amount.

CASE NAME:   Bisno Building Holdings, Inc., et al Bisno Building Materials, LLC
CASE NUMBER:   09-34452-H3-11 (Chapter 11 - Jointly Administered)

**STATEMENT OF INCOME (LOSS)**

| | MONTH June 29-July1, 2009 | MONTH August 31, 2009 | MONTH September 30, 2009 | MONTH October 31, 2009 | MONTH November 30, 2009 | MONTH December 31, 2009 | MONTH January 31, 2009 | February 28, 2010 | March 31, 2010 | April 30, 2010 | FILING TO DATE |
|---|---|---|---|---|---|---|---|---|---|---|---|
| REVENUES (MOR-1) | $ 12,452,160 | $ 10,907,983 | $ 10,238,396 | $ 9,250,015 | $ 7,623,454 | $ 7,618,801 | $ 8,786,274 | $ 9,639,651 | $ 12,452,320 | $ 12,961,207 | $ 101,930,319 |
| TOTAL COST OF REVENUES | 9,411,742 | 7,903,954 | 7,304,141 | 6,841,753 | 5,319,633 | 5,379,937 | 6,536,270 | 7,468,101 | 9,674,650 | 10,172,122 | 75,612,343 |
| GROSS PROFIT | 3,040,418 | 3,004,027 | 2,934,255 | 2,808,262 | 2,303,841 | 2,238,864 | 2,250,004 | 2,171,550 | 2,777,670 | 2,789,085 | 26,317,976 |
| OPERATING EXPENSES: | | | | | | | | | | | |
| Selling & Marketing | | | | | | | | | | | $ — |
| General & Administrative | 3,221,047 | 3,119,996 | 2,935,730 | 2,979,538 | 2,341,780 | 2,221,391 | 2,534,400 | 2,473,429 | 2,747,069 | 2,942,701 | 27,517,080 |
| Insiders Compensation | 31,763 | 31,763 | 31,763 | 31,073 | 31,073 | 31,073 | 31,073 | 53,079 | 31,656 | 31,656 | 335,970 |
| Professional Fees*** - Note 4 | | 61,992 | 50,639 | 110,126 | 98,951 | 25,080 | 95,269 | 102,432 | 52,768 | 597,178 | |
| Other | | | | | | | | | | | $ — |
| Other | | | | | | | | | | | $ — |
| TOTAL OPERATING EXPENSES | 3,252,809 | 3,151,758 | 3,029,484 | 3,061,250 | 2,482,979 | 2,351,415 | 2,590,473 | 2,621,777 | 2,881,158 | 3,027,125 | 28,450,228 |
| INCOME BEFORE INT, DEPR/TAX (MOR-1) | (212,391) | (147,731) | (95,229) | (252,988) | (179,138) | (112,551) | (340,469) | (450,227) | (103,488) | (238,040) | (2,132,252) |
| INTEREST EXPENSE | 238,672 | 222,081 | 223,660 | 226,366 | 221,944 | 230,883 | 218,331 | 208,628 | 220,757 | 224,255 | 2,227,777 |
| DEPRECIATION | 146,027 | 104,734 | 104,734 | 104,734 | 98,889 | 108,404 | 126,893 | 99,603 | 99,603 | 96,070 | 1,090,591 |
| OTHER (INCOME) EXPENSE* | (50,768) | (29,532) | (42,226) | (41,518) | (39,252) | (29,504) | (4,781) | (68,481) | 48,872 | (22,121) | (287,291) |
| OTHER ITEMS* | 286,671 | 132,643 | 50,592 | 17,053 | 45,319 | 45,553 | 143,787 | 65,545 | 212,694 | 432,330 | 1,434,190 |
| TOTAL INT, DEPR & OTHER ITEMS | 620,604 | 429,926 | 336,760 | 306,635 | 326,900 | 345,336 | 488,430 | 303,315 | 573,926 | 731,434 | 4,465,266 |
| NET INCOME BEFORE TAXES | (832,995) | (577,657) | (433,989) | (559,623) | (506,038) | (457,887) | (828,899) | (753,542) | (677,414) | (969,474) | (6,597,518) |
| FEDERAL INCOME TAXES | 1,378 | | | | | | | | | | 1,378 |
| NET INCOME (LOSS) (MOR-1) | $ (834,373) | $ (577,657) | $ (433,989) | $ (559,623) | $ (506,038) | $ (457,887) | $ (828,899) | $ (753,542) | $ (677,414) | $ (969,474) | $ (6,598,896) |

Accrual Accounting Required, Otherwise Footnote with Explanation.
* Footnote Mandatory.
** Unusual and/or infrequent item(s) outside the ordinary course of business requires footnote
MOR-6

Note 1-These balances, in part, are based upon a reverse reconciliation of the Debtor's books as of June 30, 2009. This reconciliation continues and further adjustments may be made in subsequent MORs.

**Footnotes:**

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| * OTHER INCOME | $ 2,803 | $ 2,583 | $ 2,666 | $ 1,374 | $ 2,358 | $ 2,054 | $ 6,561 | $ 2,255 | $ 2,712 | 3,119 | |
| * PURCHASE DISC. TAKEN | 29,296 | 12,990 | 36,875 | 39,789 | 35,549 | 26,688 | 23,626 | 65,259 | 70,206 | 48,017 | |
| * INTEREST INCOME | 12,659 | | | | | | | | | | |
| * OTHER INCOME MISC(I) | 6,008 | (6,044) | 2,745 | 355 | 1,345 | 782 | 5,759 | 947 | 572 | 780 | |
| * Prior Period Expenses | | | | | | | | | (114,342) | (29,795) | |
| OTHER EXPENSES MISCELL - Note 3 | | | | | | | | (1,165) | | | |
| TOTAL | $ 50,768 | $ 29,532 | $ 42,226 | $ 41,518 | $ 39,252 | $ 29,504 | 4,781 | $ 68,461 | $ (40,872) | $ 22,121 | |

Note 2-Debtor reported various equipment leases in October and, pursuant to court order, removed the equipment to lessors. Certain of these were Capital Leases and the removal of these assets from Debtor's books and the elimination of the related Capital Lease liabilities resulted in a book gain. Also, pursuant to court order, Debtor sold 2 vehicles in October which resulted in a book gain as well. Debtor had Production Line Equipment and 3 vehicles in November. Debtor's Accounting Procedures for Miscellaneous Asset Sale... Also, in reconciling Debtors Property, Plant and Equipment account it was determined that a $85 truck with a net book value of $7,563 was sold for $6,500 in May, '09, prior to filing...

| ** SH/T DOWN COSTS | $ (92,903) | $ (48,592) | $ 11,408 | (2,032) | (915) | 2,965 | (1,442) | (5,412) | (105,282) | (184,801) | |
| ** RENT - DISCONTINUED | (7,597) | | | | | | | | (8,850) | (8,650) | |
| ** REORGANIZATION FEES | (186,171) | (84,051) | (62,000) | (32,762) | (44,484) | (55,093) | (137,133) | (49,417) | (98,762) | (195,712) | |
| ** GAIN ON DISPOSITION OF ASSETS - Note 2 | | | | 17,704 | | | (9,194) | (8,716) | | 143,103 | |
| TOTAL | $ (286,671) | $ (132,643) | $ (50,592) | $ (17,053) | $ (45,319) | $ (45,553) | $ (147,787) | $ (63,545) | $ (212,694) | $ (432,330) | |

*** Professional Fees accrued but unpaid in November
Professional Fees expensed and paid in November per MOR 9
*** Professional Fees paid in December per MOR7

Note 3 - In reconciling the fixed asset accounts several assets that had been disposed of pre petition but not removed from Debtors books, were identified. These assets were removed from the books in January 2010 resulting in a loss of $14,145.

Note 4 - Amounts shown in January and February represent a correction to prior month MORs.

Note 5 - This amount includes a correction, in the amount of $100,000, to a prior Prepaid Expense which should have been expensed prior to the filing date.

Revised 07/01/08

CASE NAME:  Bison Building Holdings, Inc., et al  Bison Building Materials, LLC
CASE NUMBER:  09-34452-HCM-11 (Chapter 11 – Jointly Administered)

| CASH RECEIPTS AND DISBURSEMENTS | June 28-July 31, 2009 Note 1 | August 1, 2009 | MONTH September 30, 2009 | MONTH October 31, 2009 | MONTH November 30, 2009 | MONTH December 31, 2009 | MONTH January 31, 2010 | MONTH February 28, 2010 | MONTH March 31, 2010 | MONTH April 30, 2010 | MONTH | FILING TO DATE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. CASH BEGINNING OF MONTH | $ 439,390 | $ (1,349,664) | $ 274,649 | $ (169,504) | $ 84,877 | $ (357,157) | $ (425,344) | $ (634,301) | $ 38,561 | $ 87,017 | | $ 439,390 |
| RECEIPTS: | | | | | | | | | | | | |
| 2. CASH SALES | 1,000,912 | 1,012,365 | 944,251 | 875,056 | 852,066 | 755,657 | 753,882 | 765,888 | 1,181,763 | 958,017 | | 9,098,876 |
| 3. COLLECTION OF ACCOUNTS RECEIVABLE | 12,382,924 | 10,970,808 | 9,783,709 | 8,797,780 | 8,265,666 | 6,242,762 | 8,013,146 | 11,528,520 | 11,591,437 | | | 97,397,009 |
| 4. LOANS & ADVANCES (attach list) | | | | | | | | | | | | |
| 5. SALE OF ASSETS-Note 4 | 93,407 | 50,916 | 9,142 | 8,800 | 33,987 | 22,800 | 4,500 | 18,400 | | 12,199 | | 66,699 |
| 6. OTHER (attach list) – primarily COBRA payments | | | | 110,373 | | 60,268 | 16,313 | 97,550 | 54,092 | 37,272 | | 563,319 |
| TOTAL RECEIPTS | 13,477,243 | 12,033,289 | 10,737,102 | 10,817,286 | 9,685,832 | 9,102,391 | 7,016,457 | 8,894,984 | 12,764,375 | 12,598,945 | | 107,125,902 |
| Borrowings/Loan Payback on DIP Line of Credit | (4,098,551) | 1,138,233 | (876,822) | 361,081 | (891,316) | (1,283,639) | 307,933 | 1,661,180 | 1,467,911 | 1,484,385 | | (719,606) |
| DISBURSEMENTS | | | | | | | | | | | | |
| 7. NET PAYROLL | 1,577,052 | 1,322,777 | 1,327,009 | 1,542,985 | 1,190,266 | 1,189,579 | 1,063,951 | 1,160,750 | 1,192,505 | 1,536,809 | | 13,103,653 |
| 8. PAYROLL TAXES PAID | 460,815 | 421,928 | 443,070 | 442,956 | 382,401 | 413,107 | 314,636 | 480,259 | 454,140 | 765,506 | | 4,498,819 |
| 9. SALES, USE & OTHER TAXES PAID | 524,414 | 537,999 | 518,972 | 512,642 | 469,409 | 408,099 | 412,763 | 452,999 | 537,700 | 613,221 | | 5,008,418 |
| 10. SECURED/RENTAL/LEASES | 78,800 | 107,573 | 251,314 | 90,670 | 348,499 | 210,588 | 276,395 | 107,139 | 372,036 | 93,842 | | 1,936,955 |
| 11. UTILITIES & TELEPHONE | | 39,936 | 108,573 | 74,178 | 60,125 | 47,069 | 28,468 | 81,527 | 114,410 | 49,236 | | 603,523 |
| 12. INSURANCE | 396,106 | 69,510 | 70,296 | 120,152 | 68,624 | 69,433 | 77,671 | 69,433 | 11,331 | 47,895 | | 1,000,451 |
| 13. INVENTORY PURCHASES | 7,652,829 | 8,061,437 | 6,515,905 | 7,065,213 | 5,802,318 | 4,697,553 | 4,557,679 | 6,754,513 | 10,444,706 | 9,823,713 | | 71,355,868 |
| 14. VEHICLE EXPENSES | 169,946 | 291,687 | 217,198 | 205,062 | 120,962 | 158,075 | 183,079 | 178,357 | 283,905 | 291,717 | | 2,099,988 |
| 15. TRAVEL & ENTERTAINMENT | 133 | 411 | | | | | | | | 770 | | 1,315 |
| 16. REPAIRS, MAINTENANCE & SUPPLIES | 49,265 | 26,607 | 62,161 | 41,743 | 17,713 | 48,912 | 28,130 | 36,518 | 45,271 | 59,165 | | 415,485 |
| 17. ADMINISTRATIVE & SELLING | 197,119 | 590,787 | 690,798 | 718,206 | 655,843 | 456,451 | 475,754 | 496,385 | 600,801 | 608,679 | | 5,490,821 |
| 18. OTHER (attach list) – primarily credit card & bank fees | 88,350 | 75,907 | 37,145 | 27,294 | 65,437 | 48,181 | 57,545 | 50,551 | 23,822 | 14,715 | | 488,946 |
| TOTAL DISBURSEMENTS FROM OPERATIONS | 11,174,929 | 11,546,560 | 10,242,441 | 10,841,072 | 9,181,597 | 7,747,646 | 7,476,072 | 9,788,032 | 14,081,397 | 13,924,497 | | 106,004,342 |
| 19. PROFESSIONAL FEES - Note 2 | 1,950 | | 61,992 | 50,639 | 52,953 | 139,292 | 25,000 | 95,269 | 102,432 | 52,768 | | 580,345 |
| 20. U.S. TRUSTEE FEES | 8,866 | 650 | | 32,275 | | | 32,275 | | | 22,275 | | 89,425 |
| 21. OTHER REORGANIZATION EXPENSES (attach list) – Note 5 | | | | | | | | | | | | 866 |
| TOTAL DISBURSEMENTS | 11,177,745 | 11,547,210 | 10,304,433 | 10,923,986 | 9,234,550 | 7,886,938 | 7,533,347 | 9,883,301 | 14,183,830 | 13,999,539 | | 106,674,878 |
| 22. NET CASH FLOW | (1,789,053) | 1,624,312 | (444,153) | 254,381 | (442,034) | (68,187) | (208,957) | 672,863 | (48,456) | 83,791 | | (268,582) |
| 23. CASH - END OF MONTH (MOR-2) | (1,349,664) | 274,649 | (169,504) | 84,877 | (357,157) | (425,344) | (634,301) | 38,561 | 87,017 | 170,808 | | 170,808 |
| | 1,751,936 | 1,546,898 | 673,584 | 1,043,505 | 822,217 | 679,001 | 998,851 | 806,011 | 453,497 | 485,075 | | |
| Note 3 | $ 402,272 | $ 1,821,547 | $ 504,080 | $ 1,126,382 | $ 465,060 | $ 253,657 | $ 364,550 | $ 844,572 | $ 540,514 | $ 655,883 | | |

Note 1 – These balances are based, in part, upon a reverse reconciliation of the Debtor's books as of June 26, 2009. This reconciliation continues and further adjustments may be made in subsequent MOR's.

Note 2 – In August, Debtor reported Professional Fees of $X/X/X. These fees were not Professional Fees and have been properly reclassified as Administrative & Selling Expenses in this MOR.

Note 3 – It is the Accounting Policy of the Debtor to add back to Cash and Accounts Payable, checks in process of clearing (outstanding checks) on its Financial Statements.

Note 4 – Pursuant to court order, Debtor sold 2 vehicles in October which resulted in a gain of $3,000. In December and January, Debtor sold Production Line equipment, 3 trucks and various safety equipment in accordance with Court Authorizing Procedure for Miscellaneous Asset Sales. In February, Debtor returned $15,000 in trucks which were actually sold profiting but never removed from the books

Note 5 – Payments of $25,000 in January and $15,000 in February are retainer payments to the Debtor's investment banking firm, WoodStock & Co., which was approved by court order.

* Applies to individual debtors only
** Numbers for the current month should balance (match)
RECEIPTS and CHECKS/OTHER DISBURSEMENTS lines on MOR-3

MOR-7

Revised 07/01/08

CASE NAME: Bison Building Holdings, Inc., et al Bison Building Materials, LLC
CASE NUMBER: 09-34452-H2-11 (Chapter 11 - Jointly Administered)

## CASH ACCOUNT RECONCILIATION
### MONTH OF April 30, 2010

| BANK NAME | Wachovia Bank | Wachovia Bank | Wachovia Bank | Wachovia Bank | Wachovia Bank | Wachovia Bank | Wachovia Bank | |
|---|---|---|---|---|---|---|---|---|
| ACCOUNT NUMBER | # 200001831617 | # 207900475214 | # 2000018530395 | # 207900474671 | # 2000018529986 | # 2000018530078 | # 2000018331620 | |
| ACCOUNT TYPE | OPERATING | PAYROLL | Receipts | Accounts Payable | Medical | Occupational | Scholarship | TOTAL |
| BANK BALANCE | $ 902 | $ - | $ - | $ - | $ 38,832 | $ 63,709 | $ 21,794 | $ 125,236 |
| DEPOSITS IN TRANSIT | | | 610,830 | | | | | 610,830 |
| OUTSTANDING CHECKS | 72,398 | (193,167) | | (209,106) | 30,489 | 60,098 | | 565,259 |
| ADJUSTED BANK BALANCE | (71,497) | (193,167) | 610,830 | (209,106) | 8,343 | 3,610 | 21,794 | 170,808 |
| BEGINNING CASH - PER BOOKS: Note 1 | (74,783) | 45,535 | 535,031 | (400,046) | (46,614) | 6,607 | 21,287 | 87,017 |
| RECEIPTS* | - | 969 | 12,597,469 | - | - | - | 507 | 12,598,945 |
| TRANSFERS BETWEEN ACCOUNTS | (5,321,778) | 1,323,133 | (0) | 3,770,976 | 216,052 | 11,617 | - | (0) |
| BORROWING/(PAYBACKS) REVOLVING LINE OF CREDIT | 14,055,141 | 0 | (12,570,756) | - | - | - | - | 1,484,385 |
| CHECKS/OTHER DISBURSEMENTS* | 8,730,076 | 1,562,804 | (49,087) | 3,580,037 | 161,096 | 14,614 | - | 13,999,539 |
| ENDING CASH - PER BOOKS | $ (71,497) | $ (193,167) | $ 610,830 | $ (209,106) | $ 8,343 | $ 3,610 | $ 21,794 | $ 170,808 |
| | 0.00 | - | 0 | (0) | (0) | - | - | 485,075 |
| | | | | | | | Note 2 | $655,883 |

**MOR-8**

*Numbers should balance (match) TOTAL RECEIPTS and TOTAL DISBURSEMENTS lines on MOR-7

Note 1– These balances are based, in part, upon a reverse reconciliation of the Debtor's books as of June 30, 2009. This reconciliation continues and further
adjustments may be made in subsequent MOR's.

Note 2– It is the Accounting Policy of the Debtor to add back to Cash and Accounts Payable, checks in process of clearing (outstanding checks) on its Financial Statements.

*Revised 07/01/98*

CASE NAME:   Bison Building Holdings, Inc., et al Bison Building Materials, LLC
CASE NUMBER:   09-34452-H2-11 (Chapter 11 - Jointly Administered)

# PAYMENTS TO INSIDERS AND PROFESSIONALS

Of the total disbursements shown for the month, list the amount paid to insiders (as defined in Section 101(31)(A)-(F) of the U.S. Bankruptcy Code) and the professionals.
Also, for insiders, identify the type of compensation paid (e.g., salary, commission, bonus, etc.). (Attach additional pages as necessary).

| INSIDERS: NAME/COMP TYPE | | MONTH July 31, 2009 | MONTH August 31, 2009 | MONTH September 30, 2009 | MONTH October 31, 2009 | MONTH November 30, 2009 | MONTH December 31, 2009 | MONTH January 31, 2010 | MONTH February 28, 2010 | MONTH March 31, 2010 | MONTH April 30, 2010 | MONTH |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Pat W. Bierschwale | Salary | $ 15,065 | $ 15,065 | $ 15,065 | $ 15,065 | $ 15,065 | $ 15,065 | 15,065 | 15,065 | 15,065 | 15,065 | |
| 2. Patrick Bierschwale | Salary | 4,003 | 4,003 | 4,003 | 4,003 | 4,003 | 4,003 | 4,003 | 4,295 | 4,586 | 4,586 | |
| 3. Tom Tolleson | Salary | 12,005 | 12,005 | 12,005 | 12,005 | 12,005 | 12,005 | 12,005 | 12,005 | 12,005 | 12,005 | |
| 4. Glendora McLean | Salary | 690 | 690 | 690 | - | | | | | | | |
| 5. Investors Trucks, Ltd ** | Lease pmt. | | | | | | | | 2,777 | | | |
| 6. Investors Trucks II, LLC ** | Lease pmt. | | | | | | | | 17,378 | | | |
| 7. Old Bastrop Road, Ltd ** | Lease pmt. | | | | | | | | 1,560 | | | |
| TOTAL INSIDERS (MOR-1) | | $ 31,763 | $ 31,763 | $ 31,763 | $ 31,073 | $ 31,073 | $ 31,073 | 31,073 | 53,079 | 31,656 | 31,656 | $0.00 |

** -- Entity owned by Pat Bierschwale. Leases are for equipment used by the Debtor. Prior to February lease payments were accrued but not paid. Payments were resumed in February, 2010.

| PROFESSIONALS | MONTH July 31, 2009 | MONTH August 31, 2009 | MONTH September 30, 2009 | MONTH October 31, 2009 | MONTH November 30, 2009 | MONTH December 31, 2009 | MONTH January 31, 2010 | MONTH February 28, 2010 | MONTH March 31, 2010 | MONTH April 30, 2010 | MONTH |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Porter & Hedges, LLP Trust--Bison companies bankruptcy counsel | | | $ 40,000 | $ 36,974 | $ 20,501 | $ 67,218 | 0.00 | 0.00 | 44,550 | 28,828 | |
| 2. Miller Canfield Paddock and Stone--counsel to Unsecured Creditors Committee | | | 21,992 | 13,663 | 18,246 | 37,744 | 0.00 | 12,754 | 8,789 | 8,939 | |
| 3. Andrews,Myers,Coulter & Hayes | | | | | 14,206 | 34,330 | 0.00 | 0 | | | |
| 4. Gainer,Donnelly & Desroches-- Note 2 | | | | | | | | 67,515 | 33,452 | | |
| 5. Woodrock & Co.-- Note 2 | | | | | | | 25,000 | 15,000 | 15,642 | 15,000 | |
| 6. | | | | | | | | | | | |
| TOTAL PROFESSIONALS - (MOR-1) | $0.00 | $0.00 | $ 61,992 | $ 50,657 | $ 52,953 | $ 139,292 | $25,000 | $ 95,269 | $ 102,432 | $ 52,768 | $0.00 |

**MOR-9**

Note -- The employment of all Professionals receiving compensation was approved by the Bankruptcy Court and their payments were made in accordance with the Motion
   Establishing the Procedure for the Compensation of Professionals

Note 2 -- Amounts shown in January and February represent a correction to prior months MORs

Revised 07/01/98   Revised 07/01/98   Revised 07/01/98   Revised 07/01/98   Revised 07/01/98

**UNITED STATES BANKRUPTCY COURT**

**MOR-1**

CASE NAME: Bison Building Holdings, Inc., et al Bison Construction Services, LLC
CASE NUMBER: 09-34452-H2-11 (Chapter 11 - Jointly Administered)
PROPOSED PLAN DATE: Undetermined

PETITION DATE: June 28, 2009
DISTRICT OF TEXAS: Southern
DIVISION: Houston

### MONTHLY OPERATING REPORT SUMMARY FOR MONTH

| MONTH | June 28-July 31, 2009 | August 31, 2009 | September 30, 2009 | October 31, 2009 (April) | November 30, 2009 | December 31, 2009 (YEAR) | January 31, 2010 | February 28, 2010 (2010) | March 31, 2010 | April 30, 2010 |
|---|---|---|---|---|---|---|---|---|---|---|
| REVENUES (MOR-6) | 0 | 17,982 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| INCOME BEFORE INT. DEPREC./TAX (MOR-6) | (17,819) | 16,686 | (2,616) | (325) | 0 | 0 | 0 | (325) | 0 | (325) |
| NET INCOME (LOSS) (MOR-6) | (17,819) | 16,686 | (2,616) | (325) | 0 | 0 | 0 | (325) | 0 | (325) |
| PAYMENTS TO INSIDERS (MOR-9) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| PAYMENTS TO PROFESSIONALS (MOR-9) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| TOTAL DISBURSEMENTS (MOR-9) | 0 | 0 | 0 | 325 | 0 | 0 | 0 | 325 | 0 | 325 |

***The original of this document must be filed with the United States Bankruptcy Court and a copy must be sent to the United States Trustee***

**REQUIRED INSURANCE MAINTAINED AS OF SIGNATURE DATE**

| | | EXP. DATE |
|---|---|---|
| CASUALTY | YES ( x ) NO ( ) | 9/1/2010 |
| LIABILITY | YES ( x ) NO ( ) | 9/1/2010 |
| VEHICLE | YES ( x ) NO ( ) | 9/1/2010 |
| WORKERS | YES ( ) NO ( x ) | Note 1 |
| OTHER | YES ( ) NO ( x ) | |

Circle one

Are all accounts receivable being collected within terms?   Yes   No
Are all post-petition liabilities, including taxes, being paid within terms?   Yes   No
Have any pre-petition liabilities been paid?   Yes   No
If so, describe
Are all funds received being deposited into DIP bank accounts?   Yes   No
Were any assets disposed of outside the normal course of business?   Yes   No
If so, describe
Are all U.S. Trustee Quarterly Fee Payments current?   Yes   No
What is the status of your Plan of Reorganization? _to be determined_

I certify under penalty of perjury that the following complete Monthly Operating Report (MOR), consisting of MOR-1 through MOR-9 plus attachments, is true and correct.

SIGNED x _[signature]_   TITLE: Graham CEO
(PRINCIPAL SIGNATURE)

Hartley C. Robinson         5/13/2010
(PRINT NAME OF SIGNATORY)         DATE

ATTORNEY NAME: David Jones
FIRM NAME: Porter & Hedges, LLP
ADDRESS: 1000 Main Street, 36th Floor
Houston, Texas 77002
CITY, STATE, ZIP: Houston, Texas 77002
TELEPHONE/FAX: (713) 226-6653 / (713) 226-6253

MOR-1         Revised 07/01/98

Note 1--This company uses one independent contractor and has no employees. Therefore, no Worker's Compensation Insurance is carried.

CASE NAME:   Bison Building Holdings, Inc., et al Bison Construction Services, LLC
CASE NUMBER:   09-34452-H2-11 (Chapter 11 – Jointly Administered)

## COMPARATIVE BALANCE SHEETS

| ASSETS | FILING DATE* Note 1 | MONTH | MONTH | MONTH | MONTH | MONTH | MONTH | MONTH | MONTH | MONTH | MONTH |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | June 28, 2009 | July 31, 2009 | August 31, 2009 | September 30, 2009 | October 31, 2009 | November 30, 2009 | December 31, 2009 | January 31, 2010 | February 28, 2010 | March 31, 2010 | April 30, 2010 |
| **CURRENT ASSETS** | | | | | | | | | | | |
| Cash–Note 2 | 0 | 18,279 | 18,279 | 98,776 | 98,452 | 98,452 | 98,452 | 98,127 | 98,127 | 98,127 | 97,802 |
| Accounts Receivable Net – Note 3 | 93,773 | 93,476 | 93,476 | 12,979 | 12,979 | 12,979 | 12,979 | 12,979 | 12,979 | 12,979 | 12,979 |
| Inventory: Lower of Cost or Market | | | | | | | | | | | |
| Prepaid Expenses | 4,812 | 3,657 | 3,657 | 3,657 | 3,657 | 3,657 | 3,657 | 3,657 | 3,657 | 3,657 | 3,657 |
| Investments | 0 | 0 | | | | | | | | | |
| Other | | | | | | | | | | | |
| TOTAL CURRENT ASSETS | 98,585 | 115,412 | 115,412 | 115,412 | 115,088 | 115,088 | 115,088 | 114,763 | 114,763 | 114,763 | 114,438 |
| PROPERTY, PLANT & EQUIP. @ COST | | | | | | | | | | | |
| Less Accumulated Depreciation | | | | | | | | | | | |
| NET BOOK VALUE OF PP & E | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **OTHER ASSETS** | | | | | | | | | | | |
| 1. Tax Deposits | | | | | | | | | | | |
| 2. Investments in Subsidiaries | | | | | | | | | | | |
| 3. Electric Deposit | | | | | | | | | | | |
| 4. | | | | | | | | | | | |
| TOTAL ASSETS | 98,585 | 115,412 | 115,412 | 115,412 | 115,088 | 115,088 | 115,088 | 114,763 | 114,763 | 114,763 | 114,438 |

* Per Schedules and Statement of Affairs

*Revised 07/01/98*

**MOR-2**

**Note 1**—These balances are based upon a reverse reconciliation of the Debtor's books as of June 30, 2009. This reconciliation continues and further adjustments may be made in subsequent MORs.

**Note 2**—Cash represents the reconciliation of accounts receivable which were deposited into Bison Building Materials LLC bank account in accordance with the Debtor's prepetition practice.

**Note 3**—Accounts Receivable at August 31, 2009, were primarily for retainage due to the Debtor and its subcontractor. The Debtor received its portion of retainage in Septembe and the remaining accounts receivable in September and thereafter, amounting to $12,979, is retainage due Debtor's subcontractor, which is not collectable.

CASE NAME: Bison Building Holdings, Inc., et al Bison Construction Services, LLC
CASE NUMBER: 09-34452-H2-11 (Chapter 11 - Jointly Administered)

## COMPARATIVE BALANCE SHEETS

| LIABILITIES & OWNER'S EQUITY | FILING DATE* Note 1 June 28, 2009 | MONTH July 31, 2009 | MONTH August 31, 2009 | MONTH September 30, 2009 | MONTH October 31, 2009 | MONTH November 30, 2009 | MONTH December 31, 2009 | MONTH January 31, 2010 | MONTH February 28, 2010 | MONTH March 31, 2010 | MONTH April 30, 2010 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **LIABILITIES** | | | | | | | | | | | |
| POST-PETITION LIABILITIES (MOR-4) | | 16,664 | 17,960 | 20,576 | 20,576 | 20,576 | 20,576 | 20,576 | 20,576 | 20,576 | 20,576 |
| PRE-PETITION LIABILITIES | | | | | | | | | | | |
| Notes Payable - Secured | | | | | | | | | | | |
| Priority Debt | | | | | | | | | | | |
| Federal Income Tax | | | | | | | | | | | |
| FICA Withholding | | | | | | | | | | | |
| Unsecured Debt | | | | | | | | | | | |
| Other - Note 2 | 305,645 | 305,645 | 305,645 | 305,645 | 305,645 | 305,645 | 305,645 | 305,645 | 305,645 | 305,645 | 305,645 |
| **TOTAL PRE-PETITION LIABILITIES** | 305,645 | 305,645 | 305,645 | 305,645 | 305,645 | 305,645 | 305,645 | 305,645 | 305,645 | 305,645 | 305,645 |
| **TOTAL LIABILITIES** | 305,645 | 322,309 | 323,605 | 326,221 | 326,221 | 326,221 | 326,221 | 326,221 | 326,221 | 326,221 | 326,221 |
| **OWNER'S EQUITY (DEFICIT)** | | | | | | | | | | | |
| PREFERRED STOCK | | | | | | | | | | | |
| COMMON STOCK | | | | | | | | | | | |
| ADDITIONAL PAID-IN CAPITAL | (207,060) | (207,060) | (207,060) | (207,060) | (207,059) | (207,059) | (207,059) | (207,059) | (207,059) | (207,059) | (207,059) |
| RETAINED EARNINGS- Filing Date | | (17,819) | | | | | | | | | |
| RETAINED EARNINGS- Post-Filing Date | | | (1,133) | (3,749) | (4,074) | (4,074) | (4,074) | (4,399) | (4,399) | (4,399) | (4,724) |
| **TOTAL OWNERS EQUITY/UNIT WORTH** | (207,060) | (224,879) | (208,193) | (210,809) | (211,133) | (211,133) | (211,133) | (211,458) | (211,458) | (211,458) | (211,783) |
| **TOTAL LIABILITIES & OWNERS EQUITY** | 98,585 | 97,430 | 115,412 | 115,412 | 115,088 | 115,088 | 115,088 | 114,763 | 114,763 | 114,763 | 114,438 |

\* Per Schedules and Statement of Affairs

Revised 07/01/08

MOR-3

Note 1- These balances are based upon a reverse reconciliation of the Debtor's books as of June 30, 2009. This reconciliation continues and further adjustments may be made in subsequent MORs.

Note 2 - Intercompany balance with Bison Building Materials LLC

Case 09-34452   Document 527   Filed in TXSB on 05/21/10   Page 4 of 9

CASE NAME: Bison Building Holdings, Inc., et al Bison Construction Services, LLC
CASE NUMBER: 09-34452-H2-11 (Chapter 11 - Jointly Administered)

## SCHEDULE OF POST-PETITION LIABILITIES

| | MONTH July 31, 2009 | MONTH August 31, 2009 | MONTH September 30, 2009 | MONTH October 31, 2009 | MONTH November 30, 2009 | MONTH December 31, 2009 | MONTH January 31, 2010 | MONTH February 28, 2010 | MONTH March 31, 2010 | MONTH April 30, 2010 |
|---|---|---|---|---|---|---|---|---|---|---|
| *TRADE ACCOUNTS PAYABLE* | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| TAX PAYABLE | | | | | | | | | | |
| Federal Payroll Taxes | | | | | | | | | | |
| State Payroll Taxes | | | | | | | | | | |
| Ad Valorem Taxes | | | | | | | | | | |
| Other Taxes | | | | | | | | | | |
| TOTAL TAXES PAYABLE | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| SECURED DEBT POST-PETITION | | | | | | | | | | |
| ACCRUED INTEREST PAYABLE | | | | | | | | | | |
| ACCRUED PROFESSIONAL FEES* | | | | | | | | | | |
| OTHER ACCRUED LIABILITIES | | | | | | | | | | |
| 1. Intercompany payable to Bison Building Materials LLC | 16,664 | 17,960 | 20,576 | 20,576 | 20,576 | 20,576 | 20,576 | 20,576 | 20,576 | 20,576 |
| 2. | | | | | | | | | | |
| 3. | | | | | | | | | | |
| TOTAL POST-PETITION LIABILITIES (MOR-3) | 16,664 | 17,960 | 20,576 | 20,576 | 20,576 | 20,576 | 20,576 | 20,576 | 20,576 | 20,576 |

*Payment requires Court Approval

**MOR-4**

*Revised 07/01/98*

CASE NAME:   Bison Building Holdings, Inc.. et al Bison Construction Services, LLC
CASE NUMBER: 09-34452-H2-11 (Chapter 11 - Jointly Administered)

**AGING OF POST-PETITION LIABILITIES**
**MONTH   April 30, 2010**

| DAYS | TOTAL | TRADE ACCOUNTS | FEDERAL TAXES | STATE TAXES | AD VALOREM, OTHER TAXES | Intercompany | MONTH |
|---|---|---|---|---|---|---|---|
| 0-30 | $ - | | | | | | |
| 31-60 | $ - | | | | | | |
| 61-90 | $ - | | | | | | |
| 91+ | $ 20,576 | | | | | 20,576 | Note 1 |
| TOTAL | $ 20,576 | $0.00 | | $0.00 | $0.00 | 20,576 | |

**AGING OF ACCOUNTS RECEIVABLE**

| MONTH | August 31, 2009 | September 30, 2009 | October 31, 2009 | November 30, 2009 | December 31, 2009 | January 31, 2010 | February 28, 2010 | March 31, 2010 | April 30, 2010 |
|---|---|---|---|---|---|---|---|---|---|
| 0-30 DAYS | 34,270 | 0 | | | | | | | |
| 31-60 DAYS | 0 | 12,979 | | | | | | | |
| 61-90 DAYS | 8,117 | 0 | 12,979 | | | | | | |
| 91+ DAYS | 51,089 | 0 | | 12,979 | 12,979 | 12,979 | 12,979 | 12,979 | 12,979 |
| TOTAL | 93,476 | 12,979 | 12,979 | 12,979 | 12,979 | 12,979 | 12,979 | 12,979 | 12,979 |

**MOR-5**

Note 1 - Amount is a Post Petition Intercompany payable to Bison Building Materials LLC

Revised 07/01/98

CASE NAME:  Bison Building Holdings, Inc., et al Bison Construction Services, LLC
CASE NUMBER: 09-34452-H2-11 (Chapter 11 - Jointly Administered)

## STATEMENT OF INCOME (LOSS)

| | MONTH July 31, 2009 | MONTH August 31, 2009 | MONTH September 30, 2009 | MONTH October 31, 2009 | MONTH November 30, 2009 | MONTH December 31, 2009 | MONTH January 31, 2010 | MONTH February 28, 2010 | MONTH March 31, 2010 | MONTH April 30, 2010 | FILING TO DATE |
|---|---|---|---|---|---|---|---|---|---|---|---|
| REVENUES  (MOR-1) | - | 17,982 | - | | | | | | | | 17,982 |
| TOTAL COST OF REVENUES | 757 | 1,296 | - | | | | | | | | 2,053 |
| GROSS PROFIT | (757) | 16,686 | - | | | | | | | | 15,929 |
| **OPERATING EXPENSES:** | | | | | | | | | | | |
| Selling & Marketing | | | | | | | | | | | - |
| General & Administrative | 16,737 | | 2,616 | | | | | | | | 19,353 |
| Insiders Compensation | | | | | | | | | | | - |
| Professional Fees | | | | | | | | | | | - |
| Court Filing Fee | | | | | | | | | | | - |
| Other | 325 | | | 325 | | | 325 | | | 325 | 1,300 |
| **TOTAL OPERATING EXPENSES** | 17,062 | - | 2,616 | 325 | | | 325 | | | 325 | 20,653 |
| INCOME BEFORE INT, DEPR, TAX (MOR-1) | (17,819) | 16,686 | (2,616) | (325) | | | (325) | | | (325) | (4,724) |
| INTEREST EXPENSE | | | | | | | | | | | - |
| DEPRECIATION | | | | | | | | | | | - |
| OTHER INCOME/EXPENSE* | | | | | | | | | | | - |
| OTHER ITEMS** | | | | | | | | | | | - |
| TOTAL INT, DEPR, & OTHER ITEMS | - | - | - | - | | | - | | | - | - |
| NET INCOME BEFORE TAXES | (17,819) | 16,686 | (2,616) | (325) | | | (325) | | | (325) | (4,724) |
| FEDERAL INCOME TAXES | | | | | | | | | | | - |
| NET INCOME (LOSS) (MOR-1) | (17,819) | 16,686 | (2,616) | (325) | | | (325) | | | (325) | (4,724) |

MOR-6

Accrual Accounting Required, Otherwise Footnote with Explanation.
* Footnote Mandatory.
** Unusual and/or infrequent item(s) outside the ordinary course of business require footnote.

Note-There was no income or expense for this company in November.

Revised 07/01/08

CASE NAME:   Bison Building Holdings, Inc., et al Bison Construction Services, LLC
CASE NUMBER:  09-34452-H2-11 (Chapter 11 - Jointly Administered)

## MOR-7

| CASH RECEIPTS AND DISBURSEMENTS | MONTH July 31, 2009 | MONTH August 31, 2009 | MONTH September 30, 2009 | MONTH October 31, 2009 | MONTH November 30, 2009 | MONTH December 31, 2009 | MONTH January 31, 2010 | MONTH February 28, 2010 | MONTH March 31, 2010 | MONTH April 30, 2010 | FILING TO DATE |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. CASH-BEGINNING OF MONTH | $0.00 | $0.00 | $18,280 | $98,777 | $98,452 | $98,452 | $98,452 | $98,127 | $98,127 | $98,127 | 0 |
| RECEIPTS: | | | | | | | | | | | |
| 2. CASH SALES | | | | | | | | | | | 0 |
| 3. COLLECTION OF ACCOUNTS RECEIVABLE | | 18,280 | 80,497 | | | | | | | | 98,777 |
| 4. LOANS & ADVANCES (attach list) | | | | | | | | | | | 0 |
| 5. SALE OF ASSETS | | | | | | | | | | | 0 |
| 6. OTHER (attach list) | | | | | | | | | | | 0 |
| TOTAL RECEIPTS** | 0 | 18,280 | 80,497 | 0 | 0 | 0 | 0 | 0 | 0 | | 98,777 |
| Withdrawal/Contribution by Individual Debtor MFR-2* | 0 | | | | | | | | | | 0 |
| DISBURSEMENTS: | | | | | | | | | | | |
| 7. NET PAYROLL | | | | | | | | | | | 0 |
| 8. PAYROLL TAXES PAID | | | | | | | | | | | 0 |
| 9. SALES, USE & OTHER TAXES PAID | | | | | | | | | | | 0 |
| 10. SECURED/RENTAL/LEASES | | | | | | | | | | | 0 |
| 11. UTILITIES & TELEPHONE | | | | | | | | | | | 0 |
| 12. INSURANCE | | | | | | | | | | | 0 |
| 13. INVENTORY PURCHASES | | | | | | | | | | | 0 |
| 14. VEHICLE EXPENSES | | | | | | | | | | | 0 |
| 15. TRAVEL & ENTERTAINMENT | | | | | | | | | | | 0 |
| 16. REPAIRS, MAINTENANCE & SUPPLIES | | | | | | | | | | | 0 |
| 17. ADMINISTRATIVE & SELLING | | | | | | | | | | | 0 |
| 18. OTHER (attach list) | | | | | | | | | | | 0 |
| TOTAL DISBURSEMENTS FROM OPERATIONS | 0 | 0 | 0 | 0 | 0 | 0 | 0 | | | | 0 |
| 19. PROFESSIONAL FEES | | | | | | | | | | | 0 |
| 20. U.S. TRUSTEE FEES | | | | 325 | | | 325 | | | 325 | 975 |
| 21. OTHER REORGANIZATION EXPENSES (attach list) | | | | | | | | | | | 0 |
| TOTAL DISBURSEMENTS** | 0 | 0 | 0 | 325 | 0 | 0 | 325 | 0 | 0 | 325 | 975 |
| 22. NET CASH FLOW** | 0 | 18,280 | 80,497 | (325) | 0 | 0 | (325) | 0 | 0 | (325) | 97,802 |
| 23. CASH - END OF MONTH (MOR-2) | 0 | 18,280 | 98,777 | 98,452 | 98,452 | 98,452 | 98,127 | 98,127 | 98,127 | 97,802 | 97,802 |

* Applies to Individual debtors only
**Numbers for the current month should balance (match)
RECEIPTS and CHECKS/OTHER DISBURSEMENTS lines on MOR-8

Revised 07/01/98

**CASE NAME:** Bison Building Holdings, Inc., et al Bison Construction Services, LLC
**CASE NUMBER:** 09-34452-H2-11 (Chapter 11 - Jointly Administered)

## CASH ACCOUNT RECONCILIATION
### MONTH OF NO BANK ACCOUNT IS MAINTAINED FOR THIS COMPANY

April 30, 2010

| BANK NAME | | | | |
|---|---|---|---|---|
| ACCOUNT NUMBER | | | | |
| ACCOUNT TYPE | *OPERATING* | *PAYROLL* | *Receipts* | *Accounts Payable* | *TOTAL* |
| BANK BALANCE | | | | | $0 |
| DEPOSITS IN TRANSIT | | | | | $0 |
| OUTSTANDING CHECKS | | | | | $0 |
| ADJUSTED BANK BALANCE | $0.00 | $0.00 | $0.00 | $0.00 | $0 |
| BEGINNING CASH - PER BOOKS | 98,127 | | | | $98,127 |
| RECEIPTS* (1) | | | | | $0 |
| TRANSFERS BETWEEN ACCOUNTS | | | | | $0 |
| WITHDRAWAL) OR CONTRIBUTION BY INDIVIDUAL DEBTOR  MFR-2 | | | | | $0 |
| CHECKS/OTHER DISBURSEMENTS* | 325 | | | | $325 |
| ENDING CASH - PER BOOKS | 97,802 | $0.00 | $0.00 | $0.00 | $97,802 |

**MOR-8**

*Numbers should balance (match) TOTAL RECEIPTS and
TOTAL DISBURSEMENTS lines on MOR-7

*Revised 07/01/98*

(1) Cash represents collections of accounts receivable which were deposited into Bison Building Materials LLC bank account in accordance with the Debtors' prepetition practice

CASE NAME: Bison Building Holdings, Inc., et al Bison Construction Services, LLC
CASE NUMBER: 09-34452-H2-11 (Chapter 11 - Jointly Administered)

## PAYMENTS TO INSIDERS AND PROFESSIONALS

Of the total disbursements shown for the month, list the amount paid to insiders (as defined in Section 101(31)(A)-(F) of the U.S. Bankruptcy Code) and the professionals.
Also, for insiders, identify the type of compensation paid (e.g., salary, commission, bonus, etc.). (Attach additional pages as necessary).

| INSIDERS: NAME/COMP. TYPE | MONTH July 31, 2009 | MONTH August 31, 2009 | MONTH September 30, 2009 | MONTH October 31, 2009 | MONTH November 30, 2009 | MONTH December 31, 2009 | MONTH January 31, 2010 | MONTH February 28, 2010 | MONTH March 31, 2010 | MONTH April 30, 2010 |
|---|---|---|---|---|---|---|---|---|---|---|
| NO PAYMENTS WERE MADE TO INSIDERS | | | | | | | | | | |
| 1. | | | | | | | | | | |
| 2. | | | | | | | | | | |
| 3. | | | | | | | | | | |
| 4. | | | | | | | | | | |
| 5. | | | | | | | | | | |
| 6. | | | | | | | | | | |
| TOTAL INSIDERS (MOR-1) | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |

| PROFESSIONALS | MONTH July 31, 2009 | MONTH August 31, 2009 | MONTH September 30, 2009 | MONTH October 31, 2009 | MONTH November 30, 2009 | MONTH December 31, 2009 | MONTH January 31, 2010 | MONTH February 28, 2010 | MONTH March 31, 2010 | MONTH April 30, 2010 |
|---|---|---|---|---|---|---|---|---|---|---|
| NO PAYMENTS WERE MADE TO PROFESSIONALS | | | | | | | | | | |
| 1. | | | | | | | | | | |
| 2. | | | | | | | | | | |
| 3. | | | | | | | | | | |
| 4. | | | | | | | | | | |
| 5. | | | | | | | | | | |
| 6. | | | | | | | | | | |
| TOTAL PROFESSIONALS   (MOR-1) | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |

Revised 07/01/98

MOR-9

UNITED STATES BANKRUPTCY COURT

**MOR-1**

CASE NAME: Bison Building Holdings, Inc., et al Bison Building GP, Inc.
CASE NUMBER: 09-34452-H2-11 (Chapter 11-Jointly Administered)
PROPOSED PLAN DATE: Undetermined

PETITION DATE: June 28, 2009
DISTRICT OF TEXAS: Southern
DIVISION: Houston

## MONTHLY OPERATING REPORT SUMMARY   FOR MONTH   April   YEAR   2010

| MONTH | June 28–July 31, 2009 | August 31, 2009 | September 30, 2009 | October 31, 2009 | November 30, 2009 | December 31, 2009 | January 31, 2010 | February 28, 2010 | March 31, 2010 | April 30, 2010 |
|---|---|---|---|---|---|---|---|---|---|---|
| REVENUES (MOR-6) | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| INCOME BEFORE INT. DEPREC./TAX (MOR-6) | | 0 | 0 | (650) | 0 | 0 | (325) | 0 | 0 | (325) |
| NET INCOME (LOSS) (MOR-6) | | 0 | 0 | (650) | 0 | 0 | (325) | 0 | 0 | (325) |
| PAYMENTS TO INSIDERS (MOR-9) | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| PAYMENTS TO PROFESSIONALS (MOR-9) | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| TOTAL DISBURSEMENTS (MOR-8) | | 0 | 0 | 650 | 0 | 0 | 325 | 0 | 0 | 25 |

***The original of this document must be filed with the United States Bankruptcy Court and a copy must be sent to the United States Trustee***

| REQUIRED INSURANCE MAINTAINED AS OF SIGNATURE DATE | | EXP. DATE | | | | | CIRCLE ONE |
|---|---|---|---|---|---|---|---|
| CASUALTY | YES ( x ) NO ( ) | 9 – 1 – 10 | Are all accounts receivable being collected within terms? | | Yes   No   (N/A) |
| LIABILITY | YES ( x ) NO ( ) | 9 – 1 – 10 | Are all post-petition liabilities, including taxes, being paid within terms? | | (Yes)   No |
| VEHICLE | YES ( x ) NO ( ) | 9 – 1 – 10 | Have any pre-petition liabilities been paid? | | Yes   (No) |
| WORKERS | YES ( ) NO ( x ) | Note 1 | If so, describe | | |
| OTHER | YES ( ) NO ( x ) | - : - | Are all funds received being deposited into DIP bank accounts? | | (Yes)   No |

Were any assets disposed of outside the normal course of business? Yes   (No)
If so, describe

Are all U.S. Trustee Quarterly Fee Payments current? (Yes)   No
What is the status of your Plan of Reorganization? to be determined

This company is nonoperational. It serves as General Partner of Bison Building Materials, LLC and Bison Building Materials Nevada, LLC

I certify under penalty of perjury that the following complete Monthly Operating Report (MOR), consisting of MOR-1 through MOR-9 plus attachments, is true and correct.

SIGNED X _____ (ORIGINAL SIGNATURE)

Harley C. Robinson   5/13/2010
(PRINT NAME OF SIGNATORY)   DATE

SIGNED X _____ Trustmark CEO

ATTORNEY NAME: David Jones
FIRM NAME: Porter & Hedges LLP
ADDRESS: 1000 Main Street, 36th Floor

CITY, STATE, ZIP: Houston, Texas 77002
TELEPHONE/FAX: 713-226-6653 / 713-226-6253

**MOR-1**

Revised 07/01/98

Note 1–This company is nonoperational and has no employees. Therefore, no Worker's Compensation insurance is carried.

CASE NAME:   Bison Building Holdings, Inc., et al  Bison Building GP, Inc.
CASE NUMBER:  09-34452-H2-11 (Chapter 11-Jointly Administered)

## COMPARATIVE BALANCE SHEETS

| ASSETS | FILING DATE: Note 2 June 28, 2009 | MONTH July 31, 2009 | MONTH August 31, 2009 | MONTH September 30, 2009 | MONTH October 31, 2009 | MONTH November 30, 2009 | MONTH December 31, 2009 | MONTH January 31, 2010 | MONTH February 28, 2010 | MONTH March 31, 2010 | MONTH April 30, 2010 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **CURRENT ASSETS** | | | | | | | | | | | |
| Cash/Note 1 | 1,000 | 1,000 | 1,000 | 1,000 | 350 | 350 | 350 | 25 | 25 | 25 | 0 |
| Accounts Receivable, Net | | | | | | | | | | | |
| Inventory - Lower of Cost or Market | | | | | | | | | | | |
| Prepaid Expenses | | | | | | | | | | | |
| Investments | | | | | | | | | | | |
| Other | | | | | | | | | | | |
| TOTAL CURRENT ASSETS | 1,000 | 1,000 | 1,000 | 1,000 | 350 | 350 | 350 | 25 | 25 | 25 | 0 |
| PROPERTY, PLANT & EQUIP. @ COST | | | | | | | | | | | |
| Less Accumulated Depreciation | | | | | | | | | | | |
| NET BOOK VALUE OF PP & E | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| OTHER ASSETS | | | | | | | | | | | |
| 1. Tax Deposits | | | | | | | | | | | |
| 2. Investments in Subsidiaries | | | | | | | | | | | |
| 3. Electric Deposit | | | | | | | | | | | |
| 4. Goodwill | 14,926 | 14,926 | 14,926 | 14,926 | 14,926 | 14,926 | 14,926 | 14,926 | 14,926 | 14,926 | 14,926 |
| TOTAL ASSETS | 15,926 | 15,926 | 15,926 | 15,926 | 15,276 | 15,276 | 15,276 | 14,951 | 14,951 | 14,951 | 14,926 |

*Per Schedules and Statement of Affairs

Revised 07/01/08

MOR-2

Note 1–Cash in account was transferred to an account held in the name of Bison Building LLC in connection with the closing of the Bison Building GP, Inc. bank account, which was done at the request of the U.S. Trustee.

Note 2–These balances are based on a reverse reconciliation of the Debtor's books as of June 30, 2009. This reconciliation continues and further adjustments may be made in subsequent MOR's.

CASE NAME:   Bison Building Holdings, Inc., et al  Bison Building GP, Inc.
CASE NUMBER: 09-34452-H2-11 (Chapter 11--Jointly Administered)

## COMPARATIVE BALANCE SHEETS

| LIABILITIES & OWNER'S EQUITY | FILING DATE: Note 2 June 28, 2009 | MONTH July 31, 2009 | MONTH August 31, 2009 | MONTH September 30, 2009 | MONTH October 31, 2009 | MONTH November 30, 2009 | MONTH December 31, 2009 | MONTH January 31, 2010 | MONTH February 28, 2010 | MONTH March 31, 2010 | MONTH April 30, 2010 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| LIABILITIES | | | | | | | | | | | |
| POST PETITION LIABILITIES (Note 4) | | | | | | | | | | | 300 |
| PRE-PETITION LIABILITIES | | | | | | | | | | | |
| Notes Payable - Secured | | | | | | | | | | | |
| Priority Debt | | | | | | | | | | | |
| Federal Income Tax | | | | | | | | | | | |
| FICA Withholding | | | | | | | | | | | |
| Unsecured Debt | | | | | | | | | | | |
| Other Note 1 | 41,532 | 41,532 | 41,532 | 41,532 | 41,532 | 41,532 | 41,532 | 41,532 | 41,532 | 41,532 | 41,532 |
| TOTAL PRE-PETITION LIABILITIES | 41,532 | 41,532 | 41,532 | 41,532 | 41,532 | 41,532 | 41,532 | 41,532 | 41,532 | 41,532 | 41,532 |
| TOTAL LIABILITIES | 41,532 | 41,532 | 41,532 | 41,532 | 41,532 | 41,532 | 41,532 | 41,532 | 41,532 | 41,532 | 41,832 |
| OWNER'S EQUITY (DEFICIT) | | | | | | | | | | | |
| PREFERRED STOCK | | | | | | | | | | | |
| COMMON STOCK | 60,000 | 60,000 | 60,000 | 60,000 | 60,000 | 60,000 | 60,000 | 60,000 | 60,000 | 60,000 | 60,000 |
| ADDITIONAL PAID-IN CAPITAL | | | | | | | | | | | |
| RETAINED EARNINGS - Filing Date | (85,606) | (85,606) | (85,606) | (85,606) | (85,606) | (85,606) | (85,606) | (85,606) | (85,606) | (85,606) | (85,606) |
| RETAINED EARNINGS - Post Filing Date | 0 | 0 | 0 | 0 | 0 | (650) | (650) | (975) | (975) | (975) | (1,300) |
| TOTAL OWNERS EQUITY (NET WORTH) | (25,606) | (25,606) | (25,606) | (25,606) | (25,606) | (26,256) | (26,256) | (26,581) | (26,581) | (26,581) | (26,906) |
| TOTAL LIABILITIES & OWNERS EQUITY | 15,926 | 15,926 | 15,926 | 15,926 | 15,926 | 15,276 | 15,276 | 14,951 | 14,951 | 14,951 | 14,926 |

* Per Schedules and Statement of Affairs

*Revised 07/01/08*

MOR-3

Note1--amount is intercompany payable to/ receivable from Bison Building Holdings, Inc. and Bison Building Materials LLC.

Note 2--These balances are based on a reverse reconciliation of the Debtor's books as of June 30, 2009.  This reconciliation continues and further adjustments may be made in subsequent MORs.

**CASE NAME:** Bison Building Holdings, Inc., et al  Bison Building GP, Inc.
**CASE NUMBER:** 09-34452-H2-11 (Chapter 11-Jointly Administered)

## SCHEDULE OF POST-PETITION LIABILITIES

| | MONTH July 31, 2009 | MONTH August 31, 2009 | MONTH September 30, 2009 | MONTH October 31, 2009 | MONTH November 30, 2009 | MONTH December 31, 2009 | MONTH January 31, 2010 | MONTH February 28, 2010 | MONTH March 31, 2010 | MONTH April 30, 2010 |
|---|---|---|---|---|---|---|---|---|---|---|
| *TRADE ACCOUNTS PAYABLE* | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| TAX PAYABLE | | | | | | | | | | |
| Federal Payroll Taxes | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| State Payroll Taxes | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Ad Valorem Taxes | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Other Taxes | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| TOTAL TAXES PAYABLE | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| SECURED DEBT POST-PETITION | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| ACCRUED INTEREST PAYABLE | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| ACCRUED PROFESSIONAL FEES* | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| OTHER_ACCRUED LIABILITIES | | | | | | | | | | |
| 1. Other_Inter Company | | | | | | | | | | 300 |
| 2. | | | | | | | | | | |
| 3. | | | | | | | | | | |
| TOTAL POST-PETITION LIABILITIES (MOR-3) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 300 |

*Payment requires Court Approval

MOR-4

*Revised 07/01/98*

CASE NAME:   Bison Building Holdings, Inc., et al  Bison Building GP, Inc
CASE NUMBER: 09-34452-H2-11 [Chapter 11-Jointly Administered]

### AGING OF POST-PETITION LIABILITIES
### MONTH
April 30, 2010

| DAYS | TOTAL | TRADE ACCOUNTS | FEDERAL TAXES | STATE TAXES | AD VALOREM, OTHER TAXES | InterCompany | MONTH |
|---|---|---|---|---|---|---|---|
| 0-30 | 300 | | | | | 300 | |
| 31-60 | 0 | | | | | | |
| 61-90 | 0 | | | | | | |
| 91+ | 0 | | | | | | |
| TOTAL | 300 | 0 | 0 | 0 | 0 | 300 | |

### AGING OF ACCOUNTS RECEIVABLE

| MONTH | July 31, 2009 | August 31, 2009 | September 30, 2009 | October 31, 2009 | November 30, 2009 | December 31, 2009 | January 31, 2010 | February 28, 2010 | March 31, 2010 | April 30, 2010 |
|---|---|---|---|---|---|---|---|---|---|---|
| 0-30 DAYS | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| 31-60 DAYS | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 61-90 DAYS | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 91+ DAYS | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| TOTAL | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |

MOR-5

*Revised 03/01/08*

CASE NAME:   Bison Building Holdings, Inc., et al  Bison Building GP, Inc.
CASE NUMBER:   09-34452-H2-11 (Chapter 11--Jointly Administered)

## STATEMENT OF INCOME (LOSS)

| | MONTH June 26-July 31, 2009 | MONTH August 31, 2009 | MONTH September 30, 2009 | MONTH October 31, 2009 | MONTH November 30, 2009 | MONTH December 31, 2009 | MONTH January 31, 2010 | MONTH February 28, 2010 | MONTH March 31, 2010 | MONTH April 30, 2010 | FILING-TO DATE |
|---|---|---|---|---|---|---|---|---|---|---|---|
| REVENUES  (MOR-1) | | | | | | | | | | | |
| TOTAL COST OF REVENUES | | | | | | | | | | | |
| GROSS PROFIT | | | | | | | | | | | |
| OPERATING EXPENSES: | | | | | | | | | | | |
| Selling & Marketing | | | | | | | | | | | |
| General & Administrative | | | | | | | | | | | |
| Insiders Compensation | | | | | | | | | | | |
| Professional Fees | | | | | | | | | | | |
| Other-Note 1 | | | | 650 | - | - | 325 | | | 325 | 1,300 |
| Other | | | | - | - | - | - | | | | - |
| TOTAL OPERATING EXPENSES | | | | 650 | - | - | 325 | - | - | 325 | 1,300 |
| INCOME BEFORE INT, DEPR,TAX (MOR-1) | | | | (650) | - | - | (325) | - | - | (325) | (1,300) |
| INTEREST EXPENSE | | | | - | - | - | - | | | | |
| DEPRECIATION | | | | - | - | - | - | | | | |
| OTHER (INCOME) EXPENSE* | | | | - | - | - | - | | | | |
| OTHER ITEMS** | | | | - | - | - | - | | | | |
| TOTAL INT, DEPR & OTHER ITEMS | | | | - | - | - | - | - | - | - | - |
| NET INCOME BEFORE TAXES | | | | (650) | - | - | (325) | - | - | (325) | (1,300) |
| FEDERAL INCOME TAXES | | | | - | - | - | - | - | - | - | - |
| NET INCOME (LOSS)  (MOR-6) | | | | (650) | - | - | (325) | - | - | (325) | (1,300) |

MOR-6

Actual Accounting Required, Otherwise Footnote with Explanation.
* Footnote Mandatory.
** Unusual and/or infrequent item(s) outside the ordinary course of business requires footnote.

Revised 07/01/98

Note 1-Amount in October was total of 2 payments for U.S. Trustee Fees of $325 each.  The first payment was made in June, 2009 and originally recorded incorrectly to Bison Building Materials LLC.  The second payment of $325 was made in October, 2009.

CASE NAME:  Bison Building Holdings, Inc., et al  Bison Building GP, Inc.
CASE NUMBER:  09-34452-H2-11 (Chapter 11-Jointly Administered)

**MOR-7**

| CASH RECEIPTS AND DISBURSEMENTS | MONTH June 28-July 31, 2009 | MONTH August 31, 2009 | MONTH September 30, 2009 | MONTH October 31, 2009 | MONTH November 30, 2009 | MONTH December 31, 2009 | MONTH January 31, 2010 | MONTH February 28, 2010 | MONTH March 31, 2010 | MONTH April 30, 2010 | FILING TO DATE |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. CASH BEGINNING OF MONTH | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $350.00 | $350.00 | $350.00 | $25.00 | $25.00 | $25.00 | $1,000.00 |
| **RECEIPTS:** | | | | | | | | | | | |
| 2. CASH SALES | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 3. COLLECTION OF ACCOUNTS RECEIVABLE | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 4. LOANS & ADVANCES (attach list) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 5. SALE OF ASSETS | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 6. OTHER (attach list) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| TOTAL RECEIPTS** | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Withdrawal/Contribution by Individual Debtor MFR-2* | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **DISBURSEMENTS:** | | | | | | | | | | | |
| 7. NET PAYROLL | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 8. PAYROLL TAXES PAID | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 9. SALES, USE & OTHER TAXES PAID | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 10. SECURED/RENTAL LEASES | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 11. UTILITIES & TELEPHONE | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 12. INSURANCE | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 13. INVENTORY PURCHASES | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 14. VEHICLE EXPENSES | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 15. TRAVEL & ENTERTAINMENT | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 16. REPAIRS, MAINTENANCE & SUPPLIES | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 17. ADMINISTRATIVE & SELLING | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 18. OTHER (attach list) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| TOTAL DISBURSEMENTS FROM OPERATIONS | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 19. PROFESSIONAL FEES | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 20. U.S. TRUSTEE FEES | 0 | 0 | 0 | 650.00 | 0 | 0 | 325.00 | - | - | 25.00 | 1,000 |
| 21. OTHER REORGANIZATION EXPENSES (attach list) | 0 | 0 | 0 | 0 | 0 | 0 | - | - | - | - | 0 |
| TOTAL DISBURSEMENTS** | 0 | 0 | 0 | 650.00 | 0 | 0 | 325.00 | - | - | 25.00 | 1,000.00 |
| 22. NET CASH FLOW | 0 | 0 | 0 | (650.00) | 0 | 0 | (325.00) | - | - | (25.00) | (1,000.00) |
| 23. CASH - END OF MONTH (MOR-2) | 1,000 | 1,000 | 1,000 | 350.00 | 350.00 | 350.00 | $25.00 | $25.00 | $25.00 | $0.00 | $  - |

* Applies to Individual debtors only
**Numbers for the current month should balance (match)
***Numbers in RECEIPTS and CHECKS/OTHER DISBURSEMENTS lines on MOR-8

*Revised 07/01/98*

**CASE NAME:**    Bison Building Holdings, Inc., et al Bison Building GP, Inc.
**CASE NUMBER:** 09-34452-H2-11 (Chapter 11-Jointly Administered)

## CASH ACCOUNT RECONCILIATION

### MONTH OF ___ April 30, 2010 ___

| | | | | |
|---|---|---|---|---|
| BANK NAME | Wachovia Bank | | | |
| ACCOUNT NUMBER | # 2000018331730 | # | # | |
| ACCOUNT TYPE | OPERATING | PAYROLL | TAX | OTHER FUNDS | TOTAL |
| BANK BALANCE | 1000 | | | | $1,000 |
| DEPOSITS IN TRANSIT | 0 | | | | $0 |
| OUTSTANDING CHECKS | 1000 | | | | $1,000 |
| ADJUSTED BANK BALANCE | 0 | $0.00 | $0.00 | $0.00 | $0 |
| BEGINNING CASH - PER BOOKS | 25 | | | | $25 |
| RECEIPTS* | 0 | | | | $0 |
| TRANSFERS BETWEEN ACCOUNTS **Note 1** | | | | | $0 |
| (WITHDRAWAL) OR CONTRIBUTION BY INDIVIDUAL       DEBTOR   MFR-2 | | | | | $0 |
| CHECKS/OTHER DISBURSEMENTS* | 25 | | | | $25 |
| ENDING CASH - PER BOOKS | 0 | $0.00 | $0.00 | $0.00 | $0 |

*Numbers should balance (match) TOTAL RECEIPTS and
TOTAL DISBURSEMENTS lines on MOR-7

*Revised 07/01/98*

**MOR-8**

**Note 1**–Cash in account was transferred to an account held in the name of Bison Building LLC in connection with the closing of the Bison Building GP, Inc. bank account, which was done
at the request of the U.S.Trustee.

CASE NAME:     Bison Building Holdings, Inc., et al  Bison Building GP, Inc.
CASE NUMBER:   09-34452-H2-11 (Chapter 11–Jointly Administered)

## PAYMENTS TO INSIDERS AND PROFESSIONALS

Of the total disbursements shown for the month, list the amount paid to insiders (as defined in Section 101(31)(A)-(F) of the U.S. Bankruptcy Code) and the professionals.
Also, for insiders, identify the type of compensation paid (e.g., salary, commission, bonus, etc.) (Attach additional pages as necessary).

| INSIDERS: NAME/COMP TYPE | MONTH July 31, 2009 | MONTH August 31, 2009 | MONTH September 30, 2009 | MONTH October 31, 2009 | MONTH November 30, 2009 | MONTH December 31, 2009 | MONTH January 31, 2010 | MONTH February 28, 2010 | MONTH March 31, 2010 | MONTH April 30, 2010 |
|---|---|---|---|---|---|---|---|---|---|---|
| **No Payments were made to Insiders and Professionals** | | | | | | | | | | |
| 1. | | | | | | | | | | |
| 2. | | | | | | | | | | |
| 3. | | | | | | | | | | |
| 4. | | | | | | | | | | |
| 5. | | | | | | | | | | |
| 6. | | | | | | | | | | |
| TOTAL INSIDERS (MOR-1) | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |

| PROFESSIONALS | MONTH July 31, 2009 | MONTH August 31, 2009 | MONTH September 30, 2009 | MONTH October 31, 2009 | MONTH November 30, 2009 | MONTH December 31, 2009 | MONTH January 31, 2010 | MONTH February 28, 2010 | MONTH March 31, 2010 | MONTH April 30, 2010 |
|---|---|---|---|---|---|---|---|---|---|---|
| **No Payments were made to Insiders and Professionals** | | | | | | | | | | |
| 1. | | | | | | | | | | |
| 2. | | | | | | | | | | |
| 3. | | | | | | | | | | |
| 4. | | | | | | | | | | |
| 5. | | | | | | | | | | |
| 6. | | | | | | | | | | |
| TOTAL PROFESSIONALS   (MOR-1) | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |

MOR-9

Revised 07/01/98

MOR-1

UNITED STATES BANKRUPTCY COURT

CASE NAME: Bison Building Holdings, Inc., et al  HLBM Company
CASE NUMBER: 09-34452-H2-11 (Chapter 11--Jointly Administered)
PROPOSED PLAN DATE: Undetermined

PETITION DATE: June 28, 2009
DISTRICT OF TEXAS: Southern
DIVISION: Houston

## MONTHLY OPERATING REPORT SUMMARY  FOR MONTH

|  | MONTH June 28-July 31, 2009 | August 31, 2009 | September 30, 2009 | October 31, 2009 | YEAR April November 30, 2009 | December 31, 2009 | 2010 January 31, 2010 | February 28, 2010 | March 31, 2010 | April 30, 2010 |
|---|---|---|---|---|---|---|---|---|---|---|
| REVENUES (MOR-6) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| INCOME BEFORE INT; DEPREC./TAX (MOR-6) | 0.00 | 0.00 | 0.00 | (550) | 0.00 | 0.00 | (325.00) | 0.00 | 0.00 | (325.00) |
| NET INCOME (LOSS) (MOR-6) | 0.00 | 0.00 | 0.00 | (550) | 0.00 | 0.00 | (325.00) | 0.00 | 0.00 | (325.00) |
| PAYMENTS TO INSIDERS (MOR-9) | 0.00 | 0.00 | 0.00 | 0 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| PAYMENTS TO PROFESSIONALS (MOR-9) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| TOTAL DISBURSEMENTS (MOR-8) | 0.00 | 0.00 | 0.00 | 0 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |

***The original of this document must be filed with the United States Bankruptcy Court and a copy must be sent to the United States Trustee***

| | CIRCLE ONE | |
|---|---|---|
| Are all accounts receivable being collected within terms? | Yes No | (N/A) |
| Are all post-petition liabilities, including taxes, being paid within terms? | (Yes) No | |
| Have any pre-petition liabilities been paid? | Yes (No) | |
| If so, describe | | |
| Are all funds received being deposited into DIP bank accounts? | (Yes) No | |
| Were any assets disposed of outside the normal course of business? | Yes (No) | |
| If so, describe | | |
| Are all U.S. Trustee Quarterly Fee Payments current? | (Yes) No | |
| What is the status of your Plan of Reorganization? | to be determined | |

This company is closed and all operations
have been discontinued.

| REQUIRED INSURANCE MAINTAINED AS OF SIGNATURE DATE | EXP. DATE |
|---|---|
| CASUALTY   YES ( x ) NO ( ) | 9 - 1 - 10 |
| LIABILITY   YES ( x ) NO ( ) | 9 - 1 - 10 |
| VEHICLE   YES ( x ) NO ( ) | 9 - 1 - 10   Note 1 |
| WORKERS   YES ( ) NO ( x ) | - - |
| OTHER   YES ( ) NO ( x ) | |

I certify under penalty of perjury that the following complete
Monthly Operating Report (MOR), consisting of MOR-1 through
MOR-9 plus attachments, is true and correct.

SIGNED x _Harley C. Robinson_ (ORIGINAL SIGNATURE)  TITLE: _President CEO_

Harley C. Robinson
(PRINT NAME OF SIGNATORY)

DATE 5/13/2010

ATTORNEY NAME: David Jones
FIRM NAME: Porter & Hedges LLP
ADDRESS: 1000 Main Street, 36th Floor

CITY, STATE, ZIP: Houston, Texas 77002
TELEPHONE/FAX: 713-226-6653 / 713-226-6263

MOR-1

Revised 07/01/98

Note 1--This company is closed and no longer has employees. Therefore, no Worker's
Compensation insurance is carried.

CASE NAME:   Bison Building Holdings, Inc., et al  HLBM Company
CASE NUMBER:   09-34452-H2-11 (Chapter 11 -Jointly Administered)

## COMPARATIVE BALANCE SHEETS

| ASSETS | FILING DATE* Note 1 June 28, 2009 | MONTH July 31, 2009 | MONTH August 31, 2009 | MONTH September 30, 2009 | MONTH October 31, 2009 | MONTH November 30, 2009 | MONTH December 31, 2009 | MONTH January 31, 2010 | MONTH February 28, 2010 | MONTH March 31, 2010 | MONTH April 30, 2010 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **CURRENT ASSETS** | | | | | | | | | | | |
| Cash | | | | | | | | | | | |
| Accounts Receivable, Net | | | | | | | | | | | |
| Inventory: Lower of Cost or Market | | | | | | | | | | | |
| Prepaid Expenses and Deposits (2) | 17,200 | 17,200 | 17,200 | 17,200 | 17,200 | 17,200 | 17,200 | 17,200 | 17,200 | 17,200 | 17,200 |
| Investments | | | | | | | | | | | |
| Other | | | | | | | | | | | |
| TOTAL CURRENT ASSETS | 17,200 | 17,200 | 17,200 | 17,200 | 17,200 | 17,200 | 17,200 | 17,200 | 17,200 | 17,200 | 17,200 |
| PROPERTY, PLANT & EQUIP. @ COST (3) | 519,380 | 519,380 | 519,380 | 519,380 | 519,380 | 519,380 | 519,380 | 519,380 | 519,380 | 519,380 | 519,380 |
| Less Accumulated Depreciation | 336,126 | 336,126 | 336,126 | 336,126 | 336,126 | 336,126 | 336,126 | 336,126 | 336,126 | 336,126 | 336,126 |
| NET BOOK VALUE OF PP & E | 183,254 | 183,254 | 183,254 | 183,254 | 183,254 | 183,254 | 183,254 | 183,254 | 183,254 | 183,254 | 183,254 |
| **OTHER ASSETS** | | | | | | | | | | | |
| 1. Tax Deposits | | | | | | | | | | | |
| 2. Investments in Subsidiaries | | | | | | | | | | | |
| 3. Electric Deposit | | | | | | | | | | | |
| 4. | | | | | | | | | | | |
| TOTAL ASSETS | 200,454 | 200,454 | 200,454 | 200,454 | $200,454 | $200,454 | 200,454 | 200,454 | 200,454 | 200,454 | 200,454 |

* Per Schedules and Statement of Affairs

*Revised 07/01/98*

MOR-2

(1) These balances are based upon a reverse reconciliation of the Debtor's books as of June 30, 2009.  This reconciliation continues and further adjustments
may be made in subsequent MORs.

(2) amounts are deposits on 2 real estate leases.  These leases have either expired or have been rejected.  Collectibility of these deposits is uncertain.

(3) amounts are from Debtors books and records and include leasehold improvements of $226,923, which the Debtors believe have no value.  Amounts also include
equipment and furniture and fixtures which Debtors have been unable to locate.

CASE NAME:   Bison Building Holdings, Inc., et al  HLBM Company
CASE NUMBER:   09-34452-H2-11 (Chapter 11 -Jointly Administered)

## COMPARATIVE BALANCE SHEETS

| LIABILITIES & OWNER'S EQUITY | FILING DATE* Note 1 June 28, 2009 | MONTH July 31, 2009 | MONTH August 31, 2009 | MONTH September 30, 2009 | MONTH October 31, 2009 | MONTH November 30, 2009 | MONTH December 31, 2009 | MONTH January 31, 2010 | MONTH February 28, 2010 | MONTH March 31, 2010 | MONTH April 30, 2010 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **LIABILITIES** | | | | | | | | | | | |
| POST-PETITION LIABILITIES(MOR-4) | | | | | 650 | 650 | 650 | 975 | 975 | 975 | 1,300 |
| PRE-PETITION LIABILITIES | | | | | | | | | | | |
| Notes Payable - Secured | | | | | | | | | | | |
| Priority Debt | | | | | | | | | | | |
| Federal Income Tax | | | | | | | | | | | |
| FICA Withholding | | | | | | | | | | | |
| Unsecured Debt | | | | | | | | | | | |
| Other -see Note 2 | 13,977,614 | 13,977,614 | 13,977,614 | 13,977,614 | 13,977,614 | 13,977,614 | 13,977,614 | 13,977,614 | 13,977,614 | 13,977,614 | 13,977,614 |
| TOTAL PRE-PETITION LIABILITIES | 13,977,614 | 13,977,614 | 13,977,614 | 13,977,614 | 13,977,614 | 13,977,614 | 13,977,614 | 13,977,614 | 13,977,614 | 13,977,614 | 13,977,614 |
| TOTAL LIABILITIES | 13,977,614 | 13,977,614 | 13,977,614 | 13,977,614 | 13,978,264 | 13,978,264 | 13,978,264 | 13,978,589 | 13,978,589 | 13,978,589 | 13,978,914 |
| **OWNER'S EQUITY (DEFICIT)** | | | | | | | | | | | |
| PREFERRED STOCK | | | | | | | | | | | |
| COMMON STOCK | 1,400,000 | 1,400,000 | 1,400,000 | 1,400,000 | 1,400,000 | 1,400,000 | 1,400,000 | 1,400,000 | 1,400,000 | 1,400,000 | 1,400,000 |
| ADDITIONAL PAID-IN CAPITAL | 18,498 | 18,498 | 18,498 | 18,498 | 18,498 | 18,498 | 18,498 | 18,498 | 18,498 | 18,498 | 18,498 |
| RETAINED EARNINGS: Filing Date | (15,195,658) | (15,195,658) | (15,195,658) | (15,195,658) | (15,195,658) | (15,195,658) | (15,195,658) | (15,195,658) | (15,195,658) | (15,195,658) | (15,195,658) |
| RETAINED EARNINGS: Post-Filing Date | | 0 | | | (650) | (650) | (650) | (975) | (975) | (975) | (1,300) |
| TOTAL OWNER'S EQUITY (NET WORTH) | (13,777,160) | (13,777,160) | (13,777,160) | (13,777,160) | (13,777,810) | (13,777,810) | (13,777,810) | (13,778,135) | (13,778,135) | (13,778,135) | (13,778,460) |
| TOTAL LIABILITIES & OWNERS EQUITY | 200,454 | 200,454 | 200,454 | 200,454 | 200,454 | 200,454 | 200,454 | 200,454 | 200,454 | 200,454 | 200,454 |

\* Per Schedules and Statement of Affairs

**Note 1--** These balances are based upon a reverse reconciliation of the Debtor's books as of June 30, 2009.  This reconciliation continues and further adjustments may be made in subsequent MOR's.

**Note 2--**amount is Intercompany receivable/(payable) to the following Bison companies:

Bison Building Materials LLC          (15,247,950)
Bison Building Holdings, Inc.           1,278,373
Bison Building Materials Nevada LLC       (8,037)
                                      (13,977,614)

MOR-3

Revised 07/01/98

CASE NAME:  Bison Building Holdings, Inc., et al  HLBM Company
CASE NUMBER:  09-34452-H2-11 (Chapter 11 -Jointly Administered)

## SCHEDULE OF POST-PETITION LIABILITIES

| | MONTH July 31, 2009 | MONTH August 31, 2009 | MONTH September 30, 2009 | MONTH October 31, 2009 | MONTH November 30, 2009 | MONTH December 31, 2009 | MONTH January 31, 2010 | MONTH February 28, 2010 | MONTH March 31, 2010 | MONTH April 30, 2010 |
|---|---|---|---|---|---|---|---|---|---|---|
| *TRADE ACCOUNTS PAYABLE* | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| TAX PAYABLE | | | | | | | | | | |
| Federal Payroll Taxes | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| State Payroll Taxes | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Ad Valorem Taxes | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Other Taxes | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| TOTAL TAXES PAYABLE | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| SECURED DEBT POST-PETITION | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| ACCRUED INTEREST PAYABLE | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| ACCRUED PROFESSIONAL FEES* | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| OTHER ACCRUED LIABILITIES | | | | | | | | | | |
| 1.  Other Inter Company | | | | 650 | 650 | 650 | 975 | 975 | 975 | 1,300 |
| 2. | | | | | | | | | | |
| 3. | | | | | | | | | | |
| TOTAL POST-PETITION LIABILITIES (MOR-3) | 0 | 0 | 0 | 650 | 650 | 650 | 975 | 975 | 975 | 1,300 |

*Payment requires Court Approval

MOR-4

Revised 07/01/98

**CASE NAME:** Bison Building Holdings, Inc., et al  HLBM Company
**CASE NUMBER:** 09-34452-H2-11 (Chapter 11 -Jointly Administered)

### AGING OF POST-PETITION LIABILITIES
**MONTH**  April 30, 2010

| DAYS | TOTAL | TRADE ACCOUNTS | FEDERAL TAXES | STATE TAXES | AD VALOREM, OTHER TAXES | InterCompany | MONTH |
|---|---|---|---|---|---|---|---|
| 0-30 | 325.00 | | | | | 325.00 | |
| 31-60 | 0.00 | | | | | 0.00 | |
| 61-90 | 0.00 | | | | | 0.00 | |
| 91+ | 975.00 | | | | | 975.00 | |
| TOTAL | $1,300.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,300.00 | |

### AGING OF ACCOUNTS RECEIVABLE

| MONTH | July 31, 2009 | August 31, 2009 | September 30, 2009 | October 31, 2009 | November 30, 2009 | December 31, 2009 | January 31, 2010 | February 28, 2010 | March 31, 2010 | April 30, 2010 |
|---|---|---|---|---|---|---|---|---|---|---|
| 0-30 DAYS | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 31-60 DAYS | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 61-90 DAYS | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 91+ DAYS | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| TOTAL | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

MOR-5

*Revised 07/01/98*

CASE NAME: Bison Building Holdings, Inc., et al HLBM Company
CASE NUMBER: 09-34452-H2-11 (Chapter 11 -Jointly Administered)

## STATEMENT OF INCOME (LOSS)

| | MONTH June 26-July 31, 2009 | MONTH August 31, 2009 | MONTH September 30, 2009 | MONTH October 31, 2009 | MONTH November 30, 2009 | MONTH December 31, 2009 | MONTH January 31, 2010 | MONTH February 28, 2010 | MONTH March 31, 2010 | MONTH April 30, 2010 | FILING TO DATE |
|---|---|---|---|---|---|---|---|---|---|---|---|
| REVENUES - (MOR-1) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| TOTAL COST OF REVENUES | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| GROSS PROFIT | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| OPERATING EXPENSES: | | | | | | | | | | | |
| Selling & Marketing | 0 | 0 | 0 | | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| General & Administrative | 0 | 0 | 0 | | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Insiders Compensation | 0 | 0 | 0 | | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Professional Fees | 0 | 0 | 0 | | 0 | 0 | 325 | 0 | 0 | 325 | 0 |
| Other | 0 | 0 | 0 | 650 | 0 | 0 | 0 | 0 | 0 | 0 | 1,300 |
| Other | 0 | 0 | 0 | | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| TOTAL OPERATING EXPENSES | 0 | 0 | 0 | 650 | 0 | 0 | 325 | 0 | 0 | 325 | 1,300 |
| INCOME BEFORE INT, DEPR,TAX (MOR-1) | 0 | 0 | 0 | (650) | 0 | 0 | (325) | 0 | 0 | (325) | (1,300) |
| INTEREST EXPENSE | 0 | 0 | 0 | | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| OTHER INCOME/EXPENSE* | 0 | 0 | 0 | | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| OTHER ITEMS** | 0 | 0 | 0 | | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| TOTAL INT, DEPR, & OTHER ITEMS | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| NET INCOME BEFORE TAXES | 0 | 0 | 0 | (650) | 0 | 0 | (325) | 0 | 0 | (325) | (1,300) |
| FEDERAL INCOME TAXES | 0 | 0 | 0 | | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| NET INCOME/(LOSS) (MOR-1) | 0 | 0 | 0 | (650) | 0 | 0 | (325) | 0 | 0 | (325) | (1,300) |

Accrual Accounting Required, Otherwise Footnote with Explanation.

*  Footnote Mandatory.

** Unusual and/or infrequent item(s) outside the ordinary course of business require footnote.

**MOR-6**

**Note** HLBM ceased operations in 2008.

*Revised 07/01/08*

Case 09-34452   Document 530   Filed in TXSB on 05/21/10   Page 7 of 9

CASE NAME:   Bison Building Holdings, Inc., et al  HLBM Company
CASE NUMBER: 09-34452-H2-11 (Chapter 11 –Jointly Administered)

| CASH RECEIPTS AND DISBURSEMENTS | MONTH June 26-July 31, 2009 | MONTH August 31, 2009 | MONTH September 30, 2009 | MONTH October 31, 2009 | MONTH November 30, 2009 | MONTH December 31, 2009 | MONTH January 31, 2010 | MONTH February 28, 2010 | MONTH March 31, 2010 | MONTH April 30, 2010 | FILING TO DATE |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. CASH-BEGINNING OF MONTH | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| RECEIPTS: | | | | | | | | | | | |
| 2. CASH SALES | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 3. COLLECTION OF ACCOUNTS RECEIVABLE | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 4. LOANS & ADVANCES (attach list) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 5. SALE OF ASSETS | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 6. OTHER (attach list) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| TOTAL RECEIPTS* | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| (Withdrawal) Contribution by Individual Debtor MOR-2* | | | | | | | | | | | |
| DISBURSEMENTS: | | | | | | | | | | | |
| 7. NET PAYROLL | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 8. PAYROLL TAXES PAID | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 9. SALES, USE & OTHER TAXES PAID | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 10. SECURED/RENT/ALEASES | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 11. UTILITIES & TELEPHONE | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 12. INSURANCE | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 13. INVENTORY PURCHASES | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 14. VEHICLE EXPENSES | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 15. TRAVEL & ENTERTAINMENT | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 16. REPAIRS, MAINTENANCE & SUPPLIES | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 17. ADMINISTRATIVE & SELLING | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 18. OTHER (attach list) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| TOTAL DISBURSEMENTS FROM OPERATIONS | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 19. PROFESSIONAL FEES | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 20. U.S. TRUSTEE FEES | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 21. OTHER REORGANIZATION EXPENSES (attach list) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| TOTAL DISBURSEMENTS** | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 22. NET CASH FLOW | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 23. CASH- END OF MONTH (MOR-2) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |

* Applies to Individual debtors only
**Numbers for the current month should balance (match)
RECEIPTS and CHECKS/OTHER DISBURSEMENTS lines on MOR-8

**MOR-7**

Revised 07/01/98

CASE NAME:   Bison Building Holdings, Inc., et al  HLBM Company
CASE NUMBER: 09-34452-H2-11 (Chapter 11 - Jointly Administered)

## CASH ACCOUNT RECONCILIATION
### MONTH OF  NO BANK ACCOUNT WAS MAINTAINED FOR THIS COMPANY
April 30, 2010

| BANK NAME | | | | | |
|---|---|---|---|---|---|
| ACCOUNT NUMBER | # | # | # | | |
| ACCOUNT TYPE | OPERATING | PAYROLL | TAX | OTHER FUNDS | TOTAL |
| BANK BALANCE | 0 | | | | 0 |
| DEPOSITS IN TRANSIT | 0 | | | | 0 |
| OUTSTANDING CHECKS | 0 | | | | 0 |
| ADJUSTED BANK BALANCE | 0 | 0 | 0 | 0 | 0 |
| BEGINNING CASH - PER BOOKS | 0 | | | | 0 |
| RECEIPTS* | 0 | | | | 0 |
| TRANSFERS BETWEEN ACCOUNTS | 0 | | | | 0 |
| (WITHDRAWAL) OR  CONTRIBUTION BY INDIVIDUAL       DEBTOR    MFR-2 | 0 | | | | 0 |
| CHECKS/OTHER DISBURSEMENTS* | 0 | | | | 0 |
| ENDING CASH - PER BOOKS | 0 | 0 | 0 | 0 | 0 |

*Numbers should balance (match) TOTAL RECEIPTS and
TOTAL DISBURSEMENTS lines on MOR-7

Revised 07/01/98

**MOR-8**

**CASE NAME:** Bison Building Holdings, Inc., et al HLBM Company
**CASE NUMBER:** 09-34452-H2-11 (Chapter 11 –Jointly Administered)

## PAYMENTS TO INSIDERS AND PROFESSIONALS

Of the total disbursements shown for the month, list the amount paid to insiders (as defined in Section 101(31)(A)-(F) of the U.S. Bankruptcy Code) and the professionals.
Also, for insiders, identify the type of compensation paid (e.g., salary, commission, bonus, etc.) / (Attach additional pages as necessary).

| INSIDERS: NAME/COMP. TYPE | MONTH July 31, 2009 | MONTH August 31, 2009 | MONTH September 30, 2009 | MONTH October 31, 2009 | MONTH November 30, 2009 | MONTH December 31, 2009 | MONTH January 31, 2010 | MONTH February 28, 2010 | MONTH March 31, 2010 | MONTH April 30, 2010 |
|---|---|---|---|---|---|---|---|---|---|---|
| | No payments were made to insiders and professionals | | | | | | | | | |
| 1. | | | | | | | | | | |
| 2. | | | | | | | | | | |
| 3. | | | | | | | | | | |
| 4. | | | | | | | | | | |
| 5. | | | | | | | | | | |
| 6. | | | | | | | | | | |
| TOTAL INSIDERS (MOR-1) | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |

| PROFESSIONALS | MONTH July 31, 2009 | MONTH August 31, 2009 | MONTH September 30, 2009 | MONTH October 31, 2009 | MONTH November 30, 2009 | MONTH December 31, 2009 | MONTH January 31, 2010 | MONTH February 28, 2010 | MONTH March 31, 2010 | MONTH April 30, 2010 |
|---|---|---|---|---|---|---|---|---|---|---|
| | No payments were made to insiders and professionals | | | | | | | | | |
| 1. | | | | | | | | | | |
| 2. | | | | | | | | | | |
| 3. | | | | | | | | | | |
| 4. | | | | | | | | | | |
| 5. | | | | | | | | | | |
| 6. | | | | | | | | | | |
| TOTAL PROFESSIONALS   (MOR-1) | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |

*Revised 07/01/98*

MOR-9

Case 09-34452   Document 531   Filed in TXSB on 05/21/10   Page 1 of 9

**MOR-1**

| | |
|---|---|
| CASE NAME: | Bison Building Holdings, Inc., et al  Bison Building Holdings, Inc. |
| CASE NUMBER: | 09-34452-H2-11 (Chapter 11 –Jointly Administered) |
| PROPOSED PLAN DATE: | Undetermined |

UNITED STATES BANKRUPTCY COURT

PETITION DATE: June 28, 2009
DISTRICT OF TEXAS: Southern
DIVISION: Houston

## MONTHLY OPERATING REPORT SUMMARY   FOR MONTH

| | | | | | YEAR | | 2010 | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| MONTH | June 28-July 31, 2009 | August 31, 2009 | September 30, 2009 | October 31, 2009 | April November 30, 2009 | December 31, 2009 | January 31, 2010 | February 28, 2010 | March 31, 2010 | April 30, 2010 |
| REVENUES (MOR-6) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| INCOME BEFORE INT, DEPREC, TAX (MOR-6) | 0 | 0 | 0 | (650) | 0 | 0 | (325) | 0 | 0 | (325) |
| NET INCOME (LOSS) (MOR-6) | 0 | 0 | 0 | (650) | 0 | 0 | (325) | 0 | 0 | (325) |
| PAYMENTS TO INSIDERS (MOR-9) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| PAYMENTS TO PROFESSIONALS (MOR-9) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| TOTAL DISBURSEMENTS (MOR-8) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |

***The original of this document must be filed with the United States Bankruptcy Court and a copy must be sent to the United States Trustee***

| REQUIRED INSURANCE MAINTAINED | EXP. DATE | |
|---|---|---|
| AS OF SIGNATURE DATE | | |
| CASUALTY | YES ( x ) NO ( ) | 9 – 1 – 10 |
| LIABILITY | YES ( x ) NO ( ) | 9 – 1 – 10 |
| VEHICLE | YES ( x ) NO ( ) | 9 – 1 – 10 |
| WORKER'S | YES ( ) NO ( x ) | Note 1 |
| OTHER | YES ( ) NO ( x ) | _ – _ – _ |

Are all accounts receivable being collected within terms?   CIRCLE ONE   Yes  No (N/A)
Are all post-petition liabilities, including taxes, being paid within terms?   (Yes)  No
Have any pre-petition liabilities been paid?   Yes  (No)
   If so, describe
Are all funds received being deposited into DIP bank accounts?   (Yes)  No
Were any assets disposed of outside the normal course of business?   Yes  (No)
   If so, describe
Are all U.S. Trustee Quarterly Fee Payments current?   (Yes)  No
What is the status of your Plan of Reorganization?   to be determined

This company is nonoperational and serves as a holding company for all Bison entities.

| ATTORNEY NAME: | David Jones |
|---|---|
| FIRM NAME: | Porter & Hedges LLP |
| ADDRESS: | 1000 Main Street, 36th Floor |
| | Houston, Texas 77002 |
| CITY, STATE, ZIP: | |
| TELEPHONE/FAX: | 713-226-6653 / 713-226-6253 |

**MOR-1**

I certify under penalty of perjury that the following complete Monthly Operating Report (MOR), consisting of MOR-1 through MOR-9 plus attachments, is true and correct.

SIGNED x [signature]   TITLE: Trustee CRO

Harley C. Robinson   5/13/2010
(PRINT NAME OF SIGNATORY)   DATE   Revised 07/01/08
(ORIGINAL SIGNATURE)

Note 1—This company is nonoperational and has no employees. Therefore, no Worker's Compensation insurance is carried.

CASE NAME: __Bison Building Holdings, Inc., et al  Bison Building Holdings, Inc.__
CASE NUMBER: __09-34452-H2-11 (Chapter 11 -Jointly Administered)__

## COMPARATIVE BALANCE SHEETS

| ASSETS | FILING DATE: Note 1 | MONTH | MONTH | MONTH | MONTH | MONTH | MONTH | MONTH | MONTH | MONTH | MONTH | MONTH |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | June 28, 2009 | July 31, 2009 | August 31, 2009 | September 30, 2009 | October 31, 2009 | November 30, 2009 | December 31, 2009 | January 31, 2010 | February 28, 2010 | March 31, 2010 | April 30, 2010 | |
| CURRENT ASSETS | | | | | | | | | | | | |
| Cash | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | |
| Accounts Receivable, Net | 0 | | | | | | | | | | | |
| Inventory: Lower of Cost or Market | | | | | | | | | | | | |
| Prepaid Expenses and Deposits | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | |
| Investments | | | | | | | | | | | | |
| Other | | | | | | | | | | | | |
| TOTAL CURRENT ASSETS | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | |
| PROPERTY, PLANT & EQUIP. @ COST | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | |
| Less Accumulated Depreciation | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | |
| NET BOOK VALUE OF PP & E | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | |
| OTHER ASSETS | | | | | | | | | | | | |
| 1. Goodwill | 2,961,113 | 2,961,113 | 2,961,113 | 2,961,113 | 2,961,113 | 2,961,113 | 2,961,113 | 2,961,113 | 2,961,113 | 2,961,113 | 2,961,113 | |
| TOTAL ASSETS | $2,961,113 | $2,961,113 | $2,961,113 | $2,961,113 | $2,961,113 | $2,961,113 | $2,961,113 | $2,961,113 | $2,961,113 | $2,961,113 | $2,961,113 | |

* Per Schedules and Statement of Affairs

_Revised 03/02/08_

MOR-2

**Note 1**--These balances are based upon a reverse reconciliation of the Debtor's books as of June 30, 2009. This reconciliation continues and further adjustments may be made in subsequent MORs.

CASE NAME:     Bison Building Holdings, Inc., et al Bison Building Holdings, Inc.
CASE NUMBER:  09-34452;H2-11 (Chapter 11 - Jointly Administered)

## COMPARATIVE BALANCE SHEETS

| LIABILITIES & OWNER'S EQUITY | FILING DATE - Note 1 June 28, 2009 | MONTH July 31, 2009 | MONTH August 31, 2009 | MONTH September 30, 2009 | MONTH October 31, 2009 | MONTH November 30, 2009 | MONTH December 31, 2009 | MONTH January 31, 2010 | MONTH February 28, 2010 | MONTH March 31, 2010 | MONTH April 30, 2010 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| POST-PETITION LIABILITIES(NOTE-4) | 0 | 0 | 0 | 0 | (650) | 650 | 650 | 975 | 975 | 975 | 1,300 |
| PRE-PETITION LIABILITIES | | | | | | | | | | | |
| Notes Payable- Secured | | | | | | | | | | | |
| Priority Debt | | | | | | | | | | | |
| Federal Income Tax | | | | | | | | | | | |
| FICA Withholding | | | | | | | | | | | |
| Unsecured Debt | | | | | | | | | | | |
| Other- Notes 2 & 3 | 12,955,371 | 12,955,371 | 12,955,371 | 12,955,371 | 12,955,371 | 12,955,371 | 12,955,371 | 12,955,371 | 12,955,371 | 12,955,371 | 12,955,371 |
| TOTAL PRE-PETITION LIABILITIES | 12,955,371 | 12,955,371 | 12,955,371 | 12,955,371 | 12,955,371 | 12,955,371 | 12,955,371 | 12,955,371 | 12,955,371 | 12,955,371 | 12,955,371 |
| TOTAL LIABILITIES | 12,955,371 | 12,955,371 | 12,955,371 | 12,955,371 | 12,956,021 | 12,956,021 | 12,956,021 | 12,956,346 | 12,956,346 | 12,956,346 | 12,956,671 |
| OWNER'S EQUITY (DEFICIT) | | | | | | | | | | | |
| PREFERRED STOCK | | | | | | | | | | | |
| COMMON STOCK | 5,428 | 5,428 | 5,428 | 5,428 | 5,428 | 5,428 | 5,428 | 5,428 | 5,428 | 5,428 | 5,428 |
| TREASURY STOCK- Note 3 | (1,065,507) | (1,065,507) | (1,065,507) | (1,065,507) | (1,065,507) | (1,065,507) | (1,065,507) | (1,065,507) | (1,065,507) | (1,065,507) | (1,065,507) |
| RETAINED EARNINGS: Filing Date | (8,934,179) | (8,934,179) | (8,934,179) | (8,934,179) | (8,934,179) | (8,934,179) | (8,934,179) | (8,934,179) | (8,934,179) | (8,934,179) | (8,934,179) |
| RETAINED EARNINGS: Post Filing Date | 0 | 0 | 0 | (650) | (650) | (650) | (650) | (975) | (975) | (975) | (1,300) |
| TOTAL OWNERS EQUITY (NET WORTH) | (9,994,258) | (9,994,258) | (9,994,258) | (9,994,258) | (9,994,908) | (9,994,908) | (9,994,908) | (9,995,233) | (9,995,233) | (9,995,233) | (9,995,558) |
| TOTAL LIABILITIES & OWNERS EQUITY | $2,961,113 | $2,961,113 | $2,961,113 | $2,961,113 | $2,961,113 | $2,961,113 | $2,961,113 | $2,961,113 | $2,961,113 | $2,961,113 | $2,961,113 |

* Per Schedules and Statement of Affairs

Revised 07/01/98

MOR-3

Note 1- These balances are based upon a reverse reconciliation of the Debtor's books as of June 30, 2009. This reconciliation continues and further adjustments may be made in subsequent MOR's.

Note 2- amount is Intercompany receivable/(payable) to other Bison companies

Note 3- amounts have been adjusted from previously reported balances because of a Feb '09 stock buy back transaction which was recorded incorrectly.

CASE NAME:  Bison Building Holdings, Inc., et al  Bison Building Holdings, Inc.
CASE NUMBER:  09-34452-H2-11 (Chapter 11 -Jointly Administered)

## SCHEDULE OF POST-PETITION LIABILITIES

| | MONTH July 31, 2009 | MONTH August 31, 2009 | MONTH September 30, 2009 | MONTH October 31, 2009 | MONTH November 30, 2009 | MONTH December 31, 2009 | MONTH January 31, 2010 | MONTH February 28, 2010 | MONTH March 31, 2010 | MONTH April 30, 2010 |
|---|---|---|---|---|---|---|---|---|---|---|
| *TRADE ACCOUNTS PAYABLE* | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| TAX PAYABLE | | | | | | | | | | |
| Federal Payroll Taxes | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| State Payroll Taxes | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Ad Valorem Taxes | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Other Taxes | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| TOTAL TAXES PAYABLE | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| SECURED DEBT POST-PETITION | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| ACCRUED INTEREST PAYABLE | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| ACCRUED PROFESSIONAL FEES* | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| OTHER ACCRUED LIABILITIES | | | | | | | | | | |
| 1. Bison LLC Intercompany | | | | 650 | 650 | 650 | 975 | 975 | 975 | 1,300 |
| 2. | | | | | | | | | | |
| 3. | | | | | | | | | | |
| TOTAL POST-PETITION LIABILITIES (MOR-3) | $0 | $0 | $0 | $650 | $650 | $650 | $975 | $975 | $975 | $1,300 |

*Payment requires Court Approval

MOR-4

*Revised 07/01/98*

CASE NAME:  Bison Building Holdings, Inc., et al  Bison Building Holdings, Inc.
CASE NUMBER: 09-34452-H2-11 (Chapter 11 -Jointly Administered)

**AGING OF POST-PETITION LIABILITIES**

MONTH April 30, 2010

| DAYS | TOTAL | TRADE ACCOUNTS | FEDERAL TAXES | STATE TAXES | AD VALOREM, OTHER TAXES | Intercompany | MONTH |
|---|---|---|---|---|---|---|---|
| 0-30 | 325 | | | | | 325 | |
| 31-60 | 0 | | | | | | |
| 61-90 | 0 | | | | | | |
| 91+ | 975 | | | | | 975 | |
| TOTAL | $1,300 | $0 | $0 | $0 | $0 | $1,300 | |

**AGING OF ACCOUNTS RECEIVABLE**

| MONTH | July 31, 2009 | August 31, 2009 | September 30, 2009 | October 31, 2009 | November 30, 2009 | December 31, 2009 | January 31, 2010 | February 28, 2010 | March 31, 2010 | April 30, 2010 |
|---|---|---|---|---|---|---|---|---|---|---|
| 0-30 DAYS | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 31-60 DAYS | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 61-90 DAYS | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 91+ DAYS | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| TOTAL | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |

MOR-5

*Revised 07/01/98*

CASE NAME:   Bison Building Holdings, Inc., et al  Bison Building Holdings, Inc.
CASE NUMBER:   09-34452-H2-11 (Chapter 11 -Jointly Administered)

STATEMENT OF INCOME (LOSS)

| | MONTH June 28-July 31, 2009 | MONTH August 31, 2009 | MONTH September 30, 2009 | MONTH October 31, 2009 | MONTH November 30, 2009 | MONTH December 31, 2009 | MONTH January 31, 2010 | MONTH February 28, 2010 | MONTH March 31, 2010 | April 30, 2010 | FILING TO DATE |
|---|---|---|---|---|---|---|---|---|---|---|---|
| REVENUES  (MOR-1) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | | 0 |
| TOTAL COST OF REVENUES | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | | 0 |
| GROSS PROFIT | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | | 0 |
| OPERATING EXPENSES: | | | | | | | | | | | |
| Selling & Marketing | 0 | 0 | 0 | 0 | 0 | 0 | | | | | 0 |
| General & Administrative | 0 | 0 | 0 | 0 | 0 | 0 | | | | | 0 |
| Insiders Compensation | 0 | 0 | 0 | 0 | 0 | 0 | | | | | 0 |
| Professional Fees | 0 | 0 | 0 | 650 | 0 | 0 | | | | | 0 |
| Other-Note 1 | 0 | 0 | 0 | 0 | 0 | 0 | 325 | | | 325 | 1,300 |
| Other | | | | | | | | | | | 0 |
| TOTAL OPERATING EXPENSES | 0 | 0 | 0 | 650 | 0 | 0 | 325 | 0 | 0 | 325 | 1,300 |
| INCOME BEFORE INT, DEPR,TAX (MOR-1) | 0 | 0 | 0 | (650) | 0 | 0 | (325) | 0 | 0 | (325) | (1,300) |
| INTEREST EXPENSE | | | | | | | | | | | 0 |
| DEPRECIATION | | | | | | | | | | | 0 |
| OTHER INCOME EXPENSE* | | | | | | | | | | | 0 |
| OTHER ITEMS** | | | | | | | | | | | 0 |
| TOTAL INT, DEPR,& OTHER ITEMS | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| NET INCOME BEFORE TAXES | 0 | 0 | 0 | (650) | 0 | 0 | (325) | 0 | 0 | (325) | (1,300) |
| FEDERAL INCOME TAXES | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| NET INCOME (LOSS) (MOR-1) | 0 | 0 | 0 | (650) | 0 | 0 | (325) | 0 | 0 | (325) | (1,300) |

MOR-6

*Accrual Accounting Required, Otherwise Footnote with Explanation.*

*  Footnote Mandatory.

** Unusual and/or infrequent item(s) outside the ordinary course of business require footnote.

Note 1-Amount in October is total of 2 payments for U.S. Trustee Fees of $325 each.  The first payment was made in June, 2009 and originally recorded incorrectly to Bison Building Materials LLC.  The second payment of $325 was made in October, 2009.

Revised 07/01/98

CASE NAME:   Bison Building Holdings, Inc., et al  Bison Building Holdings, Inc.

CASE NUMBER:   09-34452-H2-11 (Chapter 11 –Jointly Administered)

| CASH RECEIPTS AND DISBURSEMENTS | MONTH June 28-July 31, 2009 | MONTH August 31, 2009 | MONTH September 30, 2009 | MONTH October 31, 2009 | MONTH November 30, 2009 | MONTH December 31, 2009 | MONTH January 31, 2010 | MONTH February 28, 2010 | MONTH March 31, 2010 | April 30, 2010 | FILING TO DATE |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. CASH-BEGINNING OF MONTH | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| RECEIPTS: | | | | | | | | | | | |
| 2. CASH SALES | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 3. COLLECTION OF ACCOUNTS RECEIVABLE | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 4. LOANS & ADVANCES (attach list) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 5. SALE OF ASSETS | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 6. OTHER (attach list) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| TOTAL RECEIPTS** | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Withdrawal/Contribution by Individual Debtor MFR-2* | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| DISBURSEMENTS: | | | | | | | | | | | |
| 7. NET PAYROLL | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 8. PAYROLL TAXES PAID | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 9. SALES, USE & OTHER TAXES PAID | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 10. SECURED/RENTAL/LEASES | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 11. UTILITIES & TELEPHONE | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 12. INSURANCE | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 13. INVENTORY PURCHASES | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 14. VEHICLE EXPENSES | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 15. TRAVEL & ENTERTAINMENT | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 16. REPAIRS, MAINTENANCE & SUPPLIES | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 17. ADMINISTRATIVE & SELLING | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 18. OTHER (attach list) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| TOTAL DISBURSEMENTS FROM OPERATIONS | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 19. PROFESSIONAL FEES | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 20. U.S. TRUSTEE FEES | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 21. OTHER REORGANIZATION EXPENSES (attach list) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| TOTAL DISBURSEMENTS* | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 22. NET CASH FLOW | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 23. CASH -END OF MONTH (MOR-2) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |

MOR-7

* Applies to Individual debtors only

**Numbers for the current month should balance (match)

RECEIPTS and CHECKS/OTHER DISBURSEMENTS lines on MOR-8

Revised 07/01/98

Case 09-34452   Document 531   Filed in TXSB on 05/21/10   Page 8 of 9

CASE NAME:   Bison Building Holdings, Inc., et al  Bison Building Holdings, Inc.
CASE NUMBER:  09-34452-H2-11 (Chapter 11 -Jointly Administered)

## CASH ACCOUNT RECONCILIATION
### MONTH OF NO BANK ACCOUNT WAS MAINTAINED FOR THIS COMPANY
April 30, 2010

| BANK NAME | | | | |
|---|---|---|---|---|
| ACCOUNT NUMBER | # | # | # | |
| ACCOUNT TYPE | OPERATING | PAYROLL | TAX | OTHER FUNDS | TOTAL |
| BANK BALANCE | 0 | | | | 0 |
| DEPOSITS IN TRANSIT | 0 | | | | 0 |
| OUTSTANDING CHECKS | 0 | | | | 0 |
| ADJUSTED BANK BALANCE | 0 | 0 | 0 | 0 | 0 |
| BEGINNING CASH - PER BOOKS | 0 | | | | 0 |
| RECEIPTS* | 0 | | | | 0 |
| TRANSFERS BETWEEN ACCOUNTS | 0 | | | | 0 |
| (WITHDRAWAL) OR   CONTRIBUTION BY | | | | | 0 |
| INDIVIDUAL        DEBTOR   MFR-2 | 0 | | | | 0 |
| CHECKS/OTHER DISBURSEMENTS* | 0 | | | | 0 |
| ENDING CASH - PER BOOKS | 0 | 0 | 0 | 0 | 0 |

**MOR-8**

*Numbers should balance (match) TOTAL RECEIPTS and
TOTAL DISBURSEMENTS lines on MOR-7

Revised 07/01/98

Case 09-34452   Document 531   Filed in TXSB on 05/21/10   Page 9 of 9

CASE NAME:    Bison Building Holdings, Inc., et al  Bison Building Holdings, Inc.
CASE NUMBER:  09-34452-H2-11 (Chapter 11 –Jointly Administered)

## PAYMENTS TO INSIDERS AND PROFESSIONALS

Of the total disbursements shown for the month, list the amount paid to insiders (as defined in Section 101(31)(A)-(F) of the U.S. Bankruptcy Code) and the professionals.
Also, for insiders, identify the type of compensation paid (e.g., salary, commission, bonus, etc.) (Attach additional pages as necessary).

| INSIDERS: NAME/COMP. TYPE | MONTH June 28-July 31, 2009 | MONTH August 31, 2009 | MONTH September 30, 2009 | MONTH October 31, 2009 | MONTH November 30, 2009 | MONTH December 31, 2009 | MONTH January 31, 2010 | MONTH February 28, 2010 | MONTH March 31, 2010 | MONTH April 30, 2010 |
|---|---|---|---|---|---|---|---|---|---|---|
| | No payments were made to insiders and professionals | | | | | | | | | |
| 1. | | | | | | | | | | |
| 2. | | | | | | | | | | |
| 3. | | | | | | | | | | |
| 4. | | | | | | | | | | |
| 5. | | | | | | | | | | |
| 6. | | | | | | | | | | |
| TOTAL INSIDERS (MOR-1) | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |

| PROFESSIONALS | MONTH June 28-July 31, 2009 | MONTH August 31, 2009 | MONTH September 30, 2009 | MONTH October 31, 2009 | MONTH November 30, 2009 | MONTH December 31, 2009 | MONTH January 31, 2010 | MONTH February 28, 2010 | MONTH March 31, 2010 | MONTH April 30, 2010 |
|---|---|---|---|---|---|---|---|---|---|---|
| | No payments were made to insiders and professionals | | | | | | | | | |
| 1. | | | | | | | | | | |
| 2. | | | | | | | | | | |
| 3. | | | | | | | | | | |
| 4. | | | | | | | | | | |
| 5. | | | | | | | | | | |
| 6. | | | | | | | | | | |
| TOTAL PROFESSIONALS   (MOR-1) | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |

*Revised 07/01/98*

MOR-9

**UNITED STATES BANKRUPTCY COURT**

MOR-1
CASE NAME: Bison Building Holdings, Inc et al Milltech Inc
CASE NUMBER: 09-34452 H2-11 (Chapter 11 – Jointly Administered)
PROPOSED PLAN DATE: Undetermined

PETITION DATE: June 28, 2009
DISTRICT OF TEXAS: Southern
DIVISION: Houston

## MONTHLY OPERATING REPORT SUMMARY  FOR MONTH

| MONTH | June 28–July 31, 2009 | August 31, 2009 | September 30, 2008 | October 31, 2009 | November 30, 2009 | December 31, 2009 | January 31, 2010 | February 28, 2010 | March 31, 2010 | April 30, 2010 |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | YEAR | | YEAR 2010 | | | |
| REVENUES (MOR-6) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| INCOME BEFORE INT. DEPREC./TAX (MOR-6) | (1,612) | 0.00 | 0.00 | (325) | 0.00 | 0.00 | (325) | 0.00 | 0.00 | (325.00) |
| NET INCOME (LOSS) (MOR-6) | (1,612) | 0.00 | 0.00 | (325) | 0.00 | 0.00 | (325) | 0.00 | 0.00 | (325.00) |
| PAYMENTS TO INSIDERS (MOR-9) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 14,578 | 0.00 | 0.00 | 0.00 |
| PAYMENTS TO PROFESSIONALS (MOR-9) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| TOTAL DISBURSEMENTS (MOR-8) | 0.00 | 0.00 | 0.00 | 325 | 0.00 | 0.00 | 325 | 0.00 | 0.00 | 325.00 |

***The original of this document must be filed with the United States Bankruptcy Court and a copy must be sent to the United States Trustee***

REQUIRED INSURANCE MAINTAINED
AS OF SIGNATURE DATE

| | | EXP. DATE |
|---|---|---|
| CASUALTY | YES (x) NO ( ) | 9 - 1 - 10 |
| LIABILITY | YES (x) NO ( ) | 9 - 1 - 10 |
| VEHICLE | YES (x) NO ( ) | 9 - 1 - 10 |
| WORKERS | YES ( ) NO (x) | Note 1 |
| OTHER | YES ( ) NO (x) | - : - |

Are all accounts receivable being collected within terms?  CIRCLE ONE  Yes / No
Are all post-petition liabilities, including taxes, being paid within terms?  Yes / No
Have any pre-petition liabilities been paid?  Yes / No
   If so, describe
Are all funds received being deposited into DIP bank accounts?  Yes / No
Were any assets disposed of outside the normal course of business?  Yes / No
   If so, describe
Are all U.S. Trustee Quarterly Fee Payments current?  Yes / No
What is the status of your Plan of Reorganization?  To be determined

I certify under penalty of perjury that the following complete Monthly Operating Report (MOR), consisting of MOR-1 through MOR-9 plus attachments, is true and correct.

SIGNED x _____  TITLE: Jackson CFO
(ORIGINAL SIGNATURE)

Harley C. Robinson          5/13/2010
(PRINT NAME OF SIGNATORY)          DATE

ATTORNEY NAME: David Jones
FIRM NAME: Porter & Hedges LLP
ADDRESS: 1000 Main Street
CITY, STATE, ZIP: Houston, TX 77002
TELEPHONE/FAX: 713-226-6653/713-226-6253

MOR-1

Note 1-- This company was closed in April, '09 and no longer has employees. Therefore, no Workmen's Compensation insurance is carried.

Revised 07/01/08

CASE NAME:   Bison Building Holdings, Inc et al  Miltech Inc
CASE NUMBER: 09-34452 H2-11 (Chapter 11 - Jointly Administered)

## COMPARATIVE BALANCE SHEETS

| ASSETS | FILING DATE* Note(5) June 28, 2009 | MONTH July 31, 2009 | MONTH August 31, 2009 | MONTH September 30, 2009 | MONTH October 31, 2009 | MONTH November 30, 2009 | MONTH December 31, 2009 | MONTH January 31, 2010 | MONTH February 28, 2010 | MONTH March 31, 2010 | MONTH April 30, 2010 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **CURRENT ASSETS** | | | | | | | | | | | |
| Cash(1) | 6,302 | 67,172 | 80,857 | 80,857 | 80,556 | 85,964 | 185,964 | 185,639 | 185,639 | 185,639 | 200,217 |
| Accounts Receivable, Net | 367,123 | 306,253 | 292,568 | 292,568 | 292,544 | 287,136 | 187,136 | 187,136 | 187,136 | 187,136 | 187,136 |
| Inventory: Lower of Cost or Market | 0 | | | | | | | | | | |
| Real Estate Lease Deposits(2) | 19,530 | 19,530 | 19,530 | 19,530 | 19,530 | 19,530 | 19,530 | 19,530 | 19,530 | 19,530 | 19,530 |
| Investments | | | | | | | | | | | |
| | | | | | | | | | | | |
| **TOTAL CURRENT ASSETS** | 392,955 | 392,955 | 392,955 | 392,955 | 392,630 | 392,630 | 392,630 | 392,305 | 392,305 | 392,305 | 406,883 |
| PROPERTY, PLANT & EQUIP @ COST(3) | 250,762 | 250,762 | 250,762 | 250,762 | 250,762 | 250,762 | 250,762 | 250,762 | 250,762 | 250,762 | 250,762 |
| Less Accumulated Depreciation(4) | 239,453 | 239,453 | 239,453 | 239,453 | 239,453 | 239,453 | 239,453 | 239,453 | 239,453 | 239,453 | 239,453 |
| NET BOOK VALUE OF PP & E | 11,309 | 11,309 | 11,309 | 11,309 | 11,309 | 11,309 | 11,309 | 11,309 | 11,309 | 11,309 | 11,309 |
| OTHER ASSETS | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| **TOTAL ASSETS** | $404,264 | $404,264 | $404,264 | $404,264 | $403,939 | $403,939 | $403,939 | $403,614 | $403,614 | $403,614 | $418,192 |

\* Per Schedules and Statement of Affairs

MOR-2

Revised 07/01/08

(1) Cash balance on petition date was transferred to an account held in the name of Bison Building Materials LLC in connection with the closing of the Miltech, Inc. accounts, which was done at the request of the U.S. Trustee. Postpetition cash collections from accounts receivable were deposited into a Bison Building Materials LLC bank account in accordance with Debtors' prepetition practice.

(2) Amounts are a deposit for a real estate lease. This lease has been rejected. Collectibility of this deposit is uncertain.

(3) Amounts are from Debtors books and records and include leasehold improvements of $67,873 and computer license and software upgrades of $128,573, which the Debtors believe have no value. Amounts also include equipment and furniture and fixtures which Debtors have been unable to locate.

(4) Accumulated Depreciation of $211,417 was reported in the July 31, 2009 and June 28, 2009 Monthly Operating Reports. In reconciling this account, it was determined that this account had been understated and it was adjusted to $239,453.

(5) These balances are based on a reverse reconciliation of the Debtor's books as of June 30, 2009. This reconciliation continues and further adjustments may be made in subsequent MORs.

CASE NAME:   Bison Building Holdings, Inc et al Miltech Inc
CASE NUMBER: 09-34452 H2-11 (Chapter 11 –Jointly Administered)

## COMPARATIVE BALANCE SHEETS

| LIABILITIES & OWNER'S EQUITY | FILING DATE* Note 2 June 28, 2009 | MONTH July 31, 2009 | MONTH August 31, 2009 | MONTH September 30, 2009 | MONTH October 31, 2009 | MONTH November 30, 2009 | MONTH December 31, 2009 | MONTH January 31, 2010 | MONTH February 28, 2010 | MONTH March 31, 2010 | MONTH April 30, 2010 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **LIABILITIES** | | | | | | | | | | | |
| POST-PETITION LIABILITIES(MOR-4) | 1,612 | 1,612 | 1,612 | 1,612 | 1,612 | 1,612 | 1,612 | 1,612 | 1,612 | 1,612 | 1,612 |
| PRE-PETITION LIABILITIES | | | | | | | | | | | |
| Notes Payable - Secured | | | | | | | | | | | |
| Priority Debt | | | | | | | | | | | |
| Federal Income Tax | | | | | | | | | | | |
| FICA Withholding | | | | | | | | | | | |
| Unsecured Debt | 158,392 | 158,392 | 158,392 | 158,392 | 158,392 | 158,392 | 158,392 | 158,392 | 158,392 | 158,392 | 158,392 |
| Other Note 1 | 3,537,072 | 3,537,072 | 3,537,072 | 3,537,072 | 3,537,072 | 3,537,072 | 3,537,072 | 3,537,072 | 3,537,072 | 3,537,072 | 3,537,072 |
| TOTAL PRE-PETITION LIABILITIES | 3,695,464 | 3,695,464 | 3,695,464 | 3,695,464 | 3,695,464 | 3,695,464 | 3,695,464 | 3,695,464 | 3,695,464 | 3,695,464 | 3,695,464 |
| TOTAL LIABILITIES | 3,697,076 | 3,697,076 | 3,697,076 | 3,697,076 | 3,697,076 | 3,697,076 | 3,697,076 | 3,697,076 | 3,697,076 | 3,697,076 | 3,697,076 |
| **OWNER'S EQUITY (DEFICIT)** | | | | | | | | | | | |
| PREFERRED STOCK | | | | | | | | | | | |
| COMMON STOCK | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| ADDITIONAL PAID-IN CAPITAL | 201,948 | 201,948 | 201,948 | 201,948 | 201,948 | 201,948 | 201,948 | 201,948 | 201,948 | 201,948 | 201,948 |
| RETAINED EARNINGS - Filing Date | (3,493,149) | (3,493,149) | (3,493,149) | (3,493,149) | (3,493,149) | (3,493,149) | (3,493,149) | (3,493,149) | (3,493,149) | (3,493,149) | (3,493,149) |
| RETAINED EARNINGS - Post Filing Date | | (1,612) | (1,612) | (1,612) | (1,937) | (1,937) | (1,937) | (2,262) | (2,262) | (2,262) | 12,316 |
| TOTAL OWNERS EQUITY (NET WORTH) | (3,291,200) | (3,292,812) | (3,292,812) | (3,292,812) | (3,293,137) | (3,293,137) | (3,293,137) | (3,293,462) | (3,293,462) | (3,293,462) | (3,278,884) |
| TOTAL LIABILITIES & OWNERS EQUITY | $404,264 | $404,264 | $404,264 | $404,264 | $403,939 | $403,939 | $403,939 | $403,614 | $403,614 | $403,614 | $418,192 |

* Per Schedules and Statement of Affairs

**MOR-3**

*Revised 07/01/98*

**Note 1**Amount is an intercompany payable to Bison Building Materials LLC and Bison Building Holdigs, Inc.

**Note 2**-- These balances are based on a reverse reconciliation of the Debtor's books as of June 30, 2009. This reconciliation continues and further adjustments may be made in subsequent MOR's.

Case 09-34452   Document 529   Filed in TXSB on 05/21/10   Page 4 of 9

CASE NAME: Bison Building Holdings, Inc et al Milltech Inc
CASE NUMBER: 09-34452 H2-11 (Chapter 11 –Jointly Administered)

## SCHEDULE OF POST-PETITION LIABILITIES

| | MONTH July 31, 2009 | MONTH August 31, 2009 | MONTH September 30, 2009 | MONTH October 31, 2009 | MONTH November 30, 2009 | MONTH December 31, 2009 | MONTH January 31, 2010 | MONTH February 28, 2010 | MONTH March 31, 2010 | MONTH April 30, 2010 |
|---|---|---|---|---|---|---|---|---|---|---|
| *TRADE ACCOUNTS PAYABLE* | | | | | | | | | | |
| TAX PAYABLE | | | | | | | | | | |
| Federal Payroll Taxes | | | | | | | | | | |
| State Payroll Taxes | | | | | | | | | | |
| Ad Valorem Taxes | | | | | | | | | | |
| Other Taxes | | | | | | | | | | |
| TOTAL TAXES PAYABLE | | | | | | | | | | |
| SECURED DEBT POST-PETITION | | | | | | | | | | |
| ACCRUED INTEREST PAYABLE | | | | | | | | | | |
| ACCRUED PROFESSIONAL FEES* | | | | | | | | | | |
| OTHER ACCRUED LIABILITIES | | | | | | | | | | |
| 1. Intercompany payable to Bison Building Materials LLC | 1,612 | 1,612 | 1,612 | 1,612 | 1,612 | 1,612 | 1,612 | 1,612 | 1,612 | 1,612 |
| 2. | | | | | | | | | | |
| 3. | | | | | | | | | | |
| **TOTAL POST-PETITION LIABILITIES (MOR-3)** | $1,612 | $1,612 | $1,612 | $1,612 | $1,612 | $1,612 | $1,612 | $1,612 | $1,612 | $1,612 |

*Payment requires Court Approval

**MOR-4**

Revised 07/01/98

Case 09-34452   Document 529   Filed in TXSB on 05/21/10   Page 5 of 9

CASE NAME:  Bison Building Holdings, Inc et al  Milltech Inc
CASE NUMBER:  09-34452 H2-11 (Chapter 11 -Jointly Administered)

**AGING OF POST-PETITION LIABILITIES**
**MONTH**  April 30, 2010

| DAYS | TOTAL | TRADE ACCOUNTS | FEDERAL TAXES | STATE TAXES | AD VALOREM, OTHER TAXES | Intercompany | MONTH |
|------|-------|----------------|---------------|-------------|-------------------------|--------------|-------|
| 0-30 | | | | | | | |
| 31-60 | | | | | | | |
| 61-90 | | | | | | | |
| 91+ | $ 1,612 | | | | | $ 1,612 | |
| TOTAL | $ 1,612 | $ - | $ - | $ - | $ - | $ 1,612 | |

**AGING OF ACCOUNTS RECEIVABLE**

| MONTH | July 31, 2009 | August 31, 2009 | September 30, 2009 | October 31, 2009 | November 30, 2009 | December 31, 2009 | January 31, 2010 | February 28, 2010 | March 31, 2010 | April 30, 2010 |
|-------|---------------|-----------------|--------------------|------------------|-------------------|-------------------|------------------|-------------------|----------------|----------------|
| 0/30 DAYS | $ 2,962 | | | | | | | | | |
| 31/60 DAYS | 255 | $ 2,962 | | | | | | | | |
| 61/90 DAYS | 6,753 | 255 | $ 2,962 | | | | | | | |
| 91+ DAYS | 296,283 | 289,351 | 289,606 | 292,544 | 287,136 | 187,136 | 187,136 | 187,136 | 187,136 | 187,136 |
| TOTAL | $ 306,253 | $ 292,568 | $ 292,568 | $ 292,544 | $ 287,136 | $ 187,136 | $ 187,136 | $ 187,136 | $ 187,136 | $ 187,136 |

MOR-5

*Revised 07/01/98*

CASE NAME:   Bison Building Holdings, Inc et al. Milltech Inc
CASE NUMBER: 09-34452 H2-11 (Chapter 11 -Jointly Administered)

## STATEMENT OF INCOME (LOSS)

| | MONTH June 28-July 31, 2009 | MONTH August 31, 2009 | MONTH September 30, 2009 | MONTH October 31, 2009 | MONTH November 30, 2009 | MONTH December 31, 2009 | MONTH January 31, 2010 | MONTH February 28, 2010 | MONTH March 31, 2010 | MONTH April 30, 2010 | FILING TO DATE |
|---|---|---|---|---|---|---|---|---|---|---|---|
| REVENUES - (MOR-1) | | | | | | | | | | | 0 |
| TOTAL COST OF REVENUES | | | | | | | | | | | 0 |
| GROSS PROFIT | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| OPERATING EXPENSES | | | | | | | | | | | |
| Selling & Marketing | | | | | | | | | | | 0 |
| General & Administrative | | | | | | | | | | | 0 |
| Insiders Compensation | | | | | | | | | | | 0 |
| Professional Fees | | | | | | | | | | | 0 |
| Other | 1,612 | | | 325 | | | 325 | | | 325 | 2,587 |
| Other | | | | | | | | | | | 0 |
| TOTAL OPERATING EXPENSES | 1,612 | 0 | 0 | 325 | 0 | 0 | 325 | 0 | 0 | 325 | 2,587 |
| INCOME BEFORE INT, DEP&TAX (MOR-1) | (1,612) | 0 | 0 | (325) | 0 | 0 | (325) | 0 | 0 | (325) | (2,587) |
| INTEREST EXPENSE | | | | | | | | | | | 0 |
| DEPRECIATION | | | | | | | | | | | 0 |
| OTHER (INCOME) EXPENSE* Note 1 | | | | | | | (14,903) | | | | (14,903) |
| OTHER ITEMS** | | | | | | | | | | | 0 |
| TOTAL INT, DEPR & OTHER ITEMS | 0 | 0 | 0 | 0 | 0 | 0 | (14,903) | 0 | 0 | 0 | (14,903) |
| NET INCOME BEFORE TAXES | (1,612) | 0 | 0 | (325) | 0 | 0 | 14,578 | 0 | 0 | (325) | 12,316 |
| FEDERAL INCOME TAXES | | | | | | | | | | | 0 |
| NET INCOME (LOSS) (MOR-1) | (1,612) | 0 | 0 | (325) | 0 | 0 | 14,578 | 0 | 0 | (325) | 12,316 |

Accrual Accounting Required, Otherwise Footnote with Explanation.

*  Footnote Mandatory.

** Unusual and/or infrequent item(s) outside the ordinary course of business requires footnote.

**MOR-6**

**Note 1** Refund from Workers Compensation Policy

Revised 07/01/98

CASE NAME:   Bison Building Holdings, Inc et al  Milltech Inc
CASE NUMBER: 09-34452 H2-11 (Chapter 11 -Jointly Administered)

| CASH RECEIPTS AND DISBURSEMENTS | MONTH June 26-July 31, 2009 | MONTH August 31, 2009 | MONTH September 30, 2009 | MONTH October 31, 2009 | MONTH November 30, 2009 | MONTH December 31, 2009 | MONTH January 31, 2010 | MONTH February 28, 2010 | MONTH March 31, 2010 | MONTH April 30, 2010 | FILING TO DATE |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. CASH-BEGINNING OF MONTH | $6,302 | $67,172 | $80,857 | $80,857 | $80,556 | $85,964 | $185,964 | $185,639 | $185,639 | $185,639 | $6,302 |
| RECEIPTS: | | | | | | | | | | | |
| 2. CASH SALES | | | | | | | | | | | 0 |
| 3. COLLECTION OF ACCOUNTS RECEIVABLE | 60,870 | 13,685 | | 24 | 5,408 | 100,000 | | | | | 179,987 |
| 4. LOANS & ADVANCES (attach list) | | | | | | | | | | | 0 |
| 5. SALE OF ASSETS | | | | | | | | | | | 0 |
| 6. OTHER (attach list) Note 1 | | | | | | | | | | 14,903 | 14,903 |
| TOTAL RECEIPTS** | 60,870 | 13,685 | 0 | 24 | 5,408 | 100,000 | 0 | 0 | 0 | 14,903 | 194,890 |
| (Withdrawal) Contribution by Individual Debtor MOR-2* | | | | | | | | | | | 0 |
| DISBURSEMENTS: | | | | | | | | | | | |
| 7. NET PAYROLL | | | | | | | | | | | 0 |
| 8. PAYROLL TAXES PAID | | | | | | | | | | | 0 |
| 9. SALES, USE & OTHER TAXES PAID | | | | | | | | | | | 0 |
| 10. SECURED/RENTAL/LEASES | | | | | | | | | | | 0 |
| 11. UTILITIES & TELEPHONE | | | | | | | | | | | 0 |
| 12. INSURANCE | | | | | | | | | | | 0 |
| 13. INVENTORY PURCHASES | | | | | | | | | | | 0 |
| 14. VEHICLE EXPENSES | | | | | | | | | | | 0 |
| 15. TRAVEL & ENTERTAINMENT | | | | | | | | | | | 0 |
| 16. REPAIRS, MAINTENANCE & SUPPLIES | | | | | | | | | | | 0 |
| 17. ADMINISTRATIVE & SELLING | | | | | | | | | | | 0 |
| 18. OTHER (attach list) | | | | | | | | | | | 0 |
| TOTAL DISBURSEMENTS FROM OPERATIONS | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 19. PROFESSIONAL FEES | | | | | | | | | | | 0 |
| 20. U.S. TRUSTEE FEES | | | | | 325 | | 325 | | | 325 | 975 |
| 21. OTHER REORGANIZATION EXPENSES (attach list) | | | | | | | | | | | 0 |
| TOTAL DISBURSEMENTS** | 0 | 0 | 0 | 325 | 325 | 0 | 325 | 0 | 0 | 325 | 975 |
| 22. NET CASH FLOW | 60,870 | 13,685 | 0 | (301) | 5,408 | 100,000 | (325) | 0 | 0 | 14,578 | 193,915 |
| 23. CASH- END OF MONTH (MOR-2) | $67,172 | $80,857 | $80,857 | $80,556 | $85,964 | $185,964 | $185,639 | $185,639 | $185,639 | $200,217 | $200,217 |

* Applies to Individual debtors only
**Numbers for the current month should balance (match)
RECEIPTS and CHECKS/OTHER DISBURSEMENTS lines on MOR-8

**MOR-7**

Revised 07/01/08

Note 1 -- Workers Compensation Insurance refund

Case 09-34452   Document 529   Filed in TXSB on 05/21/10   Page 8 of 9

CASE NAME:   Bison Building Holdings, Inc et al  Milltech Inc
CASE NUMBER: 09-34452 H2-11 (Chapter 11 -Jointly Administered)

## CASH ACCOUNT RECONCILIATION
### MONTH OF ___ April 30, 2010 ___

| BANK NAME: | Chase Bank | | | | |
|---|---|---|---|---|---|
| ACCOUNT NUMBER | # 192170882 | # | # | | |
| *ACCOUNT TYPE* | *Checking* | *PAYROLL* | *TAX* | *OTHER FUNDS* | *TOTAL* |
| BANK BALANCE | 0 | | | | 0 |
| DEPOSITS IN TRANSIT | | | | | 0 |
| OUTSTANDING CHECKS | 0 | | | | 0 |
| ADJUSTED BANK BALANCE | 0 | 0 | 0 | 0 | 0 |
| BEGINNING CASH - PER BOOKS | 185,639 | | | | 185,639 |
| RECEIPTS* | 14,903 | | | | 14,903 |
| TRANSFERS BETWEEN ACCOUNTS | | | | | 0 |
| (WITHDRAWAL) OR  CONTRIBUTION BY INDIVIDUAL          DEBTOR   MFR-2 | | | | | 0 |
| CHECKS/OTHER DISBURSEMENTS* | 325 | | | | 325 |
| ENDING CASH - PER BOOKS | 200,217 | 0 | 0 | 0 | 200,217 |

**MOR-8**

*Numbers should balance (match) TOTAL RECEIPTS and
TOTAL DISBURSEMENTS lines on MOR-7

*Revised 07/01/98*

(1) Cash balance on petition date was transferred to an account held in the name of Bison Building Materials LLC in connection with the closing of the Milltech, Inc. account, which was done at the request of the U.S. Trustee.  Postpetition cash collections from accounts receivable were deposited into a Bison Building Materials LLC bank account in accordance with Debtors' prepetition practice.

CASE NAME:     Bison Building Holdings, Inc et al Miltech Inc
CASE NUMBER:  09-34452 H2-11 (Chapter 11 -Jointly Administered)

## PAYMENTS TO INSIDERS AND PROFESSIONALS

Of the total disbursements shown for the month, list the amount paid to insiders (as defined in Section 101(31)(A)-(F) of the U.S. Bankruptcy Code) and the professionals.
Also, for insiders, identify the type of compensation paid (e.g., salary, commission, bonus, etc.) (Attach additional pages as necessary).

| INSIDERS: NAME/COMP  TYPE | MONTH July 31, 2009 | MONTH August 31, 2009 | MONTH September 30, 2009 | MONTH October 31, 2009 | MONTH November 30, 2009 | MONTH December 31, 2009 | MONTH January 31, 2010 | MONTH February 28, 2010 | MONTH March 31, 2010 | MONTH April 30, 2010 |
|---|---|---|---|---|---|---|---|---|---|---|
| | No payments were made to Insiders and Professionals | | | | | | | | | |
| 1. | | | | | | | | | | |
| 2. | | | | | | | | | | |
| 3. | | | | | | | | | | |
| 4. | | | | | | | | | | |
| 5. | | | | | | | | | | |
| 6. | | | | | | | | | | |
| TOTAL INSIDERS  (MOR-1) | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |

| PROFESSIONALS | MONTH July 31, 2009 | MONTH August 31, 2009 | MONTH September 30, 2009 | MONTH October 31, 2009 | MONTH November 30, 2009 | MONTH December 31, 2009 | MONTH January 31, 2010 | MONTH February 28, 2010 | MONTH March 31, 2010 | MONTH April 30, 2010 |
|---|---|---|---|---|---|---|---|---|---|---|
| | No payments were made to Insiders and Professionals | | | | | | | | | |
| 1. | | | | | | | | | | |
| 2. | | | | | | | | | | |
| 3. | | | | | | | | | | |
| 4. | | | | | | | | | | |
| 5. | | | | | | | | | | |
| 6. | | | | | | | | | | |
| TOTAL PROFESSIONALS   (MOR-1) | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |

Revised 07/01/98

MOR-9

MOR-1

CASE NAME: Bison Building Holdings, Inc., et al   Bison Multi-Family Sales, LLC
CASE NUMBER: 09-34452-H2-11 (Chapter 11 – Jointly Administered)
PROPOSED PLAN DATE: Undetermined

UNITED STATES BANKRUPTCY COURT

PETITION DATE: June 28, 2009
DISTRICT OF TEXAS: Southern
DIVISION: Houston

## MONTHLY OPERATING REPORT SUMMARY FOR MONTH

|  | MONTH June 28–July 31, 2009 | August 31, 2009 | September 30, 2009 | October 31, 2009 | November 30, 2009 | December 31, 2008 | January 31, 2010 | February 28, 2010 | March 31, 2010 | April 30, 2010 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | April | YEAR | 2010 | | | |
| REVENUES (MOR-6) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| INCOME BEFORE INT - DEPREC-TAX (MOR-6) | 994 | 0 | 0 | (650) | 0 | 0 | (325) | (5,693) | 0 | (325) |
| NET INCOME (LOSS) (MOR-6) | 994 | 0 | 0 | (650) | 0 | 0 | (325) | (5,693) | 0 | (325) |
| PAYMENTS TO INSIDERS (MOR-9) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| PAYMENTS TO PROFESSIONALS (MOR-9) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| TOTAL DISBURSEMENTS (MOR-8) | 0 | 0 | 152 | 650 | 0 | 0 | 5,495 | 0 | 0 | 325 |

***The original of this document must be filed with the United States Bankruptcy Court and a copy must be sent to the United States Trustee***

| REQUIRED INSURANCE MAINTAINED | | |
|---|---|---|
| AS OF SIGNATURE DATE | EXP. DATE | |
| CASUALTY | YES (x) NO ( ) | 9 - 1 - 10 |
| LIABILITY | YES (x) NO ( ) | 9 - 1 - 10 |
| VEHICLE | YES (x) NO ( ) | 9 - 1 - 10 |
| WORKER'S | YES ( ) NO (x) | Note 1 |
| OTHER | YES ( ) NO (x) | - - |

Are all accounts receivable being collected within terms? 
Are all post-petition liabilities, including taxes, being paid within terms? 
Have any pre-petition liabilities been paid? Note 2
*If so, describe*

Are all funds received being deposited into DIP bank accounts? 
Were any assets disposed of outside the normal course of business? 
*If so, describe*

Are all U.S. Trustee Quarterly Fee Payments current? 
What is the status of your Plan of Reorganization?

CIRCLE ONE
Yes (No)
(Yes) No
(Yes) No

(Yes) No
Yes (No)

(Yes) No
to be determined

The assets of this company (inventory, order book, personnel, etc) were sold on May 15, 2009.

I certify under penalty of perjury that the following complete Monthly Operating Report (MOR), consisting of MOR-1 through MOR-9 plus attachments, is true and correct.

SIGNED x _Arthur C. Siekmann_  Arthur Siekmann, CEO
(ORIGINAL SIGNATURE)

Harley C. Robinson                    5/13/2010
(PRINT NAME OF SIGNATORY)            DATE        Revised 07/01/98

ATTORNEY NAME: David Jones
FIRM NAME: Porter & Hedges, LLP
ADDRESS: 1000 Main Street, 36th Floor
         Houston, Texas 77002
CITY, STATE, ZIP:
TELEPHONE/FAX: (713) 226-6653 / (713) 226-6253

MOR-1

Note 1—The assets of this company were sold and it no longer has employees. Therefore, no Worker's Compensation Insurance is carried.

Note 2—In February, Debtor received payment from a customer in accordance with a Court Order approving a Compromise with the customer. The Motion to Approve Compromise also included the payment by Debtor's customer of certain prepetition liabilities of Debtor.

CASE NAME:   Bison Building Holdings, Inc., et al   Bison Multi-Family Sales, LLC
CASE NUMBER:  09-34452-H2-11 (Chapter 11 - Jointly Administered)

## COMPARATIVE BALANCE SHEETS

| ASSETS | FILING DATE* Note 1 June 28, 2009 | MONTH July 31, 2009 | MONTH August 31, 2009 | MONTH September 30, 2009 | MONTH October 31, 2009 | MONTH November 30, 2009 | MONTH December 31, 2009 | MONTH January 31, 2010 | MONTH February 28, 2010 | MONTH March 31, 2010 | MONTH April 30, 2010 | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **CURRENT ASSETS** | | | | | | | | | | | | | | | |
| Cash (2) | $            - | $   199,116 | $   229,216 | $   229,064 | $   228,414 | $   228,414 | $   228,414 | $   222,919 | $   461,393 | $   463,302 | $   464,444 | | | | |
| Accounts Receivable, Net | 580,416 | 382,294 | 352,309 | 352,309 | 352,309 | 352,309 | 352,309 | 352,309 | 40,835 | 40,835 | 40,835 | | | | |
| Inventory: Lower of Cost or Market (3) | 70,367 | 70,367 | 70,367 | 70,367 | 70,367 | 70,367 | 70,367 | 70,367 | 70,367 | 70,367 | 70,367 | | | | |
| Prepaid Expenses | 6,570 | 6,570 | 6,570 | 6,570 | 6,570 | 6,570 | 6,570 | 6,570 | 6,570 | 6,570 | 6,570 | | | | |
| Investments | | | | | | | | | | | | | | | |
| Other(4) | 1,559,825 | 1,559,825 | 1,559,825 | 1,559,825 | 1,559,825 | 1,559,825 | 1,559,825 | 1,559,825 | 1,559,816 | 1,559,816 | 1,559,816 | | | | |
| TOTAL CURRENT ASSETS | 2,217,178 | 2,218,172 | 2,218,287 | 2,218,135 | 2,217,485 | 2,217,485 | 2,217,485 | 2,211,990 | 2,138,981 | 2,140,890 | 2,142,032 | | | | |
| PROPERTY, PLANT & EQUIP. @ COST | 4,721 | 4,721 | 4,721 | 4,721 | 4,721 | 4,721 | 4,721 | 4,721 | 4,721 | 4,721 | 4,721 | | | | |
| Less Accumulated Depreciation | 2,361 | 2,361 | 2,361 | 2,361 | 2,361 | 2,361 | 2,361 | 2,361 | 2,361 | 2,361 | 2,361 | | | | |
| NET BOOK VALUE OF PP & E | 2,360 | 2,360 | 2,360 | 2,360 | 2,360 | 2,360 | 2,360 | 2,360 | 2,360 | 2,360 | 2,360 | | | | |
| OTHER ASSETS | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| TOTAL ASSETS | $ 2,219,538 | $ 2,220,532 | $ 2,220,647 | $ 2,220,495 | $2,219,845 | $2,219,845 | $2,219,845 | $2,214,350 | $2,141,341 | $2,143,250 | $2,144,392 | | | | |

* Per Schedules and Statement of Affairs

**MOR-2**

Note 1– These balances are based upon a reverse reconciliation of the Debtor's books as of June 30, 2009. This reconciliation continues and further adjustments may be made in subsequent MORs.

Note 2– cash represents collections of accounts receivable and a sales tax refund which were deposited into Bison Building Materials LLC bank account in accordance with the Debtor's prepetition practice

Note 3– operating assets, including inventories, order book, customer lists, etc., of the Debtor were sold on May 15, 2009. The inventory balance reported is from the Debtors books and records and is the balance remaining after recording the sales transaction. Debtor believes this has no value.

Note 4– amount is intercompany receivable from other Bison companies. In reconciling this account, Debtor determined that it had been overstated due to accounting entries made in June. An adjustment to reduce this account and Retained Earnings by $80,052 was made in January, 2010, and retroactively applied to previously reported monthly balances.

Revised 07/01/08

CASE NAME:   Bison Building Holdings, Inc., et al   Bison Multi-Family Sales, LLC
CASE NUMBER: 09-34452-H2-11 (Chapter 11 - Jointly Administered)

## COMPARATIVE BALANCE SHEETS

| LIABILITIES & OWNER'S EQUITY | FILING DATE * Note 1 June 28, 2009 | MONTH July 31, 2009 | MONTH August 31, 2009 | MONTH September 30, 2009 | MONTH October 31, 2009 | MONTH November 30, 2009 | MONTH December 31, 2009 | MONTH January 31, 2010 | MONTH February 28, 2010 | MONTH March 31, 2010 | MONTH April 30, 2010 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **LIABILITIES** | | | | | | | | | | | |
| POST-PETITION LIABILITIES(MOR-4) | | | | | | | | | | | |
| PRE-PETITION LIABILITIES | | | | | | | | | | | |
| Notes Payable - Secured | | | | | | | | | | | |
| Priority Debt -- Note 2 | $ 21,758 | $ 21,758 | $ 21,873 | $ 21,721 | $ 21,721 | $ 21,721 | $ 21,721 | $ 16,551 | $ 16,551 | $ 18,460 | $ 19,927 |
| Federal Income Tax | | | | | | | | | | | |
| FICA Withholding | | | | | | | | | | | |
| Unsecured Debt -- Note 3 | 689,377 | 689,377 | 689,377 | 689,377 | 689,377 | 689,377 | 689,377 | 689,377 | 622,061 | 622,061 | 622,061 |
| Other accrued liabilities | | | | | | | | | | | |
| TOTAL PRE-PETITION LIABILITIES | 711,135 | 711,135 | 711,250 | 711,098 | 711,098 | 711,098 | 711,098 | 705,928 | 638,612 | 640,521 | 641,988 |
| **TOTAL LIABILITIES** | 711,135 | 711,135 | 711,250 | 711,098 | 711,098 | 711,098 | 711,098 | 705,928 | 638,612 | 640,521 | 641,988 |
| **OWNER'S EQUITY (DEFICIT)** | | | | | | | | | | | |
| PREFERRED STOCK | | | | | | | | | | | |
| COMMON STOCK | | | | | | | | | | | |
| ADDITIONAL PAID-IN CAPITAL | | | | | | | | | | | |
| RETAINED EARNINGS  Filing Date | 1,508,403 | 1,508,403 | 1,508,403 | 1,508,403 | 1,508,403 | 1,508,403 | 1,508,403 | 1,508,403 | 1,508,403 | 1,508,403 | 1,508,403 |
| RETAINED EARNINGS  Post Filing Date | | 994 | 994 | 994 | 344 | 344 | 344 | 19 | (5,674) | (5,674) | (5,999) |
| TOTAL OWNER'S EQUITY (NET WORTH)Note 4 | 1,508,403 | 1,509,397 | 1,509,397 | 1,509,397 | 1,508,747 | 1,508,747 | 1,508,747 | 1,508,422 | 1,502,729 | 1,502,729 | 1,502,404 |
| **TOTAL LIABILITIES & OWNERS EQUITY** | $ 2,219,538 | $ 2,220,532 | $ 2,220,647 | $ 2,220,495 | $ 2,219,845 | $ 2,219,845 | $ 2,219,845 | $ 2,214,350 | $ 2,141,341 | $ 2,143,250 | $ 2,144,392 |

* Per Schedules and Statement of Affairs

*Revised 07/01/98*

MOR-3

Note 1- These balances are based upon a reverse reconciliation of the Debtor's books as of June 30, 2009.  This reconciliation continues and further adjustments may be made in subsequent MOR's.

Note 2- Amounts are for estimated ad valorem and sales taxes payable.  A refund of sales tax in the amount of $115 was received in August causing this account balance to increase.  A payment of $152 was made for Florida Sales Tax in September.

Note 3- In accordance with the Debtor's prepetition accounting practice, all unsecured trade accounts payable were paid by Bison Building Materials, LLC and were included in the unsecured Debt on Bison Building Materials, LLC's books on the filing date. The Debtor has determined that on the Filing Date, $689,377 was owed to unsecured creditors and has adjusted its books to reflect this liability.  In February, certain prepetition liabilities were paid in accordance with Court Order.

Note 4- Retained Earnings balances have been adjusted for intercompany balance reconciliation adjustment.  See Note 4 on MOR 2

**CASE NAME:**   Bison Building Holdings, Inc., et al   Bison Multi-Family Sales, LLC
**CASE NUMBER:**   09-34452-H2-11 (Chapter 11 - Jointly Administered)

## SCHEDULE OF POST-PETITION LIABILITIES

| | MONTH July 31, 2009 | MONTH August 31, 2009 | MONTH September 30, 2009 | MONTH October 31, 2009 | MONTH November 30, 2009 | MONTH December 31, 2009 | MONTH January 31, 2010 | MONTH February 28, 2010 | MONTH March 31, 2010 | MONTH April 30, 2010 |
|---|---|---|---|---|---|---|---|---|---|---|
| *TRADE ACCOUNTS PAYABLE* | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| TAX PAYABLE | | | | | | | | | | |
| Federal Payroll Taxes | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| State Payroll Taxes | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Ad Valorem Taxes | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Other Taxes | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| TOTAL TAXES PAYABLE | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| SECURED DEBT POST-PETITION | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| ACCRUED INTEREST PAYABLE | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| ACCRUED PROFESSIONAL FEES* | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| OTHER ACCRUED LIABILITIES | | | | | | | | | | |
| 1. | | | | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 2. | | | | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 3. | | | | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **TOTAL POST-PETITION LIABILITIES (MOR-3)** | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |

*Payment requires Court Approval

**MOR-4**

*Revised 07/01/98*

**CASE NAME:** Bison Building Holdings, Inc., et al  Bison Multi-Family Sales, LLC
**CASE NUMBER:** 09-34452-H2-11 (Chapter 11 - Jointly Administered)

### AGING OF POST-PETITION LIABILITIES
### MONTH  April 30, 2010

| DAYS | TOTAL | TRADE ACCOUNTS | FEDERAL TAXES | STATE TAXES | AD VALOREM, OTHER TAXES | MONTH |
|------|-------|----------------|---------------|-------------|--------------------------|-------|
| 0-30 | | | | | | |
| 31-60 | | | | | | |
| 61-90 | | | | | | |
| 91+ | | | | | | |
| TOTAL | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | |

### AGING OF ACCOUNTS RECEIVABLE

| MONTH | July 31, 2009 | August 31, 2009 | September 30, 2009 | October 31, 2009 | November 30, 2009 | December 31, 2009 | January 31, 2010 | February 28, 2010 | March 31, 2010 | April 30, 2010 |
|-------|---------------|-----------------|--------------------|------------------|-------------------|-------------------|------------------|-------------------|----------------|----------------|
| 0-30 DAYS | $ 192,350 | $ - | | | | | | | | |
| 31-60 DAYS | 23,425 | 15,046 | | | | | | | | |
| 61-90 DAYS | - | 200,281 | 15,046 | | | | | | | |
| 91+ DAYS | 166,519 | 136,982 | 337,263 | $ 352,309 | $ 352,309 | $ 352,309 | $ 352,309 | $ 40,835 | $ 40,835 | $ 40,835 |
| TOTAL | $ 382,294 | $ 352,309 | $ 352,309 | $ 352,309 | $ 352,309 | $ 352,309 | $ 352,309 | $ 40,835 | $ 40,835 | $ 40,835 |

**MOR-5**

*Revised 07/01/98*

CASE NAME:   Bison Building Holdings, Inc., et al   Bison Multi-Family Sales, LLC
CASE NUMBER: 09-34452-H2-11 (Chapter 11 - Jointly Administered)

## STATEMENT OF INCOME (LOSS)

| | MONTH June 28-July 31, 2009 | MONTH August 31, 2009 | MONTH September 30, 2009 | MONTH October 31, 2009 | MONTH November 30, 2009 | MONTH December 31, 2009 | MONTH January 31, 2010 | MONTH February 28, 2010 | MONTH March 31, 2010 | MONTH April 30, 2010 | FILING TO DATE |
|---|---|---|---|---|---|---|---|---|---|---|---|
| REVENUES (MOR-1) | 0 | 0 | 0 | 0 | 0 | 0 | | | | | 0 |
| TOTAL COST OF REVENUES | 0 | 0 | 0 | 0 | 0 | 0 | | | | | 0 |
| GROSS PROFIT | 0 | 0 | 0 | 0 | 0 | 0 | | | | | 0 |
| OPERATING EXPENSES: | | | | | | | | | | | |
| Selling & Marketing | 0 | 0 | 0 | 0 | 0 | 0 | | | | | 0 |
| General & Administrative | 0 | 0 | 0 | 0 | 0 | 0 | | | | | 0 |
| Insiders Compensation | 0 | 0 | 0 | 0 | 0 | 0 | | | | | 0 |
| Professional Fees | (994) | 0 | 0 | 650 | 0 | 0 | 325 | | | 325 | 306 |
| Other | | 0 | 0 | 0 | 0 | 0 | | 5,693 | | | 5,693 |
| Other | | 0 | 0 | 0 | 0 | 0 | | | | | 0 |
| TOTAL OPERATING EXPENSES | (994) | 0 | 0 | 650 | 0 | 0 | 325 | 5,693 | 0 | 325 | 5,999 |
| INCOME BEFORE INT. DEPR.TAX (MOR-1) | 994 | 0 | 0 | (650) | 0 | 0 | (325) | (5,693) | 0 | (325) | (5,999) |
| INTEREST EXPENSE | 0 | 0 | 0 | 0 | 0 | 0 | | | | | 0 |
| DEPRECIATION | 0 | 0 | 0 | 0 | 0 | 0 | | | | | 0 |
| OTHER (INCOME) EXPENSE* | 0 | 0 | 0 | 0 | 0 | 0 | | | | | 0 |
| OTHER ITEMS** | 0 | 0 | 0 | 0 | 0 | 0 | | | | | 0 |
| TOTAL INT. DEPR & OTHER ITEMS | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| NET INCOME BEFORE TAXES | 994 | 0 | 0 | (650) | 0 | 0 | (325) | (5,693) | 0 | (325) | (5,999) |
| FEDERAL INCOME TAXES | 0 | 0 | 0 | 0 | 0 | 0 | | | | | 0 |
| NET INCOME (LOSS) (MOR-1) | 994 | 0 | 0 | (650) | 0 | 0 | (325) | (5,693) | 0 | (325) | (5,999) |

Accrual Accounting Required, Otherwise Footnote with Explanation.
* Footnote Mandatory.
** Unusual and/or infrequent item(s) outside the ordinary course of business requires footnote.

MOR-6

Revised 07/01/98

CASE NAME:   Bison Building Holdings, Inc., et al   Bison Multi-Family Sales, LLC
CASE NUMBER: 09-34452-H2-11 (Chapter 11 - Jointly Administered)

## MOR-7

| CASH RECEIPTS AND DISBURSEMENTS | MONTH July 31, 2009 | MONTH August 31, 2009 | MONTH September 30, 2009 | MONTH October 31, 2009 | MONTH November 30, 2009 | MONTH December 31, 2009 | MONTH January 31, 2010 | MONTH February 28, 2010 | MONTH March 31, 2010 | MONTH April 30, 2010 | FILING TO DATE |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. CASH-BEGINNING OF MONTH | $0 | $199,116 | $229,216 | $229,064 | $228,414 | $228,414 | $228,414 | $222,919 | $461,393 | $463,302 | $0 |
| **RECEIPTS:** | | | | | | | | | | | |
| 2. CASH SALES | | | | | | | | | | | 0 |
| 3. COLLECTION OF ACCOUNTS RECEIVABLE (attach list) | 199,116 | 29,985 | | | | | | 238,474 | | | 467,575 |
| 4. LOANS & ADVANCES (attach list) | | | | | | | | | | | 0 |
| 5. SALE OF ASSETS | | | | | | | | | | | 0 |
| 6. OTHER (attach list) Notes 1 and 3 | 115 | | | | | | | | 1,909 | 1,467 | 3,491 |
| TOTAL RECEIPTS* | 199,116 | 30,100 | 0 | 0 | 0 | 0 | 0 | 238,474 | 1,909 | 1,467 | 471,066 |
| Withdrawals/Contributions by Individual Debtor MOR-2* | 0 | | | | | | | | | | 0 |
| **DISBURSEMENTS:** | | | | | | | | | | | |
| 7. NET PAYROLL | | | | | | | | | | | 0 |
| 8. PAYROLL TAXES PAID | | | | | | | | | | | 0 |
| 9. SALES, USE & OTHER TAXES PAID | | | 152 | | | | 5,170 | | | | 5,322 |
| 10. SECURED RENT/LEASES | | | | | | | | | | | 0 |
| 11. UTILITIES & TELEPHONE | | | | | | | | | | | 0 |
| 12. INSURANCE | | | | | | | | | | | 0 |
| 13. INVENTORY PURCHASES | | | | | | | | | | | 0 |
| 14. VEHICLE EXPENSES | | | | | | | | | | | 0 |
| 15. TRAVEL & ENTERTAINMENT | | | | | | | | | | | 0 |
| 16. REPAIRS, MAINTENANCE & SUPPLIES | | | | | | | | | | | 0 |
| 17. ADMINISTRATIVE & SELLING | | | | | | | | | | | 0 |
| 18. OTHER (attach list) | | | | | | | | | | | 0 |
| TOTAL DISBURSEMENTS FROM OPERATIONS | 0 | 0 | 152 | 0 | 0 | 0 | 5,170 | 0 | 0 | 0 | 5,322 |
| 19. PROFESSIONAL FEES | | | | | | | | | | | 0 |
| 20. U.S. TRUSTEE FEES | | | | 650 | | | 325 | | | 325 | 1,300 |
| 21. OTHER REORGANIZATION EXPENSES (attach list) | | | | | | | | | | | 0 |
| TOTAL DISBURSEMENTS** | 0 | 0 | 152 | 650 | 0 | 0 | 5,495 | 0 | 0 | 325 | 6,622 |
| 22. NET CASH FLOW | 199,116 | 30,100 | (152) | (650) | 0 | 0 | (5,495) | 238,474 | 1,909 | 1,142 | 464,444 |
| 23. CASH - END OF MONTH (MOR-2) | $199,116 | $229,216 | $229,064 | $228,414 | $228,414 | $228,414 | $222,919 | $461,393 | $463,302 | $464,444 | $464,444 |

\* Applies to Individual debtors only
** Numbers for the current month should balance (match)
RECEIPTS and CHECKS/OTHER DISBURSEMENTS lines on MOR-8

Note 1- Tax refund of $115 collected during August, '09.
Note 2 - Tax refund of $1,909 of taxes paid during October 2008
Note 3 - Tax refund of $1,467 of taxes paid during October 2008

Revised 07/01/08

CASE NAME:   Bison Building Holdings, Inc., et al   Bison Multi-Family Sales, LLC
CASE NUMBER:   09-34452-H2-11 (Chapter 11 - Jointly Administered)

## CASH ACCOUNT RECONCILIATION

MONTH OF _____ April 30, 2010 _____   NO BANK ACCOUNT WAS MAINTAINED FOR THIS COMPANY

| ACCOUNT TYPE | OPERATING | PAYROLL | TOTAL |
|---|---|---|---|
| BANK BALANCE | | | 0 |
| DEPOSITS IN TRANSIT | | | 0 |
| OUTSTANDING CHECKS | | | 0 |
| ADJUSTED BANK BALANCE | 0 | 0 | 0 |
| BEGINNING CASH - PER BOOKS | $463,302 | | $463,302 |
| RECEIPTS* (1) | 1,467 | | 1,467 |
| TRANSFERS BETWEEN ACCOUNTS | | | |
| (WITHDRAWAL) OR CONTRIBUTION BY INDIVIDUAL DEBTOR   MFR-2 | | | 0 |
| CHECKS/OTHER DISBURSEMENTS* | 325 | | 325 |
| ENDING CASH - PER BOOKS | $464,444 | $0 | $464,444 |

**MOR-8**

*Numbers should balance (match) TOTAL RECEIPTS and
TOTAL DISBURSEMENTS lines on MOR-7

*Revised 07/01/98*

(1) cash represents collections of accounts receivable and a tax refund which were deposited into Bison Building Materials LLC bank account in accordance with the Debtors' prepetition practice

Case 09-34452   Document 526   Filed in TXSB on 05/21/10   Page 9 of 9

**CASE NAME:** Bison Building Holdings, Inc., et al  Bison Multi-Family Sales, LLC
**CASE NUMBER:** 09-34452-H2-11 (Chapter 11 - Jointly Administered)

## PAYMENTS TO INSIDERS AND PROFESSIONALS

Of the total disbursements shown for the month, list the amount paid to insiders (as defined in Section 101(31)(A)-(F) of the U.S. Bankruptcy Code) and the professionals.
Also, for insiders, identify the type of compensation paid (e.g., salary, commission, bonus, etc.) (Attach additional pages as necessary)

| INSIDERS: NAME/COMP. TYPE | MONTH July 31, 2009 | MONTH August 31, 2009 | MONTH September 30, 2009 | MONTH October 31, 2009 | MONTH November 30, 2009 | MONTH December 31, 2009 | MONTH January 31, 2010 | MONTH February 28, 2010 | MONTH March 31, 2010 | MONTH April 30, 2010 |
|---|---|---|---|---|---|---|---|---|---|---|
| | No Payments were made to Insiders and Professionals | | | | | | | | | |
| 1. | | | | | | | | | | |
| 2. | | | | | | | | | | |
| 3. | | | | | | | | | | |
| 4. | | | | | | | | | | |
| 5. | | | | | | | | | | |
| 6. | | | | | | | | | | |
| TOTAL INSIDERS (MOR-1) | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |

| PROFESSIONALS | MONTH July 31, 2009 | MONTH August 31, 2009 | MONTH September 30, 2009 | MONTH October 31, 2009 | MONTH November 30, 2009 | MONTH December 31, 2009 | MONTH January 31, 2010 | MONTH February 28, 2010 | MONTH March 31, 2010 | MONTH April 30, 2010 |
|---|---|---|---|---|---|---|---|---|---|---|
| | No Payments were made to Insiders and Professionals | | | | | | | | | |
| 1. | | | | | | | | | | |
| 2. | | | | | | | | | | |
| 3. | | | | | | | | | | |
| 4. | | | | | | | | | | |
| 5. | | | | | | | | | | |
| 6. | | | | | | | | | | |
| TOTAL PROFESSIONALS (MOR-1) | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |

*Revised 07/01/98*

MOR-9

MOR-1

CASE NAME: Bison Building Holdings, Inc et al  Bison Building Materials Nevada LLC
CASE NUMBER: 09-34452 H2-11 (Chapter 11 --Jointly Administered)
PROPOSED PLAN Undetermined

UNITED STATES BANKRUPTCY COURT

PETITION DATE: June 28, 2009
DISTRICT OF TEXAS: Southern
DIVISION: Houston

## MONTHLY OPERATING REPORT SUMMARY   FOR MONTH   April   YEAR   2010

| | MONTH (June 28-July 31, 2009) | August 31, 2009 | September 30, 2009 | October 31, 2009 | November 30, 2009 | December 31, 2009 | January 31, 2010 | February 28, 2010 | March 31, 2010 | April 30, 2010 |
|---|---|---|---|---|---|---|---|---|---|---|
| REVENUES (MOR-6) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| INCOME BEFORE INT. DEPREC./TAX (MOR-6) | 0.00 | 0.00 | 0.00 | (650.00) | 0.00 | 0.00 | (325.00) | 0.00 | 0.00 | (325.00) |
| NET INCOME (LOSS) (MOR-6) | 0.00 | 0.00 | 0.00 | (650.00) | 0.00 | 0.00 | (325.00) | 0.00 | 0.00 | (325.00) |
| PAYMENTS TO INSIDERS (MOR-9) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| PAYMENTS TO PROFESSIONALS (MOR-9) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| TOTAL DISBURSEMENTS (MOR-8) | 0.00 | 0.00 | 0.00 | 650.00 | 0.00 | 0.00 | 325.00 | 0.00 | 0.00 | 325.00 |

***The original of this document must be filed with the United States Bankruptcy Court and a copy must be sent to the United States Trustee***

| REQUIRED INSURANCE MAINTAINED AS OF SIGNATURE DATE | | EXP. DATE |
|---|---|---|
| CASUALTY | YES ( x ) NO ( ) | 9 _ 1 _ 10 |
| LIABILITY | YES ( x ) NO ( ) | 9 _ 1 _ 10 |
| VEHICLE | YES ( x ) NO ( ) | 9 _ 1 _ 10 |
| WORKERS | YES ( ) NO ( x ) | Note 1 |
| OTHER | YES ( ) NO ( x ) | _ : _ : _ |

Are all accounts receivable being collected within terms?
Are all post-petition liabilities, including taxes, being paid within terms?
Have any pre-petition liabilities been paid?
If so, describe

Are all funds received being deposited into DIP bank accounts?
Were any assets disposed of outside the normal course of business?
If so, describe

Are all U.S. Trustee Quarterly Fee Payments current?
What is the status of your Plan of Reorganization?

CIRCLE ONE
Yes (No)
(Yes) No
(Yes) No

(Yes) No
Yes (No)

(Yes) No
to be determined

This entity was closed in 2008.

I certify under penalty of perjury that the following complete Monthly Operating Report (MOR), consisting of MOR-1 through MOR-9 plus attachments, is true and correct.

SIGNED x _____ TITLE: _____ CEO
(PRINCIPAL SIGNATURE)
Harley C. Robinson        5/13/2010
(PRINT NAME OF SIGNATORY)        DATE

ATTORNEY NAME: David Jones
FIRM NAME: Porter & Hedges LLP
ADDRESS: 1000 Main Street

CITY, STATE ZIP: Houston, TX 77002
TELEPHONE/FAX: 713-226-6653/713-226-6253

MOR-1

Revised 07/01/08

Note 1--This company was closed in 2008 and no longer has employees. Therefore, no Worker's Compensation insurance is carried.

CASE NAME:   Bison Building Holdings, Inc et al  Bison Building Materials Nevada LLC
CASE NUMBER:  09-34452 H2-11 (Chapter 11 –Jointly Administered)

## COMPARATIVE BALANCE SHEETS

| ASSETS | FILING DATE* Note 1 June 28,2009 | MONTH July 31,2009 | MONTH August 31,2009 | MONTH September 30,2009 | MONTH October 31,2009 | MONTH November 30,2009 | MONTH December 31,2009 | MONTH January 31,2010 | MONTH February 28,2010 | MONTH March 31,2010 | MONTH April 30,2010 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **CURRENT ASSETS** | | | | | | | | | | | |
| Cash (2) | 4,082 | 4,082 | 4,082 | 4,082 | 3,432 | 3,432 | 3,432 | 3,107 | 3,107 | 3,107 | 2,782 |
| Accounts Receivable (3) | 1,483,515 | 1,483,515 | 1,483,515 | 1,483,515 | 1,483,515 | 1,483,515 | 1,483,515 | 1,483,515 | 1,483,515 | 1,483,515 | 1,483,515 |
| Allowance for Uncollectible Accounts | (1,483,515) | (1,483,515) | (1,483,515) | (1,483,515) | (1,483,515) | (1,483,515) | (1,483,515) | (1,483,515) | (1,483,515) | (1,483,515) | (1,483,515) |
| | | | | | | | | | | | |
| Inventory - Lower of Cost or Market | 0.00 | | | | | | | | | | |
| Prepaid Expenses | 60,869 | 60,869 | 60,869 | 60,869 | 60,869 | 60,869 | 60,869 | 60,869 | 60,869 | 60,869 | 60,869 |
| Investments | 0.00 | | | | | | | | | | |
| Other | 0.00 | 0.00 | 0.00 | 0.00 | | | | | | | |
| TOTAL CURRENT ASSETS | 64,951 | 64,951 | 64,951 | 64,951 | 64,301 | 64,301 | 64,301 | 63,976 | 63,976 | 63,976 | 63,651 |
| PROPERTY, PLANT & EQUIP @ COST (4) | 1,147,635 | 1,147,635 | 1,147,635 | 1,147,635 | 1,147,635 | 1,147,635 | 1,147,635 | 1,147,635 | 1,147,635 | 1,147,635 | 1,147,635 |
| Less Accumulated Depreciation | 241,970 | 241,970 | 241,970 | 241,970 | 241,970 | 241,970 | 241,970 | 241,970 | 241,970 | 241,970 | 241,970 |
| NET BOOK VALUE OF PP & E | 905,665 | 905,665 | 905,665 | 905,665 | 905,665 | 905,665 | 905,665 | 905,665 | 905,665 | 905,665 | 905,665 |
| **OTHER ASSETS** | | | | | | | | | | | |
| Intercompany receivable from HLBM Co. | 8,037 | 8,037 | 8,037 | 8,037 | 8,037 | 8,037 | 8,037 | 8,037 | 8,037 | 8,037 | 8,037 |
| | | | | | | | | | | | |
| **TOTAL ASSETS** | $978,653 | $978,653 | $978,653 | $978,653 | $978,003 | $978,003 | $978,003 | $977,678 | $977,678 | $977,678 | $977,353 |

\* Per Schedules and Statement of Affairs

Revised 07/01/98

**MOR-2**

Note 1– These balances are based on a reverse reconciliation of the Debtor's books as of June 30, 2009.  This reconciliation continues and further adjustments may be made in subsequent MORs.

Note 2– Cash balance was transferred to an account held in the name of Bison Building Materials LLC in connection with closing the bank accounts of Bison Building Materials Nevada LLC, which was done at the request of the U.S. Trustee.

Note 3– Amounts are from Debtors books and records and include unpaid invoices which are 18-36 months old.  Debtor established a bad debt reserve for the entire amount of these accounts in 2007 and believes their collectibility is unlikely.

Note 4– Amounts are from Debtors books and records and include leasehold improvements of $910,354, which the Debtors believe have no value.  Amounts also include equipment and furniture and fixtures which Debtors have been unable to locate.

CASE NAME:   Bison Building Holdings, Inc et al  Bison Building Materials Nevada LLC
CASE NUMBER:  09-34452 H2-11 (Chapter 11 –Jointly Administered)

## COMPARATIVE BALANCE SHEETS

| LIABILITIES & OWNER'S EQUITY | FILING DATE* Note 1 June 28, 2009 | MONTH July 31, 2009 | MONTH August 31, 2009 | MONTH September 30, 2009 | MONTH October 31, 2009 | MONTH November 30, 2009 | MONTH December 31, 2009 | MONTH January 31, 2010 | MONTH February 28, 2010 | MONTH March 31, 2010 | MONTH April 30, 2010 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **LIABILITIES** | | | | | | | | | | | |
| POST-PETITION LIABILITIES(MOR-4) | | | | | | | 0 | 0 | 0 | 0 | 0 |
| PRE-PETITION LIABILITIES | | | | | | | | | | | |
| Notes Payable – Secured | | | | | | | | | | | |
| Priority Debt | | | | | | | | | | | |
| Federal Income Tax | | | | | | | | | | | |
| FICA Withholding | | | | | | | | | | | |
| Unsecured Debt | | | | | | | | | | | |
| Other (2) | 14,646,327 | 14,646,327 | 14,646,327 | 14,646,327 | 14,646,327 | 14,646,327 | 14,646,327 | 14,646,327 | 14,646,327 | 14,646,327 | 14,646,327 |
| TOTAL PRE-PETITION LIABILITIES | 14,646,327 | 14,646,327 | 14,646,327 | 14,646,327 | 14,646,327 | 14,646,327 | 14,646,327 | 14,646,327 | 14,646,327 | 14,646,327 | 14,646,327 |
| TOTAL LIABILITIES | 14,646,327 | 14,646,327 | 14,646,327 | 14,646,327 | 14,646,327 | 14,646,327 | 14,646,327 | 14,646,327 | 14,646,327 | 14,646,327 | 14,646,327 |
| **OWNER'S EQUITY (DEFICIT)** | | | | | | | | | | | |
| PREFERRED STOCK | | | | | | | | | | | |
| COMMON STOCK | | | | | | | | | | | |
| ADDITIONAL PAID IN CAPITAL | | | | | | | | | | | |
| RETAINED EARNINGS: Filing Date | (13,667,674) | (13,667,674) | (13,667,674) | (13,667,674) | (13,667,674) | (13,667,674) | (13,667,674) | (13,667,674) | (13,667,674) | (13,667,674) | (13,667,674) |
| RETAINED EARNINGS: Post Filing Date | | 0 | | | (650) | (650) | (650) | (975) | (975) | (975) | (1,300) |
| TOTAL OWNER'S EQUITY (NET WORTH) | (13,667,674) | (13,667,674) | (13,667,674) | (13,667,674) | (13,668,324) | (13,668,324) | (13,668,324) | (13,668,649) | (13,668,649) | (13,668,649) | (13,668,974) |
| TOTAL LIABILITIES & OWNERS EQUITY | $978,653 | $978,653 | $978,653 | $978,653 | $978,003 | $978,003 | $978,003 | $977,678 | $977,678 | $977,678 | $977,353 |

\* Per Schedules and Statement of Affairs

Revised 07/01/08

**MOR-3**

**Note 1**—These balances are based on a reverse reconciliation of the Debtor's books as of June 30, 2009.  This reconciliation continues and further adjustments may be made in subsequent MORs.

**Note 2**– amounts are intercompany payables to other Bison companies

Case 09-34452   Document 532   Filed in TXSB on 05/21/10   Page 4 of 9

**CASE NAME:** Bison Building Holdings, Inc et al  Bison Building Materials Nevada LLC
**CASE NUMBER:** 09-34452 H2-11 (Chapter 11 -Jointly Administered)

## SCHEDULE OF POST-PETITION LIABILITIES

| | MONTH<br>July 31,2009 | MONTH<br>August 31,2009 | MONTH<br>September 30, 2009 | MONTH<br>October 31, 2009 | MONTH<br>November 30, 2009 | MONTH<br>December 31, 2009 | MONTH<br>January 31, 2010 | MONTH<br>February 28, 2010 | MONTH<br>March 31, 2010 | MONTH<br>April 30, 2010 |
|---|---|---|---|---|---|---|---|---|---|---|
| *TRADE ACCOUNTS PAYABLE* | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| TAX PAYABLE | | | | | | | | | | |
| Federal Payroll Taxes | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| State Payroll Taxes | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Ad Valorem Taxes | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Other Taxes | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| TOTAL TAXES PAYABLE | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| SECURED DEBT POST-PETITION | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| ACCRUED INTEREST PAYABLE | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| ACCRUED PROFESSIONAL FEES* | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| OTHER ACCRUED LIABILITIES | | | | | | | | | | |
| 1.  Other Inter Company | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| TOTAL POST-PETITION LIABILITIES (MOR-3) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

*Payment requires Court Approval
MOR-4

*Revised 07/01/98*

CASE NAME: Bison Building Holdings, Inc et al  Bison Building Materials Nevada LLC
CASE NUMBER: 09-34452 H2-11 (Chapter 11 - Jointly Administered)

**AGING OF POST-PETITION LIABILITIES**

**MONTH    April 30, 2010**

| DAYS | TOTAL | TRADE ACCOUNTS | FEDERAL TAXES | STATE TAXES | AD VALOREM, OTHER TAXES | Inter Company |
|---|---|---|---|---|---|---|
| 0-30 | 0.00 | | | | | |
| 31-60 | 0.00 | | | | | |
| 61-90 | 0.00 | | | | | |
| 91+ | 0.00 | | | | | |
| TOTAL | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | |

**AGING OF ACCOUNTS RECEIVABLE**

| MONTH | August 31, 2009 | September 30, 2009 | October 31, 2009 | November 30, 2009 | December 31, 2009 | January 31, 2010 | February 28, 2010 | March 31, 2010 | April 30, 2010 |
|---|---|---|---|---|---|---|---|---|---|
| 0-30 DAYS | | | | | | | | | |
| 31-60 DAYS | | | | | | | | | |
| 60-90 DAYS | | | | | | | | | |
| 90+ DAYS (1) | 1,483,515 | 1,483,515 | 1,483,515 | 1,483,515 | 1,483,515 | 1,483,515 | 1,483,515 | 1,483,515 | 1,483,515 |
| TOTAL | 1,483,515 | 1,483,515 | 1,483,515 | 1,483,515 | 1,483,515 | 1,483,515 | 1,483,515 | 1,483,515 | 1,483,515 |

(1) Amounts are from Debtors books and records and include unpaid invoices which are 18-36 months old. Debtor established a bad debt reserve for the entire amount of these accounts in 2007 and believes their collectibility is unlikely.

MOR-5

*Revised 07/01/98*

CASE NAME:   Bison Building Holdings, Inc et al  Bison Building Materials Nevada LLC
CASE NUMBER:  09-34452 H2-11 (Chapter 11 -Jointly Administered)

## STATEMENT OF INCOME (LOSS)

| | MONTH July 31, 2009 | MONTH August 31, 2009 | MONTH September 30, 2009 | MONTH October 31, 2009 | MONTH November 30, 2009 | MONTH December 31, 2009 | MONTH January 31, 2010 | MONTH February 28, 2010 | MONTH March 31, 2010 | MONTH April 30, 2010 | FILING TO DATE |
|---|---|---|---|---|---|---|---|---|---|---|---|
| REVENUES - (MOR-1) | | | | | | | | | | | 0 |
| TOTAL COST OF REVENUES | | | | | | 0 | | | | | 0 |
| GROSS PROFIT | 0 | 0 | 0 | 0 | 0 | 0 | | | | | 0 |
| OPERATING EXPENSES | | | | | | | | | | | |
| Selling & Marketing | | | | | | | | | | | 0 |
| General & Administrative | | | | | | | | | | | 0 |
| Insiders Compensation | | | | | | | | | | | 0 |
| Professional Fees | | | | | | | | | | | 0 |
| Other | | | | 650 | | | 325 | | | 325 | 1,300 |
| Other | | | | | | | | | | | 0 |
| TOTAL OPERATING EXPENSES | 0 | 0 | 0 | 650 | 0 | 0 | 325 | 0 | 0 | 325 | 1,300 |
| INCOME BEFORE INT, DEPR,TAX (MOR-1) | 0 | 0 | 0 | (650) | 0 | 0 | (325) | 0 | 0 | (325) | (1,300) |
| INTEREST EXPENSE | | | | | | | | | | | 0 |
| DEPRECIATION | | | | | | | | | | | 0 |
| OTHER INCOME / EXPENSE* | | | | | | | | | | | 0 |
| OTHER ITEMS** | 0 | | | | | | | | | | 0 |
| TOTAL INT, DEPR & OTHER ITEMS | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| NET INCOME BEFORE TAXES | 0 | 0 | 0 | (650) | 0 | 0 | (325) | 0 | 0 | (325) | (1,300) |
| FEDERAL INCOME TAXES | | | | | | | | | | | 0 |
| NET INCOME (LOSS) (MOR-1) | 0 | 0 | 0 | (650) | 0 | 0 | (325) | 0 | 0 | (325) | (1,300) |

*Accrual Accounting Required, Otherwise Footnote with Explanation.*

*   Footnote Mandatory.

* * Unusual and/or infrequent item(s) outside the ordinary course of business require footnote.

**MOR-6**

*Revised 07/01/98*

CASE NAME:   Bison Building Holdings, Inc et al  Bison Building Materials Nevada LLC
CASE NUMBER: 09-34452 H2-11 (Chapter 11 - Jointly Administered)

| CASH RECEIPTS AND DISBURSEMENTS | MONTH June 29-July 31, 2009 | MONTH August 31, 2009 | MONTH September 30, 2009 | MONTH October 31, 2009 | MONTH November 30, 2009 | MONTH December 31, 2009 | MONTH January 31, 2010 | MONTH February 28, 2010 | MONTH March 31, 2010 | MONTH April 30, 2010 | FILING TO DATE |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. CASH BEGINNING OF MONTH | 4,082 | 4,082 | 4,082 | 4,082 | 3,432 | 3,432 | 3,432 | 3,107 | 3,107 | 3,107 | 4,082 |
| RECEIPTS | | | | | | | | | | | |
| 2. CASH SALES | | | | | | | | | | | 0 |
| 3. COLLECTION OF ACCOUNTS RECEIVABLE | | | | | | | | | | | 0 |
| 4. LOANS & ADVANCES (attach list) | | | | | | | | | | | 0 |
| 5. SALE OF ASSETS | | | | | | | | | | | 0 |
| 6. OTHER (attach list) Note 1 | | | | | | | | | | | 0 |
| TOTAL RECEIPTS** | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Withdrawal/Contributions by Individual Debtor MFR-2* | | | | | | | | | | | |
| DISBURSEMENTS | | | | | | | | | | | |
| 7. NET PAYROLL | | | | | | | | | | | 0 |
| 8. PAYROLL TAXES PAID | | | | | | | | | | | 0 |
| 9. SALES, USE & OTHER TAXES PAID | | | | | | | | | | | 0 |
| 10. SECURED/RENTAL/LEASES | | | | | | | | | | | 0 |
| 11. UTILITIES & TELEPHONE | | | | | | | | | | | 0 |
| 12. INSURANCE | | | | | | | | | | | 0 |
| 13. INVENTORY PURCHASES | | | | | | | | | | | 0 |
| 14. VEHICLE EXPENSES | | | | | | | | | | | 0 |
| 15. TRAVEL & ENTERTAINMENT | | | | | | | | | | | 0 |
| 16. REPAIRS, MAINTENANCE & SUPPLIES | | | | | | | | | | | 0 |
| 17. ADMINISTRATIVE & SELLING | | | | | | | | | | | 0 |
| 18. OTHER (attach list) Note 2 | | | | | | | | | | | 0 |
| TOTAL DISBURSEMENTS FROM OPERATIONS | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 19. PROFESSIONAL FEES | | | | 650 | | | 325 | | | 325 | 1,300 |
| 20. U.S. TRUSTEE FEES | | | | | | | | | | | 0 |
| 21. OTHER REORGANIZATION EXPENSES (attach list) | | | | | | | | | | | 0 |
| TOTAL DISBURSEMENTS** | 0 | 0 | 0 | 650 | 0 | 0 | 325 | 0 | 0 | 325 | 1,300 |
| 22. NET CASH FLOW | 0 | 0 | 0 | (650) | 0 | 0 | (325) | 0 | 0 | (325) | (1,300) |
| 23. CASH - END OF MONTH (MOR-2) | 4,082 | 4,082 | 4,082 | 3,432 | 3,432 | 3,432 | 3,107 | 3,107 | 3,107 | 2,782 | 2,782 |

MOR-7

* Applies to Individual debtors only
** Numbers for the current month should balance (match)
RECEIPTS and CHECKS/OTHER DISBURSEMENTS lines on MOR-8

Revised 07/01/08

**CASE NAME:** Bison Building Holdings, Inc et al  Bison Building Materials Nevada LLC
**CASE NUMBER:** 09-34452 H2-11 (Chapter 11 -Jointly Administered)

## CASH ACCOUNT RECONCILIATION
### MONTH OF _____ April 30, 2010

| BANK NAME | Washington Mutual | Washington Mutual | | | |
|---|---|---|---|---|---|
| ACCOUNT NUMBER | #357-152097-9 | 357-152098-7 | # | | |
| *ACCOUNT TYPE* | *Petty Cash* | *Deposit* | *TAX* | *OTHER FUNDS* | *TOTAL* |
| BANK BALANCE | 0 | 0 | | | 0 |
| DEPOSITS IN TRANSIT | | | | | 0 |
| OUTSTANDING CHECKS | 0 | 0 | | | 0 |
| ADJUSTED BANK BALANCE | 0 | 0 | | 0 | 0 |
| BEGINNING CASH - PER BOOKS (1) | 150 | 2,957 | | | 3,107 |
| RECEIPTS* | | | | | 0 |
| TRANSFERS BETWEEN ACCOUNTS | | | | | 0 |
| Transfer to Bison Building Materials LLC account | | | | | 0 |
| CHECKS/OTHER DISBURSEMENTS* | | 325 | | | 325 |
| ENDING CASH - PER BOOKS | 150 | 2,632 | | 0 | 2,782 |

**MOR-8**

*Numbers should balance (match) TOTAL RECEIPTS and TOTAL DISBURSEMENTS lines on MOR-7

*Revised 07/01/98*

(1) Cash balance was transferred to an account held in the name of Bison Building Materials LLC in connection with closing the bank accounts of Bison Building Materials Nevada LLC, which was done at the request of the U.S. Trustee.

CASE NAME:   Bison Building Holdings, Inc et al  Bison Building Materials Nevada LLC
CASE NUMBER:   09-34452 H2-11 (Chapter 11 - Jointly Administered)

## PAYMENTS TO INSIDERS AND PROFESSIONALS

Of the total disbursements shown for the month, list the amount paid to insiders (as defined in Section 101(31)(A)-(F) of the U.S. Bankruptcy Code) and the professionals.
Also, for insiders, identify the type of compensation paid (e.g., salary, commission, bonus, etc.) (Attach additional pages as necessary).

| INSIDERS: NAME/COMP TYPE | MONTH July 31, 2009 | MONTH August 31, 2009 | MONTH September 30, 2009 | MONTH October 31, 2009 | MONTH November 30, 2009 | MONTH December 31, 2009 | MONTH January 31, 2010 | MONTH February 28, 2010 | MONTH March 31, 2010 | MONTH April 30, 2010 |
|---|---|---|---|---|---|---|---|---|---|---|
| | No payments were made to Insiders and Professionals | | | | | | | | | |
| 1. | | | | | | | | | | |
| 2. | | | | | | | | | | |
| 3. | | | | | | | | | | |
| 4. | | | | | | | | | | |
| 5. | | | | | | | | | | |
| 6. | | | | | | | | | | |
| TOTAL INSIDERS   (MOR-1) | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |

| PROFESSIONALS | MONTH July 31, 2009 | MONTH August 31, 2009 | MONTH September 30, 2009 | MONTH October 31, 2009 | MONTH November 30, 2009 | MONTH December 31, 2009 | MONTH January 31, 2010 | MONTH February 28, 2010 | MONTH March 31, 2010 | MONTH April 30, 2010 |
|---|---|---|---|---|---|---|---|---|---|---|
| | No payments were made to Insiders and Professionals | | | | | | | | | |
| 1. | | | | | | | | | | |
| 2. | | | | | | | | | | |
| 3. | | | | | | | | | | |
| 4. | | | | | | | | | | |
| 5. | | | | | | | | | | |
| 6. | | | | | | | | | | |
| TOTAL PROFESSIONALS   (MOR-1) | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |

Revised 07/01/98

MOR-9